**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC <br><br>        Plaintiff, <br><br> v. <br><br> DIRECTV, LLC, et al <br><br>        Defendants. | **Case No. 2:22-CV-00075-JRG** <br><br> **LEAD CASE** |
| ENTROPIC COMMUNICATIONS, LLC, <br><br>        Plaintiff, <br><br> v. <br><br> DISH NETWORK CORPORATION; <br> DISH NETWORK L.L.C.; and <br> DISH NETWORK SERVICE L.L.C., <br><br>        Defendants. | **Case No. 2:22-CV-00076-JRG** <br><br> **MEMBER CASE** |

**DISH'S MOTION PURSUANT TO 28 U.S.C. § 1404(a)
TO TRANSFER TO THE DISTRICT OF COLORADO**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

LEGAL STANDARDS ............................................................................................ 1

ARGUMENT: THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLORADO ............ 2

    A.   The District Of Colorado Is An Appropriate Venue For This Case .......................... 3

    B.   The District Of Colorado Is A "Clearly More Convenient" Venue Than The Eastern District Of Texas ............................................................ 3

        1.   Sources Of Proof Are In Colorado ................................................. 4

        2.   The Availability Of Compulsory Process To Secure Attendance Of Witnesses Favors Transfer To The District Of Colorado .................................. 7

        3.   Transferring This Case To The District Of Colorado Would Reduce The Costs Of Attendance For Willing Witnesses ...................................... 9

        4.   Colorado Local Interests Favors Transfer ......................................... 11

        5.   Entropic's Co-Pending Suit Against DirecTV Does Not Change The Calculus ........................................................................... 13

        6.   The Comparative Congestion Of The Two Courts Is Neutral .......................... 14

        7.   The Remaining Factors Are Neutral Or Favor Transfer ................................ 15

CONCLUSION ..................................................................................................... 15

CERTIFICATE OF SERVICE & CERTIFICATE OF CONFERENCE .................................... 17

### TABLE OF AUTHORITIES

**Page**

**Cases**

*Blue Spike, LLC v. Clear Channel Broad., Inc.*
No. 6:12-cv-499, 2014 WL 11619168 (E.D. Tex. July 2, 2014) ................................. 8

*Gulf Oil Corp. v. Gilbert*
330 U.S. 501 (1947) .................................................................................................. 2, 11

*In re Apple Inc.*
979 F.3d 1332 (Fed. Cir. 2020) .............................................................................. 14, 15

*In re Apple Inc.*
No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ................................. 6, 11

*In re DISH Network L.L.C.*
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .............. 1, 2, 4, 6, 8, 9, 12, 13, 14

*In re Genentech, Inc.*
566 F.3d 1338 (Fed. Cir. 2009) ............................................................................... 4, 7, 9

*In re Google Inc.*
No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .................................... 9, 13

*In re Google LLC*
No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ........................................ 11

*In re Hulu, LLC*
No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ..................................... 8, 9

*In re Juniper Networks, Inc.*
14 F.4th 1313, 1319 (Fed. Cir. 2021) ................................................................... 9, 11, 14

*In re Microsoft Corp.*
630 F.3d 1361 (Fed. Cir. 2011) ................................................................................... 11

*In re Nintendo Co.*
589 F.3d 1194, 1198 (Fed. Cir. 2009) ......................................................................... 12

*In re Samsung Elecs. Co., Ltd.*
2 F.4th 1371 (Fed. Cir. 2021) ................................................................................ 11, 14

*In re Vistaprint Ltd.*
628 F.3d 1342 (Fed. Cir. 2010) ..................................................................................... 2

*In re Volkswagen AG*
371 F.3d 201 (5th Cir. 2004) ............................................................................... 2, 9, 11

*In re Volkswagen of Am., Inc.*
545 F.3d 304 (5th Cir. 2008) ....................................................................... 2, 3, 7, 10, 12

*Inhale, Inc. v. Gravitron, LLC*
  No. 18-cv-3883, 2021 WL 5880192 (C.D. Cal. Sept. 5, 2018) ................................... 3

*Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*
  No. 6:14-cv-411, 2016 WL 6824415 (E.D. Tex. March 28, 2016) .......................... 15

