**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>v.<br><br>DIRECTV, LLC, et al. | Case No. 2:22-cv-00075-JRG<br>(Lead Case) |
| ENTROPIC COMMUNICATIONS, LLC<br><br>v.<br><br>DISH NETWORK CORPORATION, et al. | Case No. 2:22-cv-00076-JRG<br>(Member Case)<br><br><br>**JURY TRIAL DEMANDED** |

**ANSWER OF
DISH NETWORK CORPORATION, DISH NETWORK L.L.C, AND
DISH NETWORK SERVICE L.L.C**

Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants") answer the First Amended Complaint for Patent Infringement ("Amended Complaint") filed by Entropic Communications, LLC ("Entropic" or "Plaintiff") and sets forth its Affirmative Defenses as follows:

**GENERAL DENIAL**

Unless specifically admitted below, DISH denies each and every allegation in the Amended Complaint.  To the extent headings of the Amended Complaint are construed as allegations, they are each denied.

**NATURE OF THE ACTION**

1.     This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on infringement of U.S. Patent Nos.

7,130,576 ("the '576 Patent"), 7,542,715 ("the '715 Patent"), and 8,792,008 ("the '008 Patent") (collectively "the Patents-in-Suit").

> **ANSWER:** The allegations of paragraph 1 contain legal conclusions to which no response is required.  To the extent a response is required, DISH admits that Entropic purports to assert patent infringement claims against DISH involving United States Patent Nos. 7,130,576 ("the '576 patent"), 7,542,715 ("the '715 patent"), and 8,792,008 ("the '008 patent") (collectively, "the patents-in-suit").  DISH denies all remaining allegations of paragraph 1.

## THE PARTIES

2.     Entropic is a Delaware limited liability company with an office at 7150 Preston Rd., Suite 300 Plano, Texas 75024.

> **ANSWER:** DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and, on that basis, denies them.

3.     On information and belief, Defendant Dish Network Corporation is a corporation established under the laws of the State of Nevada, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

> **ANSWER:** DISH Network Corporation admits the allegations of paragraph 3.

4.     On information and belief, Defendant Dish Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

> **ANSWER:** DISH Network L.L.C. admits the allegations of paragraph 4.

5.     Dish Network L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

> **ANSWER:** DISH Network L.L.C. admits the allegations of paragraph 5.

6.     On information and belief, Defendant Dish Network Service L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

> **ANSWER:** Dish Network Service L.L.C. admits the allegations of paragraph 6.

7.      Dish Network Service L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

**ANSWER:** Dish Network Service L.L.C. admits the allegations of paragraph 7.

8.      On information and belief, DISH has several authorized dealers in this district including, but not limited to, in Longview, Texarkana, Emory, Athens, Palestine, Wills Point Sulphur Springs and Lufkin. See https://www.dish.com/find-retailer.

**ANSWER:** DISH admits the presence of retailers providing DISH Network L.L.C.

services in Longview, Emory, Athens, Palestine, Wills Point, Sulphur Springs, Texarkana, and

Lufkin.  These retailers are separate companies that are not affiliates of DISH.  DISH denies all

remaining allegations contained in paragraph 8.

9.      On information and belief, DISH owns or leases, and maintains and operates several Local Receive Facilities (LRFs) in this district.

**ANSWER:** DISH admits the presence of Local Receive Facilities utilized by DISH

Network L.L.C. in this District for purposes of supporting DISH Network L.L.C. services.  DISH

denies all remaining allegations contained in paragraph 9.

10.     On information and belief, in each of those LRFs, DISH owns and stores equipment such as receivers and servers.  Each of these LRFs are used to acquire and transmit local television channels over the DISH spectrum to DISH customers.

**ANSWER:** DISH admits that Local Receive Facilities are used by DISH Network

L.L.C. to provide services to DISH customers.  DISH denies that Local Receive Facilities have

any relevance to the issues in dispute in this case.  DISH denies the remaining allegations of

paragraph 10.

11.     On information and belief, DISH employs personnel that install, service, repair and/or replace equipment associated with the LRFs, as appropriate, in this district.

**ANSWER:** DISH denies the allegations of paragraph 11.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

**ANSWER:**  DISH admits that this Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331 and 1338(a).  DISH denies all remaining allegations contained in

paragraph 12.

