**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DIRECTV, LLC, and <br> AT&T SERVICES, INC., <br><br> Defendants. | Civil Action No. 2:22-CV-00075-JRG <br><br> LEAD CASE <br><br> JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DISH NETWORK CORPORATION; <br> DISH NETWORK L.L.C.; and <br> DISH NETWORK SERVICE L.L.C., <br><br> Defendants. | Civil Action No. 2:22-CV-00076-JRG <br><br> RELATED CASE |

**DIRECTV, LLC AND AT&T SERVICES, INC.'S MOTION TO SEVER AND STAY
OR, ALTERNATIVELY, FOR TRANSFER**

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    I.    Procedural History ....................................................................................... 2

    II.   Entropic's Infringement Allegations............................................................ 2

    III.  AT&T and DIRECTV ................................................................................. 3

LEGAL STANDARDS ........................................................................................... 4

ARGUMENT ........................................................................................................... 6

    I.    The Court Should Sever and Stay All Claims Against AT&T Because AT&T Is a Mere Reseller of the Accused Products and Services .................................... 6

        A.   Resolution of the Claims Against DIRECTV Will Resolve All Major Issues Regarding the AT&T Claims ...................................................... 6

        B.   AT&T Agrees to Be Bound and Is ████████████████████ ................. 9

        C.   Severing and Staying the Claims Against AT&T Will Avoid Needless Burden ............................................................................................... 10

        D.   Severing and Staying the Claims Against AT&T Will Promote Efficiency and Judicial Economy ......................................................................... 10

    II.   General Stay Principles Also Support Staying the Claims Against AT&T ................. 11

    III.  In the Alternative, the Claims Against AT&T Should Be Transferred to CDCA ........ 13

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Cellular Commc'ns Equip., LLC. v. Apple Inc.*,
No. 6:14-CV-251, 2016 WL 6884648 (E.D. Tex. Aug. 26, 2016) ...................................5, 7, 8

*Clinton v. Jones*,
520 U.S. 681 (1997)...................................................................................................................11

*Entropic Comm'ns, LLC v. Charter Comm'ns, Inc. et al.*,
No. 2:22-cv-125-JRG (Apr. 27, 2022), Dkt. 1 ...........................................................................2

*Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*,
No. 216CV00618RWSRSP, 2017 WL 365398 (E.D. Tex. Jan. 25, 2017)........................11, 12

*In re Google, Inc.*,
412 Fed. Appx. 295 (Fed. Cir. 2011) ......................................................................................14

*Katz v. Lear Siegler Inc.*,
909 F.2d 1459 (Fed. Cir. 1990)........................................................................4, 5, 6, 8, 9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)..................................................................................................................11

*Lighthouse Consulting Grp., LLC v. Truist Bank*,
No. 2:19-CV-00340-JRG, 2020 WL 6781977 (E.D. Tex. Apr. 7, 2020) ..............5, 6, 9, 10, 12

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014)............................................................................4, 5, 8, 9, 14

*Opticurrent, LLC v. Power Integrations, Inc.*,
No. 2:16-CV-325-JRG, 2016 WL 9275395 (E.D. Tex. Oct. 19, 2016)..............................4, 10

*Princeton Digital Image Corp. v. Facebook, Inc.*,
No. 2:11-CV-400-JRG, 2012 WL 3647182 (E.D. Tex. Aug. 23, 2012)...................................14

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
No. 2:19-CV-00025-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019).............................11

*RPost Holdings, Inc. v. DocuSign, Inc.*,
No. 2:12-CV-00683-JRG, 2019 WL 1982531 (E.D. Tex. May 3, 2019) ...........................9, 10

*Saint Lawrence Commc'ns LLC v. Apple Inc.*,
No. 2:16-CV-82-JRG, 2017 WL 3712912 (E.D. Tex. July 12, 2017).........................6, 8, 9, 10

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014)..............................................................................12

