**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>DIRECTV, LLC, and<br>AT&T SERVICES, INC.,<br><br>    Defendants. | Civil Action No. 2:22-CV-00075-JRG<br><br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>DISH NETWORK CORPORATION;<br>DISH NETWORK L.L.C.; and<br>DISH NETWORK SERVICE L.L.C.,<br><br>    Defendants. | Civil Action No. 2:22-CV-00076-JRG<br><br>RELATED CASE |

**DIRECTV, LLC'S MOTION PURSUANT TO 28 U.S.C. § 1404(a)
TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................... 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT ............................................................................................................ 3

    I.    Venue Is Proper in CDCA ............................................................................ 3

    II.    CDCA Is a "Clearly More Convenient" Venue Than EDTX ........................ 4

        A.    The Sources of Proof Are in California and Elsewhere Outside of Texas ............. 4

        B.    The Availability of Compulsory Process Favors Transfer to CDCA ................... 12

        C.    CDCA Is a Far More Convenient Forum for Willing Witnesses ......................... 12

        D.    California's Local Interests Strongly Favor Transfer ........................................... 13

        E.    The Comparative Congestion of the Two Courts Favors Transfer ...................... 14

        F.    The Remaining Factors Are Neutral or Favor Transfer ....................................... 15

        G.    The DISH Case Does Not Weigh Against Transfer ............................................. 15

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020).................................................................15

*In re Apple Inc.*,
   No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ............................9, 14

*In re DISH Network L.L.C.*,
   No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)............................2, 4, 9, 13, 14, 15

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
   No. 216CV01425JRGRSP, 2018 WL 279091 (E.D. Tex. Jan. 3, 2018) ...............................10

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).................................................................3, 4, 12, 13

*In re Google Inc.*,
   No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ...................................12

*In re Google LLC*,
   No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) .............................6, 13

*Inhale, Inc. v. Gravitron, LLC*,
   No. 18-cv-3883, 2018 WL 5880192 (C.D. Cal. Sept. 5, 2018) ...............................3

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) ...............................................................13, 15

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
   No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ...............7, 11, 12, 14, 15

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009).................................................................14

*Seven Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018)..........................................................11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017).........................................................................3

*In re Vistaprint Ltd.*,
   628 F.3d 1342 (Fed. Cir. 2010).................................................................3

*In re Volkswagen AG,*
   371 F.3d 201 (5th Cir. 2004) .............................................................................3, 13

*In re Volkswagen Grp. of Am., Inc.,*
   28 F.4th 1203 (Fed. Cir. 2022) .................................................................................8

*In re Volkswagen of Am., Inc.,*
   545 F.3d 304 (5th Cir. 2008) .................................................2, 3, 4, 12, 13, 14

*Wireless Recognition Techs. LLC v. A9.com, Inc.,*
   No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) .....................................4

## STATUTES

28 U.S.C. § 1400(b) ..................................................................................................3

28 U.S.C. § 1404(a) ..................................................................................................2

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| '008 patent | U.S. Patent No. 8,792,008 |
| '576 patent | U.S. Patent No. 7,130,576 |
| '715 patent | U.S. Patent No. 7,542,715 |
| Asserted Patents | The '576, '715, and '008 patents, collectively |
| AT&T | Defendant AT&T Services, Inc. |
| Broadcom | Broadcom, Inc. |
| Compl. | Original Complaint, Dkt. 1 |
| DISH Case | *Entropic Comms., LLC v. Dish Network Corp.*, No. 2:22-cv-00076-JRG |
| CDCA | The Central District of California |
| DIRECTV | Defendant DIRECTV, LLC |
| DISH | Defendants DISH Network L.L.C., Dish Network Corporation, and Dish Network Service L.L.C. in DISH Case |
| DTV | DIRECTV Entertainment Holdings LLC |
| EDTX | The Eastern District of Texas |
| Entropic | Plaintiff Entropic Communications, LLC |
| FAC | First Amended Complaint, Dkt. 20 |
| Infringement Contentions | Entropic Disclosure of Asserted Claims & Infringement. Contentions, served on May 4, 2022. |
| LRFs | Local Receive Facilities (also known as Local Collect Facilities ("LCFs")) |
| MaxLinear | MaxLinear, Inc. |
| MoCA | Multimedia over Coax Alliance |
| TNT | TNT Internet & TV |
| TPG | TPG Capital |
| ███ Decl. | Declaration of ████████ filed as an exhibit to the concurrently filed DIRECTV and AT&T's Motion to Sever and Stay or, Alternatively, for Transfer |
| ██ Decl. | Declaration of █████ filed in support of this motion |
| ███ Decl. | Declaration of ██████ filed in support of this motion |
| Curtis Decl. | Declaration of Nathan Robert Curtis filed in support of this motion |

