# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:22-cv-00075-JRG |
| *Plaintiff,* | (Lead Case) |
| v. | JURY TRIAL DEMANDED |
| DIRECTV, LLC, AND, AT&T SERVICES, INC., | ▆▆▆▆▆▆▆▆▆ |
| *Defendants.* | |
| ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:22-cv-00076-JRG-RSP |
| *Plaintiff,* | (Member Case) |
| v. | |
| DISH NETWORK CORP.; DISH NETWORK LLC; AND DISH NETWORK SERVICE LLC, | |
| *Defendants.* | |

**PLAINTIFF ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO DISH'S MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) AND CROSS-MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     DISCUSSION ....................................................................................................... 3

        A.      The Legal Standards for Section 1404(a) Transfer................................. 3

        B.      The Action Could Have Been Brought in the Central District of
                California ................................................................................................. 3

        C.      California is More Convenient Than Colorado ...................................... 5

                1.      The Location of Documents.......................................................... 5

                2.      The Availability of Compulsory Process To Secure Witnesses
                        Favors Transfer to California....................................................... 8

                3.      Convenience for Witnesses Favors Transfer to Central District
                        of California ............................................................................... 10

                4.      Local Interest .............................................................................. 11

                5.      Co-Pending Litigation Favors Transfer to the Central District
                        of California ............................................................................... 12

                6.      Comparative Court Congestion Favors Transfer to California................ 13

                7.      Other Factors............................................................................... 14

III.    CONCLUSION................................................................................................... 14

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)........................................................................7

*BioSpyder Technologies, Inc. v. HTG Molecular Diagnostics, Inc.*,
  No. 5:20-CV-05607, 2021 WL 242866 (S.D. Cal. Jan. 25, 2021) ............................6

*Blue Spike, LLC et al. v. DISH Network Corporation*,
  No. 19-cv-160, Dkt. No. 11 (D. Del. April 26, 2019)..........................................2, 4

*DSS Technology Management, Inc. v. Apple, Inc.*,
  6:13-CV-919, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014)....................................6

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990).....................................................................................3

*Fintiv Inc. v. Apple Inc.*,
  No. 6:18-CV-00372, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) .......................5

*FlyDive, Inc. v. ZapIP, LLC*,
  No. SA-CV-17-00074-CJC(JCGx), 2017 WL 3508728 (C.D. Cal. Feb. 22,
  2017) ....................................................................................................13

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)......................................................................11

*HollyAnne Corp. v. TFT, Inc.*,
  199 F.3d 1304 (Fed. Cir. 1999)......................................................................10

*MHL Tek, LLC v. Nissan Motor Co.*,
  No. 2:07-CV-289, 2009 WL 440627 (E.D. Tex. Feb. 23, 2009).........................2, 13

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
  No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .......................2

*Plexxikon, Inc. v. Novartis Pharms. Corp.*,
  No. 17-cv-04405-HSG, 2017 WL 6389674 (N.D. Cal. Dec. 7, 2017) .....................11

*Rivera v. County of San Bernardino*,
  No. 16-cv-0795, 2017 WL 5643148 (C.D. Cal. May 7, 2017)...............................10

*T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*,
  No. C15-1739JLR, 2016 WL 1464468 (W.D. Wash. Apr. 14, 2016) ......................10

*Tivo Inc. v. Cisco Systems, Inc.*,
No. 2:12-CV-311-JRG, 2012 WL 3307407 (E.D. Tex. Aug. 13, 2012)............................2, 13

*Viking Technologies, LLC v. Assurant, Inc.*,
No. 2:20-CV-00357-JRG2021 ...........................................................................................3

*In re Vistaprint, Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010).........................................................................................12

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..............................................................................................3

**Statutes**

28 U.S.C. § 1331 ......................................................................................................................3

28 U.S.C. § 1338(a) .................................................................................................................3

28 U.S.C. § 1400(b) .................................................................................................................4

28 U.S.C. § 1404 .....................................................................................................................1

28 U.S.C. § 1404(a) ........................................................................................................2, 3, 13

**Other Authorities**

Fed. R. Civ. P. 42(a) ..............................................................................................................12

Fed. R. Civ. P. 45(c)(1)(A) ......................................................................................................8

## I.      INTRODUCTION

DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. (collectively "DISH") have moved to transfer this litigation to the District of Colorado for convenience. Here, the conveniences of the parties and witnesses, and the interests of justice, do not favor a transfer to the District of Colorado. Although venue is proper in the Eastern District of Texas, given several recent Federal Circuit decisions addressing transfers under § 1404 in cases filed in the Eastern and Western Districts of Texas, the Court should find that the Central District of California is a more convenient location.

