# EXHIBIT 1

FILED
Superior Court of California
County of Alameda

03/25/2022

Chad Finke, Executive Officer/Clerk of the Court

By: _____ Deputy
S. Gould

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF CALIFORNIA,** | Case No. 22CV008224 |
| Plaintiff, | |
| v. | ~~**[PROPOSED]**~~ **AMENDED FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT** |
| **DISH NETWORK CALIFORNIA SERVICE CORPORATION, a Colorado Corporation, and ECHOSPHERE L.L.C., a Colorado Limited Liability Company,** | ASSIGNED FOR ALL PURPOSES TO: THE HONORABLE DELBERT GEE DEPARTMENT 514 |
| Defendants. | |

WHEREAS, the PEOPLE OF THE STATE OF CALIFORNIA, (collectively referred to herein as "the People") by and through Rob Bonta, Attorney General of the State of California ("AG"), and by and through Nancy O'Malley, District Attorney of the County of Alameda ("Alameda DA") and Defendants DISH NETWORK CALIFORNIA SERVICE CORPORATION, a Colorado corporation, and ECHOSPHERE L.L.C., a Colorado limited liability company (together with their successors and assigns, "DISH") and collectively with the People referred to as the "Parties," by their respective attorneys, entered into a Stipulation for Entry of Final Judgment and Permanent Injunction in this matter ("Stipulation") and thereby have consented to the entry of this Amended Final Judgment and Permanent Injunction on Consent ("Final Judgment on Consent");

AND WHEREAS, the Court finds that the settlement between the Parties is fair and in the public interest.

NOW THEREFORE, upon the consent of the aforementioned Parties, it is hereby ORDERED, ADJUDGED, AND DECREED:

## FINAL JUDGMENT AND INJUNCTION ON CONSENT

### 1.   JURISDICTION

The Parties stipulated and agreed that the Superior Court of California, County of Alameda has subject matter jurisdiction over the matters alleged in this action and personal jurisdiction over the Parties to this Final Judgment on Consent.  DISH owns and/or operates COVERED FACILITIES throughout California, including having operated previously a facility in Alameda County.

### 2.   SETTLEMENT OF DISPUTED CLAIMS

This Final Judgment on Consent is not an admission by DISH regarding any issue of law or fact in the above-captioned matter or of any violation of law.  The Parties enter into this Final Judgment on Consent pursuant to a compromise and settlement of disputed claims for purposes of furthering the public interest.  The People believe: (i) that the resolution embodied in this Final Judgment on Consent is fair and reasonable and fulfills the People's enforcement objectives; (ii) that, except as provided in this Final Judgment on Consent, no further action is warranted

concerning the allegations contained in the Complaint for Permanent Injunction, Civil Penalties, and Other Equitable Relief ("Complaint"); and (iii) that entry of this Final Judgment on Consent is in the best interest of the public.  This Final Judgment on Consent is and represents a compromise of disputed claims, and the Parties' execution of the Stipulation is not intended to and shall not constitute an admission of wrongdoing or liability by DISH.  DISH agrees that this Final Judgment on Consent is a fair and reasonable resolution of the matters alleged in the Complaint. The Parties also have waived their respective rights to appeal from this Final Judgment on Consent.

### 3.   **DEFINITIONS**

Except where otherwise expressly defined in this Final Judgment on Consent, all terms shall be interpreted consistently with chapter 6.5 of division 20 of the California Health and Safety Code and the title 22 California Code of Regulations promulgated under that chapter.  The following terms used in this Final Judgment on Consent shall have the meaning(s) set forth below:

A.     "AEROSOL CAN," "HAZARDOUS WASTE AEROSOL CAN," and "UNIVERSAL WASTE AEROSOL CAN" shall each have the corresponding definition as set forth in California Health and Safety Code section 25201.16, subdivisions (a)(1), (4) and (6).

B.     "BATTERY" or "BATTERIES" shall have the same definition as set forth in California Code of Regulations, title 22, section 66273.9, except those items listed in section 66273.2, subdivision (b)(1)(A).

C.     "CERTIFICATION" shall mean a written declaration under penalty of perjury including the language set forth in Paragraph 18, below, signed by a DISH managerial level representative in charge of environmental compliance matters, or by a DISH officer who is authorized to bind DISH.

D.     "CERTIFIED UNIFIED PROGRAM AGENCY" or "CUPA" is an agency certified by the California Environmental Protection Agency pursuant to the requirements of chapter 6.11 of the California Health and Safety Code, and title 27 of the California Code of Regulations, to implement certain State environmental programs within the local agency's jurisdiction.

E.     "COVERED EMPLOYEE" and "COVERED EMPLOYEES" mean FIELD TECHNICIANS, WAREHOUSE EMPLOYEES, as well as other DISH employees in California whose job duties require the MANAGEMENT of COVERED WASTE ITEMS in California.

F.     "COVERED FACILITY" or "COVERED FACILITIES" means: (i) the warehouses and field service technician facilities (i.e., local service centers), and other facilities owned, leased, and/or operated in the State of California by DISH that are listed in **Exhibit A** attached and made a part of this Final Judgment on Consent by this reference, as it may be amended in accordance with Paragraph 4.1.a and (ii) any other facilities in the State of California that DISH owns or operates after the EFFECTIVE DATE at or from which COVERED WASTE ITEMS or COVERED SCRAP METAL are MANAGED and to which FIELD TECHNICIANS or REVERSE LOGISTICS CONTRACTORS bring COVERED WASTE ITEMS or COVERED SCRAP METAL for MANAGEMENT at such facilities.

G.     "COVERED SCRAP METAL" means all satellite service equipment that constitutes SCRAP METAL, including, but not limited to, WASTE cable, satellite dishes (without "low noise block down converters" or "LNBs"), satellite dish mounts, splitters, filters, taps, traps, multi-switches, diplexers, and triplexers, meeting the definition of "SCRAP METAL" as set forth in California Code of Regulations, title 22., section 66273.9 and that are not otherwise excluded from that definition in section 66273.9, subdivision (b).

H.     "COVERED WASTE ITEMS" shall mean (i) non-empty HAZARDOUS WASTE AEROSOL CANS or non-empty UNIVERSAL WASTE AEROSOL CANS, as defined in Health and Safety Code section 25201.16 and California Code of Regulations, title 22, section 66261.7, subdivision (m); (ii) ELECTRONIC DEVICES; and the following items when they have become WASTE:  (iii) BATTERIES; (iv) SERIALIZED EQUIPMENT; and (v) OTHER USED ITEMS.

I.     "DESTINATION FACILITY" shall have the definition as set forth in California Code of Regulations, title 22, section 66273.9.

J.     "DISH" has the meaning set forth in the initial paragraph of this Final Judgment on Consent.

K.     "DISCARDED" shall have the same meaning as set forth in Health and Safety Code section 25124, subdivision (b) or California Code of Regulations, title 22, section 66261.2, subdivisions (b) through (f).

L.     "DTSC" means the California Department of Toxic Substances Control or its successor agency.

M.     "EFFECTIVE DATE" means the date on which the Court enters this Final Judgment on Consent.

N.     "ELECTRONIC DEVICE" or "ELECTRONIC DEVICES" shall have the same meaning as set forth in California Code of Regulations, title 22, section 66273.9.  For purposes of this Final Judgment on Consent, the term ELECTRONIC DEVICES includes, but is not limited to, WASTE remote controls, WASTE power adapters and supplies, WASTE field testing equipment and other WASTE satellite service equipment containing a printed circuit board(s), and WASTE SERIALIZED EQUIPMENT.

O.     "FIELD SERVICE CONTRACTOR" shall mean any contractor of DISH in California who performs on-site satellite service installations, connections, reconnections, disconnections, maintenance, or equipment upgrades or downgrades at DISH customer premises.

P.     "FIELD TECHNICIANS" means those DISH employees in California whose duties or responsibilities include performing on-site satellite service installations, connections, reconnections, disconnections, maintenance, or equipment upgrades or downgrades at DISH and/or customer premises, including, but not limited to, those employees known as field services technicians and installation technicians.

Q.     "FINAL COURT DETERMINATION" shall mean the entry of a final appealable order by the California Superior Court, unless the losing party has timely appealed to the California appellate court and obtained a stay of the Superior Court's order (either from the Superior Court, or from the appellate court), in which case the term shall mean a final California appellate court decision from which no further appeal may be taken.

R.     "FOREIGN DESTINATION" shall have the same definition as set forth in California Code of Regulations, title 22, section 66273.9.

S. "GENERATOR" shall have the same definition as set forth in California Code of Regulations, title 22, section 66260.10.

T. "HAZARDOUS" and "HAZARDOUS CHARACTERISTIC" shall have the same meaning as set forth in California Code of Regulations, title 22, section 66261.3 and sections 66261.20 through 66261.24.

U. "HAZARDOUS WASTE" shall have the same definition as set forth in Health and Safety Code section 25117 and California Code of Regulations, title 22, section 66260.10 and includes "extremely hazardous waste" as defined in Health and Safety Code section 25115.

V. "HAZARDOUS WASTE CONTROL LAW" or "HWCL" shall mean chapter 6.5 of division 20 of the California Health and Safety Code, and the title 22 California Code of Regulations promulgated under that chapter, as they may be amended.

W. "HAZARDOUS WASTE MANAGEMENT," "MANAGEMENT," "MANAGE," and "MANAGED" shall have the same meaning as those terms are used in California Health and Safety Code section 25117.2.

X. "OTHER GOVERNMENTAL AGENCY," or "OTHER GOVERNMENTAL AGENCIES" shall mean an agency of the State of California or of its political subdivisions.

Y. "OTHER USED ITEMS" means HAZARDOUS sealants, adhesives, and silicone.

Z. "PERSON" and "PERSONS" shall have the same meaning as set forth in Health and Safety Code section 25118.

AA. "PROMPTLY" shall mean as soon as reasonably practicable.

BB. "RECYCLE" and "RECYCLING" shall have the same definition as set forth in Health and Safety Code section 25121.1.

CC. "REFURBISH" or "REFURBISHMENT" shall mean to test, clean, or repair a product for reuse in service.

DD. "REVERSE LOGISTICS" means all operations and procedures related to the movement of potentially serviceable and unserviceable products, equipment or other material (or the movement of such products, equipment or other material to determine whether they are serviceable), including, but not limited to, ELECTRONIC DEVICES, used remote controls, used

6

power adapters and supplies, used field testing equipment, used satellite service equipment containing a printed circuit board, used SERIALIZED EQUIPMENT, and OTHER USED ITEMS, for the purpose of reuse, RECYCLING, or proper disposal.

EE.   "REVERSE LOGISTICS CONTRACTOR" shall mean any contractor of DISH, direct subcontractor of DISH, or independent contractor of DISH that engages in REVERSE LOGISTICS on behalf of DISH.

FF.   "SCRAP METAL" shall have the same definition as set forth in California Code of Regulations, title 22, section 66273.9 and as used in section 66261.6.

GG.   "SERIALIZED EQUIPMENT" shall mean all satellite services and other electronic equipment and devices deployed by DISH that are tracked by serial number, bar-coding, or a similar tracking system, including, but not limited to, set top (video/digital) boxes, DVRs, modems, network interface units, routers, and low noise block down converters ("LNBs"). COVERED SCRAP METAL is excluded from this definition.

HH.   "UNIVERSAL WASTE" shall have the same definition as set forth in California Code of Regulations, title 22, sections 66261.9 and 66273.9.

II.   "UNIVERSAL WASTE HANDLER" shall have the same definition as set forth in California Code of Regulations, title 22, section 66273.9.

JJ.   "WAREHOUSE EMPLOYEES" shall mean those DISH employees in California who work at DISH COVERED FACILITIES and whose duties or responsibilities include the MANAGEMENT of items or materials that, when DISCARDED, become COVERED WASTE ITEMS.

KK.   "WASTE" shall have the same definition set forth in Health and Safety Code section 25124 or California Code of Regulations, title 22, section 66261.2.

4.   **INJUNCTIVE RELIEF**

Pursuant to the provisions of California Health and Safety Code sections 25181 and 25184, California Business and Professions Code section 17203, and Government Code sections 12607 and 12610, with respect to the COVERED FACILITIES, DISH is permanently enjoined to comply with the injunctive provisions of this Final Judgment on Consent.  Failure to comply with this

Final Judgment on Consent and the specific additional injunctive provisions that follow may subject DISH to sanctions, including, but not limited to, contempt and additional penalties in this action as well as any separate enforcement action that may be brought.  Notwithstanding any other provision in this Final Judgment on Consent, nothing in this Final Judgment on Consent shall relieve DISH from complying with all applicable minimum standards set forth in the HWCL.

