Case 2:22-cv-07775-JWH-KES   Document 88   Filed 08/30/22   Page 1 of 20   Page ID #:2917

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC<br><br>  Plaintiff,<br><br>v.<br><br>DIRECTV, LLC, et al.,<br><br>  Defendants. | **Case No. 2:22-CV-00075-JRG**<br><br>**LEAD CASE** |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION;<br>DISH NETWORK L.L.C.; and<br>DISH NETWORK SERVICE L.L.C.,<br><br>  Defendants. | **Case No. 2:22-CV-00076-JRG**<br><br>**MEMBER CASE** |

**DISH'S OPPOSITION TO ENTROPIC'S CROSS-
MOTION TO TRANSFER**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................... 1

II. ENTROPIC'S PROCEDURAL GAFFES ALONE JUSTIFY DENIAL OF ITS CROSS-MOTION ........... 2

III. VENUE IS NOT PROPER FOR DISH IN THE CENTRAL DISTRICT OF CALIFORNIA .................. 3

IV. COLORADO, NOT CALIFORNIA, IS THE BEST AND MOST CONVENIENT VENUE HERE .......... 6

    A. DISH And Its Witnesses Are in Colorado ................................................... 6

    B. The Central California Is Not The Best Venue For The Claims Against DISH ......... 9

        1. Private Factors Relating To The Location Of Witnesses And Documents ........ 9

        2. The Public Interest Factors Relating to Efficiency ........................... 12

        3. Other Public Interest Factors ................................................ 14

V. CONCLUSION ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

CASES

*AlexSam, Inc. v. WageWorks, Inc.*,
  No. 3:19-cv-4538, 2020 U.S. Dist. LEXIS 239983 (N.D. Cal. Dec. 21, 2020)..........................3

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
  6 F.4th 1283 (Fed. Cir. 2021) ....................................................................................................6

*Capella Photonics, Inc. v. Infinera Corp.*,
  No. 2:20-cv-77-JRG, 2021 WL 518478 (E.D. Tex. Feb. 10, 2021) ..........................................4

*In re DISH Network L.L.C.*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021)............................................passim

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990).................................................................................................................1, 3

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ................................................13

*In re Google Inc.*,
  No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ......................................................9

*Hoffman v. Blaski*,
  363 U.S. 335 (1960)..................................................................................................................4

*Huang v. Huawei Techs. Co.*,
  No. 2:16-cv-947-JRG-RSP, 2019 WL 5901033, (E.D. Tex. Jan. 11, 2019) .............................3

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................................10

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ................................................................................................10

*MHL Tek, LLC v. Nissan Motor Co.*,
  No. 2:07-cv-289-TJW, 2009 WL 440627 (E.D. Tex Feb. 23, 2009)......................................14

*Progme Corp. v. Twenty-First Century Fox*,
  No. 2:18-cv-11057, 2020 WL 1445808 (E.D. Mich. Mar. 25, 2020).......................................3

*R2 Sol'ns LLC v. Target Corp.*,
  No. 4:21-cv-92, 2021 WL 2550908 (E.D. Tex. June 22, 2021) ...............................................8

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017)..............................................................................................................4

*Tivo v. Cisco Sys., Inc.*,
    No. 2:12-cv-311-JRG, 2012 WL 3307407 (E.D. Tex Aug. 13, 2012) ................................14

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011) ..........................................................................................13

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010) ..........................................................................................4

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ..............................................................................................3

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018) ..........................................................................................2

**STATUTES**

28 U.S.C. § 1332(c)(1) ...............................................................................................................4

28 U.S.C. § 1400(b) ...................................................................................................................3

28 U.S.C. § 1404(a) ............................................................................................................1, 3, 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 8(a)(1) ................................................................................................................2

Fed. R. Civ. P. 45(c) .................................................................................................................12

Fed. R. Civ. P. 12(b)(3) ...................................................................................................1, 6, 15

Local Rule CV-7 ........................................................................................................................2

