# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DIRECTV, LLC and AT&T SERVICES, INC.,<br><br>*Defendants.* | Case No. 2:22-cv-00075-JRG<br>(Lead Case)<br><br>JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>*Defendants*. | Case No. 2:22-cv-00076-JRG-RSP<br>(Member Case) |

**ENTROPIC COMMUNICATIONS, LLC'S OPPOSITION TO DIRECTV, LLC AND AT&T SERVICES, INC.'S MOTION TO SEVER AND STAY**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

LEGAL STANDARDS ..........................................................................................................6

ARGUMENT...........................................................................................................................7

I.  This Court already has rejected applying the customer-suit exception within a single lawsuit, like here. ...................................................................................................7

II. This Court should reject Defendants' request to create new law and expand the customer-suit exception to parent corporations. ...................................................7

III. Even if the Court holds that the customer-suit exception can apply to a parent corporation, AT&T is not a mere reseller..............................................................9

IV. Removing AT&T from this lawsuit prejudices Entropic....................................10

CONCLUSION......................................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Aspen Tech., Inc. v. Kunt*,
  No. 4:10-cv-1127, 2011 WL 86556 (S.D. Tex. Jan. 10, 2011)......................................................6

*CCD Holdings, LLC v. Cenergy USA, Inc.*,
  No. 4:19cv102 JM, 2021 WL 4429239 (E.D. Ark. Sept. 27, 2021) ..........................................7

*GeoTag, Inc. v. Frontier Commc'ns Corp.*,
  No. 2:10-cv-265-JRG, 2013 WL 693852 (E.D. Tex. Feb. 26, 2013) .........................................6

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)....................................................................................................6

*Rembrandt Wireless Techs., LP v. Apple Inc.*,
  No. 2:19-CV-00025-JRG, 2019 WL 6344471 (E.D. Tex. Nov. 27, 2019)................................9

*RPost Holdings v. DocuSign*,
  No. 2:12-CV-00683-JRG, 2019 WL 1982531 (E.D. Tex. May 3, 2019) ..........................1, 6, 7

*SAES Getters S.p.A. v. Aeronex, Inc.*,
  219 F. Supp. 2d 1081 (S.D. Cal. 2002).................................................................................2, 8

*Wapp Tech Ltd. P'ship v. Bank of America Corp.*,
  No. 4:18-cv-519, 2019 WL 3890171 (E.D. Tex. Aug. 19, 2019).............................................6

## INTRODUCTION

Defendants ask this Court to sever and stay the claims against AT&T under the customer-suit exception. But Defendants fail to mention that this Court has expressly rejected application of the customer-suit exception "to a *single* suit that encompasses both manufacturers and their customers" —despite citing the case themselves multiple times. *See RPost Holdings v. DocuSign*, No. 2:12-CV-00683-JRG, 2019 WL 1982531, at *2 (E.D. Tex. May 3, 2019) (citing *In re Dell Inc.*, 600 Fed. App'x 728, 730 (Fed. Cir. 2015)); Mot. to Sever & Stay 9, 11, ECF No. 53. This Court has held that the customer-suit exception "only applies where there are *multiple* suits that involve the same allegations of infringement against a manufacturer and its down-stream customers." *RPost Holdings*, 2019 WL 1982531, at *2 (emphasis in original). Here, DIRECTV and AT&T are defendants in the same lawsuit. That fact alone is dispositive.

Beyond ignoring this Court's jurisprudence, Defendants also do not acknowledge that they ask this Court to make new law. Until August of last year, AT&T wholly owned DIRECTV. Indeed, according to AT&T, DIRECTV was "owned and operated by AT&T."[1] Moreover, DIRECTV was fully integrated as part of AT&T's video business unit—AT&T not only sold DIRECTV's products and services alongside its own video services, but the two also shared gateway architecture and other technology installed and serviced by the same employees. Defendants' brief relegates this history to one vague sentence: "[f]rom July 23, 2015 to July 31, 2021—before this case was filed—DIRECTV was in the same corporate family as AT&T, but that is no longer the case." Mot. to Sever & Stay 3, ECF No. 53. Defendants sidestep AT&T's past role as DIRECTV's parent and its involvement with the accused products and services prior to the spin-off.

---

[1] Ex. 1, *AT&T & TPG Close DIRECTV Transaction*, AT&T (Aug. 2, 2021), https://about.att.com/story/2021/att_directv.html.

