**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>DIRECTV, LLC and<br>AT&T SERVICES, INC.,<br><br>　　　　Defendants. | Civil Action No. 2:22-cv-00075-JRG<br><br>LEAD CASE<br><br>JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>DISH NETWORK CORPORATION,<br>DISH NETWORK L.L.C., and<br>DISH NETWORK SERVICE L.L.C.,<br><br>　　　　Defendants. | Civil Action No. 2:22-cv-00076-JRG<br><br>RELATED CASE |

**ENTROPIC COMMUNICATIONS, LLC'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

I. **Venue is proper in the Central District of California**

Despite providing satellite services to the Central District of California ("CDCA"), the DISH defendants[1] contend that they lack any regular and established place of business there. Their argument—that a subsidiary, DISH Network California Services Corporation ("DISH California"), solely and exclusively operates in that district—does not pass muster. In fact, Defendants' close relationship with, and conduct toward, DISH California proves that venue is proper in CDCA.

According to authority cited by the DISH defendants, one corporation's place of business may be imputed to another for venue purposes if the two have not maintained corporate separateness. *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). But even where this is not the case, a defendant can *ratify* a location as its own. *See id*. There are a number of ways a defendant might do this, and Courts may consider such factors as whether defendant owns or leases the place; exercise of other attributes of possession or control over the place; storing of materials in the district for distribution or sale; listing of the alleged place of business on a website or directory; and the nature and activity of the defendant's business within the district compared to outside the district. *In re Cray Inc.*, 871 F.3d 1355, 1363-64 (Fed. Cir. 2017). Furthermore, "if the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of venue." *Arigna Technology Ltd. v. Volkswagen AG*, 2:21-cv-54-JRG, 2022 WL 2704943 at *1 (E.D. Tex. Jan. 20, 2022). Here, there is no corporate separateness between the DISH defendants and DISH California. But even if that is not the case, DISH has ratified DISH California's facilities as its own, and venue is proper.

At the organizational level, there is minimal separation, if any, between DISH California and DISH defendants. DISH Network L.L.C., DNS, and DISH California share the same Colorado

---

[1] DISH Network Corporation, DISH Network L.L.C., and DISH Network Service, L.L.C. ("DNS") are referred to herein as the DISH defendants.

headquarters. *See* Lenning Decl., Ex. A–C. They also share overlapping leadership, including CEO Erik Carlson and corporate secretary Brandon Ehrhart. *See* Lenning Decl., Ex. A, D.

At the operational level, defendants have ratified DISH California facilities as their own. In a consent judgment regarding unlawful waste disposal at DISH California's facilities, the Notice contact for DISH California was identified as "General Counsel" for "DISH Network L.L.C." *See* Dkt. No. 83-2, ¶ 9. That consent judgment defined "Covered Facilities" to include "warehouses" (*id.* at ¶ 3(F)), the same warehouses where vans can be seen displaying the dish logo—a logo owned by Defendant DISH Network LLC. *See* Dkt. No. 83-3; Lenning Decl., Ex. E. Operation of those warehouses is clearly not the exclusive province of DISH California.

The DISH defendants contend it is DISH California who "employs installation technicians in California." Dkt. 88 at 5. However, those technicians carry business cards that identify DNS. *See Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1315 (2014). In another case, a DISH employee in California was made to sign an arbitration agreement with "DISH Network L.L.C.," yet the same DISH defendants argued that the employee was employed by DISH California and that the arbitration agreement extended to DISH Network L.L.C. and its affiliates. *Tajonar v. Echosphere, LLC*, 3:14-cv-02732, Dkt. No. 3-1 at n.1 (S.D. Cal. Nov. 18, 2014). Plainly, DISH California does not exercise exclusive control over its employees.

One Court has already found "substantial interrelationships" between the DISH entities, including DISH California. *See Holguin*, 229 Cal. App. 4th at 1322. There is no reason to reach a contrary conclusion here. This case also contrasts with *Andra*, wherein i) only one set of defendants "perform[ed] all operations" within the district; ii) the other set of defendants did not exercise control over employees, nor did they display their logos at those stores; and iii) the two sets of defendants "carr[ied] out different business functions." *Andra,* 6 F.4th at 1290. In the instant case,

the DISH defendants and DISH California all work in concert through facilities and employees in the Los Angeles area to carry out the business of providing satellite services to California customers. Therefore, a regular and established place of business in CDCA may be properly attributed to the DISH defendants.

**II.     The Central District of California is the more convenient forum.**

DISH claims that Colorado is the most convenient forum, but in doing so it elevates its own convenience over that of third party witnesses, the courts, and the public. *See, e.g., TMobile USA, Inc. v. Selective Ins. Co. of Am.*, 15-cv-1739-JLR, 2016 WL 1464468, at *7 (W.D. Wash. Apr. 14, 2016) (movant must "show[] that transfer would reduce rather than merely shift costs"). While it may be true that Colorado is more convenient for DISH's employees, DISH downplays the importance of third party witnesses and evidence. *See Diamond Grading Technologies Inc. v. American Gem Society*, 2016 WL 1271568, at *6 (E.D. Tex. Mar. 31, 2016) (affording "significant weight" to the location of third party witnesses). And it is unchallenged that third parties such as Broadcom, MaxLinear, and the original inventors will be sources of evidence. *See, e.g.* Dkt. 74-13 at 16–17, 26–27, 65–67, *etc.* (Entropic's preliminary infringement contentions, making repeated reference to the Broadcom BCM4451 chip and MaxLinear EN5520 switch).

