# EXHIBIT I

1  Christina N. Goodrich (SBN 261722)
   christina.goodrich@klgates.com
2  Connor J. Meggs (SBN 336159)
   connor.meggs@klgates.com
3  **K&L Gates LLP**
   10100 Santa Monica Boulevard
4  Eighth Floor
   Los Angeles, California  90067
5  Telephone: +1 310 552 5000
   Facsimile: +1 310 552 5001
6
   *Attorneys for Plaintiff Entropic*
7  *Communications, LLC*

8              **UNITED STATES DISTRICT COURT**
9             **CENTRAL DISTRICT OF CALIFORNIA**
                  **WESTERN DIVISION**
10

11  ENTROPIC COMMUNICATIONS, LLC,        Case No. 2:22-cv-07775-JWH-JEM
                                         (Lead Case)
12              Plaintiff,
                                         **PLAINTIFF ENTROPIC**
13  vs.                                  **COMMUNICATIONS, LLC'S**
                                         **AMENDED NOTICE OF 30(B)(6)**
14  DIRECTV, LLC and AT&T SERVICES,      **DEPOSITION OF DEFENDANTS**
    INC.,                                **DISH NETWORK CORPORATION,**
15                                       **DISH NETWORK L.L.C., AND DISH**
                Defendants.              **NETWORK SERVICE L.L.C.**
16

17  ─────────────────────────────────    Assigned to the Hon. John W. Holcomb
    ENTROPIC COMMUNICATIONS, LLC,
18
                Plaintiff,
19
    vs.
20                                       Case No. 2:22-cv-07959
    DISH NETWORK CORPORATION,            (Member Case)
21  DISH NETWORK L.L.C., and
    DISH NETWORK SERVICE L.L.C.,
22
                Defendants.
23

24

25

26

27

28

─────────────────────────────────────────────────────────
        **AMENDED NOTICE OF 30(B)(6) DEPOSITION OF DISH**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff Entropic Communications, LLC ("Entropic"), by and through its attorneys, will take the deposition of the designated representative(s) of Defendants DISH Network Corporation, DISH Network L.L.C., and DISH Network Service L.L.C. (collectively "Defendants" or "DISH") by oral examination on the topics specified in the attached Schedule A.

The deposition will begin at 9:00 a.m. PT on April 10, 2023 at the offices of K&L Gates LLP, 10100 Santa Monica Boulevard, Eighth Floor, Los Angeles, California 90067, or at such other place and time as may be agreed upon among counsel or ordered by the Court, and will continue through April 12, 2023 or until completed. The deposition will be taken for the purposes of discovery, for use at any hearing or trial in this matter, and for any other purpose permitted under the law. The deposition will be taken before an officer duly authorized to administer oaths under the laws of the United States and/or the State of California, and will be recorded by audio, audio-visual, and stenographic means.

Pursuant to Rule 30(b)(6), DISH shall designate and produce at the deposition one or more officers, directors, managing agents, or other persons who consent and are knowledgeable to testify on its behalf with respect to the topics set forth in the attached Schedule A. DISH shall provide Entropic's counsel with written notice at least ten (10) business days before the date of the deposition of the name(s) and title(s) of the

1

1   designee(s) who will testify on DISH's behalf and shall identify the matters to which

2   each designee will testify.

3

4          You, as counsel for DISH, are invited to attend and cross-examine the witness.

5   Dated: March 3, 2023                          Respectfully Submitted,

6
                                                  **K&L GATES LLP**
7
                                                  By: */s/ James A. Shimota*
8                                                 James Shimota (admitted *pro hac vice*)

9                                                 Jason Engel (admitted *pro hac vice*)
                                                  George Summerfield (*pro hac vice*
10                                                application pending)
                                                  **K&L GATES LLP**
11                                                70 W. Madison Street, Suite 3300

12                                                Chicago, IL 60602
                                                  Tel.: (312) 372-1121
13                                                Fax: (312) 827-8000

14                                                jim.shimota@klgates.com
                                                  jason.engel@klgates.com
15                                                george.summerfield@klgates.com

16
                                                  Christina N. Goodrich (SBN 261722)
17                                                **K&L GATES LLP**

18                                                10100 Santa Monica Blvd., 8th Fl.
                                                  Los Angeles, CA 90067
19                                                Tel: (310) 552-5547

20                                                Fax: (310) 552-5001
                                                  Email: christina.goodrich@klgates.com
21

22                                                Nicholas F. Lenning (*pro hac vice*
                                                  application pending)
23                                                **K&L GATES LLP**

24                                                925 Fourth Avenue, Suite 2900
                                                  Seattle, WA 98104
25                                                (206) 623-7580

26                                                (206) 370-6006 (fax)
                                                  nicholas.lenning@klgates.com
27

28

                                          2

Darlene F. Ghavimi (admitted *pro hac vice*)
Matthew Blair (admitted *pro hac vice*)
**K&L GATES LLP**
2801 Via Fortuna, Suite #650
Austin, TX 78746
(512) 482-6919
(512) 482-6859
darlene.ghavimi@klgates.com
matthew.blair@klgates.com

**ATTORNEYS FOR PLAINTIFF ENTROPIC COMMUNICATIONS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on March 3, 2023 to counsel of record for Defendants via email.