*Oyster Optics, LLC v. Coriant Am., Inc.*
  No. 2:16-cv-1302, 2017 WL 4225202 (E.D. Tex. Sep. 22, 2017)............................ 8

*Piper Aircraft Co. v. Reyno*
  454 U.S. 235 (1981).............................................................................................. 2

*R2 Sol'ns LLC v. Target Corp.*
  No. 4:21-cv-92, 2021 WL 2550908 (E.D. Tex. June 22, 2021) ............................ 4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*
  137 S. Ct. 1514 (2017).......................................................................................... 3

**Statutes**

28 U.S.C. § 1332(c)(1)............................................................................................ 3

28 U.S.C. § 1400(b) ............................................................................................... 3

28 U.S.C. § 1404(a) ............................................................................................... 1

**Rules**

Fed. R. Civ. P. 45(c) ............................................................................................. 7

**INTRODUCTION**

This case belongs in Colorado.  Entropic Communications, LLC ("Entropic") is a Delaware LLC that has sued DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH") here in Texas.  But all three DISH defendants have their headquarters in Colorado, and two of the three are Colorado companies (the third, Nevada).  The current and former DISH engineers who worked on the accused products and systems, as well as relevant prior art systems, are almost entirely located in Colorado; none are in this District.  The same is true of other DISH witnesses likely to testify about sales data and the relationship between DISH and the original owner of the asserted patents.  Financial and technical documents, as well as source code, are in Colorado.  DISH's accused products and systems are used throughout the United States and have no special connection to this District, and DISH's only presence here is limited to operations having nothing to do with Entropic's infringement claims.  None of the inventors on the asserted patents reside anywhere near Texas, nor do Entropic's CEO or any of the principals listed in its 2021 Texas registration documents.  Denver is centrally located and has a major international airport that is convenient for witnesses from all over.  Moreover, the judicial caseload of Colorado judges is similar to that of here.

On nearly identical facts, the Federal Circuit recently ordered Judge Albright to transfer a strikingly similar case to Colorado.  *See In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) ("*DISH*") ("While [the plaintiff] may prefer to litigate its cases in … Texas, that is not enough to overcome a transfer motion directed to a district which is the home of evidence, witnesses, and the conduct giving rise to the action.").  The same result is merited here.  DISH moves under 28 U.S.C. § 1404(a) to transfer this case.

**LEGAL STANDARDS**

Under § 1404(a), a court may transfer a civil case to a more convenient district where it

otherwise might have been brought.  If the proposed venue is proper, courts weigh the private and public interest factors—set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)—to determine if "the transferee venue is clearly more convenient."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

The private interest factors considered in deciding this issue are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) ("*Volkswagen I*").  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*

The plaintiff's choice of forum is not a factor in this analysis, but instead is accounted for by the defendant having the burden to clearly demonstrate good cause for the transfer.  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

### ARGUMENT:  THIS CASE SHOULD BE TRANSFERRED TO THE DISTRICT OF COLORADO

Colorado is the right venue for this action.  It is the hub of the key witnesses and documents, as well as being the location of DISH's headquarters.  The District of Colorado is clearly more convenient than this District based on the applicable factors, as the Federal Circuit has recently adjudicated on near-identical facts, referring to Colorado as "the center of gravity" for that patent dispute.  *DISH*, 2021 WL 4911981, at *2.  This District, in contrast, has no meaningful connection to the action.  Good cause exists to transfer.

A.     **The District Of Colorado Is An Appropriate Venue For This Case**

Under 28 U.S.C. § 1400(b), venue is proper for patent infringement actions in a judicial district where a defendant resides, which means that the District of Colorado is indisputably a permissible venue for this case.  A domestic corporate defendant[1] is deemed to reside in its state of incorporation and in the state where it has its principal place of business.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business….").

As Entropic's First Amended Complaint ("FAC") admits, two of the three DISH defendants are Colorado companies, and all three have their principal places of business in Colorado.[2]  ECF No. 17 ¶¶ 3, 4, 6.  DISH resides in Colorado, making venue proper there.