13.     This Court has personal jurisdiction over DISH in this action because DISH has committed acts of infringement within the State of Texas and within this district through, for example, the provision of satellite television services by DISH utilizing devices provided by DISH as described in the counts herein ("Accused Satellite Television Services").  The Accused Satellite Television Services include the provision of signals, programming, and content to DISH's customers via various products, including Outdoor Units ("ODU"), dish antennas, feed horns, lownoise block converters ("LNB" or "LNBF"), processing units, and signal selector and combiners ("SSC").

**ANSWER:**  DISH admits that it will not contest for the purposes of this action that DISH

Network L.L.C. and Dish Network Service L.L.C. are subject to personal jurisdiction in this

Court and that they transact business in the State of Texas.  DISH denies all remaining

allegations contained in paragraph 13.

14.     The Accused Satellite Television Services are available for subscription online from the DISH website.

**ANSWER:**  DISH admits that DISH Network L.L.C. provides certain services through

the DISH Network L.L.C. website.  DISH denies all remaining allegations contained in

paragraph 14.

15.     The Accused Satellite Television Services are available for subscription from various physical stores, including the brick and mortar location at 801 K Avenue, Plano, Texas 75074.

**ANSWER:**  801 K Avenue, Plano, Texas 75074 is an address where a multi-unit strip-

mall is located.  That strip mall houses a number of different and distinct businesses, including

an authorized DISH Network L.L.C. retailer.  That retailer is a separate company from (i.e., not

an affiliate of) DISH where it is possible for customers to sign up for DISH Network L.L.C.

services.  DISH denies the remaining allegations contained in paragraph 15.

16.     The devices provided by DISH to supply the Accused Satellite Television
Services are provided to customers in this district and may be obtained by customers from
physical locations in this district, including at 801 K Avenue, Plano, Texas 75074.

**ANSWER:**  DISH admits that DISH Network L.L.C. and/or Dish Network Services

L.L.C. supply devices to customers in this District in some instances, as they do to customers in

many or all Districts of the United States.  On information and belief, 801 K Avenue, Plano,

Texas 75074 is an address where a multi-unit strip-mall is located.  That strip mall houses a

number of different and distinct businesses, including an authorized DISH Network L.L.C.

retailer.  That retailer is a separate company from (i.e., not an affiliate of) DISH where it is

possible for customers to sign up for DISH Network L.L.C. services.  DISH denies the remaining

allegations contained in paragraph 16.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Venue is proper
because DISH has committed and continues to commit acts of patent infringement in this district,
including making, using, offering to sell, and/or selling Accused Satellite Television Services in
this district, and/or importing Accused Satellite Television Services into this district, including
by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of
patent infringement in Texas, and/or committing at least a portion of any other infringements
alleged herein in this district.

**ANSWER:**  DISH Network Corporation denies that venue is proper.  DISH Network

L.L.C. and Dish Network Service L.LC. admit that they will not contest that venue is proper in

this Court for purposes of this action and admit that they have transacted business in this District,

although they deny that this venue is a convenient one, as described in their pending Motion

Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado.  DISH denies that it has

committed any act of patent infringement allegedly described in the Amended Complaint and

denies that this is the most convenient forum for this suit.  To the extent paragraph 17 contains

additional allegations, DISH denies them.

18.     DISH has regular and established places of business in this district, including at least at 6826 Industrial Rd #D, Beaumont, Texas 77705:



https://www.google.com/maps/@29.9877219,-94.2059833,3a,43.6y,310.63h,87.12t/data=!3m7!1e1!3m5!1sZoqooNoTRZyV1pq8r1aFqQ!2e0!6shttps:%2F%2Fstreetviewpixelspa.googleapis.com%2Fv1%2Fthumbnail%3Fpanoid%3DZoqooNoTRZyV1pq8r1aFqQ%26cb_client%3Dmaps_sv.tactile.gps%26w%3D203%26h%3D100%26yaw%3D64.17555%26pitch%3D0%26thumbfov%3D100!7i13312!8i6656.

**ANSWER:**  DISH denies the allegations of paragraph 18.

19.     DISH has regular and established places of business in this district, including at least at 2100 Couch Drive, McKinney, Texas 75069:



https://www.google.com/maps/@33.1724269,-96.6127357,3a,75y,53.57h,93.08t/data=!3m6!1e1!3m4!1s60g9IRAJzCyJ5bnYltEwrA!2e0!7i16384!8i8192.