**STATUTES**

28 U.S.C. § 1404(a) ........................................................................................5, 13, 14

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| '008 patent | U.S. Patent No. 8,792,008 |
| '576 patent | U.S. Patent No. 7,130,576 |
| '715 patent | U.S. Patent No. 7,542,715 |
| Asserted Patents | The '576, '715, and '008 patents, collectively |
| AT&T | Defendant AT&T Services, Inc. |
| CDCA | Central District of California |
| DISH Case | *Entropic Comms., LLC v. Dish Network Corp.*, No. 2:22-cv-00076-JRG |
| DIRECTV | Defendant DIRECTV, LLC |
| DISH | Defendants DISH Network L.L.C., Dish Network Corporation, and Dish Network Service L.L.C. in DISH Case |
| DTV | DIRECTV Entertainment Holdings LLC |
| Entropic | Plaintiff Entropic Communications, LLC |
| FAC | First Amended Complaint, Dkt. 20 |
| Infringement Contentions | Entropic's Disclosure of Asserted Claims and Infringement Contentions, served on May 4, 2022 |
| TPG | TPG Capital, LLC, a subsidiary of TPG Inc. |
| ███████ Decl. | Declaration of ███████████ filed in support of this motion |
| Curtis Decl. | Declaration of Nathan Robert Curtis filed in support of this motion |

**TABLE OF EXHIBITS TO DECLARATION OF** █████████████

| Exhibit No. | Description |
|:-----------:|:------------|
| A | Excerpts from AT&T's Inc.'s 2021 Form 10-K |

**TABLE OF EXHIBITS TO DECLARATION OF NATHAN ROBERT CURTIS**

| Exhibit No. | Description |
|:-----------:|:------------|
| 1 | "DirecTV Internet & Cable Service" page from Best Buy's website |
| 2 | "AT&T Stores - Los Angeles, CA" page from AT&T's website |

**INTRODUCTION**

DIRECTV and AT&T respectfully move for an order to sever and stay all of Entropic's claims against AT&T, pending disposition of the claims against DIRECTV. Although Entropic accuses both DIRECTV and AT&T of infringing the three Asserted Patents, DIRECTV is the true defendant. Entropic's infringement allegations focus on *DIRECTV's* provision of "signals, programming, and content" using certain *DIRECTV* customer premises equipment, such as satellite receivers and set-top boxes, which are manufactured for and sold by *DIRECTV*. AT&T does not make, design, modify, or provide any product or service accused of infringement, apart from reselling the accused DIRECTV products and services. Entropic's allegations of infringement against AT&T are limited to this resale of DIRECTV's products and services; Entropic does not accuse any of AT&T's own products or services of infringement.

Because AT&T is a mere reseller of the accused DIRECTV products and ███████████, AT&T has agreed to be bound by any decision on the merits in the action against DIRECTV. Thus, disposition of Entropic's claims against DIRECTV will also resolve the merits of the claims against AT&T. Severing and staying Entropic's claims against AT&T would therefore promote judicial economy by eliminating unnecessary burden on AT&T and avoiding multiplying the proceedings on issues that can be resolved more efficiently in resolving the claims against DIRECTV. Accordingly, DIRECTV and AT&T respectfully request severance and stay of the claims against AT&T.

In the alternative, should the Court deny this motion to sever and stay, DIRECTV and AT&T respectfully request that the Court transfer this case in its entirety to CDCA for all of the reasons discussed in DIRECTV's separately filed Motion to Transfer.

# BACKGROUND

## I.      Procedural History

On March 9, 2022, Entropic sued DIRECTV and AT&T for allegedly infringing the Asserted Patents through the provision of certain of DIRECTV's satellite products and services. *See* Dkt. 1; FAC ¶¶ 1, 54, 104–06, 125–27, 145–47.[1]  The same day, Entropic sued DISH for infringing the same Asserted Patents by providing similar services and products, but did not include any DISH retailer or downstream distributor as a defendant.  *See* DISH Case, Dkt. 1, 17.[2] On March 30, 2022, Entropic filed a First Amended Complaint in each case.  *See* Dkt. 20; DISH Case, Dkt. 17.  The Court consolidated the two cases on April 12, 2022.  Dkt. 21.

On May 4, 2022, Entropic served its Infringement Contentions.  This Court held a scheduling conference on May 18, 2022.  Defendants have filed their answers, Dkt. 37, 39, 41, and DISH and DIRECTV have each moved for transfer.  Dkt. 25, 52.  Nothing else substantive has occurred in this case, and discovery has not commenced.