**TABLE OF EXHIBITS TO DECLARATION OF NATHAN ROBERT CURTIS**

| Exhibit No. | Description |
|---|---|
| 1 | Entropic's Disclosure of Asserted Claims and Infringement Contentions |
| 2 | Exhibit A to Entropic's Disclosure of Asserted Claims and Infringement Contentions ('576 patent claim chart) |
| 3 | Exhibit B to Entropic's Disclosure of Asserted Claims and Infringement Contentions ('715 patent claim chart) |
| 4 | Exhibit C to Entropic's Disclosure of Asserted Claims and Infringement Contentions ('008 patent claim chart) |
| 5 | LinkedIn resume of Itzhak Gurantz |
| 6 | Locate Report for Itzhak Gurantz |
| 7 | LinkedIn resume of Jun Huang |
| 8 | [OMITTED] |
| 9 | Locate Report for Jun Huang |
| 10 | Locate Report for Ladd S. Elwardani |
| 11 | Locate Report for Michael William Landry |
| 12 | Locate Report for Patrick Michael Tierney |
| 13 | LinkedIn resume of Tim Gallagher |
| 14 | Locate Report for Tim Gallagher |
| 15 | "Board of Directors Overview" page from McDonald's website |
| 16 | "Best Buy" page from DIRECTV's website |
| 17 | "Walmart" page from DIRECTV's website |
| 18 | "Target" page from DIRECTV's website |
| 19 | "Lead Product Management & Development" job posting from DIRECTV's website |
| 20 | "Principal-Business Management" job posting from DIRECTV's website |
| 21 | "Find a Retailer" page from DIRECTV's website |
| 22 | Search results for Sherman, Texas on the "Find a Retailer" page from DIRECTV's website |
| 23 | Search results for Marshall, Texas on the "Find a Retailer" page from DIRECTV's website |

| Exhibit No. | Description |
|:---:|:---|
| 24 | Search results for Tyler, Texas on the "Find a Retailer" page from DIRECTV's website |
| 25 | "Bell Atlantic Mobile Stores ProvideOne-Stop Shopping For DIRECTV" from Verizon's website |
| 26 | U.S. Patent No. 8,238,813 |
| 27 | Travel time estimate between Los Angeles International Airport, DIRECTV's headquarters, and CDCA Courthouse in Los Angeles, California from Google Maps |
| 28 | Location information and photos for ███████████, Marshall, Texas 75672 from Google Maps |
| 29 | "Locations" page from ██████████ website |
| 30 | "Locations" page from ████████████ website |
| 31 | Excerpts from AT&T's Inc.'s 2021 Form 10-K |
| 32 | Excerpts from a License Agreement between ███████████████████████ ████████████ |
| 33 | Excerpt from a DIRECTV Preferred Dealer Agreement |
| 34 | Judicial Caseload Profile for EDTX and CDCA |
| 35 | "Locations" webpage from Commscope's website |
| 36 | "Worldwide Locations" webpage from WNC's website |
| 37 | "Global Network" webpage from Humax's website |
| 38 | "Contact Us" webpage from ProBrand's website |

**INTRODUCTION**

DIRECTV respectfully requests that this case be transferred to CDCA because that district is clearly and undeniably a more convenient forum than EDTX, and the center of gravity of this case lies in California, not Texas. DIRECTV is a California company with its headquarters located in CDCA. The current and former DIRECTV engineers who worked on the accused technology and relevant prior art systems are located in California or elsewhere outside of Texas. The two third-party suppliers to DIRECTV (███████████████) on whose products Entropic relies in its Infringement Contentions—and who will likely have relevant documents and information about those products—are located in California. The original owners of the Asserted Patents (Entropic Communications, Inc., followed by MaxLinear) are in California. All relevant DIRECTV and non-party witnesses, including those who are likely to testify about the accused products, related technology, sales data, and the business relationship between ███████████ ███████████████, are also located in California or elsewhere outside of Texas. Relevant financial, marketing, and technical documents are located in California and so is the relevant source code, if any. All of the surviving inventors of the asserted patents reside in California or on the West Coast. Even Entropic's own CEO and officers are located in California.