Here, California is the location where most of the relevant witnesses and sources of proof are located. By DISH's own admission, the third-parties that supply components of the Accused Instrumentalities are located in or around the Central District of California. It is undisputed that all but one of the surviving inventors of the patents-in-suit reside in or around the Central District of California (the other resides near Seattle). At least one of the prosecuting attorneys of the patents-in-suit resides in California. The companies that originally developed the patented technology, Entropic Communications, Inc. and MaxLinear, are located less than 100 miles from the Central District of California.

Transfer to the Central District of California also allows the case to remain consolidated with the lead case against DirecTV, LLC, and AT&T Services, Inc.[1] with which it shares numerous overlapping factual and legal issues. For example, the same patents are asserted in both cases and both cases involve components with identical Broadcom chipsets. "[T]he existence of multiple

---

[1] DirecTV, LLC ("DirecTV") has moved to transfer this matter to the Central District of California. Dkt. No. 57. Entropic does not intend to oppose this transfer except on the grounds that the entire consolidated case and all parties, including DirecTV's co-defendant, AT&T, be transferred to the Central District of California.

lawsuits involving the same issues is a *paramount consideration* when determining whether a transfer is in the interest of justice . . . ." *Tivo Inc. v. Cisco Systems, Inc.*, No. 2:12-CV-311-JRG, 2012 WL 3307407, at *1 (E.D. Tex. Aug. 13, 2012) (emphasis in original) (citing *Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1996)). "[P]ermitting a situation in which two cases involving the same issues are simultaneously pending in different District Courts leads to the very wastefulness of time, energy, and money that 28 U.S.C. § 1404(a) was designed to prevent." *Id.*; *see MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627, at *7 (E.D. Tex. Feb. 23, 2009) ("granting defendants' motion for transfer in the present case would cut against principles of judicial economy and increase the risk of inconsistent adjudication.") (citing *Invitrogen Corp. v. General Elec. Co.*, No. 6:08-CV-112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009)).

DISH argues that Colorado is more convenient *for DISH* because its documents and its employee and former-employee witnesses are there. But those arguments are specious. Relevant documents DISH identified are stored in Wyoming. The handful of Colorado witnesses DISH has identified as possessing relevant information do so only marginally, and DISH has failed to identify with any specificity the uniqueness of relevant information possessed by these witnesses. But even if there are relevant witnesses in Colorado, DISH glosses over that the bulk of the evidence that *DISH* has identified, including third-party witnesses, is in or adjacent to the Central District of California. *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *5 (E.D. Tex. Jan. 23, 2012) (finding that the bulk of alleged infringer's identified evidence was located in the potential alternative venue, which weighed in favor of transfer).

Here, the Central District of California is clearly more convenient than the District of Colorado.  Accordingly, pursuant to 28 U.S.C. § 1404(a), Entropic respectfully requests transfer of this matter to the Central District of California.

## II.   DISCUSSION

### A.   The Legal Standards for Section 1404(a) Transfer

District Courts may transfer cases "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Courts in the Fifth Circuit consider a number of non-exhaustive public and private interest factors in determining whether transfer is warranted, as set forth in DISH's motion. Dkt. No. 25 at 2. Plaintiff may move to transfer pursuant to section 1404(a). *See Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990) (plaintiff may move to transfer pursuant to section 1404(a) despite any "desire to take a punitive view of the plaintiff's actions" in original forum selection).

### B.   The Action Could Have Been Brought in the Central District of California

The preliminary question under § 1404(a) is whether a civil action "might have been brought" in the destination venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). Where a suit "might have been brought" encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Technologies, LLC v. Assurant, Inc*., No. 2:20-CV-00357-JRG2021, WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)).