## 4.1.  SPECIFIC INJUNCTIVE PROVISIONS

### 4.1.a. COVERED FACILITIES:

(i).  **Removal of a COVERED FACILITY Due To Change in DISH'S Ownership or Operator Status:**  At any time after the EFFECTIVE DATE, DISH shall provide written notice to the People that DISH no longer owns, leases, or operates a particular COVERED FACILITY listed on **Exhibit A**.  Said notice shall be provided within forty-five (45) calendar days following a change in ownership or operator status (including leasing status) of a designated COVERED FACILITY, at which time such facility shall be deemed to have been removed from **Exhibit A** and will no longer be considered a COVERED FACILITY.  The notice shall include a written CERTIFICATION to the People that:  (1) DISH has not left any HAZARDOUS WASTE or UNIVERSAL WASTE MANAGED by DISH at said COVERED FACILITY; and (2) at the time that DISH was closing its operations at said COVERED FACILITY, any such HAZARDOUS WASTE and UNIVERSAL WASTE was lawfully disposed of or otherwise MANAGED in accordance with the HWCL.  Nothing in this Final Judgment on Consent shall be deemed to make DISH responsible for HAZARDOUS WASTE or UNIVERSAL WASTE generated by others and not MANAGED by DISH at the COVERED FACILITY after DISH no longer owns, leases, or operates a COVERED FACILITY.

(ii).  **Adding a COVERED FACILITY:**  DISH shall provide written notice to the People and identify any facility in California that becomes owned, leased or operated by DISH after the EFFECTIVE DATE when said facility meets the "qualifying criteria" set forth in the definition of COVERED FACILITIES.  DISH shall provide said written notice within thirty (30) calendar days following the date on which each such new facility is owned, leased or operated by

DISH.  Each such facility shall be deemed a COVERED FACILITY and shall be deemed added to the list of COVERED FACILITIES in **Exhibit A**.

        **(iii).**  <u>**Removal of a COVERED FACILITY No Longer Meeting the Qualifying Criteria:**</u>  At any time after the EFFECTIVE DATE, DISH may provide written notice to the People that a COVERED FACILITY listed on **Exhibit A** no longer meets the "qualifying criteria" set forth in the definition of COVERED FACILITIES.  Such notice will include an explanation of DISH's position supporting its request for removal.  The notice shall also include a written CERTIFICATION to the People that as of the date that DISH discontinued the operations that met the "qualifying criteria" at that COVERED FACILITY, that DISH lawfully disposed of or otherwise MANAGED HAZARDOUS WASTE and UNIVERSAL WASTE that DISH had remaining at that COVERED FACILITY in accordance with the HWCL.  If the People do not within sixty (60) calendar days after receipt of such notice provide notice to DISH of an objection or concern about DISH's determination that a particular COVERED FACILITY no longer meets the qualifying criteria, the People will be deemed to have consented to the facility no longer being a COVERED FACILITY and that facility shall be deemed removed from the list of COVERED FACILITIES in **Exhibit A**.  If the People object to DISH's notice and provide timely notice of objection, the notice to DISH will include the basis for the People's objection or concern.  The Parties will within thirty (30) calendar days thereafter meet to discuss DISH's determination and the People's concern or objection.  If the Parties have not reached agreement on DISH's proposed removal of a COVERED FACILITY within this thirty (30) day period, and if DISH continues to seek such removal, DISH will provide notice to the People that it will trigger the meet-and-confer provision of Paragraph 6.3, as the precursor to an application or motion to the Court to resolve the dispute under the provisions of that paragraph.  Once DISH provides notice that a COVERED FACILITY listed on **Exhibit A** no longer meets the qualifying criteria, DISH may only submit such notices and requests once per calendar quarter.  No COVERED FACILITY shall be removed from **Exhibit A** on the basis that such facility no longer meets the qualifying criteria unless and until DISH has provided the CERTIFICATION and has obtained the consent or deemed consent

of the People or has obtained a FINAL COURT DETERMINATION in accordance with the procedures set forth herein.

**(iv).** **Updating the COVERED FACILITY Exhibit A:** DISH shall maintain an up-to-date COVERED FACILITIES **Exhibit A** and shall make it available to the People upon request by counsel of record for the People. In addition, DISH shall provide to the People an up-to-date COVERED FACILITIES **Exhibit A** with the Status Reports required by Paragraph 22.

**4.1.b.** Unlawful Disposal: DISH shall not unlawfully dispose, or cause the unlawful disposal of, COVERED WASTE ITEMS or COVERED SCRAP METAL in California at a point not authorized or permitted by the DTSC, in violation of the HWCL. Unauthorized points of disposal, include, without limitation: trash receptacles, trash cans, roll-off containers or dumpsters, in each case the contents of which are destined for municipal solid waste (garbage) landfills; onto the surface or subsurface of the ground at any unauthorized location; or to a transfer station or landfill not authorized to receive HAZARDOUS WASTE; provided, however, that DISH may RECYCLE COVERED SCRAP METAL at any RECYCLING facility that is authorized to accept COVERED SCRAP METAL.

**4.1.c.** Releases to the Environment: In the event of a release to the environment of UNIVERSAL WASTES or of residues from UNIVERSAL WASTES at and/or from COVERED FACILITIES, DISH shall immediately contain such release as required by California Code of Regulations, title 22, section 66273.37.

**4.1.d.** Labeling of Dumpsters/Roll-Off Containers and UNIVERSAL WASTE Accumulation Containers:

**(i).** **Dumpsters/Roll-Off Containers:** Within thirty (30) calendar days following the EFFECTIVE DATE, all COVERED FACILITY roll-off containers and dumpsters, the contents of which are destined for municipal solid waste landfills or municipal solid waste recycling facilities that are not authorized to receive HAZARDOUS WASTE, shall be labeled with a sign, substantially in the form of **Exhibit B**, attached and made a part of this Final Judgment on Consent by this reference. The sign shall clearly indicate that disposal of UNIVERSAL WASTE, HAZARDOUS WASTE, and COVERED SCRAP METAL is prohibited,

1  and it shall include representative pictorial images or graphics that depict examples of the types of

2  COVERED WASTE ITEMS and COVERED SCRAP METAL that shall not be disposed of into

3  these trash receptacles.

4        **(ii).**   <u>**UNIVERSAL WASTE Accumulation Containers**</u>**:**   Upon the

5  EFFECTIVE DATE, all COVERED WASTE ITEMS that are MANAGED by DISH in California

6  as UNIVERSAL WASTES, including ELECTRONIC DEVICES that are accumulated, stored and

7  destined for RECYCLING, shall be stored in containers, pallets, or packages (as appropriate for

8  each type of UNIVERSAL WASTE) and labeled by DISH as "UNIVERSAL WASTE" in

9  accordance with California Code of Regulations, title 22, sections 66273.34 and 66273.35,

10  subdivision (b).  In addition, such containers, pallets, and packaging in which COVERED

11  WASTE ITEMS are accumulated or stored shall be marked and labeled to identify the general

12  types of WASTE(S) (e.g., "UNIVERSAL WASTE – BATTERIES;" "UNIVERSAL WASTE –

13  ELECTRONIC DEVICES") that are accumulated and stored in the containers, pallets, and

14  packaging.  The required labels shall include representative pictorial images or graphics that depict

15  certain common types of WASTE(S) that are to be accumulated and stored in each container,

16  pallet, or packaging, and the labels shall be in a form substantially equivalent to **Exhibit C**,

17  attached and made a part of this Final Judgment on Consent by this reference.  If DISH

18  accumulates and stores more than one type of compatible WASTE in an accumulation container,

19  pallet or package, DISH shall clearly label the container, pallet or package to accurately identify

20  each general type of WASTE(S) accumulated in it and shall insure that each container, pallet and

21  package is also labeled in accordance with California Code of Regulations, title 22, division 4.5,

22  chapter 23, section 66273.1 et seq., and the requirements of this Final Judgment on Consent.

23        **4.1.e.** <u>**Inspection of Dumpsters/Roll-Off Containers**</u>**:**

24        **(i).**      For each COVERED FACILITY at which COVERED WASTE ITEMS or

25  COVERED SCRAP METAL are MANAGED, DISH shall implement inspection policies and

26  procedures as described in **Exhibit D** (attached and made a part of this Final Judgment on Consent

27  by this reference) for roll-off containers and dumpsters used to collect items destined for a

28  municipal solid waste recycling facility or for disposal at municipal landfills.  The purpose of

these inspections is to ensure that no COVERED WASTE ITEMS or COVERED SCRAP METAL is improperly DISCARDED in these roll-off containers and dumpsters.  The inspection shall consist of a reasonable visual inspection in accordance with the procedures described in **Exhibit D** and shall not require the PERSON performing the inspection to enter or climb into the roll-off containers or dumpsters.

(ii).   DISH shall prepare an inspection log for each COVERED FACILITY, and the inspection log shall be retained at each COVERED FACILITY for a period of  five (5) years from the date of the inspection or until the injunctive provisions of this Final Judgment on Consent are terminated, whichever is later.  Each inspection log shall identify: the date and time of inspection; the location of the COVERED FACILITY; the name, signature, or initials of the PERSON(S) conducting the inspection; whether COVERED WASTE ITEMS or COVERED SCRAP METAL was found in COVERED FACILITY roll-off containers or dumpsters destined for disposal at municipal landfills not authorized to receive the COVERED WASTE ITEMS or COVERED SCRAP METAL; and whether COVERED WASTE ITEMS were found in COVERED FACILITY roll-off containers or dumpsters destined for a municipal solid waste RECYCLING facility not authorized to receive the COVERED WASTE ITEMS; and, if such items were found, a description of the type, quantity and final disposition of the COVERED WASTE ITEMS or COVERED SCRAP METAL found and removed from the roll-off containers or dumpsters.

(iii).   DISH shall evaluate its inspection policies and procedures on an annual basis (from the EFFECTIVE DATE) for their effectiveness in preventing the improper disposal of COVERED WASTE ITEMS and COVERED SCRAP METAL.

(iv). DISH shall make the inspection policies and procedures and COVERED FACILITY inspection logs available to the People upon request by counsel of record for the People, or OTHER GOVERNMENTAL AGENCY with a legal right independent of this Final Judgment on Consent to inspect DISH's COVERED FACILITIES.

**4.1.f.** **Hazardous Characterization:**  Within thirty-five (35) calendar days from the EFFECTIVE DATE, DISH shall:  (i) identify in writing all the types of COVERED WASTE

ITEMS and COVERED SCRAP METAL MANAGED by DISH at all COVERED FACILITIES, and (ii) determine if such COVERED WASTE ITEMS and COVERED SCRAP METAL are HAZARDOUS pursuant to California Code of Regulations, title 22, sections 66262.11 and 66260.200.  DISH shall make a written record of the approximate weight or quantity of, on an annual basis, all COVERED WASTE ITEMS and COVERED SCRAP METAL MANAGED as UNIVERSAL WASTE or HAZARDOUS WASTE.  The items MANAGED as UNIVERSAL WASTE shall be tracked by type (e.g., BATTERIES, ELECTRONIC DEVICES, AEROSOL CANS, etc.).  DISH shall maintain on-site at each COVERED FACILITY a current list by type (e.g., BATTERIES, ELECTRONIC DEVICES, AEROSOL CANS, etc.) of all HAZARDOUS COVERED WASTE ITEMS and COVERED SCRAP METAL required herein and shall make the list available to the People upon request by counsel of record for the People, or OTHER GOVERNMENTAL AGENCY with a legal right independent of this Final Judgment on Consent to inspect DISH's COVERED FACILITIES.

      **4.1.g.** **MANAGEMENT of COVERED WASTE ITEMS:**  DISH shall MANAGE COVERED WASTE ITEMS while such items are in California as either HAZARDOUS WASTE, or UNIVERSAL WASTE (if applicable), and in accordance with the applicable requirements of the HWCL and the requirements of this Final Judgment on Consent.  As set forth in Paragraph 4.1.q.(v), below, DISH shall notify all FIELD SERVICE CONTRACTORS and REVERSE LOGISTICS CONTRACTORS in California of the requirement to MANAGE COVERED WASTE ITEMS while such items are in California in accordance with the applicable statutory and regulatory requirements of the HWCL.  For purposes of this Final Judgment on Consent, SERIALIZED EQUIPMENT, remote controls, power adapters and supplies, field testing equipment and satellite service equipment containing a printed circuit board (except for equipment that is COVERED SCRAP METAL) shall become a COVERED WASTE ITEM at the earliest point in time when such items are DISCARDED and first become subject to regulation under the HWCL, including, but not limited to, when:

      **(i).**    DISH determines, based on a reasonable visual inspection conducted in California, that the SERIALIZED EQUIPMENT, remote control, or other satellite service

1  equipment containing a printed circuit board will not be repaired or REFURBISHED for return to

2  service by DISH;

3  (ii).   DISH determines, based on a reasonable visual inspection conducted in

4  California, that the SERIALIZED EQUIPMENT, remote control, or other satellite service

5  equipment containing a printed circuit board is beyond economic repair and will not be returned to

6  service by DISH; or

7  (iii).   DISH determines that SERIALIZED EQUIPMENT, remote control, or

8  other satellite service equipment containing a printed circuit board in DISH's possession in

9  California is not being returned to service by DISH because it is obsolete (i.e., is no longer

10  deployed for use on DISH's satellite services systems).