## I. INTRODUCTION

Entropic's forum-shopping attempt here is more than just unusual; it is unprecedented. The plaintiff, an entity nominally headquartered in Texas, filed suit in this District and pleaded that venue is proper here. But it has now conceded that the case does *not* actually belong here. Not only that, but—instead of consenting to transfer to Colorado, where DISH is located—Entropic instead *cross-moves* to transfer to a third district. Entropic justifies these gymnastics by suggesting that it will be "efficient" for the Central District of California to keep this case together with Entropic's suit against DISH's direct competitor, DirecTV. But any minimal "efficiency" to be gained does not justify transfer to California. Even the single case that Entropic cites to support the supposed propriety of its cross-motion, *Ferens v. John Deere Co.*, explains that Section 1404(a) does not exist to "create or multiply opportunities for forum shopping." 494 U.S. 516, 523 (1990).

DISH agrees that the Eastern District of Texas is not the right venue for this case, but the Central District of California is also wrong. Dispositively, this case could not have been brought in that District, and Entropic has not met its burden to establish otherwise. DISH will move to dismiss under Rule 12(b)(3) if transferred to Central California. Moreover, even if the Central District of California were a permissible venue for DISH, which it is not, Section 1404(a)'s convenience factors do not weigh in favor of transferring DISH there, as described below.

Entropic identifies no intervening events that justify its flip-flop. DISH's (and DirecTV's) witnesses, accused products, and documents have not changed, nor have the inventors' and suppliers' roles and locations changed. The law has also not changed. The Federal Circuit decided the primary case upon which DISH relies, *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) ("*DISH*"), months before Entropic filed its case. In *DISH*, the Federal Circuit granted DISH's mandamus petition and ordered transfer to Colorado of a case

before Judge Albright with near-identical facts to those here.  No different result is merited here.

Entropic should not be permitted to treat filing suits like throwing a dart.  Entropic should not get a second shot to choose a new location, and it particularly should not get to do so based on convenience for a DISH competitor, rather than DISH itself.  DISH asks the Court to grant DISH's transfer motion, deny Entropic's cross-motion, and send this case to Colorado, where it belongs.

## II. Entropic's Procedural Gaffes Alone Justify Denial Of Its Cross-Motion

On April 27, 2022, DISH filed its motion to transfer to Colorado, explaining the many reasons why the District of Colorado is the most convenient venue for this case.  Dkt. 25 ("DISH Mot.").  Entropic then insisted on full venue discovery, including RFPs (completed in May) and a venue deposition of DISH's declarant (completed in June).  Dkts. 28, 30.  Six weeks later, after an extension, Entropic surprised DISH with its cross-motion to transfer.  Dkt. 73 ("Cross-Mot.").

Entropic's cross-motion is rife with rule violations and procedural problems, including:

- In a single paper, Entropic filed a "combined" response to DISH's motion *and* its own cross-motion.  This violates Local Rule CV-7(a), which provides that "[e]ach pleading, motion, or response to a motion must be filed as a separate document."[1]

- Entropic failed to confer as required by Local Rule CV-7(h).  Although Entropic in-house counsel asked DISH in-house counsel if DISH would stipulate to transfer to the Central District of California (an offer that DISH immediately declined), Entropic's in-house counsel never mentioned that Entropic would file a motion on this issue.

- Entropic initially failed to file the Certificate of Conference required by Local Rule CV-7(i).  Dkt. 73.  It then filed a corrected brief that includes only a non-compliant Certificate that does not provide any detail about who conferred or when.  Dkt. 75.

- Entropic filed an unauthorized "supplement" to its cross-motion.  Dkt. 83 ("Supp.").

- Entropic ignores that it is the plaintiff's burden to plead venue in its complaint.  *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018) ("[T]he Plaintiff bears the burden of establishing proper venue."); *see also* Fed. R. Civ. P. 8(a)(1).  Entropic's First Amended Complaint against DISH (Dkt. 17), contains no allegations that venue is proper in the Central District of California.