The customer-suit exception Defendants move for is a permissive court-created doctrine. Defendants have cited no case in which any court has applied it to a corporate parent (or even any corporations in the same family). Entropic has located only one case that appears to have addressed a similar situation, and it came out the opposite way: that case reasoned that the customer-suit doctrine is inapplicable to parties within a corporate family, which are not true "secondary parties." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081 (S.D. Cal. 2002). And this makes perfect sense. The rationale for the customer-suit exception simply is inapplicable where the alleged customer is the owner and parent of the alleged manufacturer.

Moving from past infringement to the present, AT&T is no mere reseller. Even now, AT&T owns 70% of DIRECTV, jointly manages and operates the company, and controls two seats on DIRECTV's board of directors. AT&T remains deeply entangled with DIRECTV's business via numerous commercial agreements requiring the companies provide a variety of services to each other. This reflects the depth of the historical and continuing integration, even as AT&T has attempted to spin off the DIRECTV business.

Defendants have cited no cases applying the customer-suit exception in such circumstances—either pre- or post-transaction. This Court should decline to expand the customer-suit exception to corporate parents, especially where the corporate parent has represented they "operated" the alleged manufacturer of the accused products.[2] Accordingly, the Court should deny Defendants' motion to sever and stay the claims against AT&T.

---

[2] *Id.*

**FACTUAL BACKGROUND**

AT&T acquired DIRECTV on July 24, 2015.[3] AT&T represented that "[t]he newly combined company—the largest pay TV provider in the United States and the world—will offer millions of people more choices for video entertainment on any screen from almost anywhere, any time."[4] With that purchase, AT&T also announced that "[i]n the coming weeks, AT&T will launch new integrated TV, mobile and high-speed Internet offers that give customers greater value and convenience."[5] AT&T stated that it would combine DIRECTV and AT&T's Home Solutions operations under "AT&T Entertainment & Internet Services," which also included AT&T U-Verse and AT&T TV Now.[6] Indeed, AT&T stated that the reason it purchased DIRECTV was to offer "simple, integrated packages of TV, mobile and Internet services."[7]

AT&T began integrating DIRECTV's products and services immediately. "With AT&T and DIRECTV, [AT&T's] goal was to become the premier integrated communications company in the world."[8] For example, "[j]ust 17 days after close, [AT&T] launched [its] new all-in-one wireless and video bundle and [its] 'Customer Day One' experience."[9] AT&T also: (1) provided its sales reps with "a single software app" to sell AT&T and DIRECTV products; (2) "[m]erged separate AT&T and DIRECTV customer data into a single 'data warehouse'"; (3) "[e]nabled a single credit check for all services across AT&T and DIRECTV"; (4) "[p]rovided a single bill for

---

[3] *See* Ex. 2, *AT&T Completes Acquisition of DIRECTV*, AT&T (July 24, 2015), https://about.att.com/story/att_completes_acquisition_of_directv.html.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] Ex. 3, *DIRECTV FAQ, Why is AT&T buying DIRECTV?*, AT&T (July 24, 2015), https://about.att.com/newsroom/att_dtv_faq.html.
[8] Ex. 4, Pam Parisian, *Managing the Unprecedented IT Integration of AT&T and DIRECTV was All About Keeping Customers First*, AT&T B<small>LOG</small> (Feb. 4, 2016), https://about.att.com/innovationblog/020416integration.
[9] *Id.*

all customers' wireless, broadband and video services"; (5) "[a]ctivated seamless authentication, single logon and self-service capabilities via directv.com, att.com and the AT&T mobile apps"; and (6) "[r]outed customers who buy multiple services from [AT&T] to integrated customer service centers" enabling customers to "speak to [a] single rep for help with anything they need."[10] AT&T also immediately integrated all installation and technical servicing of DIRECTV's products and services, "with what [AT&T called] a 'single truck roll.'"[11] In AT&T's words, "[w]e send the truck to customers who order both DIRECTV and U-verse high-speed Internet service. One installer can come to your home to set up both services."[12]

AT&T and DIRECTV further integrated by developing common architecture for both DIRECTV and AT&T U-Verse products. For example, AT&T adopted DIRECTV's gateway-client architecture, using "'one consistent architecture' for both managed and unmanaged content."[13] AT&T also transitioned to "a common set-top box with the [DIRECTV] Genie platform" for AT&T's U-Verse service.[14] AT&T stated that "[t]he company's set top, router and gateway hardware 'will become a consolidated, single platform over the next 24-36 months.'"[15] AT&T hired Ericsson in September of 2015 to lead the technical integration of DIRECTV and AT&T's U-Verse product, stating that "AT&T will be combining industry-leading capabilities of