In the case of Broadcom and MaxLinear, both have physical locations in CDCA. Dish does not deny that Broadcom is within the district, and although MaxLinear's headquarters is just outside, the company also has a location within the district at Irvine. *See* Dkt. 52-31; *see also* Dkt. 75 at n. 5. There is undeniably a higher likelihood that CDCA will be more convenient for these companies' current and former employees, to the extent those witnesses are willing to testify. *See In re Apple Inc.*, 979 F.3d 1332, 1338 (Fed. Cir. 2020) (the third private interest factor is "the cost of attendance for willing witnesses"). The same is true for the surviving inventors of the patents-in-suit, most of whom also live in California. *See* Dkt. 75 at 1.

To the extent such witnesses are not willing to appear, CDCA will have greater access to subpoena power than Colorado. Irrespective of which CDCA division receives the case, Rule 45(c)(1) provides that "a subpoena may command a person to attend a trial, hearing, or deposition… (B) within the *state* where the person resides, is employed, or regularly transacts business in person, if the person… ii) is commanded to attend a trial and would not incur substantial expense" (emphasis added). Colorado would not have this power over the Broadcom and MaxLinear witnesses, and California inventors, but CDCA will.

Nor does the location of documents favor Colorado. DISH argues that its documents are *accessible* from Colorado, although it acknowledges that its data center is located out-of-state in Wyoming. *See* Dkt. 88 at 8. But even this acknowledgement is misleading. Dish's venue witness testified that technical and financial documents are stored in two databases, the physical servers for which are located in Wyoming. *See* Dkt. 73-2 at 40:10-18, 87:21–88:7. At least one of these databases, however, appears to be accessible from anywhere. *See* Dkt. 73-2 at 41:14–15 ("I have some engineers in India and actually in the Ukraine that have access to Jira"). Moreover, DISH has already produced core technical documents in this case, reducing the universe of documents that it will need to access and produce upon transfer. Finally, DISH has no rebuttal to the fact that key third party documents are located in California, not Colorado. DISH once again elevates its own convenience at the expense of third parties, and its arguments fail to show that Colorado would be more convenient overall.

Lastly, DISH attempts to downplay the judicial efficiency that would result from keeping DISH, DirecTV, and AT&T together. It does so by relying heavily on *In re Dish Network LLC*, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021), a previous DISH case wherein the Federal Circuit ordered transfer from Texas to Colorado. *See* Dkt. 88 at 1, 12. In that case, however, Texas had

4

"no sources of proof" and no non-party witnesses. *See id.* at \*2–3. Texas, therefore, is hardly analogous to CDCA in this case, especially when compared to Colorado.

### III.   DISH's procedural arguments are without merit

DISH's procedural grievances are equally without merit. DISH complains that "Entropic's First Amended Complaint… contains no allegations that venue is proper in CDCA." Dkt. 88 at 2. DISH is fabricating law. While it is true that Entropic has the *burden of proof* as to venue, plaintiffs are not required to plead any venue facts in the complaint. *See Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 930 (E.D. Tex. 2017) (noting that pleading venue facts is "something that might be wise but is not required by the Rules of Procedure"). DISH also claims a violation of Local Rule CV-7(a), but Entropic plainly complied with the rule by making separate filings for its opposition to DISH's motion (Dkt. 73) and its own cross-motion to transfer (Dkt. 75).[2] *See* Local Rule CV-7(a) ("Each pleading, motion, or response to a motion must be *filed* as a separate document") (*emphasis added*). Likewise, Entropic complied with Local Rule CV-7(h)—the parties have been discussing transfer to CDCA long before the cross-motion was filed, and DISH's feigned surprise is transparent. In any event, DISH fails to show that it has been prejudiced or surprised in any way, and the Court should disregard DISH's baseless objections.

### CONCLUSION

For the aforementioned reasons, Entropic respectfully requests the Court grant transfer to the Central District of California. Alternatively, Entropic notes that no discovery has been taken on whether venue is proper in CDCA.[3] Therefore, if the Court finds that Entropic has not made a *prima facie* showing of venue, Entropic requests the opportunity to take additional discovery.

---

[2] Because Dkt. 73 was an opposition brief, it did not require a certificate of conference.
[3] Entropic requested a follow-up deposition on the narrow issue of venue in the Central District of California, but the DISH defendants refused. *See* Lenning Decl., Ex. F.

Dated: September 9, 2022                    Respectfully submitted,

/s/ James Shimota w/permission Wesley Hill
James Shimota
Jason Engel
George Summerfield
Devon Beane
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
devon.beane@klgates.com

Nicholas F. Lenning
**K&L GATES LLP**
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
(206) 370-6006 (fax)
nicholas.lenning@klgates.com

Wesley Hill
Texas Bar No. 24032294
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel: (903) 757-6400
Fax (903) 757-2323
wh@wsfirm.com

*ATTORNEYS FOR PLAINTIFF*
*ENTROPIC COMMUNICATIONS, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on September 9, 2022 to all counsel of record via the Court's CM/ECF system.

/s/ Wesley Hill
Wesley Hill