*/s/ James A. Shimota*
James Shimota

3

# **SCHEDULE A**

## DEFINITIONS

1.      The terms "**Defendants**," "**you**," or "**your**" means Defendants DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C., and their present and former directors, officers, employees, parent organization(s), subsidiary organization(s), predecessors in interest, successors in interest, divisions, servants, agents, attorneys, consultants, partners, associates, investigators, representatives, accountants, financial advisors, distributors, and any other person acting on their behalf, pursuant to their authority or subject to their control.

2.      The term "**Plaintiff**" means Plaintiff Entropic Communications, LLC and its present and former directors, officers, employees, parent organization(s), subsidiary organization(s), predecessors in interest, successors in interest, divisions, servants, agents, attorneys, consultants, partners, associates, investigators, representatives, accountants, financial advisors, distributors, and any other person acting on its behalf, pursuant to its authority or subject to its control.

3.      The terms "**person**" or "**persons**" include, without limitation, both natural persons and entities (including corporations, proprietorships, partnerships, associations, joint ventures, governmental agencies, and other entities, and any combination thereof, and all predecessors in interest, successors, affiliates, subsidiaries, and related entities).

A-1

4.     "**Third party**" means any person or persons other than the Plaintiff or Defendants identified herein, including but not limited to suppliers, vendors, or contractors of Plaintiff or Defendants.

5.     The terms "**document**" or "**documents**" include all things within the meaning and scope of that term as used in the Federal Rules of Civil Procedure and the Federal Rules of Evidence, and includes without limitation the following items, whether printed, recorded, microfilmed, stored electronically or optically, or reproduced by any process, or written or produced by hand, or recorded in any other way, and whether or not claimed to be privileged, confidential, or personal: any and all originals, copies, drafts (and all versions not identical in every respect to the original) of any letters; correspondence; memoranda; notes; reports; records; agreements; working papers; communications (including intradepartmental and interdepartmental communications); summaries or records of personal conversations; calendars; diaries; forecasts; statistical statements; graphs; laboratory or research reports and notebooks; charts; minutes or records of conferences; expressions or statements of policy; lists or persons attending meetings or conferences; reports or summaries of interviews; reports or summaries of investigations; opinions or reports of consultants; patent and patent application materials; patent appraisals; printed publications; trademark applications; certificates of registration; opinions of counsel; reports of or summaries of either negotiations within or without the corporation or preparations for such; bulletins; material and manufacturing specifications; material packaging; manufacturing logs; functional

A-2

specifications; equipment specifications and operating information; product packaging, designs, instructions; literature, work assignments; memoranda of conversations; notes; notebooks; drafts; data sheets; worksheets; contracts; memoranda of agreements; assignments; licenses; minute books of account; orders; invoices; statements; bills; checks; vouchers; photographs; knowledge base documents; technical support documents; application notes; advertisements; circulars; press releases; books; instruments; accounts; bills of sale; tapes; electronic communications including, but not limited to, E-mails; telegraphic communications and all other material of any tangible medium of expression; and original or preliminary notes. Any document bearing marks, including without limitation, initials, stamped initials, comments, or notations not a part of the original text or photographic reproduction thereof, is to be considered a separate "document." A draft or non-identical copy is a separate document within the meaning of this term. In addition, electronically stored information is any information that is stored electronically and includes, but is not limited to: writings, drawings, graphs, charts, photographs, sound recordings, images, email from any type of e-mail system, e-mail attachments, facsimiles, and other data or data compilations, stored in any medium from which information can be obtained, including personal computer drives, external hard drives, server/network drives, databases, CDs, diskettes, floppy disks, PDAs, Blackberries, laptops, voicemail, Zip-drives, flash/thumb/or any other type of external drives.

A-3

6.      The term "**communication(s)**" or "**communications**" mean every manner or method of the disclosure, transfer, transmission, or exchange of information, in whatever form, by whatever means, including, but not limited to, oral, written, face-to-face, telephone, facsimile, network transfer, electronic mail, BlackBerry messages, smartphone messages, voice-mail, text messages, postal mail, personal delivery, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document which was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal. This definition also includes all transcripts, summaries, electronic recordings, audio tapes and audio files constituting, reflecting or transcribing such communications.