B.     **The District Of Colorado Is A "Clearly More Convenient" Venue Than The Eastern District Of Texas**

The private and public interest factors demonstrate that the District of Colorado is "clearly more convenient" than this District.  *Volkswagen II*, 545 F.3d at 315.  Almost every relevant factor, including the most important factors, weigh heavily in favor of transfer.  No factor weighs in favor of this District.

---

1   In this context, LLCs (like some Defendants) are treated like corporations.  *E.g.*, *Inhale, Inc. v. Gravitron, LLC*, No. 18-cv-3883, 2021 WL 5880192, at *2-3 (C.D. Cal. Sept. 5, 2018).

2   Entropic does not distinguish between the three DISH entities that it sues, but they are three distinct companies that have different roles.  DISH Network Corporation is the ultimate parent company, whereas DISH Network L.L.C. is a subsidiary that operates the subscription services business and is publicly known as "DISH Network."  Declaration of Dan Minnick ("Minnick Decl."), ¶ 2.  Dish Network Service L.L.C. is an entity that handles installations of some subscriber equipment.  *Id.*  DISH's history has been intertwined with that of EchoStar Corporation and its current affiliates ("EchoStar"), meaning that—although those entities are no longer part of DISH—some of the DISH witnesses identified in this motion have at relevant times been or are employees of EchoStar.  *Id.*, ¶¶ 2, 3, 9, 14, 16.

### 1.   Sources Of Proof Are In Colorado

The relative ease of access to sources of proof favors transfer to the District of Colorado. As the defendant in a patent litigation against a non-practicing entity, DISH is likely to produce significantly more documents in this case than Entropic.  Because "[m]ost evidence in patent infringement cases comes from the defendant … 'the place where the defendant's documents are kept weighs in favor of transfer to that location.'"  *R2 Sol'ns LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at *2 (E.D. Tex. June 22, 2021) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).  Moreover, in *DISH*, the Federal Circuit found that it was error for the district court to discount this factor because documents are stored electronically; this factor must be given due weight.  *DISH*, 2021 WL 4911981, at *2.

Documents with potential relevance to this action are kept in DISH's headquarters, located in Englewood, Colorado (a suburb of Denver), as well as a nearby engineering office also located in Englewood.  Minnick Decl., ¶ 5.  Entropic's FAC and attached claim charts make clear that the focus of its infringement theory is likely the "LNBs" (low-noise block converters), "ODUs" (outdoor units), "SSCs" (signal selector and combiners), "gateway devices," and "monitoring equipment" of the "Accused Satellite Television Services."  *See* ECF No. 17, ¶¶ 41, 50, 64, 71, 85, 92.  The DISH hardware and software engineers who developed the accused systems, and software associated with it, and are responsible for maintaining them, were and are based in Colorado.[3]  Minnick Decl. ¶ 8 (identifying specific engineers, including Paul Langer,

---

[3]   Some components, such as the LNBs and ODUs, that form part of the basis of Entropic's infringement allegation are or have been obtained by DISH from third-party suppliers, such as MaxLinear, Global Invacom Ltd., MTI, Broadcom, and Rafael Micro.  Minnick Decl., ¶ 9. Those suppliers, none of which are headquartered in Texas, are obviously the most knowledgeable about their own components.  To the extent that those third-party suppliers will be witnesses, their documents are presumably located at those companies' headquarters. Both Broadcom and MaxLinear are headquartered in California.  *See, e.g.*, Ex. 1 (identifying San Jose as the Broadcom "corporate headquarters," under the "locations" subtab); Ex. 2

Scott Fillingim, Dan Minnick, and others).  Likewise, potentially relevant documents concerning design and development are located in Colorado.  *Id.*, ¶ 6.  Relevant source code is also located in the District of Colorado.  *Id.*  Non-technical documents (e.g., marketing and financial records) are also kept in Colorado, as are documents relating to the historical relationship between DISH and the original owner of the asserted patents.  *Id.* ¶¶ 6-7.  The latter category of documents is likely to be relevant to defenses and potential counterclaims that DISH may present.