**ANSWER:** DISH admits the presence of a Dish Network Service L.L.C. facility at 2100 Couch Drive, McKinney, Texas 75069, although it denies that any activities at this facility are relevant to the issues in dispute in this case.  To the extent paragraph 19 contains additional allegations, DISH denies them.

20.    There are also DISH retail stores in the district, including a "Premier Local Retailer" at 801 K Avenue, Plano, Texas 75074, as also shown below.



https://www.dishbeatscable.com/contact-us/.

**ANSWER:** DISH admits that it is possible for customers to sign up for DISH Network L.L.C. services at an authorized retailer location at 801 K Avenue Suite #2, Plano, Texas 75074, and DISH admits that the retail store located at 801 K Avenue, Plano, Texas 75074 is a "Premier

Local Retailer."  DISH denies the characterization of this retailer as a "DISH retail store."  To

the extent paragraph 20 contains additional allegations, DISH denies them.

21.     DISH targets its advertisements to residents of this district.

**ANSWER:**  For the purposes of this action, DISH does not contest that residents of this

District receive DISH Network L.L.C. advertisements.  DISH denies that DISH Network L.L.C.

advertisements are uniquely or specifically targeted to this District in ways different than it

targets advertisements to various locations throughout the United States.  To the extent paragraph

21 contains additional allegations, DISH denies them.

22.     DISH continues to conduct business in this judicial district, including one or more
acts of making, selling, using, importing and/or offering for sale Accused Satellite Television
Services and providing support service to customers in this district.

**ANSWER:**  DISH does not contest that DISH Network L.L.C. and Dish Network

Service L.L.C. conduct business in this District, although it is unclear what it means that they or

any other entity "continues" to do so.  To the extent paragraph 22 contains additional allegations,

DISH denies them.

## **THE PATENTS-IN-SUIT**

23.     On October 31, 2006, the '576 Patent, entitled "Signal Selector and Combiner for
Broadband Content Distribution," was duly and legally issued by the United States Patent and
Trademark Office.

**ANSWER:**  DISH admits that the '576 patent is entitled "Signal Selector and Combiner

for Broadband Content Distribution."  The remaining allegations contained in paragraph 23 call

for legal conclusions and, on that basis, DISH denies them.

24.     On August 11, 2009, the United States Patent and Trademark Office issued a
Reexamination Certification of the '576 Patent.

**ANSWER:** DISH admits that a Reexamination Certificate was issued by the United

States Patent and Trademark Office on August 11, 2009.

25.     The '576 Patent was duly assigned to Entropic.  A true and accurate copy of the '576 Patent is attached hereto as Exhibit A.

**ANSWER:** DISH admits that a document appearing to be the '576 patent is attached to the Amended Complaint as Exhibit A.  The remaining allegations contained in paragraph 25 call for legal conclusions and, on that basis, DISH denies them.

26.     On June 2, 2009, the '715 Patent, entitled "Signal Selector and Combiner for Broadband Content Distribution," was duly and legally issued by the United States Patent and Trademark Office.  The '715 Patent was duly assigned to Entropic.  A true and accurate copy of the '715 Patent is attached hereto as Exhibit B.

**ANSWER:**  DISH admits that the '715 patent is entitled "Signal Selector and Combiner for Broadband Content Distribution."  DISH admits that a document appearing to be the '715 patent is attached to the Amended Complaint as Exhibit B.  The remaining allegations contained in paragraph 26 call for legal conclusions and, on that basis, DISH denies them.

27.     On July 29, 2014, the '008 Patent, entitled "Method and Apparatus for Spectrum Monitoring," was duly and legally issued by the United States Patent and Trademark Office.  The '008 Patent was duly assigned to Entropic.  A true and accurate copy of the '008 Patent is attached hereto as Exhibit C.

**ANSWER:**  DISH admits that the '008 patent is entitled "Method and Apparatus for Spectrum Monitoring."  DISH admits that a document appearing to be the '008 patent is attached to the Amended Complaint as Exhibit C.  The remaining allegations contained in paragraph 27 call for legal conclusions and, on that basis, DISH denies them.