## II.     Entropic's Infringement Allegations

Entropic accuses AT&T of infringement based entirely on its alleged resale of DIRECTV's satellite products and services at AT&T-branded local stores, including those located in the Eastern District of Texas.  *See, e.g.*, FAC ¶¶ 21, 33–37.  Entropic does not allege that AT&T has any role in the design, development, or manufacture of the accused products and services or that AT&T modifies any of DIRECTV's products that allegedly perform the accused functionalities (and it does not).  Rather, Entropic cites AT&T's advertisements and sales of DIRECTV's products and

---

[1]  Entropic also sued AT&T Inc., and AT&T Communications, LLC, FAC ¶¶ 4, but has since dismissed its claims against these two holding companies, *see* Dkt. 44 (granting dismissal).

[2]  On April 27, 2022, Entropic also sued Charter Communications, Inc. and related entities for infringing the '008 patent and several other patents not asserted in this case.  *See Entropic Comm'ns, LLC v. Charter Comm'ns, Inc. et al.*, No. 2:22-cv-125-JRG (Apr. 27, 2022), Dkt. 1.

services, AT&T's sales of "bundles" that package DIRECTV services with unaccused AT&T services, and links from AT&T's website to DIRECTV's website. *See, e.g.*, *id.* ¶¶ 33–40, 51–52. Entropic does not accuse any AT&T product or service of infringing the Asserted Patents.

## III.   AT&T and DIRECTV

Although Entropic attempts in its complaint to conflate AT&T and DIRECTV, AT&T and DIRECTV are separate and independent corporate entities.   AT&T is a Delaware corporation headquartered in Dallas, Texas.   ▆▆▆▆▆▆ Decl. ¶ 3.   AT&T provides telecommunication services, such as wireless network, cell phone, Internet, and land line telecommunication services. *Id.*  DIRECTV is an independent California company headquartered in El Segundo, California, that provides television services to consumers.  *See* Dkt. 52-41 (DIRECTV's Seto Decl.) ¶¶ 2–5.

From July 23, 2015, to July 31, 2021—before this case was filed—DIRECTV was in the same corporate family as AT&T, but that is no longer the case.  ▆▆▆▆▆▆ Decl. ¶ 4.  On July 31, 2021, AT&T's parent company, AT&T Inc., closed a transaction with TPG to form a new company, DTV, "which is jointly governed by a board with representation from both AT&T Inc., and TPG, with TPG having tie-breaking authority on certain key decisions." *Id.* & Ex. A at 47. With the close of the transaction, AT&T Inc. "separated [its] Video business, comprised of [its] U.S. video operations" into DTV.  *Id.*, Ex. A at 47.  Following the transaction, AT&T Inc.'s relationship with DIRECTV is indirect and is limited to maintaining through a separate holding company an equity interest in DTV, of which DIRECTV is now a subsidiary, representation on DTV's board consisting of ▆▆▆▆▆▆▆▆ voting members, and ▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆.  *Id.* ¶ 5.  For example, AT&T and DTV are parties to a ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆



███████████████████████████████████████.[3]  *Id.* ███████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████  *Id.*  AT&T Inc. and AT&T

have no managerial role with DIRECTV (nor does any other AT&T entity), maintain corporate

separateness from DTV and DIRECTV, and are not involved in DIRECTV's day-to-day

operations.  *Id.*  AT&T also does not maintain any of the documentation related to DIRECTV's

accused products and services.  *Id.*

## LEGAL STANDARDS

Where both a manufacturer of accused products and its customer-resellers are accused of

infringing a patent, "litigation against . . . the manufacturer of infringing goods takes precedence

over a suit by the patent owner against customers of the manufacturer," even where the customer

suit was filed first.  *Katz v. Lear Siegler Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).  This is known

as the "'customer-suit' exception to the 'first-to-file' rule," and it "exists to avoid, if possible,

imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true

defendant' in the dispute."  *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

The "same general principles govern" in cases where the patentee brings claims against

both the manufacturer and its customers in the same action; in both cases, the manufacturer is the