In contrast to the myriad sources of party and third-party evidence located in California, the connections to this district on which Entropic relies in the FAC have absolutely nothing to do with the infringement allegations in this case. Entropic accuses DIRECTV's satellite products and components thereof that are supplied by third parties. *See* FAC ¶¶ 102–12, 124–33, 144–47; FAC Exs. D–F; *see also e.g.*, Curtis Decl. Ex. 2. All sources of proof relevant to those products and components are located in California or elsewhere outside of Texas. In contrast, *nothing* Entropic identifies in the FAC as pertaining to this district—a few DIRECTV employees or independent

1

contractors, warehouse and installation center, LRFs, authorized dealers, or AT&T local stores in EDTX—has any bearing on the accused technology.  AT&T is a third-party downstream seller of DIRECTV's products and services and does not have any sources of proof in EDTX relevant to Entropic's allegations.  Rather, the relevant documents relating to the accused products are in DIRECTV's possession and control, outside of EDTX.  DIRECTV's only presence here is limited to operations having nothing to do with Entropic's infringement claims, and no DIRECTV employee in EDTX has any relevant information about or connection to the design, development, or manufacture of the accused products and systems.  Moreover, although DIRECTV's accused products and services may be used in EDTX, they are used throughout the United States and have no special connection to this district.

The Federal Circuit recently ordered a transfer on nearly identical facts because a plaintiff's "prefer[ence] to litigate its cases" in Texas "is not enough to overcome" the convenience of "a district which is the home of evidence, witnesses, and the conduct giving rise to the action."  *See* Dkt. 25 (quoting *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021)).  DIRECTV respectfully requests a transfer to CDCA because "the center of gravity of this patent infringement action is clearly" there, not in Texas.  *DISH*, 2021 WL 4911981, at *2.

## LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a court may transfer a civil case to a more convenient district where it otherwise might have been brought.  If the proposed venue is proper, courts weigh private and public interest factors to determine if "the transferee venue is clearly more convenient."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").

The private interest factors are:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses whose

attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Id.*; *see also In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The third factor "is probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (applying Fifth Circuit law). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Volkswagen II*, 545 F.3d at 315. Plaintiff's choice of forum is not a factor, but instead is accounted for by defendant's burden to demonstrate good cause for the transfer. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

## ARGUMENT

### I.   Venue Is Proper in CDCA

CDCA is indisputably a permissible venue for this case. Under 28 U.S.C. § 1400(b), venue is proper in a judicial district where a defendant resides. A limited liability company is deemed to reside in its state of formation and in the state where it has its principal place of business. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); *Inhale, Inc. v. Gravitron, LLC*, No. 18-cv-3883, 2018 WL 5880192, at *2-3 (C.D. Cal. Sept. 5, 2018) ( "[T]he holding from TC Heartland . . . also extends to unincorporated entities including LLCs"). Accordingly, venue is proper in CDCA as to DIRECTV because DIRECTV is a California company with its principal place of business in located in El Segundo, CA (which is in CDCA). FAC ¶ 3; ███ Decl. ¶ 4. Furthermore, to the extent EDTX is a proper venue as to AT&T, as Entropic alleges in the FAC, venue would be proper in CDCA for the same reasons. For example,

Entropic alleges that venue is proper in EDTX because "AT&T regularly transacts business out of several stores in this district," "has numerous storefronts . . . in this district," and derives "revenue from products and/or services provided in this district."  FAC ¶¶ 72–74.  AT&T likewise has numerous AT&T-branded stores in CDCA, including eighteen stores in Los Angeles, California, and derives revenue from products and services provided in CDCA.  *See* ███████ Decl. ¶¶ 8–9.

## II.   CDCA Is a "Clearly More Convenient" Venue Than EDTX

The private and public interest factors demonstrate that CDCA is "clearly more convenient" than EDTX.  *Volkswagen II*, 545 F.3d at 315.  Almost every relevant factor, including the most important factors, weigh heavily in favor of transfer.  No factor weighs against transfer.

### A.   The Sources of Proof Are in California and Elsewhere Outside of Texas

#### 1.   All Relevant Information Is in California or Outside of Texas

The relative ease of access to sources of proof strongly favors transfer.  As the accused infringer, DIRECTV is likely to produce vastly more discovery than Entropic, a recently formed nonpracticing LLC that has little more than patent assets and few employees.  "[A]n alleged infringer's proof is particularly important to venue transfer analyses" because "the bulk of the relevant evidence usually comes from the accused infringer" and thus "the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) (quoting *Genentech*, 566 F.3d at 1345 (internal quotation marks omitted)).  This is so even if the relevant documents are stored electronically.  *See DISH*, 2021 WL 4911981, at *2.