Here, it should be undisputed that this action could have been brought in the Central District of California.  Subject matter jurisdiction exists under 28 U.S.C. §§ 1331 and 1338(a) because this case arises under the patent laws of the United States. Likewise, personal jurisdiction exists in the

Central District of California because DISH[2] regularly conducts business in the State of California, including in the Central District of California, and purposefully directs its activities into California by marketing and providing the accused devices in the Central District of California and offering the accused satellite television services in the Central District of California. Lenning Decl. Ex. B (offering free Dish installation in Los Angeles including the Hopper 3); Lenning Decl. Ex. C (offering free satellite TV installation in Los Angeles and surrounding areas); Lenning Decl. Ex. D ("Dish Network satellite tv and [sic] can be installed almost anywhere in Los Angeles, CA"); Lenning Decl. Ex. E (identifying exemplary locations with DISH availability, including San Luis Obispo, Orange County, Santa Barbara, Los Angeles, Santa Ana, and Riverside, all of which are in the Central District of California); *see also Blue Spike, LLC et al. v. DISH Network Corporation*, No. 19-cv-160, Dkt. No. 11 ¶¶ 8, 47–48 (D. Del. April 26, 2019) (admitting that it "sells, offers to sell, and/or uses products and services throughout the United States" including products called the "Hopper, Hopper Duo, Hopper with Sling, [and] Hopper 3.").

For similar reasons, under 28 U.S.C. § 1400(b), venue is also proper in the Central District of California because it is "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  DISH sells, offers to sell, and/or uses the accused instrumentalities and services in the District and maintains retail locations in the Central District of California from which it offers the infringing instrumentalities and services, including through authorized retailers.  *See, e.g.*, Lenning Decl. Exs. F, G.

---

[2] DISH Network Service L.L.C. does business in California under the name DISH Network California Service Corp. Lenning Decl. Ex. A.

C.      **California is More Convenient Than Colorado**

1.      **The Location of Documents**

The relative ease of access to sources of proof favors transfer to California. "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-CV-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019).

Here, the majority of the documentary evidence will be located in or around the Central District of California. DISH's corporate representative on venue issues, Mr. Minnick, █████████ █████████████████████████████████████████████████████████████████ Dkt. No. 25-1 ("Minnick Decl."), ¶ 6; █████████████████████████████████████ ████████████████████████████████████████████████████████████ ██ ████ █████████████████████████████████████████████████████████████████ ████████████████████████. Dkt. No. 25 at 4–5 n.3; Minnick Decl., ¶ 9; ███████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████

---

[3] █████████████████████████████ MaxLinear acquired Entropic Communications, Inc. in 2015. Dkt. No. 25 at 6 n.5. Lenning Decl., Ex. I.

[4] █████████████████████████████████████████████████████████████████ ████████

There is no dispute that the "best source" of information regarding these components comes from the third-parties that supply them to DISH. Dkt. No. 25 at 4–5 n. 3; Minnick Decl., ¶ 9. And they are in California. ████████████████████████████████████████████

████████████████████████████████████████████ ████████████████

██████████████████████████████. MaxLinear is located in Carlsbad, California.[7] Dkt. No. 25 at 4 n.3; Dkt. No. 25-5. Carlsbad is only approximately 55 miles from the Central District of California. Lenning Decl. Ex. K.████████████████████████████████

████████████████████████████████████████████████████████

MTI has locations in El Segundo, California, which is in the Central District of California. Dkt. No. 25 at 4–5 n.3; Dkt. No. 25-7. Thus, at least four of the third-party suppliers of components that Mr. Minnick identified are in or around the Central District of California—and their relevant documents logically should be located there. Dkt. No. 25 at 4 n.3.

DISH also identified the named inventors as relevant sources of proof. Dkt. No. 25 at 6–7. DISH identified most of the surviving inventors as located in "Southern California" with one in Seattle. Dkt. No. 25 at 6–7. There is also no dispute that any relevant documents they may have are at their locations in Southern California or the Seattle area. *Id.* at 7. DISH also identifies the surviving prosecuting attorneys as potential sources of proof, with at least one of the surviving

---

[5] Irvine, California, where Broadcom is located, is in the Central District of California. *DSS Technology Management, Inc. v. Apple, Inc.*, 6:13-CV-919, 2014 WL 6847569, at *3 & n.1 (E.D. Tex. Nov. 7, 2014). Broadcom has other California locations as well.

[6] San Diego, California is only approximately 90 miles from the Central District of California (Irvine). Lenning Decl., Ex. J.

[7] Carlsbad is located in the Southern District of California. *See BioSpyder Technologies, Inc. v. HTG Molecular Diagnostics, Inc.*, 5:20-CV-05607, 2021 WL 242866, at *2 (S.D. Cal. Jan. 25, 2021).

prosecuting attorneys as located in San Diego. *Id.* at 7. Logically, any relevant documents would be at the same location as the prosecuting attorneys.