11  **4.1.h. WASTE Identification**:  DISH shall PROMPTLY determine, at each

12  COVERED FACILITY, whether each used AEROSOL CAN, used BATTERY, used remote

13  controls, used power adapters and supplies, used field testing equipment, used satellite service

14  equipment containing a printed circuit board, used SERIALIZED EQUIPMENT, and used

15  OTHER USED ITEM that is returned to a COVERED FACILITY, including those items removed

16  from a DISH customer premise and returned to a COVERED FACILITY by a COVERED

17  EMPLOYEE or FIELD SERVICE CONTRACTOR, or that is used at a COVERED FACILITY,

18  is a WASTE as defined herein in this Final Judgment on Consent.

19  **4.1.i. RECYCLING of COVERED SCRAP METAL**:  DISH, at its sole election,

20  shall either (i) RECYCLE all COVERED SCRAP METAL or (ii) MANAGE all COVERED

21  SCRAP METAL as HAZARDOUS WASTE, or UNIVERSAL WASTE (if applicable).  In

22  addition, DISH shall:

23  (i).   within thirty (30) calendar days following the EFFECTIVE DATE, mark

24  and label as "SCRAP METAL" all packaging, boxes, and containers at COVERED FACILITIES

25  in which COVERED SCRAP METAL is accumulated or stored.  Each label shall also include

26  representative pictorial images or graphics that depict examples of the types of COVERED

27  SCRAP METAL that are to be accumulated and stored in each packaging, box, or container;

28

14

**(ii).**   DISH shall remove all accumulated COVERED SCRAP METAL at each COVERED FACILITY not less than every six (6) months to ensure that COVERED SCRAP METAL does not accumulate for longer than one year (from the initial date of accumulation) in any packaging, boxes, or containers at COVERED FACILITIES in which COVERED SCRAP METAL is accumulated or stored; and

**(iii).**   within thirty (30) calendar days following the EFFECTIVE DATE, DISH shall provide a written list to the People of all entities used by or on behalf of DISH to RECYCLE COVERED SCRAP METAL from COVERED FACILITIES.  The list shall be updated to keep current, include the name and address of the RECYCLING company or entity, and shall be provided to the People with the Status Reports required by Paragraph 22.

**4.1.j. <u>Transportation of HAZARDOUS WASTE and UNIVERSAL WASTE</u>:**
DISH shall not transport, or cause to be transported, HAZARDOUS WASTE that is not UNIVERSAL WASTE, to, between, or from COVERED FACILITIES unless the transporter is properly licensed and registered to do so, as required by Health and Safety Code section 25163, or an exemption or variance applies as provided by the HWCL.  DISH shall transport all UNIVERSAL WASTE in accordance with California Code of Regulations, title 22, sections 66273.51 and 66273.52.  Subject to the requirements in the HWCL, nothing else in this Paragraph shall prohibit: (i) DISH's COVERED EMPLOYEES and FIELD SERVICE CONTRACTORS from transporting COVERED WASTE ITEMS from the customer premises (including commercial customers), or from other DISH leased or owned premises where DISH performs service, to DISH's COVERED FACILITIES for lawful disposition and in accordance with the terms of this Final Judgment on Consent.

**4.1.k. <u>Transporting, Sending, Relinquishing, Transferring, and Surrendering of HAZARDOUS WASTE and UNIVERSAL WASTE to Authorized Locations</u>:**

**(i).**   Upon the EFFECTIVE DATE, DISH shall not transport, or cause to be transported, in California any HAZARDOUS WASTE that is not UNIVERSAL WASTE to an unauthorized location, in violation of Health and Safety Code section 25189.5(a).

(ii).   Upon the EFFECTIVE DATE, DISH shall be prohibited from sending, transporting, relinquishing, transferring, surrendering, or otherwise taking UNIVERSAL WASTE, including COVERED WASTE ITEMS, to a place other than another UNIVERSAL WASTE HANDLER, a DESTINATION FACILITY, or a FOREIGN DESTINATION pursuant to California Code of Regulations, title 22, section 66273.38, or a household HAZARDOUS WASTE collection facility authorized to receive such UNIVERSAL WASTE or COVERED WASTE ITEMS pursuant to Health and Safety Code section 25218.3.  DISH shall comply with the requirements contained in California Code of Regulations, title 22, sections 66273.38 and 66273.39 regarding shipments of UNIVERSAL WASTE, and with the requirements in California Code of Regulations, title 22, sections 66273.40 and 66273.41 regarding the export and import of UNIVERSAL WASTE.  This Paragraph shall not apply to non-WASTE items that are sent for REFURBISHMENT.

(iii).   Subject to the requirements of the HWCL, nothing in Paragraph 4.1.k. shall prohibit DISH's COVERED EMPLOYEES or FIELD SERVICE CONTRACTORS from transporting COVERED WASTE ITEMS from customer premises (including commercial customers), or from other DISH leased or owned premises where DISH performs service, to DISH's COVERED FACILITIES for lawful disposition and in accordance with the terms of this Final Judgment on Consent.

**4.1.l.  Accumulation of HAZARDOUS WASTE and UNIVERSAL WASTE:** Except as otherwise provided in California Code of Regulations, title 22, division 4.5, chapter 23, section 66273.35 (one-year accumulation time limit) and section 66273.39 (tracking UNIVERSAL WASTE shipments via bill of lading or other record acceptable under applicable law) regarding UNIVERSAL WASTES, DISH shall: (i) lawfully and timely dispose of all accumulated HAZARDOUS WASTE from any COVERED FACILITY within ninety (90) calendar days following its respective accumulation start date, in accordance with California Code of Regulations, title 22, section 66262.34, subdivisions (a) and (b); and (ii) timely cause to be prepared, and filed with the DTSC, a HAZARDOUS WASTE manifest for such HAZARDOUS WASTE that is transported, or submitted for transportation, for offsite handling, treatment,

storage, disposal, or any combination thereof, as provided by Health and Safety Code section 25160, subdivision (b)(3) and California Code of Regulations, title 22, section 66262.23, or timely notify DTSC of the treatment, storage, or disposal facility's failure to return an executed manifest; provided, however, that notwithstanding the requirements of this paragraph, DISH may lawfully accumulate COVERED WASTE ITEMS at the COVERED FACILITIES for such longer periods of time allowed under law for "satellite accumulation," in accordance with California Code of Regulations, title 22, section 66262.34, subdivision (e), and at COVERED FACILITIES that generate less than 1,000 kilograms (kg) during any calendar month of HAZARDOUS WASTES and less than one kg during any calendar month of acutely or extremely HAZARDOUS WASTES, in accordance with California Code of Regulations, title 22, section 66262.34, subdivision (d).

**4.1.m. CERTIFICATION of Compliance With HAZARDOUS WASTE and UNIVERSAL WASTE Documentation Requirements:**  Upon the EFFECTIVE DATE, DISH shall: (i) at each COVERED FACILITY, be in compliance with the requirements of California Code of Regulation, title 22, sections 66262.20, 66262.23, 66262.40, subdivision (a), and 66273.39; and (ii) within thirty-five (35) calendar days from the EFFECTIVE DATE, provide written documentation of actions taken to ensure that each of the COVERED FACILITIES is, as of the EFFECTIVE DATE, in compliance with the requirement that each COVERED FACILITY keep copies of HAZARDOUS WASTE manifests and UNIVERSAL WASTE bills of lading or other record acceptable under applicable law and in accordance with California Code of Regulations, title 22, section 66262.40, subdivision (a) and 66273.39.  Such written documentation shall be in the form of a CERTIFICATION.  Such CERTIFICATION shall state the actions taken to ensure that as of the EFFECTIVE DATE, each of the COVERED FACILITIES is in compliance with the requirements of California Code of Regulations, title 22, section 66262.40, subdivision (a), and 66273.39.  The CERTIFICATION shall include and incorporate by reference a list of each of the COVERED FACILITIES where such actions have been taken to ensure compliance with this requirement.

\\

\\

**4.1.n. Program for Storage, Handling, Accumulation and Segregation of HAZARDOUS WASTE and UNIVERSAL WASTE:**  Upon the EFFECTIVE DATE, DISH shall maintain a program for the lawful storage, handling, and accumulation of HAZARDOUS WASTE and UNIVERSAL WASTE at its COVERED FACILITIES, including, but not limited to, the lawful segregation of items that are incompatible and the proper containment of items that are in leaking containers or in non-empty HAZARDOUS WASTE AEROSOL CANS or non-empty UNIVERSAL WASTE AEROSOL CANS, as provided by Health and Safety Code sections 25123.3 and 25201.16, and California Code of Regulations, title 22, sections 66262.34, 66265.171, 66265.172, 66265.173, 66265.174, 66265.176, 66265.177, 66273.33, 66273.33.5, and 66273.35.

**4.1.o. Other UNIVERSAL WASTE Requirements:**

**(i).**   Upon the EFFECTIVE DATE, DISH shall MANAGE UNIVERSAL WASTE at or from its COVERED FACILITIES in compliance with all applicable requirements contained in California Code of Regulations, title 22, division 4.5, chapter 23, section 66273.1 et seq., and the requirements of this Final Judgment on Consent.

**(ii).   UNIVERSAL WASTE HANDLER Notification Requirement:**  Upon the EFFECTIVE DATE, and for each COVERED FACILITY at which DISH is a UNIVERSAL WASTE HANDLER, DISH shall comply with the UNIVERSAL WASTE HANDLER notification requirements set forth in California Code of Regulations, title 22, section 66273.32. DISH shall provide to the People, upon request by counsel of record for the People, copies of these notices with the annual Status Reports required pursuant to Paragraph 22.

**(iii).   WASTE BATTERIES:**  Upon the EFFECTIVE DATE, DISH shall MANAGE at the COVERED FACILITIES DISCARDED or no longer usable BATTERIES as either HAZARDOUS WASTE or as UNIVERSAL WASTE (if applicable) and in accordance with the HWCL, and the requirements of this Final Judgment on Consent.

**(iv).   HAZARDOUS Non-Empty AEROSOL CANS:**  Upon the EFFECTIVE DATE, DISH shall, as appropriate, MANAGE, at the COVERED FACILITIES, HAZARDOUS WASTE AEROSOL CANS as UNIVERSAL WASTE AEROSOL CANS, in accordance with all

applicable requirements contained in California Code of Regulations, title 22, division 4.5, chapter 23, section 66273.1, et seq., or as HAZARDOUS WASTE AEROSOL CANS as required by Health and Safety Code section 25201.16.  This includes, without limitation, AEROSOL CANS that are HAZARDOUS and DISCARDED or no longer usable (e.g., without actuators) and are not "empty" as defined in California Code of Regulations, title 22, section 66261.7.

**4.1.p.** **Exports of COVERED WASTE ITEMS:**  Upon the EFFECTIVE DATE, DISH shall ensure that all exports of COVERED WASTE ITEMS from COVERED FACILITIES to a FOREIGN DESTINATION, if any, shall be lawful and in full compliance with the requirements of Cal. Code of Regulations, title 22, sections 66262.80 through 66262.83 (regarding HAZARDOUS WASTE) and section 66273.40 (regarding UNIVERSAL WASTE).

**4.1.q.** **HAZARDOUS WASTE Training:**

**(i).** **Training COVERED EMPLOYEES**:  DISH shall provide training to each COVERED EMPLOYEE (employed as of the EFFECTIVE DATE) as set forth in California Code of Regulations, title 22, section 66265.16 (pertaining to MANAGEMENT of HAZARDOUS WASTE) and section 66273.36 (pertaining to MANAGEMENT of UNIVERSAL WASTE), and as required by this Paragraph.  The obligations include, but are not limited to, the requirement to maintain on-site, or electronically available upon request, at each COVERED FACILITY: HAZARDOUS WASTE training records for then-current personnel until closure of the COVERED FACILITY, HAZARDOUS WASTE training records for former employees for at least three (3) years from the date the employee last worked at the COVERED FACILITY, and UNIVERSAL WASTE training records for at least three (3) years from the date the employee last MANAGED any UNIVERSAL WASTE at the COVERED FACILITY.