---

[1] By contrast, when DISH considered filing a combined brief, it reached a stipulation that was approved by the Court permitting it to do so.  Dkt. 84.  And Entropic is wrong that it is "exempt[]" (Dkt. 87 at 2) from the relevant rule.  The rule in question allows a combined brief only if a movant seeks two forms of relief *in the alternative*, which is not the situation here.

DISH could locate no other decision addressing a procedural posture identical to here. The closest analogue involved a plaintiff filing a suit against multiple defendants in an uncontested venue (unlike here, where venue is contested) and then the plaintiff later asking for a change of venue for efficiency. *Progme Corp. v. Twenty-First Century Fox*, No. 2:18-cv-11057, 2020 WL 1445808 (E.D. Mich. Mar. 25, 2020). The court there denied the motion to transfer and questioned the plaintiff's attempted forum-shopping. *Id.* at *3 (defendant's arguments about forum-shopping were "not lacking in merit"); *see also Huang v. Huawei Techs. Co.*, No. 2:16-cv-947-JRG-RSP, 2019 WL 5901033, at *1 (E.D. Tex. Jan. 11, 2019) (denying transfer motion filed by plaintiff after summary judgment loss; "Plaintiff's motion is troubling, given that Plaintiff chose to file this case in this district.") (emphasis in original), *aff'g denial of transfer* 787 Fed. Appx. 723 (Fed. Cir. 2019); *AlexSam, Inc. v. WageWorks, Inc.*, No. 3:19-cv-4538, 2020 U.S. Dist. LEXIS 239983 (N.D. Cal. Dec. 21, 2020) (granting plaintiff's motion to transfer based on changed circumstances).[2]

A proper Section 1404(a) motion also compares the venue that currently has the case to the proposed transferee venue. *E.g.*, *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). But Entropic makes no arguments in favor of this District, as it should have done to oppose DISH's transfer motion, nor could it plausibly do so. It has given up on the argument that this case belongs in Texas. Instead, Entropic compares the District of Colorado and the Central District of California, arguing that California is more convenient than Colorado.

### III. VENUE IS NOT PROPER FOR DISH IN THE CENTRAL DISTRICT OF CALIFORNIA

Under 28 U.S.C. § 1400(b), venue is proper for patent infringement actions in a judicial

---

[2]  The single case cited by Entropic in defense of its procedural maneuver, *Ferens v. John Deere*, dealt with state choice-of-law questions that arose **after** a Section 1404(a) transfer, when the Pennsylvania transferee court refused to apply a Mississippi statute of limitations. 494 U.S. at 519-21. The Supreme Court, although cognizant of forum-shopping concerns in that case, rooted the logic of its dicta approving the transfer in the *Erie* doctrine. *Id.* at, *e.g.*, 524. No such considerations apply here, where the patent laws are federal, and there are no *Erie* issues.

district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

A domestic corporate defendant is deemed to reside in its state of incorporation and in the state where it has its principal place of business. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017); 28 U.S.C. § 1332(c)(1). It is undisputed that the three DISH defendants reside in Colorado. ECF No. 17 ¶¶ 3, 4, 6. Two are Colorado companies (the third, Nevada), and all three are headquartered in Colorado. *See id*. None resides in California.

The three DISH entities named as defendants here also do not maintain any regular and established places of business in the Central District of California, and Entropic has not met its burden of showing otherwise. *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (transferee district must be a proper district); *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (movant has burden to demonstrate good cause for transfer); *Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-cv-77-JRG, 2021 WL 518478, at *1 (E.D. Tex. Feb. 10, 2021) (same). Collectively considering all of the evidence submitted with both Entropic's irregular cross-motion **and** unauthorized supplement, that material falls woefully short of Entropic's required showing. Entropic's evidence amounts to nothing more than an attempt to take out of context a handful of activities and quotes about different DISH affiliates that are not defendants in this action.