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] Ex. 5, Jeff Baumgartner, *AT&T to Put 'Genie' into U-Verse's Bottle, Multichannel News* (Aug. 17, 2015), https://www.nexttv.com/news/att-put-genie-u-verse-s-bottle-393005.
[14] *Id.*; *see also* Ex. 6, Karl Bode, *AT&T Outlines the Changes DirecTV (and U-Verse) Users Will See,* DSLReports (Aug. 14, 2015), http://www.dslreports.com/shownews/ATT-Outlines-the-Changes-DirecTV-and-UVerse-Users-Will-See-134789 ("The company stated that they're developing a new gateway that will allow third-party broadband connections, LTE connections and AT&T broadband connections.").
[15] Ex. 6.

AT&T's U-Verse and DIRECTV platforms to deliver its entertainment experience across AT&T's satellite and wireline networks."[16]

DIRECTV remained a wholly owned subsidiary of AT&T, part of AT&T's Entertainment and Internet Services division, until August 2021, when AT&T closed a transaction with TPG "establishing a new company named DIRECTV."[17] AT&T announced that the new company "will own and operate the DIRECTV, AT&T TV and U-Verse video services *previously owned and operated by AT&T*."[18] Consistent with DIRECTV's prior integration within AT&T's entertainment division, the new DIRECTV encompassed all of AT&T's "U.S. video business," including the AT&T TV and U-Verse video services.[19] Indeed, AT&T's announcement of the transaction stated that it would "establish a new company named DIRECTV ("New DIRECTV") that will own and operate AT&T's U.S. video business unit consisting of the DIRECTV, AT&T TV, and U-verse video services."[20] After the transaction, AT&T still owns 70% of DIRECTV, jointly operates and manages DIRECTV with TPG, and controls two board members.[21] AT&T also has numerous commercial agreements with DIRECTV, "allow[ing] both companies to serve customers through multiple distribution channels, including retail, online, call centers and indirect sellers," and the companies "share revenues for ad inventory management and ad sales."[22]

---

[16] Ex. 7, *AT&T Selects Ericsson to Enhance its TV Platform*, AT&T (Sept. 10, 2015, 9:26 AM), https://www.ericsson.com/en/press-releases/2015/9/att-selects-ericsson-to-enhance-its-tv-platform ("This evolution will utilize leading technologies from AT&T's U-Verse platform and AT&T's DIRECTV satellite platform to deliver a premium TV experience, serving customers across both satellite and wireline access networks.").
[17] Ex. 1, *supra* note 1.
[18] *Id.* (emphasis added).
[19] *Id.*
[20] Ex. 8, *AT&T & TPG to Form New Entity to Operate AT&T's U.S. Video Unit*, AT&T (Feb. 25, 2021), available at https://about.att.com/story/2021/video.html.
[21] *Id.*
[22] *Id.*

## LEGAL STANDARDS

As its name implies, the customer-suit exception is the *exception*, not the rule. *See Wapp Tech Ltd. P'ship v. Bank of America Corp.*, No. 4:18-cv-519, 2019 WL 3890171, at *2 (E.D. Tex. Aug. 19, 2019) ("The customer-suit exception is an exception to the general rule that favors the forum of the first-filed action…"). As the party seeking severance, AT&T "bears the burden of proving that such action is necessary." *Aspen Tech., Inc. v. Kunt*, No. 4:10-cv-1127, 2011 WL 86556, at *3 (S.D. Tex. Jan. 10, 2011). AT&T specifically bears the burden of showing that the customer-suit exception applies to the facts of the case. *See GeoTag, Inc. v. Frontier Commc'ns Corp.*, No. 2:10-cv-265-JRG, 2013 WL 693852, at n. 2 (E.D. Tex. Feb. 26, 2013) ("Defendants had failed to meet their burden to establish that the 'customer suit exception' applied."). Even then, application of the exception is not mandatory, but is instead left to the discretion of the district court. *See Wapp Tech*, 2019 WL 3890171, at *2 ("A court *may* apply the customer-suit exception if it would 'facilitate just, convenient, efficient, and less expensive determination' of the issues") (emphasis added) (denying motion to stay as premature); *see also Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1079 (Fed. Cir. 1989) (noting that the Supreme Court has "endors[ed] the discretionary authority of trial courts to determine the applicability of exceptions to the general rules governing choice of forum") (vacating district court's grant of stay). The customer-suit exception does not apply "to a *single* suit" and instead "only applies where there are *multiple* suits that involve the same allegations of infringement against a manufacturer and its down-stream customers. *See RPost Holdings*, 2019 WL 1982531, at *2 (citing *In re Dell Inc.*, 600 Fed. App'x at 730).