7.      The term "**Complaint**" refers to Entropic's Complaint filed on March 9, 2022 in the U.S. District Court for the Eastern District of Texas in Case No. 2:22-cv-00076-JRG and transferred to U.S. District Court for the Central District of California as Case No. 2:22-cv-07959, which is now consolidated with Case No. 2:22-cv-0775-JWH-JEM.

8.      The term "**case**" or "**litigation**" refers to both *Entropic Communications, LLC v. DISH Network Corp., et al.*, Case No. 2:22-cv-00076-JRG, filed in the U.S.

District Court for the Eastern District of Texas on March 9, 2022, and transferred to the U.S. District Court for the Central District of California on November 24, 2022 as Case No. 2:22-cv-07959, which is now consolidated with Case No. 2:22-cv-0775-JWH-JEM.

9. The term "'576 Patent" refers to United States Patent No. 7,130,576, entitled "Signal Selector and Combiner for Broadband Content Distribution" and issued on October 31, 2006.

10. The term "'715 Patent" refers to United States Patent No. 7,542,715, entitled "Signal Selector and Combiner for Broadband Content Distribution" and issued on June 2, 2009.

11. The term "'008 Patent" refers to United States Patent No. 8,792,008, entitled "Method and Apparatus for Spectrum Monitoring" and issued on July 29, 2014.

12. The term "Patents-in-Suit" refers to the '576 Patent, the '715 Patent, and the '008 Patent, collectively.

13. The terms "Related Patent," "Related Patents," "Related Application," or "Related Applications" mean (1) any U.S. or foreign patent or patent application related to any Patent-in- Suit or their applications by way of subject matter or claimed priority date, (2) all parent, divisional, continuation, continuation-in-part, reissue, reexamination, extension, and foreign counterpart patents and applications of the Patents-in-Suit, and/or (3) any patent or patent application filed by or assigned to one or more of the same applicant(s) (or his or her assignees) that refer to any of (1) or (2) herein.

A-5

14.     The term "**Accused Instrumentalities**" or "**Accused Instrumentality**" or "**Accused Products**" has meaning identified in Entropic's Disclosure of Asserted Claims and Infringement Contentions served pursuant to P.R. 3-1 and 3-2. Specifically, for the avoidance of doubt, Signal Selector and Combiner ("SSC") devices and gateway systems including SSC-enabled LNBFs (for example, DISH Pro Hybrid ("DPH") LNBFs and devices that operate in a similar manner) and switches (for example, DPH42 and devices that operate in a similar manner) capable of operating with SSC-enabled products, such as the Hopper 3 and corresponding set top boxes such as the Joey, Joey 2, Joey 3, 4K JoeyWireless Joey, and devices that operate in a similar manner.

15.     The term "**Accused Services**" means the services provided to customers through the **Accused Instrumentalities**.

16.     The terms "**product**" or "**products**" mean a machine, manufacture, apparatus, device, instrument, mechanism, appliance, system, or assemblage of components/parts (either individually or collectively), which are designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, or under development.

17.     The terms "**thing**" or "**things**" shall be interpreted broadly and include, but not be limited to, products, parts, machines, equipment, prototypes, specimens, models, devices, apparatuses, and commercially manufactured items.

A-6

18.     The term "**infringe**" or any variant thereof, including, but not limited to, "infringes," "infringing," and "infringement," means any infringement pursuant to 35 U.S.C. § 271, whether direct, indirect, contributory, or by inducement.

19.     The terms "**concern**" or "**concerning**," "**pertain**" or "**pertaining**," and "**relate**" or "**relating**" shall be construed in their most inclusive sense, and shall mean, in addition to their customary and usual meaning, discuss or discussing, mention or mentioning, embody or embodying, contain or containing, constitute or constituting, refer or referring, evidence or evidencing, negate or negating, reflect or reflecting, describe or describing, assess or assessing, record or recording, show or showing, support or supporting, underlie or underlying, summarize or summarizing, report or reporting, and, without limitation, in any way legally, logically or factually connected with the matter discussed.

20.     The terms "**constitute**" or "**constituting**," "**refer**" or "**referring**," "**regard**" or "**regarding**," and "**reflect**" or "**reflecting**" shall mean, in addition to their customary and usual meaning, discuss or discussing, mention or mentioning, embody or embodying, contain or containing, concern or concerning, pertain or pertaining, evidence or evidencing, negate or negating, describe or describing, assess or assessing, record or recording, show or showing, support or supporting, underlie or underlying, summarize or summarizing, report or reporting, and, without limitation, in any way legally, logically or factually connected with the matter discussed.

A-7

21.     The terms "**relating to**," "**relate to**," "**relates to**," or "**related to**" mean affecting, concerning, comprising, constituting, dealing with, describing, embodying, evidencing, identifying, involving, mentioning, providing a basis for, reflecting, regarding, respecting, referring to, pertaining to, relevant to, or connected with a stated subject matter.