By contrast, few (if any) relevant documents are likely to be found in the Eastern District of Texas.  As Entropic explains in its FAC, DISH has certain operations in this District.  It points to, for instance, a physical location where customers can sign up for DISH services and pick up equipment.  ECF No. 17, ¶¶ 15-16, 20.  Entropic also includes photos of DISH's alleged "regular and established places of business" in Beaumont and McKinney.  *Id.*, ¶¶ 18-19.  But, as can be clearly seen in these photos, these "places of business" are merely warehouses and installation centers operated by DISH.  Minnick Decl. ¶ 12.  No engineering documents, source code, or other relevant documents are kept at these locations.  *Id.*, ¶¶ 6, 11.  Nor do the operations conducted at these locations have anything to do with the way that the accused hardware or software operates.  *Id.*, ¶ 12.  Entropic also identifies a "Premier Local Retailer" in Plano.  ECF No. 17, ¶ 20.  But this facility is merely an authorized retailer of DISH products and services; it is not itself a DISH facility and has no DISH employees.  Minnick Decl. ¶ 12.  In short, these Texas operations have no information about the merits of this lawsuit and the District of Colorado has a clear comparative advantage over the Eastern District of Texas "with regard to

---

(identifying Carlsbad as MaxLinear's "corporate headquarters").  Global Invacom is a UK company with a facility in North Carolina.  *E.g.*, Ex. 3.  MTI and Rafael Micro are headquartered in Taiwan, and MTI has a research facility in California.  *E.g.*, Exs. 4-5. Although Broadcom has facilities in Plano and Austin, DISH engineers have never worked with engineers in those facilities for accused components in this case.  Minnick Decl., ¶ 10.

the ease of access to the sources of proof." *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). And, notably, these Eastern District facilities are even less extensive than those considered by the Federal Circuit when it ordered transfer out of the Western District of Texas. *DISH*, 2021 WL 4911981, at *3 (noting the presence of, for instance, DISH call centers and remanufacturing facilities in the Western District of Texas).

The District of Colorado is no less convenient than the Eastern District of Texas for Entropic. Entropic is a non-practicing entity established under the laws of Delaware barely one year ago, on March 29, 2021. Ex. 6.[4] It registered to do business in Texas just nine months ago, in July of 2021.[5] Ex. 10. Although Entropic purports to have "an office" in Plano (ECF No. 17, ¶ 2), that office consists of a small suite with a locked door that does not display Entropic's name.[6] Tessar Decl., ¶¶ 4-5. Entropic's documents and witnesses are expected to be outside of Texas as well. For instance, the face of the three asserted patents shows that all six inventors resided in the San Diego area in the past, and DISH's research suggests that almost all surviving

---

[4]   All cited exhibits are attached to the Declaration of Trevor Bervik.

[5]   The original Entropic Communications, ***Inc.*** entity, with which DISH had a business relationship, was a California operating company that was acquired by MaxLinear in 2015. Ex. 7. MaxLinear assigned the asserted patents to the plaintiff here, Entropic Communications, ***LLC***, in Spring 2021, shortly after that entity was formed. Exs. 8-9. Entropic's Texas registration documents list four principals (Ex. 10); three (Andrea Gothing, Erez Levy, and James Palmer) are employees of Fortress Investment Group (Exs. 11-13) and appear to be based out of Fortress's Bay Area location (Ex. 14), and the fourth (Jeff Risher) is an employee of FreeWire Technologies, which is based in Oakland, California (Exs. 16-17). Another Fortress employee located in New York, Scott Desiderio, signed Entropic's Delaware Certificate of Formation in March 2021. Ex. 6, 17. The March 2021 patent assignment documents list a New York address for the plaintiff, but DISH could locate no record of Entropic Communications, LLC (i.e., Plaintiff) having registered to do business in New York; that address seems to be Fortress's. Exs. 8-9, 14, 18; Bervik Decl., ¶¶ 21-22.