28.     Entropic is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.

**ANSWER:**  The allegations contained in paragraph 28 call for legal conclusions and, on that basis, DISH denies them.

## ENTROPIC'S LEGACY AS A SATELLITE INNOVATOR[1]

29.     Entropic Communications Inc., the predecessor-in-interest to Entropic, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others.  Entropic Communications Inc. was instrumental in the development of the Multimedia over Coax Alliance ("MoCA") standard, Direct Broadcast Satellite ("DBS") Outdoor Unit ("ODU") single wire technology, and System-on-Chip ("SoC") solutions for set-top boxes ("STBs") in the home television and home video markets.

**ANSWER:**  DISH denies that Entropic Communications, Inc. is the predecessor-in-interest to Entropic.  DISH lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29 and, on that basis, denies them.

30.     Dr. Monk received his Bachelor of Science degree and Doctorate in Electrical Engineering from the University of California San Diego and a Master of Science in Electrical Engineering from the California Institute of Technology.

**ANSWER:**  DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, on that basis, denies them.

31.     Under the guidance of Dr. Monk, Entropic Communications Inc. grew to an eventual public listing on the NASDAQ in 2007.  After the public listing, the company acquired RF Magic, Inc. in 2007, a company specializing in DBS ODU technology and hardware.

**ANSWER:**  DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, on that basis, denies them.

32.     Additional growth between 2007 and 2015 bolstered the technical expertise of Entropic Communications Inc., including satellite signal acquisition, digital signal stacking, and signal distribution.

---

[1]  The headings from Entropic's Amended Complaint are reproduced here for convenience, but, as stated above, DISH does not admit that these argumentative headings are true.  For instance, this heading appears to suggest that the plaintiff here has a legacy as an innovator.  That is incorrect.  To the extent that the original operating company Entropic Communications, Inc. had any such legacy, the newly formed (but confusingly similarly named) Entropic Communications, LLC entity is not related to that original entity other than that it has now purchased patents that were once owned by the original operating company.

**ANSWER:**  DISH lacks knowledge and information sufficient to form a belief as to the

truth of the allegations contained in paragraph 32 and, on that basis, denies them

33.     For years, Entropic Communications Inc. pioneered cutting edge DBS ODU technology.  This technology simplified the installation required to support simultaneous reception of multiple channels from multiple satellites over a single cable.  The company's DBS ODU products include various integrated circuits and SoCs for band translation switches, channel stacking switches, and digital channel stacking switches.  The DBS ODU technology was deployed as an industry leading solution in global DBS operators, including DISH.

**ANSWER:**  DISH denies that Entropic Communications, Inc. pioneered cutting edge

DBS ODU technology.  DISH lacks knowledge and information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 33 and, on that basis, denies them.

34.     In 2015, MaxLinear, Inc.—a leading provider of radio-frequency (RF), analog, digital, and mixed-signal semiconductor solutions—acquired Entropic Communications Inc. and the pioneering intellectual property developed by Dr. Monk and his team.

**ANSWER:**  DISH lacks knowledge and information sufficient to form a belief as to the

truth of the allegations contained in paragraph 34 and, on that basis, denies them.

35.     For years, satellite providers such as DISH relied upon products produced in whole or in part by Entropic Communications Inc. (and later MaxLinear, Inc.) to enable their services for customers.

**ANSWER:**  DISH Network L.L.C. admits that it has in the past used Entropic

Communications, Inc. and MaxLinear as suppliers of components in products that Entropic now

accuses of infringement.  DISH lacks knowledge and information sufficient to form a belief as to

the truth of the allegations contained in paragraph 35 and, on that basis, denies them.

36.     The Patents-in-Suit are the result of years of research and development in satellite and cable technology.  These innovations have enabled DISH to provide enhanced and expanded services to customers, which in turn has increased revenues for DISH while at the same time reducing the costs.

**ANSWER:**  DISH denies the allegations contained in paragraph 36.

## FIRST CAUSE OF ACTION
## (Infringement of the '576 Patent)

37.     Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 36 as if set forth herein.

**ANSWER:**  DISH incorporates by reference its responses to paragraphs 1 through 36 of the Amended Complaint as though fully restated herein.

38.     Entropic owns all substantial rights, interest, and title in and to the '576 Patent, including the sole and exclusive right to prosecute this action and enforce the '576 Patent against infringers, and to collect damages for all relevant times.