"true defendant."  *Id.*; *see Opticurrent, LLC v. Power Integrations, Inc.*, No. 2:16-CV-325-JRG,

2016 WL 9275395, at *4 (E.D. Tex. Oct. 19, 2016).  For example, in the *Nintendo* case, the Federal

Circuit relied on the underlying principles of the customer-suit exception (and the principles of

---

[3] ████████████████████████████████████████

██████████████████████████████████

judicial economy) to sever the manufacturer in a combined manufacturer-retailer patent infringement suit, transfer the manufacturer to its home district, and stay the remaining retailer defendants pending the outcome of the manufacturer suit.  756 F.3d at 1365.  The Court concluded that "[s]ince [the manufacturer's] liability is predicate to recovery from any of the defendants, the case against [the manufacturer] must proceed first, in any forum."  *Id.* at 1366.

In evaluating whether to stay claims against a customer while claims against the manufacturer proceed, courts consider factors including whether the manufacturer is "the only source of the allegedly infringing activity or product" and the retailer is a "mere reseller[]" of the manufacturer defendant's products, and whether the retailer has "agreed to be bound by any decision" in the manufacturer action.  *Lighthouse Consulting Grp., LLC v. Truist Bank*, No. 2:19-CV-00340-JRG, 2020 WL 6781977, at *1 (E.D. Tex. Apr. 7, 2020).[4]  Ultimately, the question is whether "resolution of the major issues before [the] court, including patent infringement [and] patent validity" as to the manufacturer "will resolve these issues as to [the] customers."  *Katz*, 909 F.2d at 1464.  The "guiding principles . . . are efficiency and judicial economy."  *Lighthouse*, 2020 WL 6781977, at *1 (citation omitted).

---

[4]  Courts in this District have also framed this inquiry as considering whether "(1) the remaining claims are peripheral to the severed claims; (2) adjudication of the severed claims would potentially dispose of the remaining claims; and (3) the § 1404(a) factors warrant transfer of the severed claims."  *Cellular Commc'ns Equip., LLC. v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 6884648, at *1 (E.D. Tex. Aug. 26, 2016).  These factors also support severing and staying Entropic's claims against AT&T.  As discussed herein, the claims against AT&T are peripheral and adjudicating the claims against DIRECTV will dispose of the merits of the claims against AT&T.  Moreover, as set forth in DIRECTV's separately filed Motion to Transfer, the § 1404(a) factors warrant transfer of claims against DIRECTV.  Dkt. 52.

**ARGUMENT**

I.     **The Court Should Sever and Stay All Claims Against AT&T Because AT&T Is a Mere Reseller of the Accused Products and Services**

Entropic's claims against AT&T are peripheral.  DIRECTV is the true defendant in this case.  Entropic asserts the same three patents jointly against AT&T and DIRECTV, but accuses *only* DIRECTV products and services of infringement.  Entropic does not allege that AT&T does anything with the accused products and services other than resell them as any consumer electronics retailer would do.  Entropic's infringement claims against AT&T hinge entirely on proving infringement by DIRECTV, and AT&T agrees to be bound by the resolution of the merits of the claims against DIRECTV.  There is no reason to continue burdening AT&T with this litigation.

A.     **Resolution of the Claims Against DIRECTV Will Resolve All Major Issues Regarding the AT&T Claims**

In determining whether to sever and stay claims against a customer defendant such as AT&T, courts consider whether the manufacturer defendant is "the only source of the allegedly infringing activity or product" and whether the customer defendant is a "mere reseller[]" of the manufacturer defendant's products and services.  *Lighthouse*, 2020 WL 6781977, at *1.  This inquiry seeks to determine whether resolution of the manufacturer case will moot or advance resolution of "the major premises being litigated" in the customer case.  *Katz*, 909 F.2d at 1464.