DIRECTV and third-party witnesses relevant to Entropic's infringement allegations are largely located in CDCA, and otherwise are elsewhere in California or in other locations outside of Texas.  Entropic's allegations in the FAC and Infringement Contentions accuse DIRECTV's satellite TV equipment (*e.g.*, customer premises equipment such as low-noise block converters and

outdoor units).  *See* FAC, ¶¶ 102–12, 124–33, 144–47; FAC Exs. D–F; Curtis Decl. Exs. 1–4. Current and former DIRECTV hardware and software engineers who developed and maintained these accused products and related software were and are largely based in CDCA.  ██ Decl. ¶¶ 7–14 (identifying relevant engineers and senior technology personnel in CDCA, including in El Segundo and the greater Los Angeles area).  Other relevant current and former engineers, as well as relevant nontechnical DIRECTV employees, are located outside of Texas, including other parts of California.  *Id.* (identifying current and former DIRECTV engineers in San Jose, California, in Colorado, and in central Virginia and identifying product management, marketing, sales and distribution, and finance employees in California, Colorado, and Georgia).

Documents relevant to this action are also located in CDCA.  DIRECTV's technical documents (including design and development documents) as well as nontechnical documents (*e.g.*, marketing and financial records) are kept in DIRECTV's headquarters in El Segundo, California (in CDCA).  *Id.*, ¶ 16.  To the extent DIRECTV's source code is relevant, it is also located in CDCA.  *Id.*  Third-party technical materials are likely to be located in California as well. For example, Entropic's Infringement Contentions accuse chipsets provided by ████████ ██████, Curtis Decl. Exs. 2–4, which likely have the most relevant documents and information about the accused components in their headquarters.  Both are headquartered in California with offices in CDCA.  *Id.* █████████[1]

---

[1]  Although ████████ has facilities in Plano and Austin, DIRECTV engineers have never ██ ████████████████████████████████████ related to the issues in this case and it is not likely that any relevant documents are located there.  ██ Decl. ¶ 19.  Other components of the accused products are or have been supplied to DIRECTV by other third-party suppliers, such as, for example, ████████████████████████████████████████ ████████████████████████.  Curtis Decl. Exs. 35–38.  None of those third-party suppliers are in EDTX.



Moreover, documents relating to the historical relationship between ███████ ██████████████████████, which may be relevant to DIRECTV's defenses and potential counterclaims, are also located in CDCA.[2] ███ Decl. ¶ 25. DIRECTV ████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ *See* FAC ¶¶ 92–97. DIRECTV also continues to source chipsets from ████████████ for accused components in its satellite products. ███ Decl. ¶ 24. And at least one of DIRECTV's contracts ████████████████████████████████████ ██████████████. Curtis Decl. Ex. 32. Moreover, several of DIRECTV's current and former employees ████████████████████████████████ ██████████████. ███ Decl. ¶¶ 10, 23; *see In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *3–4 (Fed. Cir. May 23, 2022) (ordering transfer to the district "at the center of the allegations" where most of the relevant witnesses and sources of proof were located).

CDCA is also no less (and is likely *more*) convenient for Entropic than EDTX. Entropic is a nonpracticing entity established under the laws of Delaware barely one year ago and registered in Texas just nine months ago. *See* Dkt. 25 at 6–7; Dkt. 25-9, 25-13 (DISH Exs. 6, 10). Entropic's CEO and principals are not located in Texas—they are in California. Dkt. 25 at 11–12 & n.5; *see Google*, 2022 WL 1613192, at *4 (ordering transfer where plaintiff's principals did not work in EDTX and plaintiff "leased its office just prior to commencing litigation in" EDTX "to establish a presence for forum selection"). Entropic's documents and third-party witnesses are likely

---

[2] The original owner of the asserted patents was Entropic Communications, Inc., which was located in San Diego, California, and was a completely different company than Plaintiff Entropic. Entropic Communications, Inc. was acquired by MaxLinear, which is based in Carlsbad, California. ████████████████████████████████████

located outside of EDTX as well.  All but one of the surviving inventors on the asserted patents appear to reside in California (the last one is near Seattle).  Curtis Decl. Exs. 5–7, 9–14; FAC Exs. A–C.  Any of their documents, including those relevant to standing and inventorship, are presumably also in those locations.  The prosecuting attorneys who are still living are located in San Diego and Chicago (as, presumably, are their files and records).  *See* Dkt. 25-26, 25-27 (DISH Exs. 23–24).  And even if there are some relevant documents or witnesses in Texas—Entropic has identified none—this factor still supports transfer because a much "*greater* amount of the sources of proof relevant to this lawsuit are located in or adjacent to" CDCA.  *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *5 (E.D. Tex. Jan. 23, 2012).