DISH also argues that its prior relationship with Entropic Communications, Inc. and MaxLinear may be relevant. Dkt. No. 25 at 7. Documents that these entities may have, including those related to any prior relationship, will also be present at MaxLinear, headquartered in Carlsbad, California. Dkt. No. 25 at 4–5 n.3.

DISH argues that its own relevant documents are in Colorado. Dkt. 25 at 4–5; Minnick Decl. at ¶ 5. But venue discovery revealed otherwise. ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

DISH also argues that the access to proof factor favors transfer to Colorado because its hardware and software engineers are based in Colorado. Dkt. No. 25 at 4. But the location of the witnesses is not properly considered under the access of proof prong. *In re Apple Inc.*, 979 F.3d 1332, 1339–40 (Fed. Cir. 2020) ("The district court legally erred in considering witnesses as 'sources of proof' for purposes of the first private interest factor. This factor relates to the ease of access to non-witness evidence, such as documents and other physical evidence; the third private interest factor—the cost of attendance for willing witnesses—relates to the convenience of each forum to witnesses.").

Given that both parties agree third-party documents are located in or around the Central District of California, and the apparent absence of *any* relevant document repository for DISH

documents in Colorado, this factor favors transfer to the Central District of California over the District of Colorado.

2.      The Availability of Compulsory Process To Secure Witnesses Favors Transfer to California

As DISH correctly notes, the relative availability of compulsory process is "particularly important" in evaluating venue convenience. Dkt. No. 25 at 7. As discussed in section II(B)(1), above, DISH's third-party suppliers, including Broadcom, have engineers that are located in or around the Central District of California. Such engineers would be subject to the compulsory subpoena power of the Central District of California.

Further, as DISH notes, "almost all surviving inventors are still located in Southern California." *Id.* at 6–7. Specifically, Itzhak Gurantz, Ladd El Wardani, Patrick Tierney, and Jun Huang all appear to reside in San Diego, California, which is less than 100 miles from the Central District of California. *Id.*; Dkt. Nos. 25-22–25, 27. As DirecTV points out in its motion to transfer "CDCA would have the ability to secure the attendance of these witnesses and may prove to be more convenient to those not in California." Dkt. No. 57 at 12. In addition the surviving attorneys who prosecuted the patents-in-suit that "are located in San Diego and Chicago." Dkt. No. 25 at 7; Dkt. No. 57 at 7. In other words, ***none*** of these third-party witnesses are subject to compulsory process in Colorado, while a substantial portion are in or around the Central District of California and within the 100 mile radius of subpoena power.[8]

DISH identifies three ex-employees who reside in Colorado (Harold Jaramillo. Will Beals, and Ryan Flores) and for whom subpoena power may be "potentially" useful. Dkt. No. 25 at 7.

---

[8] The distance between San Diego and the Central District of California (Irvine) is about 85 miles, which is within the 100-mile limit of subpoena power for any witness located there. *See* Fed. R. Civ. P. 45(c)(1)(A).

But DISH fails to identify any relevant unique knowledge any of these witnesses may have.



The apparently marginal nature of the relevant information possessed by these witnesses likely explains DISH's caveat: "*[s]hould* any of these key non-party witnesses need to attend trial." *See* Dkt. No. 25 at 8 (emphasis added). Even if one were to line up the three ex-DISH employees subject to compulsory process in Colorado against the myriad third-party engineers, inventors, and prosecuting attorneys subject to compulsory process in the Central District of California, this factor would still readily favor transfer to Central District of California. DISH also identified Mr. Petruzelli as a potentially relevant witness at trial. Dkt. No. 25 at 8. But as DISH acknowledges, he too is outside the subpoena power of the District of Colorado.

In light of the large pool of third-party witnesses in California that would be subject to subpoena power in the Central District of California and witnesses with apparently duplicative knowledge of DISH ex-employees, who are only "potentially" needed at trial, this factor favors transfer to California.

**3.      Convenience for Witnesses Favors Transfer to Central District of California**

DISH provides a largely academic discussion of the relative convenience for "the majority of DISH's expected witnesses" as between Colorado and California. Dkt. No. 25 at 9–11. As an initial matter, nowhere in that discussion does DISH identify **any** expected willing witness, let alone how many such witnesses there are. Nor does DISH attempt to identify the information possessed by such witness(es) that would require their attendance at trial. DISH presents no specificity to support its claim that Colorado is a more convenient location from a witness perspective.