**(ii).** **Initial Training and Annual Review Training**:  DISH shall provide training as follows:

(a)     within ninety (90) calendar days after the EFFECTIVE DATE, DISH shall provide the HAZARDOUS WASTE training set forth in California Code of Regulations, title 22, section 66265.16, and UNIVERSAL WASTE training set forth in California Code of Regulations, title 22, section 66273.36, to all COVERED EMPLOYEES unless such

training was already provided to the COVERED EMPLOYEE within six (6) months prior to the EFFECTIVE DATE;

        (b)    for individuals who become COVERED EMPLOYEES after the EFFECTIVE DATE, DISH shall provide HAZARDOUS WASTE and UNIVERSAL WASTE training within thirty (30) calendar days after the COVERED EMPLOYEE commences employment with DISH; and

        (c)    DISH shall provide all COVERED EMPLOYEES "Annual Review Training" annually (at least once per year) as set forth in California Code of Regulations, title 22, section 66265.16, subdivision (c).  The "Annual Review Training" shall be in-person or through a computer based learning (CBL) course or courses, it shall be documented to sufficiently identify the training topics covered below, including the approximate duration of training, the date of training, and the names of the COVERED EMPLOYEES who attended the training, and the training topics shall include the following:

        (1)    With respect to each general type of COVERED WASTE ITEM (e.g., "ELECTRONIC DEVICES," "SERIALIZED EQUIPMENT," "OTHER USED ITEMS," "BATTERIES," etc.) and COVERED SCRAP METAL, DISH shall identify and clearly explain to COVERED EMPLOYEES the common types of items falling within each general type of COVERED WASTE ITEMS.  To aid COVERED EMPLOYEES in properly identifying the items that are included in each general type of COVERED WASTE ITEMS and COVERED SCRAP METAL, DISH shall use representative pictorial images or graphics that depict examples of the types of items for each type of COVERED WASTE ITEM and COVERED SCRAP METAL;

        (2)    DISH shall instruct COVERED EMPLOYEES not to dispose of any AEROSOL CANS, BATTERIES, ELECTRONIC DEVICES, remote controls, power adapters and supplies, field testing equipment, satellite service equipment containing a printed circuit board, SERIALIZED EQUIPMENT, OTHER USED ITEMS, COVERED WASTE ITEMS and COVERED SCRAP METAL into trash receptacles, trash cans, roll-off containers, bins, or dumpsters destined for municipal solid waste (garbage) landfills or onto the surface or subsurface

of the ground at any unauthorized location, or to a transfer station or landfill not authorized to receive HAZARDOUS WASTE.  DISH shall instruct COVERED EMPLOYEES that, if the Designated Facility Employee(s) for the COVERED FACILITY has verified that the municipal solid waste recycling facility that serves the COVERED FACILITY is authorized to accept COVERED SCRAP METAL and the COVERED EMPLOYEES have been so informed, COVERED SCRAP METAL may be placed in roll-off containers or other bins that are labeled as "SCRAP METAL" pursuant to Paragraph 4.1.i. and the contents of which are destined for municipal solid waste recycling facilities.  DISH shall also instruct COVERED EMPLOYEES that it is a violation of California law and this Final Judgment on Consent to illegally dispose of any of the above-referenced items and that COVERED EMPLOYEES must PROMPTLY report any illegal disposals of those items to DISH'S Designated Facility Employee(s) that have been designated for each COVERED FACILITY pursuant to Paragraph 4.1.q; and

(3)    For each general type of COVERED WASTE ITEM and COVERED SCRAP METAL, DISH shall provide instruction to each COVERED EMPLOYEE regarding how to properly MANAGE each general type as HAZARDOUS WASTE, UNIVERSAL WASTE, or COVERED SCRAP METAL, as appropriate.

(iii).  **COVERED EMPLOYEES Who Have Not Been Trained**:  DISH shall ensure that each COVERED EMPLOYEE who has not completed the training required by this Paragraph as of the dates required herein shall immediately cease the MANAGEMENT of all HAZARDOUS WASTE and UNIVERSAL WASTE until such time as that COVERED EMPLOYEE completes the required training.

(iv).  **Training Plan**:  Upon the EFFECTIVE DATE, for each COVERED EMPLOYEE at each COVERED FACILITY, DISH shall maintain, conveniently available to COVERED EMPLOYEES at the COVERED FACILITY, employee guidance designed to enhance employee awareness of any regulatory or statutory changes in the HWCL relevant to that COVERED EMPLOYEE's job functions.

(v).  **Contractor Notification**:  DISH shall, within ninety (90) calendar days from the EFFECTIVE DATE, and then annually, notify in writing each of its existing FIELD

SERVICE CONTRACTORS and REVERSE LOGISTICS CONTRACTORS in California whose employees use, handle, or otherwise MANAGE COVERED WASTE ITEMS, that they are required to comply with all applicable laws and regulations regarding the storage, handling and accumulation of HAZARDOUS WASTE and UNIVERSAL WASTE, including the requirement to provide training to applicable employees.  For any FIELD SERVICE CONTRACTORS or REVERSE LOGISTICS CONTRACTORS in California that are engaged or retained after the EFFECTIVE DATE, DISH shall provide such notice within thirty (30) calendar days of the execution of the contract and then annually.  The responsibilities of DISH pursuant to this paragraph are purely contractual, and do not require DISH to conduct or to supervise the training of any third parties.

**(vi).  <u>CERTIFICATION of Compliance with Training Requirements</u>:** Within one hundred twenty (120) calendar days from the EFFECTIVE DATE, DISH shall provide the People a CERTIFICATION that DISH is in compliance with the requirement that it provide training to all COVERED EMPLOYEES as specified in this Paragraph.  Such CERTIFICATION shall substantially be in the form of **Exhibit E**, attached and made a part of this Final Judgment on Consent by this reference.

**(vii).  <u>Audit Review of Training Records</u>:**  In performing its tasks specified within the scope of the third-party audits as outlined in Paragraph 4.1.s., the third-party auditor will audit the training records for DISH COVERED EMPLOYEES that are subject to the requirements of this Paragraph and will evaluate DISH's compliance with those requirements in the third-party audits to be performed.

**(viii). <u>Employees Exempt From UNIVERSAL WASTE Training</u>:**  For purposes of this Paragraph and with regard to UNIVERSAL WASTE training only, the term COVERED EMPLOYEES does not include employees who are exempted from UNIVERSAL WASTE training requirements pursuant to California Code of Regulations, title 22, section 66273.36(a).  FIELD TECHNICIANS and WAREHOUSE EMPLOYEES shall not fall within the exemption contained in California Code of Regulations, title 22, section 66273.36(a), for purposes of this Final Judgment on Consent.

**4.1.r. <u>Designation of Designated Facility Employees</u>:**  Within thirty-five (35) calendar days from the EFFECTIVE DATE, DISH shall for each COVERED FACILITY, designate one or more employee, manager or supervisor ("Designated Facility Employee(s)") who shall be responsible for ensuring that DISH and COVERED EMPLOYEES comply with the terms of this Final Judgment on Consent and with the provisions of the HWCL that are applicable to the COVERED FACILITIES.  DISH shall maintain a list of Designated Facility Employees by COVERED FACILITY, update this list to reflect any changes in the Designated Facility Employees, and provide the list(s) to counsel of record for the People with the annual Status Reports required pursuant to Paragraph 22, and upon request to an OTHER GOVERNMENTAL AGENCY with a legal right independent of this Final Judgment on Consent to inspect DISH's COVERED FACILITIES.  The duties of the Designated Facility Employee(s) shall include, but not be limited to: (i) collecting, reviewing and maintaining, on-site or electronically, copies of all written notices, inspection logs, lists, and COVERED EMPLOYEE training records referenced in this Final Judgment on Consent; and (ii) collecting, reviewing and maintaining, on-site or electronically, copies of all written government notices of violation and inspection reports, issued to DISH and pertaining to any of the COVERED FACILITIES.

**4.1.s. <u>Independent Third-Party Audits</u>:**  Within ninety (90) calendar days following the EFFECTIVE DATE, DISH shall contract for the services of an independent third-party auditor ("Auditor") to be chosen by DISH and thereafter be subject to reasonable approval by counsel of record for the People, who will conduct a total of three environmental compliance audits: one within eighteen (18) months, another within thirty-six (36) months, and another within fifty-four (54) months after the EFFECTIVE DATE.  All three (3) audits will include: (i) a programmatic review of DISH's program put into place for ensuring compliance with the requirements of this Final Judgment on Consent and the requirements of the HWCL; and (ii) facility-specific field inspection audits at half or more of the COVERED FACILITIES.

**(i).**    The Auditor, in conjunction with DISH, will develop an environmental compliance audit protocol meeting the requirements of this Final Judgment on Consent.  DISH shall provide the audit protocol to counsel of record for the People for review and comment within

ninety (90) calendar days after counsel of record for the People has given notice to DISH of its approval of the retention of the Auditor.  The People may provide any comments to the Auditor and DISH within sixty (60) calendar days following receipt of the protocol from DISH.  The Auditor shall incorporate any reasonable comments by the People into a revised protocol, except that if DISH disagrees with any of the incorporated comments, it may rely on Paragraph 6.3 of this Final Judgment on Consent to meet and confer with the People and to move the Court for further relief.

**(ii).**   In addition to any other audit objectives deemed appropriate by DISH, the environmental compliance audits shall evaluate:  (a) DISH's compliance with the HWCL, and (b) DISH's compliance with the requirements of this Final Judgment on Consent.  The environmental compliance audits shall also evaluate the implementation and effectiveness of DISH's environmental compliance program in California, including DISH's RECYCLING program and RECYCLING policies and procedures applicable to UNIVERSAL WASTES, to determine whether DISH is in compliance with the HWCL.

**(iii).**   The Auditor shall prepare a final environmental compliance audit report for each audit and submit the environmental compliance audit reports to DISH, with a copy to counsel of record for the People within sixty (60) calendar days following the three audit deadlines stated above in this Paragraph.  The environmental compliance audit reports shall include a complete description and discussion of all environmental audit objectives, scope, and criteria, audit activities, audit findings and audit conclusions, and recommendations, and it shall identify and discuss all audit evidence considered or relied upon to support the audit conclusions.  The environmental compliance audit reports shall also contain a brief description of any written notices of violation from a governmental agency and inspection reports directed to any COVERED FACILITY by any local, state, or federal agency that identifies any violation of any environmental protection law relating to the MANAGEMENT of any HAZARDOUS WASTE or UNIVERSAL WASTE.  Such reports shall also include a brief description of the disposition of any such noted violations, including whether DISH paid any fines, costs or other payments and what corrective measures, if any, were taken by DISH.  Within sixty (60) calendar days following DISH's receipt

1  of each environmental compliance audit report, DISH shall provide counsel of record for the

2  People with a plan to correct any deficiencies raised in the environmental audit reports.

3       **4.1.t.  Contingency Plans and Emergency Procedures:**  For each COVERED

4  FACILITY at which DISH generates 1,000 kilograms (kg) or more of HAZARDOUS WASTES

5  during any calendar month, or 1 kg or more of acutely HAZARDOUS WASTE during any

6  calendar month, pursuant to California Code of Regulations, title 22, section 66262.34, DISH shall

7  comply with the requirements of California Code of Regulations, title 22, sections 66265.50 to

8  66265.56.

9       **4.1.u. GENERATOR I.D.:**  For each COVERED FACILITY, DISH shall maintain a

10  GENERATOR Identification Number as required by California Code of Regulations, title 22,

11  section 66262.12.

12       **4.1.v. Documentation of WASTE Characterization and Analysis:** With respect to

13  WASTE managed at the COVERED FACILITIES, DISH shall keep records of any test results,

14  WASTE analysis, or other determinations made in accordance with California Code of

15  Regulations, title 22, sections 66262.11 and 66260.200 for at least three (3) years from the date

16  that the subject WASTE was last sent to on-site or off-site treatment, storage, or disposal, or for

17  the term of this Final Judgment on Consent, whichever is later.