For instance, the consent judgment in Entropic's Supplemental Exhibit 1 (Dkt. 83-2) where "DISH" supposedly admitted that venue is proper in the Central District of California involved different DISH entities than those named here—specifically, the defendants in that case were Dish Network California Service Corporation and Echosphere L.L.C., neither of which is a defendant here. Just because the two DISH entities in that suit were referred to in shorthand as "DISH" does **not** mean that any of the three DISH defendants named here have admitted that venue is proper

*for them* in the Central District of California.

Likewise, Entropic's Exhibits 2 to 9 (and B to E) show "DISH" warehouses, retail stores, and installation technicians in Central California, but those photos, job listings, and advertisements reveal ***nothing*** about which "DISH" entities operate those facilities. And, in fact, warehouses, retail stores, and installations in that venue are not the activities of any of the named defendants. Instead, Dish Network ***California*** Service Corporation generally manages warehouses and employs installation technicians in California. Minnick Supp. Decl., ¶ 4. Indeed, it is no accident that the consent judgment in Exhibit 1 had named that California entity as a defendant; it is because that entity operates in California. Similarly, the identified retail outlets are (like all DISH retailers) owned by independent third parties. Minnick Supp. Decl., ¶ 5. Driving this point home, Entropic's Exhibits F and G reference a "DISH Local Retailer" called "X-Factor Communications" in Central California. These documents make DISH's point: the three DISH defendants here are ***not*** the ones that engage in the activities on which Entropic relies. Minnick Supp. Decl., ¶ 5.

Entropic points to alleged DISH "regular and established places of business" in Hawthorne, Riverside, Santa Ana, and South El Monte, California, out of which the above retail, warehouse, and installation activities are said to operate. Supp. at 2. But none of the three named DISH defendants is the tenant or owner of any of the identified properties. Minnick Supp. Decl., ¶ 6. In fact, the three defendants here have no places of business (owned or leased) in the Central District of California at all, either at the addresses identified by Entropic or otherwise. *Id.*, ¶ 7.

Entropic's evidentiary showing here is exceptionally weak. Indeed, Entropic implicitly acknowledges that the documents upon which it relies do not relate to the named defendants' activities when it concludes by saying that DISH Network L.L.C. "has ratified these facilities [i.e., those of unnamed affiliates] as its own" and that that "Dish Network Corporation is the parent of

both entities [not clear which entities referenced] and exercises control over their activities, establishing an agency relationship and rendering the facilities its places of business." Supp. at 3.

Through those conclusory, throw-away sentences, and with no citation to evidence or legal authority, Entropic seemingly seeks to pierce the corporate veil and hold DISH Network L.L.C. and/or DISH Network Corporation responsible for acts of affiliates that are not defendants here. Entropic did not even recite the relevant legal standard,[3] much less make a plausible showing for veil-piercing. Even Entropic's own evidence reinforces that Dish Network *California* Service Corporation is a separate company from the named defendants here. *See, e.g.*, Exs. A at 3 (only mention of California entity shows that it is separate from Dish Network Service L.L.C.), F-G (X-Factor). Entropic has not met its burden for its cross-motion, and it is too late to fix this in a reply.

The DISH defendants here do not have regular and established places of business in, and are not residents of, the Central District of California. Entropic could not have properly sued them there. If transferred there, DISH will move to dismiss under Rule 12(b)(3)(A)(i). Simply put, § 1404(a) does not permit transfer to the Central District of California in these circumstances.

## IV. COLORADO, NOT CALIFORNIA, IS THE BEST AND MOST CONVENIENT VENUE HERE

### A. DISH And Its Witnesses Are in Colorado

As explained in its motion to transfer, all three named DISH defendants are headquartered in Colorado, and two of the three are Colorado companies (the third, Nevada). DISH Mot. at 3. The DISH engineers who worked on the accused products and systems, as well as relevant prior art systems, are almost entirely located in Colorado. *Id.* at 3-4 (citing evidence). The same is true of other DISH witnesses likely to testify about sales and the relationship between DISH and the

---

[3] *See, e.g.*, *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.,* 6 F.4th 1283, 1289-90 (Fed. Cir. 2021) (rejecting theory of venue over defendant based on ratification of in-district affiliate activities and bare allegations of control by parent companies; "the fact that the entities work together in some aspects … is insufficient to show ratification").