**ARGUMENT**

**I.      This Court already has rejected applying the customer-suit exception within a single lawsuit, like here.**

In *RPost Holdings, Inc.*, this Court considered and rejected application of the customer-suit exception within a single lawsuit. *Id.* Specifically, this Court found that "[t]he exception does not apply to a *single* suit that encompasses both manufacturers and their customers" because, in that situation, "the very same litigation [] will, regardless of the requested stay, go forward against the supplier [or manufacturer]." *Id.* at *2 (quoting *In re Dell Inc.*, 600 Fed. App'x 728, 730 (Fed. Cir. 2015)); *see also CCD Holdings, LLC v. Cenergy USA, Inc.*, No. 4:19cv102 JM, 2021 WL 4429239, at *7 (E.D. Ark. Sept. 27, 2021) ("[Plaintiff] is correct that the traditional customer-suit exception does not apply in this situation, where there is only one case at issue.").[23] That is the right result—the judicial economy sought by the customer-suit exception is only served where it "prevent[s] parallel, active, duplicative proceedings." *RPost Holdings*, 2019 WL 1982531, at *2 (citing *In re Dell Inc.*, 600 Fed. App'x at 730). Here, even if the claims against AT&T are severed (which would create two cases) and stayed, no judicial economy is gained because the same number of cases will proceed. For this reason, the Court should deny the motion.

**II.     This Court should reject Defendants' request to create new law and expand the customer-suit exception to parent corporations.**

Until August of last year, in AT&T's own words, AT&T "owned and operated" DIRECTV.[24] Thus, for almost the entirety of the relevant time period[25], DIRECTV was AT&T's

---

[23] Note that in *RPost*, the Court ultimately exercised its discretion to sever and stay claims but only because in that case the motion was unopposed and the parties had entered into a series of stipulations. *RPost Holdings*, 2019 WL 1982531, at *1–2.
[24] Ex. 1, *supra* note 1.
[25] The Patents-in-Suit issued on October 31, 2006, June 2, 2009, and July 29, 2014 respectively. *See* First Amended Complaint at 18–19, ECF No. 20. Therefore, the relevant time period for infringement begins March 9, 2016, or six years before the filing of this lawsuit. *See* 35 U.S.C.

wholly owned subsidiary, and DIRECTV's products and services were integrated with AT&T's, including AT&T U-Verse and AT&T TV Now (both of which are now part of DIRECTV). Even after the spin-off, AT&T still owns 70% of DIRECTV and controls two seats on the board of directors.

Defendants cite no case applying the customer-suit exception within the same corporate family, let alone to a parent. Instead, Defendants exclusively cite cases involving traditional manufacturer-customer relationships, where the two companies do not share any ownership interest. These cases do not apply here.

Where a corporate parent is involved, like here, the customer-suit exception does not apply. In *SAES Getters S.p.A. v. Aeronex, Inc.*, a corporate parent (SAES Getters) argued that it was "merely a customer of its wholly-owned subsidiary SPG" and that the customer-suit exception should apply in favor of a declaratory judgment action later-filed by the subsidiary. 219 F. Supp. 2d at 1093. The Court rejected this argument, reasoning that the parent "cannot [] be labeled a truly secondary party with a lesser interest in defending charges of patent infringement" because of its ownership interest in the manufacturer.[26] *Id.* The Court also reasoned that "the 'customer suit exception' was made with particular assumptions about customers and manufacturers in mind." *Id.* As a result, the Court was "not convinced that the purposes of the 'customer suit exception' would be served where the purported 'customer' is also the owner of the owner of the

---

§ 286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action").

[26] In *SAES Getters*, there was even a degree of separation between SAES Getters and the manufacturer. The manufacturer, SPG, was a wholly-owned subsidiary of a company called SAES Getters USA, which in turn was a wholly-owned subsidiary of the movant SAES Getters, SpA. 219 F. Supp. 2d at 1093.

manufacturer," and it ultimately concluded that "the customer suit exception would not apply to the facts of this case." *Id*.