22.     The terms "**include**," "**includes**," and "**including**" shall be deemed to be followed by the phrase "without limitation."

23.     The term "**each**" means all, each, and every.

24.     The term "**every**" means all, each, and every.

25.     The term "**all**" means all, each, and every.

26.     The term "**any**" means any and all.

27.     Singular forms or nouns or pronouns encompass their plural forms and vice versa, and any verbs encompass all tenses; and where a word is used in the masculine gender, it also includes the feminine.

28.     Unless otherwise indicated by the context, the term "**identify**":

(a) when used in connection with documents, means to furnish (i) the type of document; (ii) the litigation document control number; (iii) a summary of the document's subject matter and content; (iv) the document's title or identifying symbol, (v) the date of the document, (vi) the author(s) of the document; (vii) the name(s) and address(es) of the person(s), if any, to whom the document was directed; (viii) the document's current or last known location; and (ix) the name and address of the custodian of the document;

(b) when used in connection with a person or persons, means to furnish a statement of the full name, job title or function, and the last known business and home addresses;

(c) when used in connection with things, including products or other physical objects, means to furnish a complete description of the thing or things, including, for each thing, the model number and/or product code, version number, commercial name, functional designation, trademark, trade name, internal name, project name, any other nomenclature used to specify its common designation, its composition, its physical characteristics, and any other distinguishing characteristics; and

(d) when used in connection with events, means to provide a description of the event, the date of the event, the location of the event, and the individual and/or organizational entities participating in the event.

29.    The term "**date**" means the exact day, month, and year if ascertainable, or if not, your best approximation thereof.

30.    With respect to any instance in which you are called on to identify a natural person, provide the following information regarding that natural person: the person's full name; the person's present or last known address; the person's present or last known telephone number; the name of the person's present or last known employer, along with that employer's address; and the person's present or last known job title.

31.    The terms "**and**," "**or,**" and "**and/or**" shall be construed conjunctively and disjunctively, whichever makes the discovery request more inclusive so as to bring within the scope of the request all documents that might otherwise be construed to be outside of its scope.

32.    All pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case make the request more inclusive.

## **DEPOSITION TOPICS**

Please designate one or more officers, directors, managing agents, employees, or other persons who consent to testify about information known or reasonably available to DISH on the following subjects:

**TOPIC NO. 1.**        All facts and circumstances relating to the research, design, and development of each of the Accused Products.

**TOPIC NO. 2.**        Your product development and/or project management process flow, including creation, kick-off, feasibility, research, development, commercialization of products.

**TOPIC NO. 3.**        The structure, features, functionality, and operation of each Accused Products.

**TOPIC NO. 4.**        The manufacture and assembly of each of the Accused Products.

**TOPIC NO. 5.**        All facts and circumstances relating to your first awareness of each of the Patents-in-Suit, including the first date of such knowledge, and any actions taken by Defendants as a result of such knowledge.

**TOPIC NO. 6.**        All facts and circumstances relating to your first awareness of any of the Related Patents or Related Applications, including the first date of such knowledge, and any actions taken by Defendants as a result of such knowledge.

**TOPIC NO. 7.**        The facts and circumstances surrounding when you first became aware of Entropic, and any communication between you and Entropic before filing of this action.

**TOPIC NO. 8.** Any nonprivileged study, evaluation, opinion, assertion, or analysis of whether the Accused Instrumentalities are or are not covered by any claim of any of the Patents-in-Suit or Related Patents.

**TOPIC NO. 9.** Actions taken to avoid infringement of the Patents-in-Suit, including any redesigns of the Accused Products.

**TOPIC NO. 10.** At any time from the release of Your first Accused Instrumentality to present, any design-arounds or non-infringing alternatives for the Accused Instrumentalities, including the cost to implement such design-arounds or non-infringing alternatives, and the advantages and/or disadvantages of the design-around or non-infringing alternatives to the Accused Instrumentalities from the time You began selling the Accused Instrumentality to present, including any study or analysis of cost, benefit/disadvantage, and availability as well as the reasons why You did/have not implemented such alternative.

**TOPIC NO. 11.** All facts and circumstances relating to the research, design, development, and integration of components or products from third-party Broadcom Inc. ("Broadcom") including, but not limited to, the following Broadcom products: Full Band Capture ("FBC") digital channel stackers (such as, but not limited to, the BCM4552 product).

**TOPIC NO. 12.** All facts and circumstances relating to the research, design, development, and integration of components or products from Broadcom including, but

A-11

not limited to, the following Broadcom products: satellite FBC tuners (such as but not limited to the BCM45216 and/or BCM4538 products).

**TOPIC NO. 13.**      Defendants' communications and/or interactions with Broadcom, including but not limited to, Defendants' procurement and integration of Broadcom components in Defendants' Accused Products.