[6]   The sign on the door, instead, reads "Bentley Legacy Holdings." A picture of the locked door is included in the Declaration of Amanda Tessar. Based on the sign, Bentley's website (https://www.bentleylegacy.com/contact), and reports as to who resides at the relevant address, it appears that Entropic must share this same office suite (#300) with Bentley Legacy Holdings and potentially others. Tessar Decl., ¶ 4. It is not clear whether any Entropic personnel work at this office on a regular basis, but it appears unlikely that they do.

inventors are still located in Southern California (with one near Seattle).  *See* Exs. 19-21; ECF No. 17-1 to 17-3 (patents attached to FAC).  Their documents, to the extent that they have any, including those relevant to standing and inventorship, are presumably in those locations.  One of the prosecuting attorneys, who is also a named inventor on some of the asserted patents, appears to be deceased, and other prosecutors (and, presumably, their files and records) are located in San Diego and Chicago.  Exs. 22-24.  To the extent that Entropic wishes to subpoena documents or present witnesses knowledgeable about DISH's relationship with prior owners of the asserted patents (i.e., relevant to anticipated DISH defenses and counterclaims), those witnesses and their documents will be either in Colorado (e.g., DISH witnesses) or potentially California (where the original Entropic Communications, ***Inc***. entity was located and its first successor, MaxLinear, is still located).  Ex. 2.  Because neither DISH nor Entropic has relevant evidence in the Eastern District of Texas, this factor strongly favors transfer to the District of Colorado.

### 2. The Availability Of Compulsory Process To Secure Attendance Of Witnesses Favors Transfer To The District Of Colorado

The relative availability of compulsory process, a particularly important factor, also favors a transfer to the District of Colorado because there are no relevant non-party witnesses in Texas.  *See Volkswagen II*, 545 F.3d 304, 316 (5th Cir. 2008) (explaining that the "availability of compulsory process" factor relates to nonparties); *Genentech*, 566 F.3d at 1345 (discussing importance of this factor).  Fed. R. Civ. P. 45(c) provides a court with the power to command a non-party to appear for trial or deposition in the state where it is located.  Because there are no known potential witnesses in Texas, the Eastern District of Texas's subpoena power provides no benefit here.  Conversely, the subpoena power of the District of Colorado will potentially prove useful for many former employees.  Such former DISH employees in Colorado constitute "an established pool of likely third-party witnesses" that are not subject to the subpoena power of

this District, but likely can be compelled to attend a trial in Colorado.  *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sep. 22, 2017); *see also Blue Spike, LLC v. Clear Channel Broad., Inc.*, No. 6:12-cv-499, 2014 WL 11619168, at *4 (E.D. Tex. July 2, 2014) (potential for former employee witnesses favored transfer).  Notably, in *DISH*, the Federal Circuit held that the district court had erred by not giving sufficient weight to the location of non-party witnesses exactly like those identified here.  *DISH*, 2021 WL 4911981, at *3 ("The court's finding that this factor was neutral was based on clear legal error.").

The relevant former-employee witnesses who outside of this District include:

- **Harold Jaramillo** worked for DISH for almost 30 years, including on the systems including the accused LNBs, before he retired in 2020.  He has deep knowledge regarding the accused products and systems.  Minnick Decl., ¶ 13.  He lives in Colorado (*see id.*) and is outside the subpoena power of this Court.[7]

- **Will Beals** also worked for almost 30 years for EchoStar (*see* n.1, *supra*) and then DISH before retiring in 2018.  As an engineering director, he has direct knowledge about the design and operation of the accused hardware devices and systems.  *See id.*, ¶ 14.  He resides in Colorado (*see id.*) and is outside the subpoena power of this Court.

- **Ryan Flores** is a former DISH RF/Wireless Engineer who left DISH in 2019 after 20 years of service.  He also likely has relevant knowledge.  *See id.*, ¶ 15.  Mr. Flores resides in Colorado (*see id.*) and is outside subpoena power of this Court.

- **Ed Petruzzelli** is DISH's former Director of RF Technology and has the most detailed and complete knowledge of anyone at DISH of, for instance, the accused LNB components.  Minnick Decl., ¶ 16; *supra* n.3.  Mr. Petruzzelli retired to Pennsylvania in 2020 after more than 20 years at DISH and EchoStar (Minnick Decl., ¶ 16) and is therefore outside the subpoena power of both this Court and the District of Colorado.  That said, given his longtime residence in and connections to Colorado, he has confirmed to DISH that he is willing to travel to Colorado for trial in this case.  *Id.*

Should any of these key non-party witnesses need to attend trial, the District of Colorado would have the ability to secure the attendance of those currently residing in Colorado and may

---

[7]  There is a presumption that witnesses are unwilling to travel, so no evidence needs to be submitted by DISH to establish this point.  *See, e.g., DISH*, 2021 WL 4911981, at *5; *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, *4 (Fed. Cir. Aug. 2, 2021).

be more appealing to others not in Colorado.  This factor thus strongly favors transfer.