**ANSWER:**  The allegations contained in paragraph 38 call for legal conclusions and, on that basis, DISH denies them.

39.     An outdoor unit or "ODU" is typically located, as the name suggests, outside of a customer's home.  For example, an ODU often includes a dish antenna, one or more feed horns, one or more low-noise block converters, and one or more processing units.  The processing units can be located within the ODU itself or in a multiswitch unit located between the ODU and devices within the customer's home.  An ODU is generally responsible for receiving satellite broadband signals from one or more satellites, processing the received signals, and providing the processed signals to one or more devices, such as an integrated receiver decoder unit, located within the customer's home.  These in-home devices can decode (or otherwise process) the signals received from the ODU.  The in-home devices can output television programming to a customer's television and provide video recording functionality.

**ANSWER:**  Paragraph 39 characterizes the subject matter of the '576 patent and contains legal conclusions to which no response is required.  To the extent that a response is required, DISH admits that the '576 patent speaks for itself.  To the extent paragraph 39 attempts to characterize technologies outside of the '576 patent, DISH denies these allegations.  DISH denies the remaining allegations of paragraph 39.

40.     The '576 Patent generally describes the process of an ODU receiving satellite broadband signals, combining certain extracted signals into a composite signal, and transmitting that composite signal from the ODU to an integrated receiver decoder unit, without changing the modulation of the signal.  This transmission historically required separate wires running from the ODU to each integrated receiver decoder unit.  The '576 Patent provides the benefit of single wire transmission from the ODU to interior integrated receiver decoder units.  DISH implements

this single wire transmission to provide the Accused Satellite Television Services by supplying and using, for example, SSC products.

**ANSWER:**  The allegations in paragraph 40 contain legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '576 patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '576 patent.  DISH denies the remaining allegations of paragraph 40.

41.     DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42).

**ANSWER:**  DISH denies the allegations of paragraph 41.

42.     DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased SSC products that perform the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 42

43.     DISH directly infringes the method of at least Claim 14 of the '576 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the SSC products provided by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 43.

44.     The SSC products remain the property of DISH even when deployed at the property of a customer.

**ANSWER:**  DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations.  DISH denies the remaining allegations of this paragraph 44.

45.     The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 45.

46.     DISH has been and is aware of the '576 Patent.

**ANSWER:** DISH admits that it became aware of the '576 patent at least as of the date when this suit was filed.  DISH denies the remaining allegations of paragraph 46.

47.     As set forth in the attached non-limiting claim chart (Exhibit D), DISH has directly infringed and is infringing at least Claim 14 of the '576 Patent by using, selling, and offering for sale the Accused Satellite Television Services.

**ANSWER:** DISH denies the allegations of paragraph 47.

48.     Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 14 of the '576 Patent.

**ANSWER:** DISH denies the allegations of paragraph 48.

49.     DISH has been aware that it infringes the '576 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022.  Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

**ANSWER:** DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022.  DISH admits that each of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022.  DISH denies the remaining allegations of paragraph 49.

50.     Customers and subscribers of DISH infringe at least claim 14 of the '576 Patent by using the claimed method, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42).

**ANSWER:** DISH denies the allegations of paragraph 50.

51.     DISH actively induces customers' direct infringement.  For example, DISH actively induces infringement of at least Claim 14 of the '576 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '576 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services.  DISH provides the "satellite broadcast signals" claimed by the '576 Patent via the

Accused Television Services, which enable and induce its customers to directly infringe the claim. DISH knew that customer use of the ODU, the SSC products and the Accused Satellite Television Services provided by DISH infringe at least Claim 14 of the '576 Patent. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 14 of the '576 Patent.

**ANSWER:** DISH denies the allegations of paragraph 51.

52.     Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ("ISP's"), such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 14 of the '576 Patent.

**ANSWER:** DISH denies the allegations of paragraph 52.

53.     Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 14 of the '576 Patent.

**ANSWER:** DISH denies the allegations of paragraph 53.

54.     The ODU and SSC products have no substantial non-infringing uses. When an end user uses the ODU and SSC products in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 14 of the '576 Patent. DISH knows that the ODU and SSC products were especially made for use in an infringing manner prior to the filing of this lawsuit.

**ANSWER:** DISH denies the allegations of paragraph 54.

55.     DISH's indirect infringement of at least Claim 14 of the '576 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance, support, installation, repair and replacement services provided by DISH in support of the provision of the Accused Satellite Television Services.

**ANSWER:** DISH denies the allegations of paragraph 55.

56.     Entropic has been damaged as a result of the infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** DISH denies the allegations of paragraph 56.