Here, the resolution of the claims against DIRECTV will moot (not merely advance) the major premises of Entropic's litigation against AT&T because DIRECTV is the sole source of the accused products and services.  Entropic groups AT&T and DIRECTV together and uses the *same* language to allege that both parties directly and indirectly infringe the Asserted Patents.  *See* FAC ¶¶ 104–06, 109, 113–15, 125–27, 130, 134–36, 145–47, 150, 154–56, Exs. D–F.  But Entropic accuses only *DIRECTV's* products and services—there are no separate allegations against any AT&T product or service.  *See id.* ¶ 54, 104–06, 125–27, 145–47.  And Entropic does not allege

that AT&T designs, develops, modifies, or alters the functionality of DIRECTV's products and services. *See Lighthouse*, 2020 WL 6781977, at *2 (staying a customer suit where the developer of the accused software was "the only supplier of this technology to" customers); *Saint Lawrence Commc'ns LLC v. Apple Inc.*, No. 2:16-CV-82-JRG, 2017 WL 3712912, at *2 (E.D. Tex. July 12, 2017) (holding that claims against AT&T and other wireless carriers were "peripheral" where carriers only "resell the phone, playing no role in the development, design, or implementation of the relevant software code"). Accordingly, DIRECTV is the source of the allegedly infringing products and the pertinent technical information concerning those products lies with DIRECTV, not AT&T.

Entropic's allegations specific to AT&T only confirm that AT&T is a mere reseller. Entropic relies on pictures of DIRECTV's products and literature, links to DIRECTV's website, and AT&T's *resale* of DIRECTV's products and services in its branded local stores as evidence of AT&T's alleged infringement. *See, e.g.*, FAC ¶¶ 33–40, 51–52, Exs. D–F. DIRECTV has no involvement with AT&T stores, does not maintain any DIRECTV satellite equipment there, and no one employed at those stores has any involvement in installation or repairs of DIRECTV satellite services. ▮▮▮▮▮ Decl. ¶¶ 6–7. AT&T stores are simply one place where consumers may sign up for *DIRECTV's* products and services—the same way as they can at a local Best Buy. *See id.*; Curtis Decl. Ex. 1 (Best Buy suggesting to interested consumers that they make an "in-store appointment"). Accordingly, there should be no dispute that Entropic's allegations against AT&T in this case materially overlap with Entropic's allegations against DIRECTV.

Entropic's allegations that AT&T bundles its services with those provided by DIRECTV does not change the analysis. A customer defendant does not do "more than merely resell" simply because it takes "the extra step of bundling" the accused devices with its own "service plans."

*Cellular Commc'ns Equip., LLC. v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 6884648, at *2 (E.D. Tex. Aug. 26, 2016).  The critical question is whether, as here, the customer defendant does "not modify or alter the patented technology at issue."  *Id.*  Entropic's allegations of indirect infringement against AT&T also does not affect the conclusion that AT&T is a mere reseller.  As explained above, Entropic alleges that the exact same *joint* conduct by AT&T and DIRECTV concerning only *DIRECTV's* products and services constitutes indirect infringement.  *See* FAC ¶¶ 113–15, 134–36, 154–56.  Such "substantially identical" infringement claims are insufficient to prevent the application of the customer-suit exception.  *See Cellular Commc'ns*, 2016 WL 6884648, at *2 ("a single set of identical infringement contentions for" all defendants do not suggest that "there are unique induced infringement claims against the" downstream customers).  DIRECTV's accused products and services either infringe the Asserted Patents or they do not; that issue would not be resolved any differently against AT&T.

Other issues resolved in the claims against DIRECTV, such as invalidity and damages, will also resolve those issues with respect to AT&T.  Any rulings finding the Asserted Patents invalid would apply to both cases, *see Nintendo II*, 756 F.3d at 1366, and in any event, AT&T has agreed to be bound by the invalidity determination in the DIRECTV case, as discussed below.  Damages issues will also be resolved, because a recovery against DIRECTV will exhaust Entropic's claims against AT&T based on DIRECTV's accused products and services.  *See Saint Lawrence*, 2017 WL 3712912, at *2 (severing case and stating that "the Court will not permit [plaintiff] to obtain a double recovery"); *Cellular Commc'ns*, 2016 WL 6884648, at *3 (citing *Nintendo II*, 756 F.3d

at 1366) (plaintiff "cannot receive a double recovery"). Any remaining "additional issues" would not prevent the application of the consumer-suit exception here. *Katz*, 909 F.2d at 1464.[5]

DIRECTV is the "true defendant" here and the source of all allegedly infringing products and services. AT&T is a mere reseller, and thus the claims against it should be severed and stayed.