## 2.    Nothing Relevant to This Case Is Located in This District

By contrast, no relevant witnesses or documents are likely to be found in EDTX.  The people and locations in EDTX Entropic cites in the FAC have nothing to do with the accused products and have no information relevant to this case.  For example, Entropic's "on information and belief" allegations that DIRECTV "employees work in this district," including in Richardson and Allen, Texas, FAC ¶ 17, are not relevant because none of these individuals work on anything related to this lawsuit.  ██████ Decl. ¶ 18; ██████ Decl. ¶ 5.[3]  DIRECTV has only ████████ that work in EDTX, none of whom ███████████████████████████████████████ ██████████████████████████████.  *Id.*  And contrary to Entropic's allegations, FAC ¶¶ 15, 22–27, DIRECTV does not have a location in Sherman, Texas.  The only DIRECTV facility in this district is merely a warehouse and installation center in Denison, Texas.  ██████ Decl. ¶ 5.

---

[3] Entropic's allegations are also not factually correct—DIRECTV does not employ a "Senior Area Sales Manager in Richardson, Texas." ██████ Decl. ¶ 14.  There are also no ███████ ███████████████████; instead, only ████████████████████ ███████████████████████████.  *Id.*

No employee there ████████████████████████████████████████ ███████████████████████████████████████████████████. ███ Decl. ¶¶ 18, 20; ██████ Decl. ¶¶ 5, 15.  Nor do the operations conducted at installation centers have anything to do with the way that the accused hardware or software operates.  *Id.*

Next, Entropic points to an "authorized dealer" (TNT) in Marshall, Texas, alleging "on information and belief" that DIRECTV controls its operations.  *See* FAC ¶ 22–27.  That is not true, and Entropic provides no evidence of control beyond conclusory statements concerning dealers' registration and product training.  *Id.* ¶¶ 24–26; *cf. In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1210–12 (Fed. Cir. 2022) (authorized dealers' registration with defendant and required "employee training" were insufficient to establish venue).  But more importantly, even were those allegations true, these authorized dealers also have nothing to do with this case.  TNT—like the other 12 authorized dealers in EDTX and others across the nation—is merely a reseller of DIRECTV products that was never involved in the design and development of the accused technology.  Further, no DIRECTV employees ███████,[4] there is no reason that any documents or source code relevant to the accused products would be kept there, and DIRECTV does not exercise any control over its daily operations.  ███████ Decl. ¶ 16.  Put simply, the authorized dealers have no bearing on any issue in this case.

Entropic also points to LRFs in EDTX as demonstrating DIRECTV's presence here.  Once again, Entropic misses the mark; LRFs have nothing to do with the accused technology and are not even staffed by DIRECTV employees.  ███████ Decl. ¶ 13; ███ Decl. ¶ 21.  The purpose of LRFs is to collect local television channels for transmission on DIRECTV's service, typically

---

[4]  Indeed, the listed address for TNT Satellites, Inc., the corporate name for TNT Internet & TV, appears to be the residential home of its owners.  *See* Curtis Decl. Exs. 33, 28.

utilizing standard off-the-air antenna technology and processing electronics. ███ Decl. ¶ 21. The local content is then sent via fiber optic connection to one of six Broadcast Uplink Facilities—of which ██████████████████—for transmission to satellites. *Id.* None of this functionality is accused by Entropic or has anything to do with the Asserted Patents. *Id.*[5]

In short, DIRECTV's limited EDTX connections have no bearing on the issues in this case and none of the relevant party or third-party witnesses, documents, or other sources of proof are located in this district. *Cf. DISH*, 2021 WL 4911981, at *3 (ordering transfer out of Texas despite the presence of call centers and remanufacturing facilities located in the district). CDCA has the clear comparative advantage "with regard to the ease of access to the sources of proof." *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022).

### 3.     AT&T's Operations in EDTX Have No Bearing on This Case

The majority of Entropic's allegations attempt to impute AT&T's operations in this district to DIRECTV. *See* FAC ¶¶ 14–15, 18, 20–21, 32–52, 64–67, 72–75. That is improper because AT&T and DIRECTV are wholly separate corporate entities. But more importantly, AT&T's operations on which Entropic relies have no bearing on this patent infringement case.