Further, while ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███ DISH and its corporate representative have represented that DISH's third-party suppliers are the best sources of information for the components deployed in the accused systems. *See* Minnick Decl., ¶¶ 8-9. It is undisputed that these third-party suppliers are primarily located in California. *See supra*, Sec. II.C.2. In fact, many of these suppliers have engineer witnesses *within* 100 miles of the Central District of California (*id.*), and for those in California located outside that range, the inconvenience associated to the Central District of California is minimal. *See Rivera v. County of San Bernardino*, 16-cv-0795, 2017 WL 5643148, at *4 (C.D. Cal. May 7, 2017). In addition to the witnesses from each of the suppliers, the inventor witnesses are largely in California and in or adjacent to the Central District of California. *See supra*, Sec. II.C.2.

Thus, while Colorado *may* be more convenient for potential DISH witnesses, it is undeniably a more *inconvenient* forum than the Central District of California for several potential third-party suppliers and inventors, all of which were identified by DISH in support of its motion to transfer. Dkt. No. 25 at 4 n.3; *id.* at 6–7. Transfer to Colorado, thus, merely shifts costs to others,

including third-parties, and this factor, therefore, weighs against transfer to Colorado. *See, e.g., T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *7 (W.D. Wash. Apr. 14, 2016) (concluding that this factor weighed against transfer where "transfer would at best shift costs to T-Mobile without reducing costs overall"); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n.2 (Fed. Cir. 1999).

### 4.    Local Interest

Here, California has a local interest in adjudicating this case. The inventors of the patents-in-suit designed and developed the patented technology in and around the Central District of California while working at Entropic Communications, Inc. and MaxLinear. Dkt. 20-1 (identifying location of inventors), Dkt. No. 20-2 (same), Dkt. No. 20-3 (same). A strong local interest exists in the forum where the patents at issue were designed and developed. *See Plexxikon, Inc. v. Novartis Pharms. Corp.*, No. 17-cv-04405-HSG, 2017 WL 6389674, at *3–4 (N.D. Cal. Dec. 7, 2017). As noted above, other third-parties also are present in California, including the suppliers of accused components. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

The lynchpin of DISH's argument regarding this factor is that "[t]he work that was done by DISH engineers in Colorado and the success of DISH as a Colorado company directly led to the claims asserted here." Dkt. No. 25 at 12. However, as has been discussed extensively herein, relying on evidence from DISH itself, the identified componentry deployed in the accused systems was actually designed in large part by DISH's third-party suppliers—not by "DISH engineers in Colorado." At least four of those third-party suppliers have, or had, engineers (and other employees) located in California. According to DISH's own decision paradigm, *i.e.,* where such

third-party suppliers are "located and relevant design and development activity occurred" (*see id.*), this case should be transferred to the Central District of California. Thus, this factor favors transfer to the Central District of California.

        **5.**     **Co-Pending Litigation Favors Transfer to the Central District of California**

The Federal Circuit has held that "the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue." *In re Vistaprint, Ltd.,* 628 F.3d 1342, 1346–47 & n.3 (Fed. Cir. 2010). In this case, the Court has consolidated the Lead and Member Cases (Dkt. No. 21), having concluded that the two cases "involve a common question of law or fact." *See* Fed. R. Civ. P. 42(a). The DISH and DirecTV cases share the same plaintiff, the same patents, and the same asserted claims. The cases are also at the same stage and share a common schedule. DIRECTV is also moving to transfer to the Central District of California. Dkt. No. 57.

Common issues of fact and law will need to be resolved in both the DISH case and the DirecTV case. As DISH notes, there will be issues of claim construction common to both cases. Dkt. No. 25 at 13. In addition, based on the DISH, DirecTV, and AT&T answers and affirmative defenses filed in this case, there will likely be common defenses asserted by both DISH and DirecTV including, among others, validity. *See, e.g.,* Dkt. No. 37 (DISH Answer and Affirmative Defenses) *with* Dkt. No. 39 (DirecTV Answer and Affirmative Defenses) and 41 (AT&T Answer and Affirmative Defenses).

DirecTV also has moved to transfer the Lead Case to the Central District of California and has identified numerous reasons why California is the proper forum for these actions. Dkt. No. 57. Among the reasons identified by DirecTV is the location of Broadcom—a component supplier to both DISH and DirecTV. *Id.* at 1. Broadcom supplies the same chips to DirecTV as it does to

DISH, e.g., the BCM455X series chips. Lenning Decl. Exs. L, M. (Preliminary Infringement Contentions and Charts). Thus, the role these chips play in the infringement of the asserted claims will overlap in both the DISH and DirecTV cases.