18      **5.**    **PAYMENTS FOR CIVIL PENALTIES, SUPPLEMENTAL**

19            **ENVIRONMENTAL PROJECTS, AND COSTS**

20       DISH, without admitting or agreeing that there is any basis in law or fact for an assessment

21  of civil penalties, shall, within forty-five (45) calendar days following the EFFECTIVE DATE,

22  pay Five Million Dollars ($5,000,000) for claims for civil penalties, reimbursement of attorneys'

23  fees and costs, and supplemental environmental projects as set forth in Paragraphs 5.1 through 5.3

24  below.  In addition, DISH shall expend at least Five Hundred Thousand Dollars ($500,000) for

25  supplemental environmental compliance measures as set forth in Paragraph 5.4 below.  Within the

26  time period set forth above, payments identified in **Exhibits F, G** and **H** to the AG's Office for

27  claims for civil penalties and reimbursement for attorneys' fees and costs, and to the Craig

28  Thompson Environmental Protection Prosecution Fund, the DTSC, and the California Hazardous

Waste Protection Fund for supplemental environmental projects and/or reimbursement for costs shall be delivered to the AG's representatives identified in Paragraph 9 for distribution pursuant to the terms of this Final Judgment on Consent.  Payments of the amount owed to the remaining entities identified in **Exhibits F, G** and **H** shall be delivered to the Alameda DA's representatives identified in Paragraph 9 for distribution pursuant to the terms of this Final Judgment on Consent.

### 5.1. <u>Civil Penalties</u>

Pursuant to sections of the California Health and Safety Code and the California Business and Professions Code, DISH shall pay to the People three million, three hundred nineteen thousand and five hundred dollars ($3,319,500.00) to resolve claims for civil penalties.  This payment shall be allocated pursuant to Government Code section 26506, in accordance with the terms of **Exhibit F**, attached and made a part of this Final Judgment on Consent by this reference.

### 5.2. <u>Reimbursement of Costs of Investigation and Enforcement</u>

DISH shall pay eight hundred thirty-five thousand and five hundred dollars ($835,500.00) to the People for reimbursement of attorneys' fees, costs of investigation, and other costs of enforcement.  The costs of investigation and enforcement shall be allocated pursuant to Government Code section 26506 to the entities identified in and in accordance with the terms of **Exhibit G**, attached and made a part of this Final Judgment on Consent by this reference.

### 5.3. <u>Supplemental Environmental Projects</u>

DISH shall pay eight hundred forty-five thousand dollars ($845,000.00) for supplemental environmental projects.  The supplemental environmental projects shall be allocated pursuant to Government Code section 26506 to the entities identified in and in accordance with the terms of **Exhibit H**, attached and made a part of this Final Judgment on Consent by this reference.

### 5.4. <u>Supplemental Environmental Compliance Measures</u>

DISH will also expend (over five years) at least Five Hundred Thousand Dollars ($500,000) for the supplemental environmental compliance measures identified in **Exhibit I**, attached and made a part of this Final Judgment on Consent by this reference.

\\

\\

### 5.5.   Copy of Payments to the People's Representatives

DISH shall send an electronic confirmation of any payment made electronically to each of the People's representatives identified in Paragraph 9 within 1 business day of payment.

### 5.6.   Late Payments

DISH shall be liable for a civil penalty of Twenty-Five Thousand Dollars ($25,000) for each calendar day that any payment required pursuant to Paragraphs 5.1 and 5.2 is late.

### 6.   ENFORCEMENT OF FINAL JUDGMENT ON CONSENT AND PENALTIES

**6.1.**   The People may move this Court for additional relief for any violation of any provision of this Final Judgment on Consent, including but not limited to, contempt, additional injunctive provisions, or penalties in accordance with the particular legal standard that applies under the facts and circumstances at issue.  Except as otherwise set forth in this Final Judgment on Consent, nothing in this Final Judgment on Consent shall limit any rights of the People to seek any other relief or remedies provided by law, or the rights of DISH to defend against any such request by the People for such other relief or remedies.

**6.2.**   The Parties may also ask the Court for appropriate relief regarding any interpretation or dispute arising from or regarding the Final Judgment on Consent, subject to the meet and confer requirements in Paragraph 6.3 and provided that DISH may not seek to shorten the term of the injunctive provisions of this Final Judgment on Consent other than as provided in Paragraph 23.

**6.3.**   The Parties shall meet and confer at least fourteen (14) calendar days prior to the filing of any application or motion relating to this Final Judgment on Consent, including, but not limited to, any motion filed under Paragraph 6.1 or 6.2, and shall negotiate in good faith in an effort to resolve any dispute without judicial intervention; provided, however, that the fourteen (14) calendar day period referenced above shall be shortened to five (5) business days regarding any alleged violation of Paragraph 4 through Paragraph 4.1.v. of this Final Judgment on Consent. If the Parties are unable to resolve their dispute after meet and confer discussions, either Party may move this Court seeking a resolution of that dispute by the Court.  This "meet and confer"

procedure shall not apply to any emergency relief that the People may seek, in its sole discretion, or to any separate enforcement action.

### 7.   MATTERS COVERED BY THIS FINAL JUDGMENT ON CONSENT

**7.1.**   This Final Judgment on Consent is a final and binding resolution and settlement of any and all claims, violations, or causes of action alleged in the Complaint or that could have been alleged within the scope of the allegations set forth in the Complaint filed in this action regarding the MANAGEMENT of COVERED WASTE ITEMS and COVERED SCRAP METAL at the facilities listed in **Exhibit J**, attached and made a part of this Final Judgment on Consent by this reference, through the date of the filing of the Complaint.  The matters described in the previous sentence are "Covered Matters."  The AG and Alameda DA, and their respective successors, covenant not to sue DISH and/or its corporate affiliates or its and their successors, subsidiaries, predecessors, and the respective principals, executive officers, directors, shareholders, members, agents, representatives, employees or former employees of all the foregoing PERSONS and entities, for any Covered Matter and to the extent, if any, they: (1) handled or MANAGED (or were responsible for handling or MANAGING) COVERED WASTE ITEMS or COVERED SCRAP METAL, in connection with the facilities listed in **Exhibit J**, and (2) acted on behalf of DISH in doing so from January 1, 2005 through the date of filing of the Complaint ("The People's Covenant Not To Sue").  The People's Covenant Not To Sue any of the above PERSONS, parties or entities who are not signatories to this Final Judgment on Consent is expressly conditioned upon the express written consent and acknowledgment by such PERSONS, parties, and entities, given at the time that they assert the People's Covenant Not To Sue, that they are waiving their right to sue the People or any agency of the State of California, or the County of Alameda, or any of their respective officers, employees, representatives, agents or attorneys in accordance with the terms of Paragraph 7.8 of this Final Judgment on Consent. DISH's execution of the Stipulation filed in this action shall constitute such consent and acknowledgment on behalf of DISH and its successors, subsidiaries, predecessors and assigns, principals, executive officers, directors, shareholders, members, agents, representatives, employees or former employees and DISH represents that the signatories to the Stipulation will

bind them for purposes of the commitment in this paragraph.  For any PERSON, entity, or party not bound by the signatories to the Stipulation pursuant to the two previous sentences, the People's Covenant Not To Sue is not valid as to those PERSONS, entities, or parties absent their express written acknowledgment given at the time that they assert the covenant not to sue, that they waive their right to sue the People or any agency of the State of California or the County of Alameda, or any of their respective officers, employees, representatives, agents or attorneys in accordance with the terms of Paragraph 7.8.

> **7.2.**   Any claim, violation, or cause of action that is not a Covered Matter is a "Reserved Claim." Reserved Claims include, without limitation, any unknown violation, any violation that occurs after the date of the filing of the Complaint, any claims and causes of action referenced below in Paragraph 7.3, any claim, violation, or cause of action against DISH's independent contractors or subcontractors, any violations of law, statute, regulation or ordinance, if any, by DISH which are based on facts not addressed as a Covered Matter.  Except as provided in Paragraph 7.4, the Parties each reserve all rights and defenses at law, in equity, under contract or otherwise they may have (all of which are expressly reserved) as to any Reserved Claim.

> **7.3.**   Further, any claims or causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, 42 U.S.C. § 9601 et seq.), the California Hazardous Substance Account Act (State Superfund, Health & Safety Code, § 25300 et seq.), and Health and Safety Code section 25187, subdivision (b) (corrective action concerning a release of hazardous waste or a hazardous constituent into the environment) against DISH for performance of cleanup, corrective action, or response action for any actual past or future releases, spills, or disposals of HAZARDOUS WASTE or HAZARDOUS substances at or from the facilities listed in **Exhibit J** are not Covered Matters.

> **7.4.**   In any subsequent action that may be brought by the People, by and through counsel of record for the People, based on any Reserved Claim, DISH agrees that it will not assert that failing to pursue any Reserved Claim as part of this action constitutes claim-splitting, laches, or is otherwise inequitable because such claims should have been brought as part of this action, except that DISH may argue that the claim falls within the definition of "Covered Matter."  This

paragraph does not prohibit DISH from asserting that any statute of limitations or other legal or equitable defenses may be applicable to any Reserved Claims. If DISH asserts such defenses, the People, by and through counsel of record for the People, reserve their right to challenge such defenses.

7.5. In the event litigation is filed by an entity that is not a party to this action against DISH arising out of or related to a Covered Matter, DISH shall, within thirty-five (35) calendar days following service of such litigation upon DISH, notify counsel of record for the People of such litigation. Upon such timely notice, the People, by and through counsel of record for the People, will undertake a good faith effort to determine whether the subsequent litigation is barred by the terms of this Final Judgment on Consent and the principles of res judicata or collateral estoppel. If the People, by and through counsel of record for the People, determine that the subsequent litigation is barred by the terms of this Final Judgment on Consent and the principles of res judicata or collateral estoppel, the People, by and through counsel of record for the People, may appear in person or in writing in such subsequent litigation to explain the People's view of the effect of this Final Judgment on Consent on such litigation.

7.6. The provisions of Paragraph 7.1 are effective on the EFFECTIVE DATE. The continuing effect of Paragraph 7.1 is expressly conditioned on DISH's full payment of the amounts due under this Final Judgment on Consent.

7.7. Paragraph 7.1 does not limit the right and ability of the People to enforce the terms of this Final Judgment on Consent.

7.8. DISH covenants not to pursue any civil or administrative claims against the People or against any agency of the State of California, or against the County of Alameda, or against their officers, employees, representatives, agents or attorneys arising out of or related to any Covered Matter (unless such entities pursue claims against DISH related to any Covered Matter, in which case DISH reserves all rights it has to assert any rights, claims, and defenses it may have). Notwithstanding the prior sentence, DISH may seek determinations from the Court regarding the provisions of this Final Judgment on Consent.

\\

**8.**     **FORCE MAJEURE**

**8.1.**   It is not a breach of DISH's obligations under Paragraphs 4 through 4.1.v. if DISH is unable to perform due to a *Force Majeure* event.  Any event due to acts of God, acts of war, pandemics (e.g., COVID-19), or that arises beyond the reasonable control of DISH is a *Force Majeure* event if it prevents the performance of an obligation under the paragraphs above despite DISH's timely and diligent efforts to fulfill the obligation.  A *Force Majeure* event does not include financial inability to fund or complete the work, any failure by DISH's suppliers, contractors, subcontractors or other PERSONS contracted to perform the work for or on behalf of DISH (unless their failure to do so is itself due to a *Force Majeure* event), nor does it include circumstances that could have been avoided if DISH had complied with preventative requirements imposed by law, regulation, or ordinance.

**8.2.**   If DISH claims a *Force Majeure* event, it shall notify counsel of record for the People in writing within seven (7) calendar days following when DISH first learns that the event has prevented performance of an obligation in Paragraphs 4 through Paragraphs 4.1.v.  Within fourteen (14) calendar days after the date of the written notice to the People, DISH shall provide to the People a written explanation and description of the reasons for the prevention of performance, all actions taken or to be taken to prevent or mitigate the non-performance, the anticipated date for performance, an explanation of why the event is a *Force Majeure* event, and any documentation to support DISH's explanation.  Within fourteen (14) calendar days following receipt of such explanation, the People will notify DISH in writing whether the People agree or disagree with DISH's assertion of a *Force Majeure* event.  If the Parties do not agree that a particular delay or lack of performance is attributable to a *Force Majeure* event, either Party may petition the Court to resolve the dispute.  If either Party petitions the Court to resolve the dispute, it will neither preclude nor prejudice the People from bringing a motion to enforce any of the provisions of Paragraphs 4 through Paragraphs 4.1.v. against DISH as provided in Paragraph 6.

**8.3.**   The time for performance of the obligations under Paragraphs 4 through Paragraphs 4.1.v. of this Final Judgment on Consent that are affected by a *Force Majeure* event will be extended for such time as is necessary to complete those obligations.  An extension of the

1    time for performance of the obligations affected by the *Force Majeure* event shall not, of itself,

2    extend the time for performance of any other obligation.

3         **8.4.**   If the People chose to enforce the provisions of Paragraphs 4 through Paragraphs

4    4.1.v. against DISH for the failure to perform in spite of DISH'S claim of a *Force Majeure* event,

5    DISH may raise the claimed *Force Majeure* event as a defense to such an action and shall have the

6    burden of proof to demonstrate the *Force Majeure* event.