original owner of the asserted patents. *Id.* at 4. DISH's accused products and systems are used throughout the U.S.A. and have no special connection to (much less a regular and established place of business in) the Central District of California. *See id.* at 12. Denver is centrally located and convenient for witnesses from all over. *Id.* at 10. Moreover, the judicial caseload of Colorado judges is similar to that of judges in Texas, *id.* at 14, and the Central District of California (discussed below). **None of this is disputed.** On analogous facts, the Federal Circuit recently granted mandamus, referred to Colorado as "the center of gravity" for a similar patent dispute, and ordered transfer there. *DISH*, 2021 WL 4911981, at *2. No different result in warranted here.

After months of venue discovery, the primary rebuttal from Entropic to these points is to discount the importance of DISH itself—i.e., the ***defendants*** to this case. DISH identified eight current and former employees (seven in Colorado) who are likely to have relevant technical information and potentially testify at trial. DISH Mot. at 4-5, 8; Dkt. 25-1, ¶¶ 8, 13-16. Entropic attacks DISH for not having identified with specificity the "unique" testimony of each of these witnesses,[4] but Entropic has nobody to blame but itself: Entropic accuses entire systems that are made up of multiple components from multiple vendors, as well as set-top boxes themselves. The range of infringement allegations drives the range and number of implicated DISH engineers.

Moreover, even if a different set of DISH engineers ultimately has the knowledge needed for this case, Entropic has not rebutted the core point that DISH's headquarters and engineers are ***in Colorado*** because that is where DISH resides. Dkt. 25-1, ¶ 5. Entropic does not say, for instance, that it needs no technical evidence from DISH to prove its case and that it will not rely on DISH witnesses at trial. Such a statement would not be credible. It is indisputable that Colorado

---

[4] The same criticism could be leveled at Entropic, who identifies nothing unique for each of the California witnesses. For instance, there are five surviving inventors, one of whom is in Seattle. Entropic does not explain why unique testimony is needed from those in California.

is DISH's home, and its employee-witnesses (as well as most former employee-witnesses) are there. It is also indisputable that, even if there are some important supplier-witnesses with knowledge about components of the accused systems (discussed below), DISH's systems as a whole are accused, and DISH remains the most knowledgeable party about how the components of those systems are set up and configured to form those systems, as well as sales, marketing, and many of DISH's defenses. *Id.* at, *e.g.*, ¶ 8.

DISH's documents, moreover, are primarily in Colorado, and Entropic overstates to suggest otherwise. Because "[m]ost evidence in patent infringement cases comes from the defendant … 'the place where the defendant's documents are kept weighs in favor of transfer to that location.'" *R2 Sol'ns LLC v. Target Corp.*, No. 4:21-cv-92, 2021 WL 2550908, at *2 (E.D. Tex. June 22, 2021) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). Although Mr. Minnick testified that DISH has a data center (i.e., servers) in Cheyenne, Wyoming (just over the Colorado border and a two-hour drive from DISH's headquarters) where certain (not all) financial and technical documents are stored, he was clear that many documents can be accessed by DISH employees in Colorado only by contacting a DISH "Agile administrator," such as Melissa Lopez. Dkt. 73-2 ("Ex. H") at 40:10-43:11. Entropic notably did not ask Mr. Minnick, but Ms. Lopez is located in Colorado and pulls all documents at DISH's facilities in Colorado. Minnick Supp. Decl., ¶ 8. Entropic also ignores Mr. Minnick's testimony about how DISH engineers access documents stored in Jira, DISH's software document storage system, including from those engineers' locations in Colorado. Ex. H at 40:10-43:11. Likewise, in carving out consideration of documents that are not "uniquely" stored in hard copy in Colorado, Entropic creates its own standard for what documents matter, ignoring that hard-copy documents are relevant, even if they

are also available electronically. *Cf. DISH*, 2021 WL 4911981, at *2 (criticizing district court for discounting importance of electronically stored documents).