The same reasoning applies here. The "customer suit exception to the 'first-to-file' rule exists to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *Rembrandt Wireless Techs., LP v. Apple Inc.*, No. 2:19-CV-00025-JRG, 2019 WL 6344471, at *1 (E.D. Tex. Nov. 27, 2019) (quoting *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (internal quotation marks omitted)). This is why the exception applies to the "consumers" who are "mere resellers of products manufactured by the party in the second-filed action" and only where "the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Id*., at *2. The purposes of the customer-suit exception are not served where AT&T "owned and operated" DIRECTV, and where DIRECTV recently existed as a wholly-owned subsidiary integrated within AT&T's video business.

The Court should decline Defendants' invitation to create new law expanding the customer-suit exception to the parent corporation of an alleged manufacturer, and deny Defendants' motion on this basis alone.

### III. Even if the Court holds that the customer-suit exception can apply to a parent corporation, AT&T is not a mere reseller.

For almost the entirety of the relevant time period, AT&T wholly "owned and operated" DIRECTV, which was part of AT&T's video business along with AT&T U-Verse (which also was spun off to the new DIRECTV). Even assuming AT&T currently is a mere reseller (which it is not, as addressed below), AT&T was far more than a reseller for almost the entirety of the liability period up to August of last year, a matter of months before this lawsuit was filed. All publicly available information suggests that AT&T was intimately involved in operating DIRECTV, which

9

was part of AT&T's video business. Defendants tacitly concede as much—while Defendants assert that AT&T is a "mere reseller" now after the transaction, they notably do not allege that has always been the case. Indeed, Defendants make no allegations at all regarding AT&T's past relationship as DIRECTV's sole owner and operator. And the accompanying declaration by AT&T's corporate declarant also does not address AT&T's past control of DIRECTV or its involvement with DIRECTV's products and services. This implicit concession alone is fatal to Defendants' motion.

Even after the spin-off, AT&T is hardly a "mere reseller" with an arm's length relationship with DIRECTV. AT&T owns 70% of DIRECTV and controls two out of five seats on its board of directors.[27] AT&T "jointly govern[s]" DIRECTV with TPG, "with TPG having tie-breaking authority on certain key decisions." Mot. to Sever & Stay 3, ECF No. 53. AT&T also has numerous commercial agreements with DIRECTV and continues to provide numerous support services for DIRECTV. Defendants cite no case applying the customer-suit exception in such circumstances. In fact, Defendants cite no cases where the alleged reseller holds an ownership interest in the alleged manufacturer or where the alleged reseller is involved in governing and managing the alleged manufacturer. AT&T is not an unrelated, arms-length customer with no interest in this lawsuit. And the customer-suit exception, and its underlying purpose, therefore is inapplicable here.

### IV. Removing AT&T from this lawsuit prejudices Entropic.

Contrary to Defendants' argument, removing AT&T from this lawsuit may prejudice Entropic, specifically with regards to discovery and access to trial witnesses relating to past infringement and liability. Defendants assert, in the *present* tense, that "AT&T does not design, develop, or alter the accused products and services." Mot. to Sever & Stay 11, ECF No. 53. But

---

[27] Ex. 1, *supra* note 1.

again, Defendants notably have not asserted that this was the case during the entire relevant time period. Defendants claim DIRECTV possesses "all relevant technical information concerning the accused technology," but Defendants only appear to address DIRECTV's *current* products and services, excluding the products that predate the "new DIRECTV." *Id.* at 12. Defendants also are silent on many other areas of discovery, such as valuation, historical sales, and damages information. Indeed, AT&T appears to recognize it may possess relevant information as it has "agree[d] to provide any relevant noncumulative discovery as a third party to the extent it has any in its possession." *Id*. Forcing Entropic to seek discovery from AT&T as a third party, rather than a Defendant, is a clear disadvantage to Entropic. Removing AT&T from the case also deprives Entropic of access to trial witnesses, particularly regarding past damages and past infringement.

## CONCLUSION

For the aforementioned reasons, Entropic respectfully requests that the Court deny Defendants' motion to sever and stay the claims against AT&T and instead grant Defendants' requested alternative relief and transfer *all* Defendants, including Dish, to the Central District of California.

Dated: September 6, 2022

Respectfully submitted,

/s/ James Shimota by permission Wesley Hill
James Shimota
Jason Engel
George Summerfield
Devon Beane
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com

george.summerfield@klgates.com
devon.beane@klgates.com

Nicholas F. Lenning
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Wesley Hill
Texas Bar No. 24032294
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
Fax (903) 757-2323
wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on September 6, 2022 to all counsel of record via the Court's CM/ECF system.

/s/ Wesley Hill
Wesley Hill