**TOPIC NO. 14.**      Any analysis undertaken by or for Defendants, or communicated to Defendants, comparing the Accused Products to any other devices, including but not limited to multiswitches, LNBFs or IRDs.

**TOPIC NO. 15.**      Defendants' implementation and transition from band stacking technology (e.g., DISH Plus, DISH Pro Plus) to digital channel stacking technology (e.g., DISH Pro Hybrid (DPH)).

**TOPIC NO. 16.**      The operation, functionality, and/or performance of Defendants' DPH technology to communicate a plurality of broadband signals over a single cable as illustrated in DISH00003439.

**TOPIC NO. 17.**      The operation, functionality, and/or performance of Defendants' DPH-enabled outdoor units (ODUs), such as DPH-enabled LNBFs and the DPH42, as discussed in DISH00002108, -002307, -003439.

**TOPIC NO. 18.**      The operation, functionality, and/or performance of Defendants' Hopper 3 (e.g., ZiP1018) as discussed in DISH00001295, -004192.

**TOPIC NO. 19.**      The operation, functionality, and/or performance of Defendants' Joey STBs as discussed in DISH00000456, -003439.

**TOPIC NO. 20.** The operation, functionality, and/or performance of Defendants' Accused Products performing channel stacking functions as discussed in DISH00002108, -002307.

**TOPIC NO. 21.** The software implemented in Defendants' Accused Products for executing functions performed by the Accused Products including but not limited to communicating a plurality of broadband signals from, for example, a DPH-enabled ODU to a Hopper 3 over a single cable.

**TOPIC NO. 22.** The software implemented in Defendants' Accused Products for executing functions performed by the Accused Products including but not limited to, digitizing and filtering a received broadband signal, and selecting and extracting a plurality of signals to be combined into a composite signal.

**TOPIC NO. 23.** The design, development, creation, modification, and testing of the software, middleware, and/or firmware for the Accused Products.

**TOPIC NO. 24.** Communications between Defendants' Accused Products, including but not limited to the process by which a DPH-enabled ODU obtains information from the Hopper 3 and the information communicated between the DPH-enabled ODU and Hopper 3 products.

**TOPIC NO. 25.** The operation and functionality of Defendants' Accused Products to digitize an incoming signal using FBC technologies as described in the '008 Patent.

1  **TOPIC NO. 26.**     The operation and functionality of Defendants' Accused
2
   Products to digitize an entire television spectrum as described in the '008 Patent.
3

4     **TOPIC NO. 27.**     The operation and functionality of Defendants' Accused
5  Products to enable Defendants to remotely monitor Defendants' equipment located at a
6
   customer's premises.
7

8     **TOPIC NO. 28.**     The structure, features, functionality, operation, and
9  algorithms of the Grasshopper CSR Architecture described in DISH00001331,
10
   including, but not limited to, the "STB H IP Takeover" feature in the Grasshopper
11
12 architecture.

13    **TOPIC NO. 29.**     The software, middleware, firmware, APIs and/or source
14
   code related to usage of Broadcom's products and components in communication with
15
16 Broadcom's products in the Accused Products as described in DISH00000779;
17 DISH00001440; DISH00001830.
18
19    **TOPIC NO. 30.**     The design, development, creation, modification, and testing
20 of the source code for each of the Accused Products.

21    **TOPIC NO. 31.**     Your organizational and corporate structure, and all
22
   departments, teams, or groups responsible for the development, engineering, operation,
23
24 distribution and/or sales of the Accused Instrumentalities.

25    **TOPIC NO. 32.**     The identity of each of the Accused Instrumentalities,
26
   including the product's name, internal and external model and version number(s),
27
28 development names, project names, build IDs, and any other designation or

nomenclature used to identify the Accused Instrumentalities that you have made, used, sold, offered for sale, or imported into the United States since 2016.

**TOPIC NO. 33.**     Costs to You associated with the Accused Instrumentalities, including manufacturing costs, marketing and advertising costs, costs of sales, research and development costs, and other costs.

**TOPIC NO. 34.**     Your sales force as it relates to the Accused Instrumentalities, including training of Your sales personnel and sales policies and practice, demonstrations, quality assurance, quality control, contracts and/or agreements with customers, and questions from customers.

**TOPIC NO. 35.**     Sales or offers for sale in the United States of the Accused Instrumentalities, by or on behalf of Defendants, identified by SKU or model number, including the quantity sold, the selling price per unit, the fixed and variable costs attributed to the sale, the profit realized from each sale, the method used to calculate the profit, and any other financial record related to each Accused Instrumentality, including any other revenue received or contract signed by Defendants related to support, maintenance, installation, development or any other services or products which relate to the Accused Instrumentalities.

**TOPIC NO. 36.**     Your revenue model for the Accused Instrumentalities, including revenues from hardware sales compared to other sales (e.g., software, subscription, service, maintenance, and support).