### 3. Transferring This Case To The District Of Colorado Would Reduce The Costs Of Attendance For Willing Witnesses

This factor, which considers the convenience of witnesses, has been deemed the ***most*** critical factor in any transfer analysis.  *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) ("probably the single most important factor in a transfer analysis") (applying Fifth Circuit law and quoting *Genentech*, 566 F.3d at 1343); *DISH*, 2021 WL 4911981, at *2.  Moreover, both the convenience of ***party*** and non-party witnesses must be considered, not just non-parties.  *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting an approach that discounted importance of this factor for ***party*** witnesses); *Hulu*, 2021 WL 3278194, at *5 (error for district court to not consider inconvenience for party witnesses).  Here, considerations pertaining to the convenience of the witnesses heavily favor transfer.

Attending trial in Colorado will be less burdensome for willing witnesses, including the members of DISH's Colorado-based engineering and sales teams.  "When the distance between an existing venue for trial of a matter and a proposed venue … is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.  "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *Id.* at 205.  Here, there are no relevant witnesses anywhere near 100 miles of Marshall, so witnesses for both sides will suffer these inconveniences.  Barring transfer, witnesses from Colorado and California will need to fly to Dallas/Fort Worth International Airport ("DFW"), rent a car, and then drive about three hours to reach the courthouse in Marshall.  Ex. 25 (showing a drive of 172 miles from DFW).  Alternatively, they could fly to

Shreveport (about 35 miles away) or Texarkana (about 80 miles away), but these small airports have relatively few flights per day and limited direct flights, leading to lengthy overall travel times for most witnesses.  Exs. 26-30 (only one direct flight from Denver to Shreveport per day; Texarkana only has direct flights to/from DFW and Houston-Intercontinental Airport).

A transfer to Colorado would be more convenient for all potential witnesses.  For the majority of DISH's expected witnesses, Colorado is their home district, minimizing both monetary costs and "the personal costs associated with being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.  The city of Englewood, Colorado, where DISH is headquartered, is a suburb of Denver and is less than 20 miles away from the District of Colorado courthouse in Denver.  Ex. 31.  Should DISH need to bring employee witnesses from outside Colorado, they will be able to use DISH's offices near Denver to minimize the inconveniences caused by being away from their home DISH offices and/or by combining the trip with Colorado meetings that might otherwise have been scheduled for a different time.

Traveling to Denver will also be more convenient for out-of-state witnesses.  United, Frontier, and Southwest Airlines have major hubs in Denver, and there are direct flights to Denver from more than 200 destinations (including San Diego) daily.  Ex. 32.  Additionally, direct flights to Denver from San Diego or the Bay Area are slightly shorter than flights to DFW, not even considering the long drive to Marshall after landing in Dallas.  Exs. 33-36 (direct flights from San Diego/Bay Area to Denver are about 2½ hours; direct flights from San Diego/Bay Area to DFW are about 3/3½ hours, respectively).  The Denver federal courthouse is less than a half an hour drive from the airport and is easily accessible through public rail lines (i.e., RTD Light Rail) between Denver and the airport.  Ex. 37 (showing a drive of about 25 miles); Ex. 38 (showing public transportation routes between downtown Denver and airport).  Because a

transfer to Colorado would significantly reduce the "additional distance to be traveled" by all witnesses, this factor also clearly favors transfer.  *Volkswagen I*, 371 F.3d at 204-05.