57.     DISH's infringement of the '576 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

**ANSWER:**  DISH denies the allegations of paragraph 57.

58.     Entropic has complied with 35 U.S.C. § 287 with respect to the '576 Patent.

**ANSWER:**  The allegations contained in paragraph 58 call for legal conclusions and, on that basis, DISH denies them.

## SECOND CAUSE OF ACTION
### (Infringement of the '715 Patent)

59.     Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 58 as if set forth herein.

**ANSWER:**  DISH incorporates by reference its responses to paragraphs 1 through 58 of the Amended Complaint as though fully restated herein.

60.     Entropic owns all substantial rights, interest, and title in and to the '715 Patent, including the sole and exclusive right to prosecute this action and enforce the '715 Patent against infringers, and to collect damages for all relevant times.

**ANSWER:**  The allegations contained in paragraph 60 call for legal conclusions and, on that basis, DISH denies them.

61.     The '715 Patent generally describes a system that receives a plurality of channels from an LNBF, a frequency translator that shifts channels to new carrier frequencies, a signal combiner capable of combining at least two signals to produce a composite signal having the same modulation as the LNBF channels, where the composite signal is transmitted on a coax cable to a gateway (for example, a Hopper3).

**ANSWER:**  Paragraph 61 characterizes the subject matter of the '715 patent and contains legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '715 patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '715 patent.  To the extent paragraph 61 contains additional allegations, DISH denies them.

62.     DISH has used, sold, and offered for sale the Accused Satellite Television Services that utilize gateway systems, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42) used with gateways such as the Hopper3.

**ANSWER:**  DISH denies the allegations of paragraph 62.

63.     DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased gateway systems that perform the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 63.

64.     DISH directly infringes at least Claim 9 of the '715 Patent during provision of the Accused Satellite Television Services by utilizing, for example, the gateway devices provided by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 64.

65.     The gateway systems remain the property of DISH even when deployed at the property of a customer.

**ANSWER:**  DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations.  DISH denies the remaining allegations of this paragraph 65.

66.     The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 66.

67.     DISH has been and is aware of the '715 Patent.

**ANSWER:**  DISH admits that it became aware of the '715 patent at least as of the date when this suit was filed.  DISH denies the remaining allegations of paragraph 67.

68.     As set forth in the attached non-limiting claim chart (Exhibit E), DISH has directly infringed and is infringing at least Claim 9 of the '715 Patent by using, importing, selling, leasing, and offering for sale the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 68.

69.     Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 9 of the '715 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 69.

70.     DISH has been aware that it infringes the '715 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

**ANSWER:**  DISH admits that DISH Network L.L.C. received letters from Entropic's

counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original

Complaint was filed on March 10, 2022.  DISH admits that each of the three DISH defendants

here was served with the Original Complaint on or about March 10, 2022.  DISH denies the

remaining allegations of paragraph 70.

71.     Customers and subscribers of DISH infringe at least claim 9 of the '715 Patent by using the claimed system, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42) as arranged in a manner directed by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 71.

72.     DISH actively induces customers' direct infringement.  For example, DISH actively induces infringement of at least Claim 9 of the '715 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '715 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services.  DISH provides the "gateway in communication with [an] ODU," "signal selector," "frequency translator," and "signal combiner" claimed by the '715 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim.  For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 9 of the '715 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 72.

73.     Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services.  For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for

sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 9 of the '715 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 73.

74.     Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 9 of the '715 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 74.

75.     The gateway systems and switches have no substantial non-infringing uses. When an end user uses the gateway systems and switches in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 9 of the '715 Patent. DISH knew that the gateway systems and switches were especially made for use in an infringing manner prior to the filing of this lawsuit.

**ANSWER:**  DISH denies the allegations of paragraph 75.

76.     DISH's inducement of, and contribution to, the direct infringement of at least Claim 9 of the '715 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 76.

77.     Entropic has been damaged as a result of DISH's infringing conduct alleged above.  DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:**  DISH denies the allegations of paragraph 77.

78.     DISH's infringement of the '715 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

**ANSWER:**  DISH denies the allegations of paragraph 78.

79.     Entropic has complied with 35 U.S.C. § 287 with respect to the '715 Patent.

**ANSWER:**  The allegations contained in paragraph 79 call for legal conclusions and, on

that basis, DISH denies them.

## THIRD CAUSE OF ACTION
### (Infringement of the '008 Patent)

80.     Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 79 as if set forth herein.