### B.    AT&T Agrees to Be Bound and ████████████████████

Courts also consider "whether the consumers in the first-filed action have agreed to be bound by any decision in the second-filed action." *Lighthouse*, 2020 WL 6781977, at *1. Courts have stayed cases against customers even without such agreements if the major issues are nonetheless resolved in the manufacturer actions. *See, e.g.*, *Katz*, 909 F.2d at 1464. Where there is an agreement to be bound, however, the customer-suit exception is all the more appropriate. *See Lighthouse*, 2020 WL 6781977, at *2 (noting customers "agreed to be bound by the decision in the [manufacturer] [a]ction"); *RPost Holdings, Inc. v. DocuSign, Inc.*, No. 2:12-CV-00683-JRG, 2019 WL 1982531, at *1–2 (E.D. Tex. May 3, 2019) ("expressly rel[ying]" on customers' stipulation "to be bound by any decisions regarding infringement and validity" to sever and stay a customer suit). Similarly, courts have found that an agreement by the upstream supplier to indemnify its customers supports severing and staying a case under the customer-suit exception. *See RPost*, 2019 WL 1982531, at *1–2.

To further simplify the severed and stayed claims here, AT&T agrees to be bound by the validity and infringement rulings in this case as to DIRECTV should the Court grant this Motion. DIRECTV has also agreed to ████████████████████████. These agreements support severing and staying the claims against AT&T, especially because "infringement and

---

[5]   AT&T did not even assert any additional affirmative defenses apart from those also asserted by DIRECTV. *Compare* Dkt. 41 at 21–24, *with* Dkt. 39 at 22–24.

invalidity—two of the biggest issues in any patent case—will be resolved by the first trial against" DIRECTV.  *Saint Lawrence*, 2017 WL 3712912, at *2.  This factor, therefore, also weighs in favor of applying the customer-suit exception.

### C. Severing and Staying the Claims Against AT&T Will Avoid Needless Burden

Courts also consider the burden to the downstream customer, because it is the upstream supplier "who is generally the 'true defendant' in the dispute."  *Nintendo*, 756 F.3d at 1365 (Fed. Cir. 2014); *Opticurrent*, 2016 WL 9275395, at *5 (severing and staying because "the burdens of trial should not be unnecessarily imposed upon its customer").

This consideration supports severing and staying the claims against AT&T, which is a mere reseller.  DIRECTV is the entity that possesses the knowledge, employees, and evidence necessary to evaluate and defend against Entropic's infringement allegations—it is the "true defendant" in this case.  Proceeding with the claims against AT&T would subject AT&T to needless discovery, when its own products and services are not at issue and Entropic does not need anything from AT&T in order to pursue its case.  Indeed, Entropic did not sue any of the other downstream retailers of the accused DIRECTV products and services, and in the DISH case Entropic did not include any retailers at all.  Imposing the burdens of discovery and trial on AT&T is unnecessary because resolving the claims against DIRECTV will allow Entropic a full and fair recovery.

### D. Severing and Staying the Claims Against AT&T Will Promote Efficiency and Judicial Economy

Efficiency and judicial economy are the paramount "guiding principles" behind the customer-suit exception and underlie the above considerations.  *See Lighthouse*, 2020 WL 6781977, at *1.  Severing and staying the claims against AT&T will promote these principles.

The case here is in its infancy—discovery has not commenced, no depositions have been noticed, claim construction briefing has not begun and no *Markman* hearing has been held, and a

trial date was just set mere days ago.  This Court has granted motions to sever and stay in cases that had progressed much further.  *See RPost*, 2019 WL 1982531, at *1–2 (granting motion to sever and stay that followed claim construction briefing); *see also Saint Lawrence*, 2017 WL 3712912, at *1–2 (granting motion to sever and stay fourteen months into the case, after discovery had already been ongoing and some depositions had occurred).  AT&T has not filed any IPRs against the Asserted Patents, and thus has not voluntarily burdened itself with additional litigation. *Cf. Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344471, at *2 (E.D. Tex. Nov. 27, 2019) (denying stay because defendant "acted to expand the litigation process" by filing IPRs and thus "violate[d] . . . [the] purpose of the customer-suit exception"). Severing and staying the claims against AT&T will promote efficiency and judicial economy by focusing judicial and party resources on the claims against DIRECTV, the true defendant here.