Last year, AT&T's parent company, AT&T Inc., closed a transaction to form a new company, DTV, which is jointly governed by a board with representation from both AT&T Inc. and TPG. ███ Decl. ¶ 7; *see also* ██████ Decl. ¶ 4; Curtis Decl. Ex. 31 at 47. AT&T Inc. has ███████████ on this board and ████████████. ███ Decl. ¶ 4; Curtis Decl. Ex. 31 at 47. DIRECTV is a subsidiary of DTV. AT&T has no managerial role with

---

[5] ████████████████████████████████████████
████████████ ██ Decl ¶ 21. DIRECTV does not own any of the LRFs—it leases the space in locations that host multiple clients—and LRFs are not staffed with any DIRECTV employees. *Id.*, ¶ 18; ████ Decl. ¶ 5.

DIRECTV, maintains corporate separateness, and is not involved in DIRECTV's day-to-day operations. ████ Decl.¶ 8.[6] Thus, although AT&T Inc. has an indirect ownership interest in DIRECTV, AT&T is a wholly separate entity, and its presence in EDTX cannot be imputed to DIRECTV. *See Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 216CV01425JRGRSP, 2018 WL 279091, at *2 (E.D. Tex. Jan. 3, 2018), *objections overruled*, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018) ("For purposes of . . . venue[], each corporation must be assessed separately, absent disregard for corporate separateness").

Moreover, none of Entropic's allegations as to AT&T have any bearing on the issues in this case. As explained in Defendants' concurrently filed motion to sever and stay, AT&T is merely a downstream reseller of DIRECTV services, and in that respect is just like any other consumer electronics retailer that partners with DIRECTV to sell its products, such as Best Buy, Target, and Walmart. ████ Decl. ¶ 8; ████ Decl. ¶ 5; Curtis Decl. Exs. 16–18. AT&T primarily focuses on selling DIRECTV streaming services, which are not accused of infringement and have nothing to do with the technology claimed in the Asserted Patents; AT&T sells DIRECTV satellite products and services only upon customer request. ████ Decl. ¶¶ 8, 15; ████ Decl. ¶ 9. DIRECTV has no involvement with any so-called AT&T "storefronts," FAC ¶¶ 14, 32–33, and AT&T does not maintain any DIRECTV satellite equipment in those stores and

---

[6] Entropic's cryptic allegations that AT&T and DIRECTV "commingle leadership" (FAC ¶ 47–48), presumably because AT&T serves on DIRECTV's Board, is nonsensical. It is very common for one company to have seats on another company's Board. For example, the Board of McDonald's Corporation includes leaders of automotive, security, health, retail, and investment companies, as well as the WNBA, Curtis Decl. Ex. 15, yet no one could plausibly assert that McDonald's is part of those companies for venue purposes. DIRECTV for a limited time continues to ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████. ████ Decl ¶ 8.

does not install or repair such equipment. ███ Decl. ¶ 15; ███ Decl. ¶ 7.  The alleged "bundling" of AT&T and DIRECTV services, the provision of DIRECTV's literature in AT&T's branded stores, or supposed "co-mingling" of facilities or assets, FAC ¶ 37–38, 45–46, 50–52, also have no bearing on the infringement allegations in this lawsuit.[7]  They certainly do not suggest that venue is convenient in EDTX for this case, where Entropic's infringement allegations are directed solely at DIRECTV's products and services which AT&T does not design, develop, or alter. Entropic "has failed to specifically identify even one employee of [DIRECTV's] Texas based customers that is likely to have *relevant information* and that is located in or near" EDTX.  *Network Prot. Scis.*, 2012 WL 194382, at *4 (granting transfer).

Further, many of Entropic's allegations about AT&T are outdated, citing facts that predate AT&T's divestiture of DIRECTV.  *See* FAC ¶¶ 20, 41, 44.  For example, DIRECTV ███████ ██████████████████████████████████.  ███ Decl. ¶ 12; Curtis Decl. Exs. 19–20.  Similarly, DIRECTV's website no longer refers to AT&T stores as "our" stores, and the "Find a Retailer" search function on that same page does not return a single AT&T store in Marshall, Sherman, or Tyler—or anywhere else.  *See, e.g.*, Curtis Decl. Exs. 21–24.  "Venue is assessed as of the time of filing of the complaint," *Seven Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 941 n.7 (E.D. Tex. 2018) (citations omitted), and Entropic's conclusory "on information and belief" allegations are not factually correct as of the filing of its lawsuit.

*       *       *

In sum, because the large majority (if not all) sources of proof relevant to this lawsuit are

---

[7] There is nothing special about bundling AT&T's and DIRECTV's services—DIRECTV has bundled services with other carriers like Verizon as far back as 1999.  Curtis Decl. Ex. 25.  And any so-called sharing of office space or intellectual property ████████████████ ██████████████████████████████████████████████████████████████████. ███ Decl. ¶¶ 8–9.

not in EDTX (and most are in CDCA), this factor strongly favors transfer.