DISH, for its part, identifies the issues that may not be common to both cases. Dkt. No. 25 at 13. While there may not be complete overlap between the legal and factual issues between the two cases, judicial economy is served by having a single court preside over multiple cases sharing common questions of law and fact, as is the case here. *See, e.g.*, *FlyDive, Inc. v. ZapIP, LLC*, No. SA-CV-17-00074-CJC(JCGx), 2017 WL 3508728, at *2 (C.D. Cal. Feb. 22, 2017) (consolidating cases where there was not a complete overlap in issues). DISH identifies nothing that would cause delay, confusion, or prejudice. There is, therefore, nothing that warrants a situation in which two cases involving the same issues are simultaneously pending in different District Courts, which "leads to the very wastefulness of time, energy, and money that 28 U.S.C. § 1404(a) was designed to prevent." *Tivo Inc. v. Cisco Systems, Inc.*, No. 2:12-CV-311-JRG, 2012 WL 3307407, at *1 (E.D. Tex. Aug. 13, 2012); s*ee MHL Tek, LLC v. Nissan Motor Co.*, 2009 WL 440627, at *7 (E.D. Tex. Feb. 23, 2009) ("granting defendants' motion for transfer in the present case would cut against principles of judicial economy and increase the risk of inconsistent adjudication.") (citing *Invitrogen Corp. v. General Elec. Co.*, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009)).[9]

### 6.    Comparative Court Congestion Favors Transfer to California

In the District of Colorado, there were 528 cases pending per judge as of March 31, 2022. Lenning Decl., Ex. N at 75. As of that same date, there were 483 cases pending per judge in the

---

[9]  It would not be appropriate to transfer the entire consolidated case to the District of Colorado. As DirecTV points out, DISH has a greater connection to California than DirecTV has to Colorado. Dkt. No. 57 at 15 n.8. In fact, DISH has not identified any connection DirecTV has to Colorado as a reason for transferring the entire consolidated case.

Central District of California. *Id.* at 68. As DISH notes, the most important factor in evaluating court congestion is caseload (Dkt. No. 25 at 14), which, in this case slightly favors the Central District of California.[10]

### 7.   Other Factors

Entropic agrees that, as between any two federal jurisdictions in the case of a patent infringement suit, the remaining factors, the application of federal law and conflict of laws, would be neutral.

## III.   CONCLUSION

For the foregoing reasons, Entropic respectfully requests that this Court deny DISH's pending motion to transfer this action to Colorado, and grant this cross-motion to transfer to the Central District of California.

Dated: August 3, 2022                          Respectfully submitted,

                                               /s/ Jim Shimota (by permission
                                               Wesley Hill)
                                               James Shimota – Lead Attorney
                                               Jason Engel
                                               George Summerfield
                                               Devon Beane
                                               **K&L GATES LLP**
                                               70 W. Madison Street, Suite 3300
                                               Chicago, IL 60602
                                               Tel.: (312) 372-1121
                                               Fax: (312) 827-8000
                                               jim.shimota@klgates.com
                                               jason.engel@klgates.com
                                               george.summerfield@klgates.com
                                               devon.beane@klgates.com

---

[10] Time to trial also favors transfer to the Central District of California. In the District of Colorado, the median time from filing to trial in civil cases was 33.4 months for the 12 month period ending March 31, 2022. Lenning Ex. N at 75. In the District of California, the median time from filing to trial in civil cases was 23.5 months for the 12 month period ending March 31, 2022. *Id.* at 68.

Nicholas F. Lenning
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Wesley Hill
Texas Bar No. 24032294
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
Fax (903) 757-2323
wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**


### <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal pursuant to the

Protective Order entered in this matter.

<u>    /s/ Wesley Hill    </u>

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff conferred with counsel for Defendant DISH regarding Plaintiff's cross-motion for transfer to the Central District of California. Counsel for DISH advise that it opposes transfer of the matter to the Central District of California. Accordingly, the discussions ended in an impasse regarding the appropriate transferee venue, leaving an open issue for the Court's resolution.

/s/ Jim Shimota (by permission Wesley Hill)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on August 3, 2022 to counsel of record for Defendants via email at the following addresses:

Amanda Tessar
Matthew C. Bernstien
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Email: ATessar@perkinscoie.com
Email: MBernstein@perkinscoie.com
Email: Entropic-DISH@perkinscoie.com

Melissa R. Smith
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Email: melissa@gillamsmithlaw.com

/s/ Wesley Hill

16