7        **9.**   <u>**NOTICE**</u>

8        All notices, submissions or requests that are required or permitted to be given pursuant to

9    this Final Judgment on Consent ("Notices"), and any responses thereto pursuant to this Final

10   Judgment on Consent ("Response"), shall be given in writing and shall be sent by facsimile

11   transmission; first-class certified mail, postage prepaid; or by overnight courier service, charges

12   prepaid, to the Party to be notified, addressed to such Party at the facsimile number(s) and address

13   set forth below, or such other facsimile number(s) and address(es) as such Party may have

14   substituted by written Notice (given in accordance with this Paragraph) to the other Party.  The

15   sending of such Notice or Response with confirmation of the complete transmission (in the case of

16   facsimile transmission) or confirmation of receipt (in the case of delivery by first-class certified

17   mail or by overnight courier service) shall constitute the giving thereof and are effective upon the

18   confirmation date.  All Notices or Responses shall be sent to:

19   For the People:

20                     Ed Ochoa
                  Senior Assistant Attorney General

21                     David Zonana
                  Supervising Deputy Attorney General

22                     Office of the Attorney General
                  600 West Broadway, 18th Floor

23                     San Diego, CA  92101
                  Facsimile:  (619) 645-2012

24

25      and

26                     Kenneth A. Mifsud
                  Assistant District Attorney

27                     Kevin Wong
                  Deputy District Attorney

28                     Alameda County District Attorney's Office

Consumer and Environmental Protection Division
7677 Oakport Street, Suite 650
Oakland, CA  94621
Facsimile: (510) 383-8615

For DISH:

DISH Network L.L.C.
Attn:  General Counsel
Facsimile: 303-723-2050

If by overnight courier service:
9601 South Meridian Blvd.
Englewood, CO  80112

If by first-class certified mail:
P.O. Box 6663
Englewood, CO  80155-6663

and

Richard R. Patch, Esq.
Coblentz Patch Duffy & Bass
One Montgomery Street, Suite 3000
San Francisco, CA  94104
Facsimile:  415-989-1663

and

Lori E. Kalani, Esq.
Cozen O'Connor P.C.
1200 19th Street, NW
Washington, DC  20036
Facsimile: 202-861-1905

Any Party may change its Notice name and address by informing the other Party in writing, but no change is effective until it is received.

## 10.   EFFECT OF FINAL JUDGMENT ON CONSENT

Except as expressly provided in this Final Judgment on Consent, nothing in this Final Judgment on Consent is intended nor shall it be construed to preclude the People, or any California state, county, city, or local agency, department, board or entity, or any CUPA from exercising its authority under any law, statute or regulation.  Furthermore, nothing in this Final Judgment on Consent shall be construed to create an employer-employee relationship between DISH and any third-party contractor or subcontractor, nor shall it be construed to relieve DISH from a legal obligation or create an obligation for DISH to act in contravention of any applicable

laws or regulations.  Except as expressly provided in this Final Judgment on Consent, DISH retains all of its defenses to the exercise of the aforementioned authority.

## 11.   NON-LIABILITY OF THE PEOPLE

The People shall not be liable for any injury or damage to PERSONS or property resulting from acts or omissions by DISH, its directors, officers, employees, agents, representatives, or contractors, in carrying out activities pursuant to this Final Judgment on Consent, nor shall the People be held as a party to or guarantor for any contract entered into by DISH, its directors, officers, employees, agents, representatives, or contractors in carrying out the requirements of this Final Judgment on Consent.

## 12.   NO WAIVER OF RIGHT TO ENFORCE

The People's non-enforcement of this Final Judgment on Consent, or any provision therein, shall neither be deemed a waiver of such provision nor in any way affect the validity of this Final Judgment on Consent.  Such non-enforcement shall not preclude it from later enforcing the same or any other provision of this Final Judgment on Consent.  Except as expressly provided in this Final Judgment on Consent, DISH retains all defenses allowed by law to any such later enforcement.  No oral advice, guidance, suggestions, or comments by employees or officials of any Party regarding matters covered in this Final Judgment on Consent shall be construed to relieve any Party of its obligations under this Final Judgment on Consent.

## 13.   FUTURE REGULATORY CHANGES

Nothing in this Final Judgment on Consent shall excuse DISH from meeting any more stringent requirements that may be imposed by applicable law or by any changes in the applicable law.  To the extent future statutory and regulatory changes make DISH's obligations conflict with or less stringent than those provided for in this Final Judgment on Consent, DISH may apply to this Court on noticed motion for modification of those obligations contained herein.

## 14.   APPLICATION OF FINAL JUDGMENT ON CONSENT

This Final Judgment on Consent shall apply to and be binding upon the People and upon DISH, including its successors and assigns.

\\

### 15.   **CONTINUING JURISDICTION**

The court shall retain continuing jurisdiction to enforce the terms of this Final Judgment on Consent and to address any other matters arising out of or regarding this Final Judgment on Consent.

### 16.   **ABILITY TO INSPECT COVERED FACILITIES AND COPY RECORDS AND DOCUMENTS**

On reasonable notice, DISH shall permit any duly authorized representative of the People, by and through counsel of record for the People, to inspect any of the COVERED FACILITIES and to inspect and/or copy DISH's records and documents to determine whether DISH is in compliance with the terms of this Final Judgment on Consent.  Nothing in this Final Judgment on Consent is intended to limit in any way the right of entry or inspection that any agency may otherwise have by operation of any law.  Furthermore, nothing in this Paragraph is intended to require access to or production of any documents that are protected from production or disclosure by the attorney-client privilege, attorney work product doctrine, any other applicable privilege, defenses, exemptions, or immunities afforded to DISH under applicable law, nor does it waive any of the objections or defenses to which DISH would be entitled in responding to requests for documents made by subpoena or other formal legal process or discovery (all of which are hereby expressly reserved).  DISH shall provide electronic copies of requested documents whenever such electronic copies are reasonably available and shall not have an obligation under this Final Judgment on Consent to print paper copies of records provided electronically.  This obligation shall not require DISH to alter its normal document retention policies (including but not limited to policies regarding backup tapes for electronic documents); provided, however, that DISH's policies and practices must comply with the HWCL.

### 17.   **PAYMENT OF LITIGATION EXPENSES AND FEES**

Except as otherwise provided in Paragraph 5.2 of this Final Judgment on Consent, DISH and the People shall each pay their own attorneys' fees, expert witness fees and costs and all other costs of litigation and investigation.

\\

**18.   CERTIFICATION UNDER PENALTY OF PERJURY**

Whenever this Final Judgment on Consent requires a CERTIFICATION by DISH, such CERTIFICATION shall be provided by an authorized DISH representative at a managerial level in charge of environmental compliance matters, or by an officer of DISH who is authorized to bind DISH.  Each CERTIFICATION shall read as follows:

"This declaration is based upon my personal knowledge, the books and records of DISH and/or information reported to me by other individuals in the organization with personal knowledge of such facts.  In reliance on the truth and accuracy of such books, records, and/or information so provided to me, and after conducting a reasonable investigation, I declare (or certify) under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief."

**19.   INTERPRETATION**

This Final Judgment on Consent was drafted equally by the Parties.  The Parties agree that the rule of construction holding that ambiguity is construed against the drafting party shall not apply to the interpretation of this Final Judgment on Consent.

**20.   INTEGRATION**

This Final Judgment on Consent constitutes the entire agreement between the Parties with respect to the subject matter set forth herein and may not be amended or supplemented except as provided for in the Final Judgment on Consent.  No oral representations have been made or relied upon other than as expressly set forth herein.

**21.   MODIFICATION OF FINAL JUDGMENT ON CONSENT**

This Final Judgment on Consent may be modified upon written consent by all of the Parties with the approval of the Court or, if written consent to the proposed modification cannot be obtained, on noticed motion by one of the Parties (provided that DISH may not seek to shorten the term of the injunction other than as provided in Paragraph 23).  Prior to filing any such noticed motion, the Parties shall follow the dispute resolution requirements set forth in Paragraph 6.3 of this Final Judgment on Consent.

\\

## 22.  STATUS REPORTS

Beginning six (6) months after the EFFECTIVE DATE, and every twelve (12) months thereafter, for as long as this Final Judgment on Consent remains in effect, DISH shall submit an annual status report (Status Report) to the People's representatives listed in Paragraph 9.  The Status Report shall: briefly summarize the actions that DISH has taken at each COVERED FACILITY during the previous year in order to comply with its obligations under this Final Judgment on Consent; disclose any notices of violation that DISH has received pertaining to the matters covered in this Final Judgment on Consent and disclose any corrective actions taken as a result; set forth any penalties that DISH has paid to any governmental agency for noncompliance arising from DISH's business operations in California for the matters covered in this Final Judgment on Consent; and attach the following:  An updated list of COVERED FACILITIES in the same format as **Exhibit A**; an updated list of entities used by or on behalf of DISH to RECYCLE COVERED SCRAP METAL from COVERED FACILITIES (Paragraph 4.1.i(iii)); any UNIVERSAL WASTE HANDLER notices since the last Status Report (Paragraph 4.1.o(ii)); and an updated list of Designated Facility Employees (Paragraph 4.1.r).  Each Status Report shall be signed under penalty of perjury by an appropriate DISH representative from management in accordance with the requirements of Paragraph 18.

## 23.  TERMINATION OF FINAL JUDGMENT ON CONSENT

At any time after this Final Judgment on Consent has been in effect for five (5) years, and provided DISH has paid any and all amounts due under the Final Judgment on Consent and has been in substantial compliance with the injunctive terms herein, DISH may, after first providing ninety (90) calendar days written notice to the People of the intent to file such a motion, file a motion requesting a Court order that the provisions of this Final Judgment on Consent shall have no further force or effect based on DISH'S demonstrated history, by a preponderance of the evidence, of substantial compliance with the Final Judgment on Consent.  If the People agree that DISH has demonstrated that it substantially complied with the obligations set forth in the Final Judgment on Consent, the People may file a statement of non-opposition to DISH's motion.  If the People disagree, the People may file a response setting forth the People's reasoning and

recommendations regarding the disposition of the motion.  Within forty-five (45) calendar days of the filing of DISH's motion, the People may file its response and within thirty (30) calendar days after the filing of the People's response, DISH may file a reply.  The Parties agree that DISH, subject to the Court's discretion, shall be entitled to DISH's requested relief upon the Court's determination that DISH has demonstrated, by a preponderance of the evidence, that it has substantially complied with the obligations set forth in this Final Judgment on Consent.

If the Court does not grant DISH's request, DISH may file a subsequent motion on a schedule determined by the Court but not less than six (6) months from the date of entry of the Court's order denying DISH's prior motion.

**IT IS ORDERED, ADJUDGED AND DECREED THAT THE AMENDED FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT BE ENTERED AS PROVIDED HEREIN.**

Dated:_____, 2022

_____
JUDGE OF THE SUPERIOR COURT
Delbert Gee / Judge

# EXHIBIT A

| Facility No. | City | Address | State | Zip |
|---|---|---|---|---|
| 1 | Atascadero | 2550 El Camino Real (remote site: 1661 South Victoria Ave., Unit 100, Ventura, CA 93003) | California | 93422 |
| 2 | Benicia | 4981 Park Road | California | 94510 |
| 3 | Hawthorne | 3236 West 131st Street | California | 90250 |
| 4 | Manteca | 3079 East Palm Avenue, Suite 106 | California | 95337 |
| 5 | Riverside | 4223 Fairgrounds Street | California | 92501 |
| 6 | Rocklin | 4487 Pacific Street | California | 95677 |
| 7 | Sacramento | 9844 Business Park Drive, Suite A | California | 95827 |
| 8 | San Diego | 8318 Miramar Mall | California | 92121 |
| 9 | San Jose | 2371 Bering Drive | California | 95131 |
| 10 | Santa Ana | 2602 South Halladay Street | California | 92705 |
| 11 | South El Monte | 1500 Potrero Avenue (remote site: 38910 30th Street E., Units 577 & 578, Palmdale, CA 93590) | California | 91733 |

# EXHIBIT B

## EXHIBIT B
### Labeling for Roll-off Containers and Dumpsters

Pursuant to Paragraph 4.1.d (i) of this Final Judgment on Consent, the required labels for roll-off containers and dumpsters, the contents of which are destined for municipal solid waste landfills or municipal solid waste recycling facilities that are not authorized to receive HAZARDOUS WASTE, shall be in a form substantially equivalent to the sample images below.