None of this, moreover, in any way suggests that DISH has any relevant documents (much less witnesses) in the Central District of California. Even accepting that the servers for some of DISH's documents are just over the Wyoming border, that hardly supports transfer to Los Angeles.

**B.     The Central California Is Not The Best Venue For The Claims Against DISH**

As DISH's transfer motion transfer acknowledged, the convenience of third parties is an important consideration in evaluating convenience. And, here, there are a variety of third-party witnesses spread around the world, including an inventor in the Seattle area, several inventors in Southern California, patent prosecutors in Chicago and Southern California, and suppliers in the UK, Taiwan, North Carolina, Central California, and Southern California. Entropic tries to make third-party witnesses in "or around" the Central District of California trump the showing that DISH has made that this case belongs in Colorado. Entropic's efforts should be rejected.

Notably, there is a fundamental disconnect between Entropic's infringement contentions and the timing of its sudden solicitousness to DISH's suppliers. The contentions focus on DISH systems (composed of a long list of components, including LNBFs, set-top boxes, and cables, routers, and gateways supposedly in between). But, for its cross-motion, Entropic now belatedly feigns care about convenience for third parties, which will supposedly benefit from Entropic's new preferred jurisdiction, but Entropic paid no heed to these witnesses when it chose to sue in Texas.

**1.     Private Factors Relating To The Location Of Witnesses And Documents**

Convenience for witnesses is the most critical factor in any transfer analysis. *See, e.g.*, *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017) ("probably the

single most important factor in a transfer analysis"); *DISH*, 2021 WL 4911981, at *2.  DISH's witnesses are in Colorado, and travel to California is indisputably inconvenient to them.

Entropic ignores this reality, as discussed above, § IVA *supra*, in favor of focusing almost entirely on non-party witnesses.  This approach is, of course, wrong.  The convenience of party witnesses **must** be considered in any proper analysis.  *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting an approach that discounted importance of this factor for party witnesses); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) (error for district court to not consider inconvenience for party witnesses).

As to non-party witnesses, Entropic would have this Court believe that the majority of them are in the Central District of California, but—in actuality—few reside in that District.  Instead, even setting aside third-party witnesses in Seattle, Chicago, North Carolina, the UK, and Taiwan, most of the witnesses that Entropic carefully identifies as being "in California," "in or around the Central District of California," or "in or adjacent to the Central District of California," Cross-Mot. at, *e.g.*, 1, 2, 5, 6, 7, 8, 10, 11, are in San Diego—within the **Southern** District of California.  For instance, there are some inventors in the Southern District of California and one in the Western District of Washington, but **none** in the Central District.  DISH Mot., Exs. 19-21.

As to third-party suppliers that Entropic elevates over DISH, DISH does not dispute that they are likely to be most knowledgeable about their own components or that transfer for third-party convenience can make sense in some circumstances.  This is not such a case, however.  The plain truth is that supplier components are relevant here because they are incorporated into DISH's accused systems.  They are not alleged to infringe on their own, and Entropic's failure to attempt any discovery from a single third party to date (even as Entropic has done so for DISH) reinforces that DISH discovery is what is most important to Entropic.

Additionally, it is an overstatement to suggest—as Entropic does—that DISH's suppliers are concentrated in the Central District of California. DISH has identified four suppliers: Broadcom, MaxLinear, Global Invacom ("GI"), and MTI.[5] DISH Mot. at 4, n.3. Of these, only one, Broadcom, admittedly has some of its engineers in Central California. *Id.*; *see also* Ex. H at 46:25-47:6. MaxLinear, for its part, is in Carlsbad, which is in the **Southern** District of California. Cross-Mot. at 6. The third-listed supplier, GI, is a UK company with a facility in North Carolina. DISH Mot. at 4, n.3. Although Mr. Minnick testified that he "believed" that GI engineers are in California, he also said he was not sure whether DISH had any in-person meetings with them (Ex. H at 62:21-63:7), and there is no evidence that GI has any California office. The final supplier, MTI, is headquartered in Taiwan. DISH Mot. At 4, n.3. Although MTI has an office in California, Entropic has presented no evidence that relevant MTI personnel are there. *Id.* Indeed, Entropic has ignored the only available evidence on point, which is Mr. Minnick's testimony that MTI manufacturing occurs *outside* the United States. Ex. H at 34:8-23.