**TOPIC NO. 37.**     All revenues, including recurring service or subscription revenues, associated with any network connection that involve an Accused Instrumentality at either the client or server side of the connection.

**TOPIC NO. 38.**     For each of the Accused Instrumentalities, the specific revenues, number of units sold, and profit generated directly or indirectly from the Accused Instrumentalities in the Accused Instrumentalities from 2016 to the present, per product, including: (a) units sold; (b) monthly or quarterly service, hardware, software revenue; and (c) recurring revenue, including monthly subscription revenue from customers using the Accused Instrumentality, including service, maintenance, and support revenue.

**TOPIC NO. 39.**     For each of the Accused Instrumentalities, on a monthly basis (or quarterly if monthly is not available) from 2016, per product: (a) number of subscribers, (b) service revenue, (c) hardware revenue, (d) average revenue per user (ARPU), (e) average life of customer, and (f) churn rate.

**TOPIC NO. 40.**     The cost to You to install or initiate service at a customer location including the hourly rate of technicians, material cost, and time to complete an installation or set-up.

**TOPIC NO. 41.**     Your practices or policies for documenting or tracking service revenues associated with individual Accused Instrumentalities or Accused Services; for example, how you document or track the revenues associated with any individual client or server device.

**TOPIC NO. 42.**     Your pricing strategy for each of the Accused Products and Accused Services, including price lists, pricing policies, and the process for setting the price for each of the Accused Products and Accused Services.

**TOPIC NO. 43.**     Your financial strategy for each of the Accused Products Accused Services, including sales plans, financial plans, budgets, and sales projections.

**TOPIC NO. 44.**     The historical, current, and projected market share of and market demand for each of the Accused Products and Accused Services, including the product features responsible for market demand.

**TOPIC NO. 45.**     All marketing, advertising and promotion relating to any of the Accused Products and Accused Services including but not limited to third party marketing materials, marketing through sales representatives, international marketing and advertising, including: (a) sales and marketing strategies; (b) development of sales and marketing materials; (c) content of sales and marketing materials; and (d) identification of all vendors, consultants, and/or agencies that worked on the marketing, advertising, and/or promotions.

**TOPIC NO. 46.**     Product requirement documents, market studies, consumer surveys, or other reports or analyses prepared by you, prepared on your behalf, or known by you identifying customer or industry preferences concerning the features and functionality of the Accused Instrumentalities.

**TOPIC NO. 47.**     Agreements or licenses concerning any of the Accused Products and/or Accused Services.

**TOPIC NO. 48.**     Your policies, procedures and practices regarding licensing patents and technology, including without limitation how You determine to incorporate patented technology into the Accused Instrumentalities, and the nature and identity of the implementation costs, licensing fees, or other costs and benefits that You consider.

**TOPIC NO. 49.**     Your patent license agreements, and proposed license agreements, whether or not ultimately executed, related to the Accused Instrumentalities and/or other or services, including but not limited to license agreements, covenants, releases, and settlements.

**TOPIC NO. 50.**     Any license, including patent or technology licenses, that You contend covers technology, patents and/or products that are comparable to the Asserted Patents.

**TOPIC NO. 51.**     Any litigation settlements or judgments obtained by You in patent litigation and the bases of Your damages claims in those litigations.

**TOPIC NO. 52.**     Any indemnification agreements relating to the Accused Instrumentalities, including agreements and communications related to those agreements and any demand for indemnification.

**TOPIC NO. 53.**     All facts and circumstances relating to all actual or proposed agreements or licenses concerning the manufacture, distribution, marketing, or sale of any of the Accused Products and/or Accused Services, including any express or implied licenses to practice any Patents-in-Suit.

**TOPIC NO. 54.**      The relationship between you and any non-party to this litigation that has developed, manufactured, sold and/or marketed the Accused Instrumentalities, including all contracts and agreements between You and such non-party(-ies).

**TOPIC NO. 55.**      Your business plans, including, but not limited to, strategic plans, operating plans, marketing plans, sales plans, financial plans, and budgets relating to Your Accused Products and Accused Services, including market analyses, competitive analyses (including identification of competitors), business plans, price lists or policies, and projections relating to sales, market share, and revenues.

**TOPIC NO. 56.**      The process, from a business perspective, that led to the introduction of the Accused Instrumentalities, including business plans as well as sales and/or profit projections.

**TOPIC NO. 57.**      The manner in which the Accused Services are provided, sold, or offered to sold by or on behalf of defendants, including, but not limited to, by volume consumed, time used, premium content offerings, bundling, or packages.