### 4.    Colorado Local Interests Favors Transfer

The factor also favors transferring this case to the District of Colorado.  In *Volkswagen I*, the Fifth Circuit found that this factor "weighs heavily in favor of" transferring the case from a district that lacked "any meaningful connection or relationship with the circumstances" of the case to a district where the plaintiffs and defendants lived and the alleged wrong had occurred. 371 F.3d at 206; *see also In re Apple Inc.*, 2022 WL 1196768, at *3 ("We have held that a party's 'general presence in a particular district' does not alone 'give that district a special interest in the case.'") (citation omitted); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) ("The fact that infringement is alleged in the Western District of Texas gives that venue no more of a local interest than the Northern District of California or any other venue."); *Juniper*, 13 F.4th at 1319 ("[T[he events forming the basis for [the plaintiff's] infringement claims occurred mainly in the Northern District of California; none occurred in the Western District of Texas.  That is sufficient to give the transferee venue a greater localized interest in the dispute, which favors transfer.").  As the Fifth Circuit explained, it would be improper to impose the burden of jury duty on "the people of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206 (citing *Gulf Oil Corp.* at 508-09).

The same analysis applies here.  The Eastern District of Texas is not home to Entropic (a 2021 Delaware LLC with a small, shared office in Plano, *see* § B.1, *supra*) or its principals, much less DISH.  *See In re Microsoft Corp.,* 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) (presence in transferor forum that is "recent, ephemeral, and … appear[s] to exist for no other purpose than to manipulate venue" is afforded little or no weight).  Entropic's CEO, Boris Teksler, resides in

California, where Entropic's principals also live.  Exs. 12-14, 38; *supra* n.5.  As discussed, inventors likewise do not live here.  The accused products were not developed or designed here.

Although DISH's products do end up in this District, "[t]he Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317-18).  Where accused products are distributed throughout the United States, "the citizens of the venue chosen by the plaintiff have no more or less of a meaningful connection to the case than any other venue."  *Nintendo*, 589 F.3d at 1198 (quotation marks and citations omitted).  Neither this district nor its potential jurors have any relevant local interest in the present claims against DISH.

By contrast, DISH is one of Colorado's largest private employers, with more than 7,000 employees in the Denver metro area alone.  Minnick Decl., ¶ 18.  The work that was done by DISH engineers in Colorado and the success of DISH as a Colorado company directly led to the claims asserted here.  It is the Colorado courts, not the courts of Texas, that have an interest in resolving this dispute.  *See DISH*, 2021 WL 4911981, at *3 (finding this factor weighed in favor of transfer on similar facts and discounting suggestion that limited DISH facilities in Western Texas change that analysis because "even if these Texas-based operations have some connection to the accused set-top boxes here, that connection is insubstantial compared to Colorado's significant connection to the design and development of the accused features").

Because "there is no relevant factual connection," *Volkswagen II*, 545 F.3d at 318, between this case and the Eastern District of Texas, this factor weighs in favor of transfer to Colorado, where DISH is located and relevant design and development activity occurred.

5. **Entropic's Co-Pending Suit Against DirecTV Does Not Change The Calculus**

DISH's case should be transferred even if Entropic's co-pending suit against DirecTV (No. 2:22-cv-0075) proceeds here. *See DISH,* 2021 WL 4911981, at *4 (ordering transfer on mandamus despite presence of cases against DirecTV and others in Texas). DISH is not related to DirecTV; they are instead direct competitors. This not a standards-based case, and there are different systems and products at issue for DISH and DirecTV. Likewise, infringement and damages issues are different. *Compare* DISH FAC, ¶ 62 *with* DirecTV FAC, ¶ 125. DISH is likely to rely on its own prior art systems, which will differ from DirecTV's. Moreover, there are DISH-specific defenses here that arise from DISH's historical relationship with the original operating Entropic entity. The only efficiency to be gained is during claim construction, and that slight efficiency is insufficient to dispel the good cause for transfer under the other relevant factors. *See DISH*, 2021 WL 4911981, at *4 (finding that any "judicial economy considerations in keeping this case in Texas are insufficient to outweigh the clear benefits of transfer").

It would be improper for Entropic's decision to file a related case in a district to which it has no connection to outweigh the clear conveniences gained by transferring this case to Colorado. *See DISH*, 2021 WL 4911981, at *4. Entropic's choice of venue should not be entitled to more weight because it sued two defendants in separate cases. *See id*., at *3; *Google Inc.*, 2017 WL 977038, at *2 ("Based on the district court's rationale, therefore, the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits. This cannot be correct.") (internal footnote omitted).