**ANSWER:**  DISH incorporates by reference its responses to paragraphs 1 through 79 of

the Amended Complaint as though fully restated herein.

81.     Entropic owns all substantial rights, interest, and title in and to the '008 Patent, including the sole and exclusive right to prosecute this action and enforce the '008 Patent against infringers, and to collect damages for all relevant times.

**ANSWER:**  The allegations contained in paragraph 81 call for legal conclusions and, on

that basis, DISH denies them.

82.     The '008 Patent generally describes a system that receives a signal having a range of frequencies, the digitization of the received signal, and reporting of certain signal characteristics to the source of the received signal.

**ANSWER:**  Paragraph 82 characterizes the subject matter of the '008 patent and contains

legal conclusions to which no response is required.  To the extent a response is required, DISH

states that the '008 patent speaks for itself.  DISH denies any remaining allegations of paragraph

82.

83.     DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize monitoring equipment which include certain monitoring devices (for example, Hopper3).

**ANSWER:**  DISH denies the allegations of paragraph 83.

84.     DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased monitoring devices that perform the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 84.

85.     DISH directly infringes at least Claim 3 of the '008 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the monitoring devices provided by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 85.

86.    The monitoring devices remain the property of DISH even when deployed at the property of a customer.

**ANSWER:**  DISH admits that certain satellite cable equipment is sometimes leased by

DISH Network L.L.C. to customers in some locations.  DISH denies the remaining allegations of

this paragraph 86.

87.    The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

**ANSWER:**  DISH denies the allegations of paragraph 87.

88.    DISH has been and is aware of the '008 Patent.

**ANSWER:**  DISH admits that it became aware of the '008 patent at least as of the date

when this suit was filed.  DISH denies the remaining allegations of paragraph 88.

89.    As set forth in the attached non-limiting claim chart (Exhibit F), DISH has directly infringed and is infringing at least Claim 3 of the '008 Patent by using, importing, selling, leasing, or offering for sale the Accused Satellite Television Services.

**ANSWER:**  DISH denies the allegations of paragraph 89.

90.    Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 3 of the '008 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 90.

91.    DISH has been aware that it infringes the '008 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022.  Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

**ANSWER:**  DISH admits that it received letters from Entropic's counsel and from

Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on

March 10, 2022.  DISH admits that each of the three DISH defendants here was served with the

Original Complaint on or about March 10, 2022.  DISH denies the remaining allegations of

paragraph 91.

92.     Customers and subscribers of DISH infringe at least claim 3 of the '008 Patent by using the claimed method, at least during the use of the monitoring devices (for example, Hopper®3).

**ANSWER:**  DISH denies the allegations of paragraph 92.

93.     DISH actively induces customers' direct infringement.  For example, DISH actively induces infringement of at least Claim 3 of the '008 Patent by providing the LNB, LNBF, and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the LNB, LNBF, and SSC products in a manner that infringes the '008 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services.  DISH provides the signals claimed by the '008 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the LNB, LNBF, and SSC products in a manner that infringes at least Claim 3 of the '008 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 93.

94.     Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services.  For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 3 of the '008 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 94.

95.     Additionally, DIS[H] contributes to the customers' direct infringement. DISH provides apparatuses, namely the monitoring devices, used by customers to perform at least Claim 3 of the '008 Patent.

**ANSWER:**  DISH denies the allegations of paragraph 95.

96.     The monitoring devices have no substantial non-infringing uses.  When an end user uses the monitoring devices in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 3 of the '008 Patent.  DISH knew that the monitoring devices were especially made for use in an infringing manner prior to the filing of this lawsuit.

**ANSWER:**  DISH denies the allegations of paragraph 96.

- 22 -

97.     DISH's indirect infringement of at least Claim 3 of the '008 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.

**ANSWER:** DISH denies the allegations of paragraph 97.

98.     Entropic has been damaged as a result of DISH's infringing conduct alleged above.  DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**ANSWER:** DISH denies the allegations of paragraph 98.

99.     DISH's infringement of the '008 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

**ANSWER:** DISH denies the allegations of paragraph 99.

100.    Entropic has complied with 35 U.S.C. § 287 with respect to the '008 Patent.

**ANSWER:** The allegations contained in paragraph 100 call for legal conclusions and, on that basis, DISH denies them.

## JURY DEMAND

DISH demands a jury trial under Federal Rule of Civil Procedure 38 and Local Rule CV-38(a) on all issues so triable.