Moreover, AT&T does not seek to avoid any relevant discovery that Entropic may seek from it.  As explained above, AT&T does not design, develop, or alter the accused products and services.  It is merely a reseller of DIRECTV's products and services, and all relevant technical information concerning the accused technology is in DIRECTV's possession.  But, to further simplify the severed and stayed claims if this Court grants this motion, AT&T agrees to provide any relevant noncumulative discovery as a third party to the extent it has any in its possession. Severing and staying the claims against AT&T will thus promote efficiency and judicial economy, without any prejudice to Entropic.

## II.      General Stay Principles Also Support Staying the Claims Against AT&T

A district court has "broad discretion to stay proceedings" as part of "its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  To determine whether to stay proceedings, courts consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether

a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, No. 216CV00618RWSRSP, 2017 WL 365398, at *10 (E.D. Tex. Jan. 25, 2017).  The proponent of a stay bears the burden of proving that a stay is justified.  *Clinton*, 520 U.S. at 708.

Here, a stay will not "unduly prejudice or present a clear tactical disadvantage to" Entropic because "the major issues of infringement and validity will be adjudicated without delay" by resolving the claims against DIRECTV.  *Lighthouse*, 2020 WL 6781977, at *2; *see also Glob. Equity*, 2017 WL 365398, at *10.  Entropic also "will have full access to relevant discovery regarding the accused technology directly from the developer and supplier," DIRECTV, which has all relevant technical information about its products in its possession.  *Lighthouse*, 2020 WL 6781977, at *2.  Moreover, AT&T has agreed to provide relevant noncumulative discovery as a third party.  And a stay as to AT&T would not meaningfully delay Entropic's recovery, because Entropic would still have to prove infringement by DIRECTV as a predicate to recovery against AT&T.[6]  There is also no "competition" here that "weigh[s] in favor of finding undue prejudice" because Entropic is a non-practicing entity that does not compete against AT&T.  *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).  This factor supports a stay.

As set forth above, a stay would also simplify the issues in this case because resolution of the claims against DIRECTV will also resolve all claims in this case against AT&T.  Further,

---

[6]  Even if there would be some minor delay, it would pale in comparison to the delay already caused by Entropic.  The earliest of the Asserted Patents (the '576 patent) issued in 2006, *see* FAC Ex. A, and the prior owners of the Asserted Patents (Entropic Communications, Inc. and MaxLinear, Inc.) ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████.  *See* Dkt. 52-41 (Seto Decl.) ¶¶ 23–25.  Yet Entropic waited until 2022 to bring this lawsuit.

AT&T has agreed to be bound by resolution of the merits of the claims against DIRECTV, which will also simplify the issues here.  *Lighthouse*, 2020 WL 6781977, at *2.

Finally, the early stage of this case favors staying the suit against AT&T.  Discovery has not commenced, the claim construction process is still far away, no depositions are on the horizon, and the Court just set a trial date a few days ago.  *See id.* (finding a stay appropriate where "discovery has not been completed in this case and the trial date, although set, is approximately one year away").

## III.    In the Alternative, the Claims Against AT&T Should Be Transferred to CDCA

DIRECTV has moved to transfer venue to the Central District of California, pursuant to 28 U.S.C. § 1404(a).  *See* Dkt. 52.  DIRECTV has shown that CDCA is a more convenient forum because that district is the home of DIRECTV, the accused products and services are designed there, and the vast majority of relevant documents and witnesses—including many third-party witnesses, such as former DIRECTV employees and the inventors of the Asserted Patents—are located in CDCA or elsewhere in California (and none are in the Eastern District of Texas).  *Id.* Moreover, CDCA will have absolute subpoena power over many relevant witnesses, that district is more convenient for willing witnesses, such as DIRECTV's current employees that reside there, and all other public and private factors support a transfer to CDCA.  *Id.*  DIRECTV and AT&T respectfully request that, should the Court deny this motion to sever and stay, the Court transfer this case to CDCA for the reasons stated in DIRECTV's Motion to Transfer.