**B.      The Availability of Compulsory Process Favors Transfer to CDCA**

The relative availability of compulsory process, a particularly important factor, also favors

a transfer to CDCA because there are no relevant non-party witnesses in Texas, whereas there are

many in California.  *See Volkswagen II*, 545 F.3d at 316; *Genentech*, 566 F.3d at 1345; *see also*

*Network Prot. Scis.*, 2012 WL 194382, at *5 (granting transfer to district likely to have "absolute

subpoena power" over third-party witnesses).  For example, CDCA's subpoena power may be

critical for many former DIRECTV employees and inventors listed on the asserted patents.

The relevant former-employee witnesses who reside in CDCA or elsewhere in California

include former DIRECTV engineers ██████████ (greater LA area), ██████████ (Irvine, CA),

██████████ (greater LA area), ██████████ (San Jose, CA), and ██████████ (Pacific Palisades,

CA), all of whom were very involved in developing the accused technology.  ██ Decl. ¶¶ 8–13.

████████████████████████████████████████████████████████████████

████████████████████████████████  *See* Curtis Decl. Exs. 2–3, 26.  Potential third-

party witnesses from DIRECTV's suppliers (e.g., ██████████████) likely reside in

California.  ██ Decl. ¶ 19.  Inventors that reside in California include Itzhak Gurantz and Ladd

El Wardani, who Entropic asserts were two key developers of the patented technology, FAC ¶¶ 92,

96, as well as Patrick Tierney, and Jun Huang.  Curtis Decl. Exs. 5–7, 9–10, 12–14.  CDCA would

have the ability to secure the attendance of these witnesses and may prove to be more convenient

to those not in California.  This factor thus strongly favors transfer.

**C.      CDCA Is a Far More Convenient Forum for Willing Witnesses**

This factor, which considers the convenience of both party and non-party witnesses, has

been deemed "the single most important factor" in any transfer analysis.  *In re Google Inc.*, No.

2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) (quoting *Genentech*, 566 F.3d at

1343); *DISH*, 2021 WL 4911981, at *2; *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting an approach that discounted importance of this factor for party witnesses). Here, considerations pertaining to the convenience of the witnesses heavily favor transfer.

Attending trial in California will be less burdensome for willing witnesses, including the members of DIRECTV's California-based engineering and sales teams.  "[T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled [beyond 100 miles]."  *Volkswagen I*, 371 F.3d at 204–05.  Here, there are no relevant witnesses anywhere close to within 100 miles of Marshall, so witnesses for both sides will suffer inconveniences from traveling to EDTX.  By contrast, a transfer to CDCA would be more convenient for all potential witnesses, including those that reside elsewhere.  The majority of DIRECTV's expected witnesses reside in California, and thus the inconvenience to them "would be minimized."  *Volkswagen II*, 545 F.3d at 317.  DIRECTV's headquarters, which can serve as a home base for all relevant DIRECTV employees, is approximately 30 minutes from the Central District of California courthouse in Los Angeles and only six minutes from Los Angeles International Airport (LAX).  Curtis Decl. Ex. 27.  Traveling to Los Angeles will also be more convenient for out-of-state witnesses, given the high number of direct flights to LAX and the short drive to the courthouse.  This factor also favors transfer.

### D.    California's Local Interests Strongly Favor Transfer

Where a district lacks "any meaningful connection or relationship with the circumstances" of the case, this factor "weighs heavily in favor of" a transfer to a district where the parties reside and the alleged wrong had occurred.  *Volkswagen I*, 371 F.3d at 206; *see Google*, 2022 WL 1613192, at *4 (district "where the accused products were designed and developed . . . had a substantial local interest in resolving the dispute, whereas plaintiff's patent-litigation-inspired connections to its chosen forum were 'not entitled to significant weight'" (citation omitted)).

EDTX is not home to Entropic (a 2021 Delaware LLC with a small, shared office in Plano) or its principals, much less DIRECTV.  *See Network Prot. Scis.*, 2012 WL 194382, at *4 (recognizing that "recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis").  Entropic's CEO and its principals reside in California, Dkt. 25-15–25-17, 25-42, almost all of the inventors reside in California, the accused products were developed in California, ██ Decl. ¶¶ 7–8, and DIRECTV's ████████████████████████████████████████████, *id.*, ¶¶ 23–25.  Although DIRECTV's products end up in EDTX, they are also distributed nationwide, so "the citizens of [EDTX] have no more or less of a meaningful connection to the case than any other venue."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 317–18).

DIRECTV employs ████ of people in California (including those with knowledge relevant to this case).  ████ Decl. ¶ 4 (████ employees in California, of which ████ are in CDCA (████ in El Segundo)).  But there are only ██ DIRECTV employees in EDTX, none of whom have any relevance to this lawsuit.  *Id.*, ¶ 5; ████ Decl. ¶ 18; *see Apple*, 2022 WL 1676400, at *2 (district court's reliance on defendant's local offices that had no "involvement in the research, design, or development of the accused technology" was error).

DIRECTV's work in California and its success as a California company directly led to Entropic's claims.  The courts of California, not Texas, have an interest in resolving this dispute, and thus this factor favors transfer.  *See DISH*, 2021 WL 4911981, at *3 (limited connection between Texas and the accused products was "insubstantial compared to Colorado's significant connection to the design and development of" those products).

### E.     The Comparative Congestion of the Two Courts Favors Transfer

The Federal Circuit has frequently described this factor as the "most speculative" in a venue analysis, *see, e.g., Juniper*, 14 F.4th at 1322, and has warned that "a court's general ability

to set a fast-paced schedule is not particularly relevant" to evaluating congestion, *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).  But even this factor favors transfer to CDCA.

Court statistics show the only large difference in 2021 caseload statistics between CDCA and EDTX—pending cases per judge—*favors* transfer.  Curtis Decl. Ex. 34 (496 pending cases per judge in CDCA and 750 pending cases per judge in EDTX).  The other 2021 caseloads of the two districts were near identical.  *Id.* (566 filings per judge in CDCA and 553 filings per judge in EDTX).  The time to trial is also very similar.  *Id.* (24.2 months in CDCA and 23 months in EDTX).

## F.     The Remaining Factors Are Neutral or Favor Transfer

The remaining factors are neutral.  Both districts are familiar with patent law and there are no conflict of laws issues (and some relevant contracts require application of California law). *Network Prot. Scis.*, 2012 WL 194382, at *7 (finding these factors neutral).  Finally, DIRECTV just answered and the Court set a trial date only a few days ago.  *See, e.g.*, *Apple*, 979 F.3d at 1343 (error to consider actions taken after transfer motion filed to justify denial of transfer motion).

## G.     The DISH Case Does Not Weigh Against Transfer

As DISH pointed out in its motion to transfer, DISH and DIRECTV are direct competitors, this is not a standards-based case, and the infringement and damages issues will be different.  Dkt. 25 at 13.  Any efficiency gained during claim construction is not enough to overcome the convenience of CDCA in this case.  *See DISH*, 2021 WL 4911981, at *4.[8]

## CONCLUSION

DIRECTV respectfully requests that this Court grant its motion to transfer venue.

---

[8] If the Court is inclined to keep both cases together, then DIRECTV respectfully requests both be transferred to CDCA, because DISH has a greater connection to California than DIRECTV does to Colorado.  *See* Dkt. 25 at 13 (DISH will have "defenses . . . that arise from DISH's historical relationship with the original operating Entropic entity"—which is located in California).

Dated: June 3, 2022

*/s/ Benjamin Hershkowitz*

Benjamin Hershkowitz (NY Bar No. 2600559)
  bhershkowitz@gibsondunn.com
Kate Dominguez (NY Bar No. 4741237)
  bkdominguez@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035

Brian M. Buroker (DC Bar No. 457158)
  bburoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
Telephone:  (202) 955-8500
Facsimile:   (202) 467-0539

Nathan R. Curtis (Texas Bar No. 24078390)
  ncurtis@gibsondunn.com
Audrey Yang (Texas Bar No. 24078390)
  ayang@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900

Deron R. Dacus
  ddacus@dacusfirm.com
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117

*Attorneys for Defendant DIRECTV LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2022, I caused to be served by email a copy of the foregoing

motion on all counsel who have consented to electronic service.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for DIRECTV has complied with the meet and

confer requirement in Local Rule CV-7(h).  On May 31, 2022, Kate Dominguez, counsel for

DIRECTV, spoke with Plaintiff's counsel Jim Shimota, Wesley Hill, and Jason Engel by video

conference concerning the relief requested herein.  At that time, Plaintiff's counsel indicated that

Plaintiff opposes this motion.  Having reached a clear impasse, DIRECTV submits the foregoing

motion for resolution by the Court.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify under L.R CV-5(a)(7)(B) that a motion for leave to seal the foregoing

document has been filed.

*/s/ Benjamin Hershkowitz*
Benjamin Hershkowitz