**EX B – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

Case No. 22CV008224





**EX B – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

# EXHIBIT C

**EXHIBIT C**
**Labeling for UNIVERSAL WASTE Accumulation Containers**

Pursuant to Paragraph 4.1.d (ii) of this Final Judgment on Consent, the required labels for UNIVERSAL WASTE accumulation containers shall be in a form substantially equivalent to the sample images below.

The UNIVERSAL WASTE label for containers:



**EX C – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

Samples of the representative pictorial images or graphics for common types of UNIVERSAL WASTE(S) that are to be accumulated in each container:

 # Electronic Waste
## Universal Waste

**DISH used tech tools (not warranty) and non-DISH electronics**

    

 # Battery Waste
## Universal Waste

**Rechargeable batteries (e.g. Lithium-ion, NiCd)**

 

**EX C – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

# EXHIBIT D

## EXHIBIT D
### Protocol for Weekly Inspection of Roll-Off Containers and Dumpsters

This protocol describes how DISH will comply with the requirement contained in Paragraph 4.1.e (i) of this Final Judgment on Consent for inspection of all roll-off containers and all dumpsters at each of DISH's COVERED FACILITIES used to collect items destined for municipal solid waste or recycling facilities ("Containers") to ensure that no COVERED WASTE ITEMS or COVERED SCRAP METAL are improperly discarded.

The inspections are to be conducted as follows:

I.    All Containers at each COVERED FACILITY will be inspected weekly, or more frequently as necessary to ensure that Containers are inspected before the content of those Containers is sent to a municipal solid waste or recycling facility.

II.   The inspection will be conducted by the COVERED FACILITY's Designated Facility Employee or another WAREHOUSE EMPLOYEE as designated by the Designated Facility Employee. The employee conducting the inspection is referred to herein as the "Inspecting Employee." The inspection shall be conducted by an Inspecting Employee who has been trained pursuant to Paragraph 4.1.q of the Final Judgment on Consent.

III.  The Inspecting Employee will take the following steps to inspect each Container:

**Step 1:** Open the Container.

**Step 2:** Conduct an initial visual inspection of the items in the Container, without entering the Container. Identify whether any COVERED WASTE ITEMS or COVERED SCRAP METAL are present in the Container.

**Step 3:** If COVERED WASTE ITEMS or COVERED SCRAP METAL are identified in **Step 2,** remove the COVERED WASTE ITEMS or COVERED SCRAP METAL and place the item(s) in the appropriate HAZARDOUS WASTE, UNIVERSAL WASTE, or SCRAP METAL container(s).

**Step 4:** Without entering the Container, use a shovel or other instrument to manipulate the Container contents in order to conduct further visual inspection of the items in the Container. Continue to manipulate and shift the items in the Container until a reasonably thorough inspection of the Container's contents has been conducted. Identify whether any COVERED WASTE ITEMS or COVERED SCRAP METAL are present in the Container.

**Step 5:** If COVERED WASTE ITEMS or COVERED SCRAP METAL are identified in **Step 4,** remove the COVERED WASTE ITEMS or COVERED SCRAP METAL and

**EX D – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

place the item(s) in the appropriate HAZARDOUS WASTE, UNIVERSAL WASTE, or SCRAP METAL container(s).

**Step 6:** Close the Container after inspection is complete.

**Step 7**: Complete the hazardous waste inspection log ("Log"). The completed Log should include the following information:

- COVERED FACILITY location

- Date and time of inspection

- Inspecting Employee's initials

- Whether or not COVERED WASTE ITEMS or COVERED SCRAP METAL were identified in the Containers

- If COVERED WASTE ITEMS or COVERED SCRAP METAL were identified in the Containers, the types of items found by category and the amount found for each category. The categories include:

  o Scrap Metal (Recycling)

  o Batteries (Universal Waste)

  o Electronic Devices (Universal Waste)

  o Aerosols (Universal Wastes)

  o Fluorescent Bulbs (Universal Waste)

  o Hazardous Waste Sealants, Hazardous Adhesives, and Hazardous Silicones (Non-Green)

**Step 8**: Save a copy of the completed Log in the designated location in the COVERED FACILITY or electronically.

**EX D – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

# EXHIBIT E

**EXHIBIT E**
**Certification of Compliance with Training Requirements**

I have read Paragraph 4.1.q. of the Final Judgment on Consent ("Final Judgment") and am aware of its provisions.

I hereby declare that, as of *[Insert Date]*, (1) HAZARDOUS WASTE training was provided to all COVERED EMPLOYEES as required by Paragraph 4.1.q (ii)(a) of the Final Judgment and (2) systems to provide and track required training were implemented at all COVERED FACILITIES as required by Paragraph 4.1.q (i) of the Final Judgment.

This declaration is based upon my personal knowledge, the books and records of DISH and/or information reported to me by other individuals in the organization with personal knowledge of such facts. In reliance on the truth and accuracy of such books, records, and/or information so provided to me, and after conducting a reasonable investigation, I declare (or certify) under penalty of perjury that the foregoing is true and correct to the best of my current knowledge, information, and belief.

/s/ _____

*[Insert Name of Authorized DISH Representative]*

*[Insert Position of Authorized DISH Representative]*

*[Insert Date]*

**EX E – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

Case No. 22CV008224

# EXHIBIT F

**Exhibit F**
**Disbursement of Payments For Claims For Civil Penalties**

| Row # | Attorney General and District Attorney's Office Receiving Payment | Allocation of Payments For Claims For Civil Penalties Pursuant to Government Code Section 26506 |
|---|---|---|
| 1 | Attorney General's Office *(see endnote)*[i] | $1,757,250 |
| 2 | Alameda County District Attorney's Office *(see endnote)*[ii] | $1,562,250 |
| | **TOTAL PENALTIES** *(see endnote)*[iii] | **$ 3,319,500** |

[i] Pursuant to the terms of the Final Judgment and Permanent Injunction on Consent, DISH shall pay the Attorney General the total amount of $1,757,250 for claims for civil penalties. The check for the payment to the Attorney General shall be made payable to the "California Department of Justice-Litigation Deposit Fund." The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.") and the internal docket number for this matter (OK2012506373). The money paid to the Attorney General pursuant to this Final Judgment and Permanent Injunction on Consent shall be administered by the California Department of Justice and shall be used by the Environment Section of the Public Rights Division of the Attorney General's Office, until all funds are exhausted, for any of the following purposes: (1) implementation of the Attorney General's authority to protect the environment and natural resources of the State pursuant to Government Code section 12600 et seq. and as Chief Law Officer of the State of California pursuant to Article V, section 13 of the California Constitution; (2) enforcement of laws related to environmental protection, including, but not limited to, Chapters 6.5 and 6.95, Division 20, of the California Health and Safety Code, and Government Code section 11135 et seq.; (3) enforcement of the Unfair Competition Law, Business and Professions Code section 17200, et seq., as it relates to protection of the environment and natural resources of the State of California; and (4) other environmental actions or initiatives which benefit the State of California and its citizens as determined by the Attorney General. Such funding may be used for the costs of the Attorney General's investigation, filing fees and other court costs, payment to expert witnesses and technical consultants, purchase of equipment, laboratory analyses, personnel costs, travel costs, and other costs necessary to pursue environmental actions or initiatives investigated or initiated by the Attorney General for the benefit of the State of California and its citizens.

[ii] Pursuant to the terms of the Final Judgment and Permanent Injunction on Consent, DISH shall pay the Alameda County District Attorney's Office (ACDAO) the amount of $1,562,250 for claims for civil penalties. The check for the payment to the ACDAO shall be made payable to the "Alameda County District Attorney's Office." The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al."). In lieu of receipt of an additional $195,000.00 for claims for civil penalties, the ACDAO has opted to allocate those funds to the entities identified, and in the respective amounts listed, as numbers 4, 5 and 6 of Exhibit H (Supplemental Environmental Projects) to this Final Judgment and Permanent

**EX F – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

**Exhibit F**
**Disbursement of Payments For Claims For Civil Penalties**

Injunction on Consent.  Furthermore, the $1,562,250.00 payment to the Alameda County District Attorney's Office for claims for civil penalties pursuant to this Final Judgment and Permanent Injunction on Consent are designated as non-supplanting funds to be used by the Alameda County District Attorney's Office only for the investigation and prosecution of environmental and consumer protection cases, including, without limitation, those cases that can potentially be brought as unfair competition actions pursuant to Business and Professions Code section 17200, et seq.

[iii] Pursuant to Government Code section 26506, "the proceeds of civil penalties or other monetary awards recovered in any civil action brought jointly in the name of the people of the State of California by the Attorney General" and any combination of one or more district attorneys "shall be paid as approved by the court."

**EX F – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

# EXHIBIT G

**Exhibit G**
**Reimbursement of Costs**

| Row # | California Attorney General, District Attorney and Agency Receiving Reimbursement of Costs | Allocation of Costs Pursuant to Government Code Section 26506 |
|---|---|---|
| 1 | California Attorney General's Office*(see endnote)*[i] | $ 410,000 |
| 2 | Alameda County District Attorney's Office[ii] | $ 410,000 |
| 3 | Department of Toxic Substances Control[iii] | $  15,500 |
| 4 | **Total Reimbursement of Costs** *(see endnote)*[iv] | **$ 835,500** |

[i] Pursuant to the terms of the Final Judgment and Permanent Injunction on Consent, DISH shall pay $410,000 to the California Attorney General's Office for reimbursement of the Attorney General's attorney's fees, costs of investigation and other enforcement costs incurred in connection with this matter. The check for the Attorney General's portion of costs shall be made payable to the "California Department of Justice-Litigation Deposit Fund." The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.") and the internal docket number for this matter (OK2012506373). The money paid to the Attorney General pursuant to this Final Judgment and Permanent Injunction on Consent shall be administered by the California Department of Justice and shall be used by the Environment Section of the Public Rights Division of the Attorney General's Office, until all funds are exhausted, for any of the following purposes: (1) implementation of the Attorney General's authority to protect the environment and natural resources of the State pursuant to Government Code section 12600 et seq. and as Chief Law Officer of the State of California pursuant to Article V, section 13 of the California Constitution; (2) enforcement of laws related to environmental protection, including, but not limited to, Chapters 6.5 and 6.95, Division 20, of the California Health and Safety Code, and Government Code section 11135 et seq.; (3) enforcement of the Unfair Competition Law, Business and Professions Code section 17200, et seq., as it relates to protection of the environment and natural resources of the State of California; and (4) other environmental actions or initiatives which benefit the State of California and its citizens as determined by the Attorney General. Such funding may be used for the costs of the Attorney General's investigation, filing fees and other court costs, payment to expert witnesses and technical consultants, purchase of equipment, laboratory analyses, personnel costs, travel costs, and other costs necessary to pursue environmental actions or initiatives investigated or initiated by the Attorney General for the benefit of the State of California and its citizens.

[ii] Pursuant to the terms of the Final Judgment and Permanent Injunction on Consent, DISH shall pay $410,000 to the Alameda County District Attorney's Office (ACDAO) for reimbursement of the ACDAO's attorney's fees, costs of investigation and other enforcement costs incurred in connection with this matter. The check for the ACDAO's portion of costs shall be made payable

**EX G - FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

to the "Alameda County District Attorney's Office."  The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.").

iii Pursuant to the terms of the Final Judgment and Permanent Injunction on Consent, DISH shall pay $15,500 to the Department of Toxic Substances Control (DTSC) for reimbursement of DTSC's costs of investigation and other enforcement costs incurred in connection with this matter.  The check for DTSC's portion of costs shall be made payable to the "Department of Toxic Substances Control."  The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.").

iv Pursuant to Government Code section 26506, "the proceeds of civil penalties or other monetary awards recovered in any civil action brought jointly in the name of the people of the State of California by the Attorney General" and any combination of one or more district attorneys "shall be paid as approved by the court."

**EX G - FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

# EXHIBIT H

Case No. 22CV008224

## Exhibit H

## SUPPLEMENTAL ENVIRONMENTAL PROJECTS[i][ii]

1.   **California Department of Toxic Substances Control.**  DISH shall provide the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) to be used by the California Department of Toxic Substances Control for the procurement of investigatory equipment to be utilized by the Office of Criminal Investigations.

2.   **Craig Thompson Environmental Protection Prosecution Fund.**  DISH shall provide the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000) to be used by the Craig Thompson Environmental Protection Prosecution Fund ("EPPF Fund") for purposes consistent with the mission of the Trust for the EPPF fund.

3.   **California Hazardous Waste Protection Fund.**[iii] DISH shall provide the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000) to be used to establish a "California Hazardous Waste Protection Fund" which will provide grant funding to non-profit programs and projects that focus on preventing or mitigating hazardous waste contamination and providing education regarding proper hazardous waste management (including universal waste and household hazardous waste) in disadvantaged communities as designated under SB 535 and AB 1550 on the CalEPA website.

4.   **Western States Project.**[iv] DISH shall provide the amount of ONE HUNDRED THOUSAND DOLLARS ($100,000) to be used by the Western States Project for the purpose of providing training consistent with the objectives of the Project.

5.   **Alameda County Fish and Game Commission.**[v] DISH shall provide the amount of SEVENTY THOUSAND DOLLARS ($70,000) to be used by Alameda County Fish and Game Commission for purposes consistent with the objectives of the Commission.

6.   **Alameda County Hazardous Materials Program Training and Resource Trust Fund.**[vi] DISH shall provide the amount of TWENTY-FIVE THOUSAND DOLLARS ($25,000) to the Alameda County Hazardous Materials Program Training and Resource Trust Fund to fund hazardous waste enforcement training programs for Alameda County environmental enforcement personnel.

[i] The agencies and entities receiving funds for the supplemental environmental projects defined herein, including the agency or entity administering the "California Hazardous Waste Protection Fund" as set forth herein, shall ensure that these funds are expended only for the purposes specified in this Exhibit H and as ordered under this Final Judgment and Permanent Injunction on Consent, and shall until the exhaustion of the funds provide annual reports describing the specific use of the funds and describing the activities completed. These reports shall be submitted to the People pursuant to Paragraph 9 of this Final Judgment and Permanent Injunction on Consent. Upon request by the People, these agencies and entities shall provide any supporting documentation of specific use of the funds and/or the activities completed. Failure to comply with these reporting requirements shall result in the forfeiture of all funds provided and shall entitle the People to seek further legal remedies as provided by law.

[ii] Pursuant to Government Code section 26506, the proceeds of any civil penalties or other monetary awards recovered in any civil action brought jointly in the name of the People of the State of California by the Attorney General and any combination of one or more district attorneys shall be paid as approved by the Court.

[iii] DISH's check in the amount of $300,000 for this Supplemental Environmental Project shall be made payable to the "California Department of Justice-Litigation Deposit Fund." The check shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.") and the internal docket number for this matter (OK2012506373). The money paid to the Attorney General pursuant to this provision of the Final Judgment and Permanent Injunction on Consent shall be held by the California Department of Justice and shall be disbursed to the administrator of the "California Hazardous Waste Protection Fund," as selected and approved by the People, to administer the fund and provide grant funding as set forth in item 3 above.

[iv] Funding for this Supplemental Environmental Project was allocated by the Alameda DA in lieu of receipt of $100,000 payment for claims for civil penalties. The check shall be made payable to the "Western States Project" and shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.). The check shall be delivered to the Alameda DA pursuant to pursuant to Paragraph 5 of this Final Judgment and Permanent Injunction on Consent.

[v] Funding for this Supplemental Environmental Project was allocated by the Alameda DA in lieu of receipt of $70,000 payment for claims for civil penalties. The check shall be made payable to the "Alameda County Fish and Game Commission" and shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.). The check shall be delivered to the Alameda DA pursuant to pursuant to Paragraph 5 of this Final Judgment and Permanent Injunction on Consent.

[vi] Funding for this Supplemental Environmental Project was allocated by the Alameda DA in lieu of receipt of $25,000 payment for claims for civil penalties. The check shall be made payable to the "Alameda County Hazardous Materials Program Training and Resource Trust Fund" and shall bear on its face the case name ("People v. DISH Network California Service Corporation, et al.). The check shall be delivered to the Alameda DA pursuant to pursuant to Paragraph 5 of this Final Judgment and Permanent Injunction on Consent.

# EXHIBIT I

# EXHIBIT I
## Supplemental Environmental Compliance Measures

Pursuant to Paragraph 5.4 of this Final Judgment on Consent ("Final Judgment"), DISH shall incur costs of or expend at least $500,000 over five years starting from the EFFECTIVE DATE for Supplemental Environmental Compliance Measures in California ("SECMs") as set forth below. The status reports required pursuant to Paragraph 22 of the Final Judgment shall summarize the SECMs expenditures by DISH during the reporting period.

If DISH has not incurred costs of or expended $500,000 for these SECMs during the term of this Final Judgment, then DISH shall pay the difference between the costs incurred or expenditures and $500,000 as an additional payment to the People, divided evenly between the California Attorney General's Office and the Alameda County District Attorney's Office, within forty-five (45) days of the end of the term of the Final Judgment.

### A. California-Specific Environmental Compliance Personnel and Consultants

Prior Expenditures: DISH represents that it has previously expended approximately $100,000 to hire third-party consultants to advise the company on compliance with California Hazardous Waste Control Law requirements, and to hire and train a full-time employee located in California with primary responsibility to oversee compliance.

SECMs: DISH agrees to continue to maintain for a minimum of five years from the EFFECTIVE DATE at least one California employee whose primary responsibility will be overseeing DISH's compliance with California environmental laws and the terms of this Final Judgment. Estimated five-year budget (which may be adjusted as implementation occurs): $550,000.

DISH reserves the right to adjust the titles and structure of environmental personnel over the term of the Final Judgment and to have additional DISH employees participate in DISH's over-and-above compliance with California Hazardous Waste Control Law and the terms of this Final Judgment ("over-and-above compliance").

### B. Enhanced Compliance Programs

Prior Expenditures: DISH represents that it previously expended approximately $175,500 on the following: DISH environmental personnel have conducted on-site inspections at COVERED FACILITIES and have taken other supervisory and oversight actions. In addition, employees have been trained to conduct, and do conduct, weekly inspections at COVERED FACILITIES of trash and recycling roll-off containers and dumpsters used by DISH to collect items destined for municipal landfills or municipal recycling facilities. In addition, DISH obtained hazardous and universal waste collection carts designed to facilitate the sorting and proper management of hazardous and universal wastes at COVERED FACILITIES, and conducted related employee training.

**EX I – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

SECMs: DISH agrees to maintain for a minimum of five years from the EFFECTIVE DATE a program of inspections and training for over-and-above compliance. This over-and-above compliance program has an estimated five-year budget of $500,000 (which may be adjusted as implementation occurs), and includes the following:

1. Enhanced Weekly Waste Inspections

Pursuant to Paragraph 4.1.e of the Final Judgment, DISH shall continue at the COVERED FACILITIES weekly inspections of the contents of trash and recycling roll-off containers and dumpsters used to collect items destined for municipal landfills or municipal recycling facilities over five years from the EFFECTIVE DATE.

DISH reserves the right to increase these inspections to more than weekly.

2. Unannounced Inspections and Recordkeeping Review

DISH intends to continue, to the extent feasible given health and safety protocols and governmental guidance, for an environmental compliance manager to conduct at least one annual unannounced, on-site inspection at the COVERED FACILITIES of the contents of trash and recycling roll-off containers and dumpsters used to collect items destined for municipal landfills or municipal recycling facilities, the inspection recordkeeping, and other requirements for over-and-above compliance over five years from the EFFECTIVE DATE.

DISH reserves the right to conduct inspections and record reviews virtually, and also to increase these unannounced inspections to more than once annually. DISH or its counsel also may contract with third parties to perform any part of these unannounced inspections or any additional over-and-above compliance inspections over five years from the EFFECTIVE DATE.

3. Enhanced Training, Instruction, and Guidance

DISH intends to continue to conduct at least annual enhanced training of COVERED EMPLOYEES for policies and procedures (including the recycling of non-hazardous waste scrap metal) for over-and-above compliance. This enhanced training includes online education training and tracking programs, educational and guidance materials for COVERED EMPLOYEES, and additional informational signage for COVERED EMPLOYEES at COVERED FACILITIES. DISH intends to continue this enhanced training, instruction, and guidance over five years from the EFFECTIVE DATE.

DISH reserves the right to modify the content and delivery method of the training, instruction, and guidance over time, and include additional recipients of guidance materials, if appropriate in light of new California Hazardous Waste Control Law requirements or improved technology options.

**EX I – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

## C.  Recycling of Scrap Metal

<u>Prior Expenditures:</u> DISH has elected to recycle scrap metal WASTE at the COVERED FACILITIES even though recycling of non-hazardous WASTE scrap metal is not required by the California Hazardous Waste Control Law. DISH represents that it previously expended approximately $238,000 on recycling such scrap metal, as well as related training for COVERED EMPLOYEES.

<u>SECMs:</u> DISH agrees to continue this over-and-above compliance practice over five years from the EFFECTIVE DATE. Estimated five-year budget (which may be adjusted as implementation occurs): $450,000.

DISH reserves the right to modify this recycling program over time if appropriate in light of new or improved waste reduction and recycling practices and options.

# EXHIBIT J

| City | Address | State | Zip | Open Date | Closed Date |
|------|---------|-------|-----|-----------|-------------|
| **Rocklin** | 4487 Pacific Street | CA | 95677 | 09/22/2004 | |
| **Benicia** | 4981 Park Road (remote site: 496 Hearn Ave, Units C12 & D13, Santa Rosa, CA 95407 – *closed 10/25/2020*) | CA | 94510 | 12/01/2006 | |
| **Atascadero** | 2550 El Camino Real (remote site: 1661 South Victoria Ave., Unit 100, Ventura, CA 93003 – *Units 101-103 closed February 2020*) | CA | 93422 | 02/01/2008 | |
| **Manteca** | 3079 East Palm Avenue, Suite 106 (*former address 11675 East Palm Avenue*) | CA | 95337 | 09/17/2010 | |
| **Hawthorne** | 3236 West 131st Street | CA | 90250 | 06/22/2011 | |
| **South El Monte** | 1500 Potrero Avenue (remote site: 38910 30th Street E., Units 577 & 578, Palmdale, CA 93590) | CA | 91733 | 01/01/2012 | |
| **Santa Ana** | 2602 South Halladay Street | CA | 92705 | 02/01/2014 | |
| **Riverside** | 4223 Fairgrounds Street | CA | 92501 | 07/01/2015 | |
| **San Jose** | 2371 Bering Drive | CA | 95131 | 10/05/2016 | |
| **Sacramento** | 9844 Business Park Drive, Suite A | CA | 95827 | 12/23/2017 | |
| **San Diego** | 8318 Miramar Mall | CA | 92121 | 07/06/2018 | |
| **Manteca** | 1262 Dupont Court | CA | 95336 | 04/01/2008 | 08/31/2010 |
| **South San Francisco** | 1 South Linden Ave, Suite 7 | CA | 94080 | 12/01/2008 | 02/28/2014 |
| **Santa Ana** | 2625 S Hickory Street | CA | 92707 | 05/31/2007 | 04/07/2014 |
| **Riverside** | 1860 Chicago Ave, Suite H-3 | CA | 92507 | 06/19/2002 | 07/01/2015 |
| **Placerville** | 4580 Greenstone Road, Suite B | CA | 95667 | 06/03/2008 | 05/01/2016 |
| **Santa Clara** | 2960 Gordon Ave | CA | 95051 | 08/15/2002 | 06/30/2016 |
| **Petaluma** | 1997 S McDowell Blvd Extension | CA | 94954 | 07/01/2007 | 06/30/2016 |
| **Sonora** | 15001 Camage Ave | CA | 95370 | 04/01/2008 | 01/17/2017 |
| **Diamond** | 6125 Enterprise Drive, Suites 10 & 11 | CA | 95619 | 05/09/2016 | 02/28/2017 |

| City | Address | State | Zip | Open Date | Closed Date |
|------|---------|-------|-----|-----------|-------------|
| **Chatsworth** | 10000 and 10010 Remmet Ave (combined, adjoining suites) | CA | 91311 | 07/15/2007 | 07/31/2017 |
| **Sacramento** | 5601 Warehouse Way | CA | 95826 | 02/28/1984 | 12/23/2017 |
| **Corona** | 705 East Harrison Street, Suite 100 | CA | 92879 | 08/01/2004 | 04/15/2018 |
| **San Diego** | 8312 Miramar Mall | CA | 92121 | 01/24/2001 | 07/15/2018 |
| **Hayward** | 21335 Cabot Blvd | CA | 94545 | 02/15/2005 | 08/01/2018 |

**EX J – FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT**

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>04/06/2022<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _S. Gould_ Deputy<br>S. Gould |
| PLAINTIFF/PETITIONER:<br>People of the State of California | |
| DEFENDANT/RESPONDENT:<br>DISH NETWORK CALIFORNIA SERVICE CORPORATION, a Colorado Corporation et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>22CV008224 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Judgment Amended Order Final Judgment and Permanent Injunction on Consent entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Kenneth Mifsud
Alameda County District Attorney's Office
ken.mifsud@acgov.org

Chad Finke, Executive Officer / Clerk of the Court

Dated: 04/06/2022

By:

_S. Gould_

S. Gould, Deputy Clerk