Sorted methodically like this, it becomes apparent that there is only one supplier that may have relevant witnesses in the Central District of California. Of the other three, one is in the Southern District of California, and two do not have any relevant California connection.

To the extent that Entropic argues that compulsory process is available for witnesses in Southern California, it has not sufficiently supported this conclusion. Parts of San Diego County are >100 miles from certain Central District courthouses,[6] and distances depend on which California courthouse would hypothetically receive this case; Entropic has assumed the

---

[5] DISH initially identified a fifth supplier, Rafael Micro, in Taiwan, but has since realized that Rafael Micro is not actually relevant to Entropic's present infringement theory.

[6] For example, the distance between the Edward J. Schwartz courthouse in San Diego and the First Street courthouse in Los Angeles in 121 miles. Bervik Decl., Ex. 41.

southernmost court in Santa Ana, Cross-Mot. at 6, Ex. J, K, but provides no basis for this. *See* Fed. R. Civ. P. 45(c) (subpoena power can be used to require a person to travel ≤100 miles to trial—i.e., to the courthouse where it is held). In these circumstances, the Court should not give much credence to discussion about witnesses "adjacent to" and "around" the Central District.

Turning to documents, DISH's relevant documents are not in California. *See* § IVA, *supra*. To the extent third-party documents exist in "or around" the Central District of California, those materials are equally available via subpoena whether the case is in Texas, California, or Colorado.

### 2. The Public Interest Factors Relating to Efficiency

DISH and DirecTV are unrelated competitors, with different employees, facilities, and accused products. Nevertheless, Entropic's main reason for proposing that DISH should be transferred to Central California is because of the supposed "efficiencies" of keeping the DISH and DirecTV cases together. The Federal Circuit rejected arguments that DISH and DirecTV should be kept together previously, *DISH*, 2021 WL 4911981, at *4 (ordering transfer despite presence of cases against DirecTV and others in Texas), and no different result is merited here.

Entropic engages in a sleight of the hand to suggest that the same supplier components are used in DISH's and DirecTV's accused systems, pointing to a particular "series" (Entropic's word, not Broadcom's) of Broadcom chips (i.e., "the BCM455X series chips," Cross-Mot. at 12) that supposedly overlap between DISH and DirecTV. This argument is riddled with flaws. First, it ignores the entirety of the accused systems, which contain many components. Second, the only support for the overlap is Entropic's own word from its contentions: it points to no technical documents or party admissions to suggest *any* overlap of chips. Third, it is often the case that chips in the same "series" or "product line" do *not* operate identically, and Entropic presents only supposition that the chips used by DISH and DirecTV operate identically (or even similarly) here.

Fourth, there is no Broadcom chip named "BCM455X," to DISH's knowledge. Indeed, when the "X" placeholder is replaced with an actual number, it is clear that "BCM455X" could be any of ten different chip product numbers, and different chips typically have different functionality. Minnick Supp. Decl., ¶ 9. The operation of one product in the "series" (e.g., BCM4552) proves nothing about the operation of another (e.g., BCM4551 or BCM4558). In short, the supposed "efficiencies" to be gained because of any alleged component overlap are not as billed by Entropic.

Other efficiencies are similarly illusory. This not a standards-based case, and there are different accused systems at issue for DISH and DirecTV. *Compare* DISH FAC, ¶ 62 *with* DirecTV FAC, ¶ 125. Damages issues are unique, and DISH will present its own innovation story to the jury, which will differ from DirecTV's. There are also DISH-specific defenses here. The only efficiency to be gained is during claim construction, and that slight efficiency is insufficient to override the many reasons that this case should not be transferred to the Central District of California. *See DISH*, 2021 WL 4911981, at *4 (finding that any "judicial economy considerations in keeping this case in Texas are insufficient to outweigh the clear benefits of transfer").

Entropic makes much of the fact that the DirecTV and DISH cases have been consolidated here, with DirecTV as the "lead" case.[7] But the designation of which case is the "lead" reflects only which has a lower case number, not that one case overrides the other for transfer analysis or that DISH must inexorably follow DirecTV to California. Transfer analysis is specific by defendant, and a single defendant is often split from a consolidated group and transferred to a jurisdiction where the others do not go. *E.g.*, *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (suits involving same patent do not override transfer); *GeoTag, Inc. v.*

---

[7] Entropic even quotes the DirecTV brief. Cross-Mot. at 8. But DirecTV asks to be transferred to California, so this is hardly a compelling "admission" by DISH.

*Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6-7 (E.D. Tex. Jan. 14, 2013) (granting defendant's transfer request despite presence of other defendants in transferor venue).

Notably, even Entropic's cited decisions do not suggest that transfer to California is advisable. For instance, in denying a motion to transfer in *Tivo v. Cisco Sys., Inc.*, this Court cited its "intimate knowledge" of the facts of that case and the "numerous actions" already undertaken with respect to the defendant's products. No. 2:12-cv-311-JRG, 2012 WL 3307407, at *1. Here, the California court has no familiarity with the case. *MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-cv-289-TJW, 2009 WL 440627, at *7 (E.D. Tex Feb. 23, 2009), is similarly inapposite (as well as outdated). *MHL* involved a situation where the transferee jurisdiction had already transferred a declaratory judgment case to Texas, so it did not make sense to send defendants back there. *MHL Tek*, 2009 WL 440627, at *7. No such circumstances exist here.

### 3. Other Public Interest Factors

The suggestion that local interests favor the Central District of California over Colorado should be viewed with skepticism. Although some third-party witnesses are admittedly located in "or around" Central California, they are not defendants. None bears the risk of a judgment. Entropic has identified no concrete impact that this case will have on California as a whole, much less the Central District. Entropic itself is not in the Central California, for instance. Colorado, by contrast, is home to the three named defendants here and is where alleged acts of infringement have primarily occurred and where any judgment will be felt. Its interests should not be ignored.

Finally, the caseloads of the Colorado and the Central District are similar (528 pending per Colorado judge vs. 483 per pending Central District of California judge). Dkt. 74-15. There are a much larger number of civil cases that have been pending in Central California for more than three years, however. *Id.* (showing 881 such cases (8.7%) in Central California and only 178 such

cases (5.9%) in Colorado). All told, this factor therefore appears to be neutral.

## V. CONCLUSION

The Court need not decide this motion because the proper vehicle for resolving venue lies in DISH's own transfer motion, which DISH respectfully requests that the Court grant. To the extent that the Court reaches the cross-motion, however, it would be improper to move this case to the Central District of California because venue is legally improper for the DISH defendants there. From a convenience perspective, it also makes no sense to send DISH to a district where it has no documents or witnesses. Whatever limited efficiency is associated with keeping the DISH and DirecTV cases together is outweighed by judicial interests in preventing forum-shopping. If Entropic had wanted to sue DISH in the Central District of California, it should have done so from the outset (at which point DISH would have moved to dismiss under Rule 12(b)(3)). But, in any event, Entropic did not. DISH respectfully requests that the Court deny Entropic's cross-motion.

Dated:  August 30, 2022

Respectfully submitted,

/s/ *Amanda Tessar*
Amanda Tessar, CO Bar No. 33173
ATessar@perkinscoie.com
Matthew C. Bernstien, CA Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone:  (303) 291-2300
Facsimile:  (303) 291-2400

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C,  AND DISH NETWORK SERVICE L.L.C**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served August 30, 2022 to all counsel of record, via the Court's CM/ECF system

*/s/ Melissa R. Smith*
Melissa R. Smith