**TOPIC NO. 58.**      The smallest unit of each Accused Instrumentality that you sell.

**TOPIC NO. 59.**      Apportionment of price between different features in each Accused Instrumentality, including apportionment of price or value the services provided by You, including the portion of services provided by You related to content

delivered (e.g., programming), and all other optional features, functionalities that You sell to customers (e.g., DVR services, Pay per View, On Demand content).

**TOPIC NO. 60.**     The difference, if any, in the costs associated with providing the Accused Services based on the manner in which the Accused Services are provided, sold, or offered to sold by or on behalf of defendants, including, but not limited to, by volume consumed, time used, content offerings, service bundling, or packages.

**TOPIC NO. 61.**     Standard promotional offerings available to customers that are not associated with the underlying costs associated with providing the Accused Services.

**TOPIC NO. 62.**     The value of the Accused Instrumentalities to You.

**TOPIC NO. 63.**     Studies, reports, research, and surveys on the value (or incremental value) that consumers attribute to the Accused Instrumentalities and the contents thereof, including internal, custom, or syndicated studies, surveys, or reports, concerning the inclusion, use, desirability, or value of the Accused Instrumentalities and the functionality of the Accused Instrumentalities.

**TOPIC NO. 64.**     The commercial success (or lack of commercial success) of the Accused Instrumentalities, including documents showing revenue, profits, quantities of products sold, market information, competitive analyses, press releases, financial reports, financial performance analyses, business plans, industry reports, and analyst reports.

**TOPIC NO. 65.**      Any surveys, reports, polls, or other documentation regarding customer sentiment, relating to the Accused Instrumentalities or features of the Accused Instrumentalities, including: i) the contents of any such documents, ii) reason for commissioning or otherwise acquiring the document, and iii) any actions taken by Defendant in response to such document.

**TOPIC NO. 66.**      The metrics and/or analytics regarding usage of (and/or engagement with) the Accused Instrumentalities that Defendant tracks or receives from third parties.

**TOPIC NO. 67.**      The cost savings or benefits realized by You associated with implementing the Accused Instrumentalities or functionalities, including, reduction in hardware cost or the amount of hardware required, reduced maintenance, installation, or service cost to You.

**TOPIC NO. 68.**      The cost savings or benefits to Your customers associated with implementing the Accused Instrumentalities or functionalities, including increased quality of programming service, increased reliability, reductions in warranty requests, and ease of use.

**TOPIC NO. 69.**      The costs associated with providing the Accused Services, including, but not limited to the costs in terms of customer consumption, e.g. amount of data used, time spent consuming, and volume consumed, and the manner in which YOU calculate these costs.

**TOPIC NO. 70.**      The profits associated with providing the Accused Services, including, but not limited to the profits in terms of customer consumption, e.g. amount of data used, time spent consuming, and volume consumed, and the manner in which YOU calculate these profits.

**TOPIC NO. 71.**      Sales or offers for sale in the United States of the Accused Services, by or on behalf of Defendants, including, but not limited to the identity and details associated with the package of services sold, including, but not limited to, the volume of data, content offering, and service bundling, the profit realized from each sale, the method used to calculate the profit, and any other financial record related to each sale of Accused Services, including any other revenue received or contract signed by Defendants related to support, maintenance, installation, development or any other services or products which relate to the Accused Services.

**TOPIC NO. 72.**      Sales or offers for sales in the United States of the Accused Services by or on behalf of Defendants, to each customer, per year, the selling price per customer, the fixed and variable costs attributed to the sale, and the profit realized from each customer, the method used to calculate the profit, and any other financial record related to the Accused Services.

**TOPIC NO. 73.**      Your pricing strategy for the Accused Services, including price lists, pricing policies, and the process for setting the prices for the Accused Services.

A-22

**TOPIC NO. 74.**     Your financial strategy for the Accused Services, including sales plans, financial plans, budgets, and sales projections.

**TOPIC NO. 75.**     Ancillary products/services marketed and/or sold with, or applicable to, each Accused Product, and the manner in which those products or services are sold (e.g. in bundles or as individual products or services), including the extent to which derivative sales or services are achieved in conjunction with the sale, lease, loan, or offer of the same of each Accused Product.

**TOPIC NO. 76.**     Any estimate or assessment of the value of the business opportunity associated with providing the Accused Services, including, without limitation, potential sales, revenues, and profits.

**TOPIC NO. 77.**     The historical, current, and projected market share of and market demand for the Accused Services, including the product features responsible for market demand.

**TOPIC NO. 78.**     All marketing and promotion relating to the Accused Services, including: (a) sales and marketing strategies; (b) development of sales and marketing materials; and (c) content of sales and marketing materials.

**TOPIC NO. 79.**     Agreements or licenses concerning any of the Accused Services.

**TOPIC NO. 80.**     All facts and circumstances relating to all actual or proposed agreements or licenses concerning the manufacture, distribution, marketing, or sale of

EX I
Page 77

the Accused Services, including any express or implied licenses to practice any Patents-in-Suit.

**TOPIC NO. 81.**      Your business plans, including, but not limited to, strategic plans, operating plans, marketing plans, sales plans, financial plans, and budgets relating the Accused Services, including market analyses, competitive analyses (including identification of competitors), business plans, price lists or policies, and projections relating to sales, market share, and revenues.

**TOPIC NO. 82.**      All facts and circumstances related to how You maintain business records in the course of developing service offerings, including for the Accused Services.

**TOPIC NO. 83.**      The components necessary for YOU to provide the Accused Services to customers at the location at which the Accused Services are provided, including, but not limited to for example, the various Accused Products.

**TOPIC NO. 84.**      Of the components necessary for YOU to provide the Accused Services to customers at the location at which the Accused Services are provided, those components that YOU provide, and which YOU expect the customer to obtain from YOU; for avoidance of doubt, components that the customer can obtain from you, or purchase elsewhere fall within this category.

**TOPIC NO. 85.**      Of the components necessary for YOU to provide the Accused Services to customers at the location at which the Accused Services are

A-24

provided, that YOU provide, but which the customer can obtain elsewhere, the amount provided by YOU as compared to the consumer obtaining elsewhere.

**TOPIC NO. 86.**     A user's experience streaming or receiving satellite transmission on Defendants' TV service, including data about the user's experience, such as quality of experience metrics, quality of performance metrics, quality of service metrics, viewer engagement, or other metrics quantifying, measuring, analyzing, or describing the user's experience, including without limitation the impact of rebuffering or other interruptions on viewer experience, engagement, watch time, or any other metric relevant to Your business.

**TOPIC NO. 87.**     Customer and media reviews of the Accused Products, Accused Instrumentalities, and Accused Services, related to the technical aspects of the same, including, but not limited to, speed, responsiveness, video quality, sound quality, memory, navigation, and the like.

**TOPIC NO. 88.**     Praise, recognition, awards, accolades, with respect to the Accused Products, Accused Instrumentalities, and Accused Services or any functionality thereof.

**TOPIC NO. 89.**     All facts related to what You contend is a reasonable royalty for any infringement of the patents asserted in this case.

**TOPIC NO. 90.**     Your policies, procedures, strategies, and/or programs for the licensing of intellectual property, including licensing in and licensing out.

**TOPIC NO. 91.**     Forecasts of unit sales, revenue, gross profit, incremental profit, and operating margin from both domestic and foreign sales (if production provided) of the sales of each Accused Product and related ancillary products/services, including business plans.

**TOPIC NO. 92.**     Your communications and/or interactions with third parties, including, but not limited to MaxLinear and Broadcom concerning Entropic and/or the Asserted Claims.

**TOPIC NO. 93.**     Your contracts with any third party regarding each of the Accused Products.

**TOPIC NO. 94.**     How You communicate with suppliers and/or vendors, including any web-based project collaboration system(s).

**TOPIC NO. 95.**     The identity and location of persons most knowledgeable about each of the foregoing topics.

**TOPIC NO. 96.**     All facts and circumstances related to how You maintain business records in the course of developing products.

**TOPIC NO. 97.**     Your search for, collection of, assembly of, and production of documents and things (including electronically stored information) in this Case, including the identities and efforts of persons involved therewith and the custodians of any such collected documents.

**TOPIC NO. 98.**     Document retention notices issued in connection with this Case and persons and entities who have received such retention notices.

**TOPIC NO. 99.**    The structure and operation of Your document management system(s), including each repository of documents and things (including electronically stored information) from which You produced documents and things responsive to discovery requests.

**TOPIC NO. 100.**    Your policies, procedures, and practices with regard to organization, maintenance, retention, or destruction of documents and things, including but not limited to Your policies, procedures, and practices with respect to the organization, maintenance, retention, archiving, or deletion of electronic files, electronic data, and/or e-mail.

**TOPIC NO. 101.**    The factual basis for any purported destruction or loss by You of any documents or things (including electronically stored information) responsive to one of Plaintiff's requests for production.

**TOPIC NO. 102.**    The identity, source, and location of documents reviewed, relied upon, or consulted in preparation for responding to the Topics listed herein.

**TOPIC NO. 103.**    Your responses to Entropic's Interrogatories.

**TOPIC NO. 104.**    Any non-privileged communications made in preparation for responding to the Topics listed herein, including the identity, location, employer, and job title of persons who communicated with Defendants' 30(b)(6) designee(s) in preparation for testifying about the Topics listed herein.

**TOPIC NO. 105.**    For each of the Asserted Patents, the factual basis for your position regarding secondary considerations of non-obviousness such as, but not limited

1    to, commercial success, long-felt need, industry recognition, copying by others, prior
2
3    failure by others, licensing by others, or unexpected results.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A-28