6. **The Comparative Congestion Of The Two Courts Is Neutral**

The Federal Circuit has frequently described this factor as the "most speculative" of the

transfer factors. *See, e.g.*, *Juniper*, 14 F.4th at 1322. In doing so, it has warned that "a court's general ability to set a fast-paced schedule is not particularly relevant" to evaluating congestion. *DISH*, 2021 WL 4911981, at *4; *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) ("[A] district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for venue transfer purposes."). The Federal Circuit has simply not found time-to-trial statistics to be compelling. *See, e.g.*, *Samsung*, 2 F.4th at 1380-81 ("[E]ven if the court's speculation is accurate that it could more quickly resolve these cases …, neither respondents nor the district court pointed to any reason that [the] more rapid disposition of the case that might be available in the Western District of Texas would be important enough to be assigned significant weight in the transfer analysis here.").

In any event, court statistics show that the 2021 caseloads of Colorado and Eastern Texas judges were near identical. *See, e.g.*, Ex. 39 (582 cases per judge in Colorado vs. 553 cases per judge in Eastern Texas). The two biggest differences in the data are that: (a) this District has a higher number of pending cases (750 per judge here, and only 549 per judge in Colorado, indicating a greater number of long-running—i.e., potentially more complex—cases here); and (b) the time to trial here is, on average, 10 months faster than in Colorado. *Id.* The former cuts in favor of transfer and, although the latter might arguably cut against it, the Federal Circuit has discounted the importance of the time to trial, as discussed above, focusing instead on the overall caseload—which is almost an exact tie here. This factor is therefore neutral.

### 7.   The Remaining Factors Are Neutral Or Favor Transfer

None of the remaining factors dramatically affects the analysis. Neither of the two Districts has any advantage in applying federal patent law. There are no conflict of laws issues.

*See Mass Engineered Design, Inc. v. SpaceCo Bus. Sols., Inc.*, No. 6:14-cv-411, 2016 WL 6824415, at *5 (E.D. Tex. March 28, 2016) (finding congestion, familiarity of law, and avoidance of conflicts were neutral between Eastern District of Texas and District of Colorado).

Finally, in considering the other factors, it is important to recognize that nothing significant has so far happened in this case; DISH is moving to transfer even before it has answered. *See, e.g.*, *Apple*, 979 F.3d at 1343 (error to consider actions taken after transfer motion filed to justify denial of transfer motion).

## CONCLUSION

The relevant factors show that there is good cause for the transfer of this action to the District of Colorado.  The accused products were designed there.  The documents and witnesses are there.  Colorado is more accessible to out-of-towners than Marshall, and Colorado is no less congested than this Court.  By contrast, the only connections this case has to this District are that Entropic newly has an unmarked and seemingly unstaffed office in Plano, and it filed a single suit against DirecTV here.  This is not enough to tip the balance.  The Federal Circuit has already ordered transfer in near-identical circumstances.  No different result should be reached here.

Dated:  April 27, 2022                                    Respectfully submitted,

/s/ *Amanda Tessar*
Amanda Tessar, CO Bar No. 33173
ATessar@perkinscoie.com
Matthew C. Bernstien, CA Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C, AND DISH NETWORK SERVICE L.L.C**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served April 27, 2022 to all counsel of record, via the Court's CM/ECF system

/s/*Amanda Tessar*

Amanda Tessar

**CERTIFICATE OF CONFERENCE**

On April 12, 2022, Amanda Tessar, lead counsel for DISH, spoke with Plaintiff's counsel Jim Shimota by phone concerning the relief requested herein.  At that time, Plaintiff's counsel indicated that Plaintiff would likely oppose the relief requested, but would confer with Entropic before providing a definitive response.  On April 22, 2022, Amanda Tessar contacted Jim Shimota by email requesting Plaintiff's final position on the relief requested herein.  On April 22, 2022, Jim Shimota responded by email, stating that Plaintiff opposes this motion.  Having reached a clear impasse, Defendants submit the foregoing motion for resolution by the court.

/s/*Amanda Tessar*

Amanda Tessar