## PRAYER FOR RELIEF

DISH denies that Entropic is entitled to any of the relief sought in the Amended Complaint or to any relief whatsoever.  To the extent that Entropic's Prayer for Relief contains any factual allegations, DISH denies them.

## AFFIRMATIVE DEFENSES

DISH incorporates herein by reference the admissions, allegations, and denials contained in its Answer above as if fully set forth herein.  Without assuming any burden that it would not

otherwise bear and without reducing Entropic's burden on any of the claims in the Amended

Complaint, DISH states the following affirmative defenses to the claims in the Amended

Complaint.  DISH reserves the right to amend its affirmative defenses and to add additional

affirmative defenses, including, but not limited to, any defenses revealed during discovery.

## FIRST AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

As a first and separate affirmative defense to each and every cause of action stated in

Entropic's Amended Complaint, DISH alleges that Entropic's claims are barred, in whole or in

part, to the extent that any allegedly infringing products or components thereof are supplied,

directly or indirectly, to DISH by any entity or entities having an express or implied license to

the Asserted Patents, and/or Entropic's claims are barred, in whole or in part, under the doctrine

of patent exhaustion.  In this regard, to the extent that any of Entropic's accusations of

infringement are based, in whole or in part, on Entropic Communications, Inc. or MaxLinear

components, such claims are barred and exhausted.

## SECOND AFFIRMATIVE DEFENSE
### (Noninfringement of the '576 Patent)

As a second and separate affirmative defense to each and every cause of action stated in

Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing

(directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any

valid claim of the '576 patent.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity of the '576 Patent)

As a third and separate affirmative defense to each and every cause of action stated in

Entropic's Amended Complaint, DISH alleges that the claims of the '576 patent are invalid

under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## FOURTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '715 Patent)

As a fourth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '715 patent.

## FIFTH AFFIRMATIVE DEFENSE
### (Invalidity of the '715 Patent)

As a fifth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '715 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## SIXTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '008 Patent)

As a sixth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '008 patent.

## SEVENTH AFFIRMATIVE DEFENSE
### (Invalidity of the '008 Patent)

As a seventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '008 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## EIGHTH AFFIRMATIVE DEFENSE
### (Equitable Defenses)

As an eighth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines.

## NINTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

As a ninth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the patents-in-suit cannot be enforced by Entropic under the doctrine of prosecution history estoppel and that Entropic is estopped from claiming that the patents-in-suit include the accused products.

## TENTH AFFIRMATIVE DEFENSE
### (Limitation on Damages and Costs)

As a tenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to past damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by DISH of the claims of the Asserted Patents to the extent that Entropic, any predecessor owners, and/or licensees of the Asserted Patents have not complied, during any time period, with the notice and/or marking requirements of 35 U.S.C. § 287.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Entitlement to Enhanced Damages)

As an eleventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Entitlement to Attorneys' Fees)

As a twelfth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to attorneys' fees under 35 U.S.C. § 285 or pursuant to the Court's inherent powers.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Entitlement to a Finding of Exceptional Case)

As a thirteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to a finding that this case is exceptional under 35 U.S.C. § 285 or under the Court's inherent powers.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

As a fourteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that, to the extent Entropic does not hold all substantial rights in the Asserted Patents, Entropic lacks standing to assert the claims of alleged infringement.  Alternatively, other owner(s) of the Asserted Patents, if any, are indispensable parties to this action, mandating dismissal if they cannot be joined in this litigation.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (Time Limitation on Damages)

As a fifteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are statutorily limited, in whole or in part, by provisions of 35 U.S.C. § 286 establishing time limitations on damages.

Dated:  May 16, 2022

Respectfully submitted,

*/s/ Melissa R. Smith*

Matthew Bernstein, CA Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real #300
San Diego, CA 92130

Amanda Tessar, CO Bar No. 33173
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255

Melissa R. Smith
melissa@gillamsmithlaw.com
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: +1 903-934-8450
Facsimile: +1 903-934-9257

***ATTORNEYS FOR DEFENDANTS DISH NETWORK
CORPORATION, DISH NETWORK L.L.C.,
AND DISH NETWORK SERVICE L.L.C.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served May 16, 2022 to all counsel of record, via the Court's CM/ECF system.

*/s/ Melissa R. Smith*

Melissa R. Smith