To the extent EDTX is a proper venue as to AT&T, as Entropic alleges in the FAC, venue would also be proper in CDCA for the same reasons.  For example, Entropic alleges that venue is proper in EDTX because "AT&T regularly transacts business out of several stores in this district," "has numerous storefronts . . . in this district," and derives "revenue from products and/or services provided in this district."  FAC ¶¶ 72–74.  AT&T likewise has numerous AT&T-branded stores in

CDCA, including eighteen stores in Los Angeles, California, and derives revenue from products and services provided in CDCA.  *See* █████ Decl. ¶¶ 8–9; Curtis Decl. Ex. 2.  Many more AT&T-branded stores are located throughout CDCA.  Moreover, because AT&T is not in possession of the relevant evidence concerning the accused technology in this case, nor would AT&T witnesses have non-cumulative information to provide on damages, all of the convenience factors set out in DIRECTV's Motion to Transfer apply to AT&T as well, supporting transfer to CDCA.

Should the Court decide not to sever and stay the claims against AT&T, transfer is an appropriate alternative remedy because it will also serve to promote judicial economy.  Indeed, the Federal Circuit has observed that the "goals" of the customer-suit exception and the venue transfer statute "are not at cross purposes; the customer-suit exception . . . and § 1404(a) are all designed to facilitate just, convenient, efficient, and less expensive determination."  *Nintendo II*, 756 F.3d at 1365.  Here, transferring both the AT&T and DIRECTV claims to CDCA would serve those goals because Entropic's claims hinge on resolution of identical infringement and invalidity issues.  Moreover, this Court has recognized that where cases in separate districts "involve the same plaintiff, the same asserted patent[s] and are sure to generate common questions of claim construction and validity," the "paramount" consideration of "judicial economy" favors transfer of the case "to the same District Court, to be tried by the same District Judge."  *Princeton Digital Image Corp. v. Facebook, Inc.*, No. 2:11-CV-400-JRG, 2012 WL 3647182, at *5 (E.D. Tex. Aug. 23, 2012) (quoting *In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011)).  The claims against DIRECTV belong in CDCA, and because there are no independent allegations of infringement against AT&T, the claims against AT&T should follow if not stayed.

14

**CONCLUSION**

Based on the foregoing, DIRECTV and AT&T respectfully request that this Court exercise its discretion and sever and stay the infringement claims against AT&T to conserve party and judicial resources while the central infringement, invalidity, and unenforceability issues between Entropic and DIRECTV are resolved.  In the event the Court declines to sever and stay the claims against AT&T, DIRECTV and AT&T respectfully request that the Court transfer the entire case to CDCA.

Dated: June 3, 2022  */s/ Benjamin Hershkowitz*

Benjamin Hershkowitz (NY Bar No. 2600559)
  bhershkowitz@gibsondunn.com
Kate Dominguez (NY Bar No. 4741237)
  bkdominguez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Brian M. Buroker (DC Bar No. 457158)
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Nathan R. Curtis (Texas Bar No. 24078390)
  ncurtis@gibsondunn.com
Audrey Yang (Texas Bar No. 24078390)
  ayang@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900

Deron R. Dacus
  ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117

*Attorneys for AT&T Services, Inc. and*
*DIRECTV, LLC*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I caused to be served by email a copy of the foregoing

motion on all counsel who have consented to electronic service.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for DIRECTV and AT&T has complied with the

meet and confer requirement in Local Rule CV-7(h).  On May 31, 2022, Kate Dominguez, counsel

for DIRECTV and AT&T, spoke with Plaintiff's counsel Jim Shimota, Wesley Hill, and Jason

Engel by video conference concerning the relief requested herein.  At that time, Plaintiff's counsel

indicated that Plaintiff opposes this motion.  Having reached a clear impasse, DIRECTV and

AT&T submit the foregoing motion for resolution by the Court.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify under L.R CV-5(a)(7)(B) that a motion for leave to seal the foregoing

document has been filed.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz