# EXHIBIT

# P

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | |
| Plaintiff, | Case No. 2:22-cv-00076-JRG |
| v. | |
| DISH NETWORK CORP.; | **DEMAND FOR JURY TRIAL** |
| DISH NETWORK LLC; AND | |
| DISH NETWORK SERVICE LLC | |
| Defendants. | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Entropic Communications, LLC ("Entropic"), files this first amended complaint for patent infringement against Defendants Dish Network Corporation, Dish Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH") and in support thereof alleges and avers as follows:

## NATURE OF THE ACTION

1.      This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on infringement of U.S. Patent Nos. 7,130,576 ("the '576 Patent"), 7,542,715 ("the '715 Patent"), and 8,792,008 ("the '008 Patent") (collectively "the Patents-in-Suit").

## THE PARTIES

2.      Entropic is a Delaware limited liability company with an office at 7150 Preston Rd., Suite 300 Plano, Texas 75024.

EX P
Page 117

3. On information and belief, Defendant Dish Network Corporation is a corporation established under the laws of the State of Nevada, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

4. On information and belief, Defendant Dish Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

5. Dish Network L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

6. On information and belief, Defendant Dish Network Service L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

7. Dish Network Service L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.

8. On information and belief, DISH has several authorized dealers in this district including, but not limited to, in Longview, Texarkana, Emory, Athens, Palestine, Wills Point Sulphur Springs and Lufkin. *See* https://www.dish.com/find-retailer.

9. On information and belief, DISH owns or leases, and maintains and operates several Local Receive Facilities (LRFs) in this district.

10. On information and belief, in each of those LRFs, DISH owns and stores equipment such as receivers and servers. Each of these LRFs are used to acquire and transmit local television channels over the DISH spectrum to DISH customers.

-2-

11. On information and belief, DISH employs personnel that install, service, repair and/or replace equipment associated with the LRFs, as appropriate, in this district.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271.

13. This Court has personal jurisdiction over DISH in this action because DISH has committed acts of infringement within the State of Texas and within this district through, for example, the provision of satellite television services by DISH utilizing devices provided by DISH as described in the counts herein ("Accused Satellite Television Services"). The Accused Satellite Television Services include the provision of signals, programming, and content to DISH's customers via various products, including Outdoor Units ("ODU"), dish antennas, feed horns, low-noise block converters ("LNB" or "LNBF"), processing units, and signal selector and combiners ("SSC").

14. The Accused Satellite Television Services are available for subscription online from the DISH website.

15. The Accused Satellite Television Services are available for subscription from various physical stores, including the brick and mortar location at 801 K Avenue, Plano, Texas 75074.

16. The devices provided by DISH to supply the Accused Satellite Television Services are provided to customers in this district and may be obtained by customers from physical locations in this district, including at 801 K Avenue, Plano, Texas 75074.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Venue is proper because DISH has committed and continues to commit acts of patent infringement in this district,

EX P
Page 119

including making, using, offering to sell, and/or selling Accused Satellite Television Services in this district, and/or importing Accused Satellite Television Services into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this district.

18.    DISH has regular and established places of business in this district, including at least at 6826 Industrial Rd #D, Beaumont, Texas 77705:



https://www.google.com/maps/@29.9877219,-94.2059833,3a,43.6y,310.63h,87.12t/data=!3m7!1e1!3m5!1sZoqooNoTRZyV1pq8r1aFqQ!2e0!6shttps:%2F%2Fstreetviewpixels-pa.googleapis.com%2Fv1%2Fthumbnail%3Fpanoid%3DZoqooNoTRZyV1pq8r1aFqQ%26cb_client%3Dmaps_sv.tactile.gps%26w%3D203%26h%3D100%26yaw%3D64.17555%26pitch%3D0%26thumbfov%3D100!7i13312!8i6656.

19.     DISH has regular and established places of business in this district, including at least at 2100 Couch Drive, McKinney, Texas 75069:



https://www.google.com/maps/@33.1724269,-96.6127357,3a,75y,53.57h,93.08t/data=!3m6!1e1!3m4!1s60g9IRAJzCyJ5bnYltEwrA!2e0!7i16384!8i8192.

20.     There are also DISH retail stores in the district, including a "Premier Local Retailer" at 801 K Avenue, Plano, Texas 75074, as also shown below.



https://www.dishbeatscable.com/contact-us/.

21.    DISH targets its advertisements to residents of this district.

22.    DISH continues to conduct business in this judicial district, including one or more acts of making, selling, using, importing and/or offering for sale Accused Satellite Television Services and providing support service to customers in this district.

## THE PATENTS-IN-SUIT

23.    On October 31, 2006, the '576 Patent, entitled "Signal Selector and Combiner for Broadband Content Distribution," was duly and legally issued by the United States Patent and Trademark Office.

24.    On August 11, 2009, the United States Patent and Trademark Office issued a Reexamination Certification of the '576 Patent.

25.    The '576 Patent was duly assigned to Entropic. A true and accurate copy of the '576 Patent is attached hereto as Exhibit A.

26.    On June 2, 2009, the '715 Patent, entitled "Signal Selector and Combiner for Broadband Content Distribution," was duly and legally issued by the United States Patent and Trademark Office. The '715 Patent was duly assigned to Entropic. A true and accurate copy of the '715 Patent is attached hereto as Exhibit B.

27.    On July 29, 2014, the '008 Patent, entitled "Method and Apparatus for Spectrum Monitoring," was duly and legally issued by the United States Patent and Trademark Office. The '008 Patent was duly assigned to Entropic. A true and accurate copy of the '008 Patent is attached hereto as Exhibit C.

28.    Entropic is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.

## ENTROPIC'S LEGACY AS A SATELLITE INNOVATOR

29.     Entropic Communications Inc., the predecessor-in-interest to Entropic, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others. Entropic Communications Inc. was instrumental in the development of the Multimedia over Coax Alliance ("MoCA") standard, Direct Broadcast Satellite ("DBS") Outdoor Unit ("ODU") single wire technology, and System-on-Chip ("SoC") solutions for set-top boxes ("STBs") in the home television and home video markets.

30.     Dr. Monk received his Bachelor of Science degree and Doctorate in Electrical Engineering from the University of California San Diego and a Master of Science in Electrical Engineering from the California Institute of Technology.

31.     Under the guidance of Dr. Monk, Entropic Communications Inc. grew to an eventual public listing on the NASDAQ in 2007. After the public listing, the company acquired RF Magic, Inc. in 2007, a company specializing in DBS ODU technology and hardware.

32.     Additional growth between 2007 and 2015 bolstered the technical expertise of Entropic Communications Inc., including satellite signal acquisition, digital signal stacking, and signal distribution.

33.     For years, Entropic Communications Inc. pioneered cutting edge DBS ODU technology. This technology simplified the installation required to support simultaneous reception of multiple channels from multiple satellites over a single cable. The company's DBS ODU products include various integrated circuits and SoCs for band translation switches, channel stacking switches, and digital channel stacking switches. The DBS ODU technology was deployed as an industry leading solution in global DBS operators, including DISH.

34.     In 2015, MaxLinear, Inc.—a leading provider of radio-frequency (RF), analog, digital, and mixed-signal semiconductor solutions—acquired Entropic Communications Inc. and the pioneering intellectual property developed by Dr. Monk and his team.

EX P
Page 123

35.     For years, satellite providers such as DISH relied upon products produced in whole or in part by Entropic Communications Inc. (and later MaxLinear, Inc.) to enable their services for customers.

36.     The Patents-in-Suit are the result of years of research and development in satellite and cable technology. These innovations have enabled DISH to provide enhanced and expanded services to customers, which in turn has increased revenues for DISH while at the same time reducing the costs.

## **FIRST CAUSE OF ACTION**

### **(Infringement of the '576 Patent)**

37.     Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 36 as if set forth herein.

38.     Entropic owns all substantial rights, interest, and title in and to the '576 Patent, including the sole and exclusive right to prosecute this action and enforce the '576 Patent against infringers, and to collect damages for all relevant times.

39.     An outdoor unit or "ODU" is typically located, as the name suggests, outside of a customer's home. For example, an ODU often includes a dish antenna, one or more feed horns, one or more low-noise block converters, and one or more processing units. The processing units can be located within the ODU itself or in a multiswitch unit located between the ODU and devices within the customer's home. An ODU is generally responsible for receiving satellite broadband signals from one or more satellites, processing the received signals, and providing the processed signals to one or more devices, such as an integrated receiver decoder unit, located within the customer's home. These in-home devices can decode (or otherwise process) the signals received from the ODU. The in-home devices can output television programming to a customer's television and provide video recording functionality.

40.     The '576 Patent generally describes the process of an ODU receiving satellite broadband signals, combining certain extracted signals into a composite signal, and transmitting that composite signal from the ODU to an integrated receiver decoder unit, without changing the modulation of the signal. This transmission historically required separate wires running from the ODU to each integrated receiver decoder unit.  The '576 Patent provides the benefit of single wire transmission from the ODU to interior integrated receiver decoder units. DISH implements this single wire transmission to provide the Accused Satellite Television Services by supplying and using, for example, SSC products.

41.     DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42).

42.     DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased SSC products that perform the Accused Satellite Television Services.

43.     DISH directly infringes the method of at least Claim 14 of the '576 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the SSC products provided by DISH.

44.     The SSC products remain the property of DISH even when deployed at the property of a customer.

45.     The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

46.     DISH has been and is aware of the '576 Patent.

47.     As set forth in the attached non-limiting claim chart (Exhibit D), DISH has directly infringed and is infringing at least Claim 14 of the '576 Patent by using, selling, and offering for sale the Accused Satellite Television Services.

48. Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 14 of the '576 Patent.

49. DISH has been aware that it infringes the '576 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

50. Customers and subscribers of DISH infringe at least claim 14 of the '576 Patent by using the claimed method, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42).

51. DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 14 of the '576 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '576 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the "satellite broadcast signals" claimed by the '576 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. DISH knew that customer use of the ODU, the SSC products and the Accused Satellite Television Services provided by DISH infringe at least Claim 14 of the '576 Patent. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 14 of the '576 Patent.

52.     Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ("ISP's"), such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 14 of the '576 Patent.

53.     Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 14 of the '576 Patent.

54.     The ODU and SSC products have no substantial non-infringing uses. When an end user uses the ODU and SSC products in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 14 of the '576 Patent. DISH knows that the ODU and SSC products were especially made for use in an infringing manner prior to the filing of this lawsuit.

55.     DISH's indirect infringement of at least Claim 14 of the '576 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance, support, installation, repair and replacement services provided by DISH in support of the provision of the Accused Satellite Television Services.

56.     Entropic has been damaged as a result of the infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

57.     DISH's infringement of the '576 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

58.     Entropic has complied with 35 U.S.C. § 287 with respect to the '576 Patent.

EX P
Page 127

## SECOND CAUSE OF ACTION

### (Infringement of the '715 Patent)

59.　　Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 58 as if set forth herein.

60.　　Entropic owns all substantial rights, interest, and title in and to the '715 Patent, including the sole and exclusive right to prosecute this action and enforce the '715 Patent against infringers, and to collect damages for all relevant times.

61.　　The '715 Patent generally describes a system that receives a plurality of channels from an LNBF, a frequency translator that shifts channels to new carrier frequencies, a signal combiner capable of combining at least two signals to produce a composite signal having the same modulation as the LNBF channels, where the composite signal is transmitted on a coax cable to a gateway (for example, a Hopper3).

62.　　DISH has used, sold, and offered for sale the Accused Satellite Television Services that utilize gateway systems, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42) used with gateways such as the Hopper3.

63.　　DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased gateway systems that perform the Accused Satellite Television Services.

64.　　DISH directly infringes at least Claim 9 of the '715 Patent during provision of the Accused Satellite Television Services by utilizing, for example, the gateway devices provided by DISH.

65.　　The gateway systems remain the property of DISH even when deployed at the property of a customer.

66.　　The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

EX P
Page 128

67.     DISH has been and is aware of the '715 Patent.

68.     As set forth in the attached non-limiting claim chart (Exhibit E), DISH has directly infringed and is infringing at least Claim 9 of the '715 Patent by using, importing, selling, leasing, and offering for sale the Accused Satellite Television Services.

69.     Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 9 of the '715 Patent.

70.     DISH has been aware that it infringes the '715 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

71.     Customers and subscribers of DISH infringe at least claim 9 of the '715 Patent by using the claimed system, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42) as arranged in a manner directed by DISH.

72.     DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 9 of the '715 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '715 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the "gateway in communication with [an] ODU," "signal selector," "frequency translator," and "signal combiner" claimed by the '715 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. For at least the above-listed

-13-

reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 9 of the '715 Patent.

73. Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 9 of the '715 Patent.

74. Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 9 of the '715 Patent.

75. The gateway systems and switches have no substantial non-infringing uses. When an end user uses the gateway systems and switches in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 9 of the '715 Patent. DISH knew that the gateway systems and switches were especially made for use in an infringing manner prior to the filing of this lawsuit.

76. DISH's inducement of, and contribution to, the direct infringement of at least Claim 9 of the '715 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.

77. Entropic has been damaged as a result of DISH's infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

78.     DISH's infringement of the '715 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

79.     Entropic has complied with 35 U.S.C. § 287 with respect to the '715 Patent.

## THIRD CAUSE OF ACTION

### (Infringement of the '008 Patent)

80.     Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 79 as if set forth herein.

81.     Entropic owns all substantial rights, interest, and title in and to the '008 Patent, including the sole and exclusive right to prosecute this action and enforce the '008 Patent against infringers, and to collect damages for all relevant times.

82.     The '008 Patent generally describes a system that receives a signal having a range of frequencies, the digitization of the received signal, and reporting of certain signal characteristics to the source of the received signal.

83.     DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize monitoring equipment which include certain monitoring devices (for example, Hopper3).

84.     DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased monitoring devices that perform the Accused Satellite Television Services.

85.     DISH directly infringes at least Claim 3 of the '008 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the monitoring devices provided by DISH.

86.     The monitoring devices remain the property of DISH even when deployed at the property of a customer.

87.     The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

88. DISH has been and is aware of the '008 Patent.

89. As set forth in the attached non-limiting claim chart (Exhibit F), DISH has directly infringed and is infringing at least Claim 3 of the '008 Patent by using, importing, selling, leasing, or offering for sale the Accused Satellite Television Services.

90. Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 3 of the '008 Patent.

91. DISH has been aware that it infringes the '008 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

92. Customers and subscribers of DISH infringe at least claim 3 of the '008 Patent by using the claimed method, at least during the use of the monitoring devices (for example, Hopper® 3).

93. DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 3 of the '008 Patent by providing the LNB, LNBF, and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the LNB, LNBF, and SSC products in a manner that infringes the '008 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the signals claimed by the '008 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the LNB, LNBF, and SSC products in a manner that infringes at least Claim 3 of the '008 Patent.

94. Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 3 of the '008 Patent.

95. Additionally, DIS contributes to the customers' direct infringement. DISH provides apparatuses, namely the monitoring devices, used by customers to perform at least Claim 3 of the '008 Patent.

96. The monitoring devices have no substantial non-infringing uses. When an end user uses the monitoring devices in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 3 of the '008 Patent. DISH knew that the monitoring devices were especially made for use in an infringing manner prior to the filing of this lawsuit.

97. DISH's indirect infringement of at least Claim 3 of the '008 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.

98. Entropic has been damaged as a result of DISH's infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

99. DISH's infringement of the '008 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

100. Entropic has complied with 35 U.S.C. § 287 with respect to the '008 Patent.

-17-

## **JURY DEMAND**

Entropic hereby requests a trial by jury on all issues so triable by right.

## **PRAYER FOR RELIEF**

WHEREFORE, Entropic requests that:

A.      The Court find that DISH has directly infringed the Patents-in-Suit and hold DISH liable for such infringement;

B.      The Court find that DISH has indirectly infringed the Patents-in-Suit by inducing its customers to directly infringe the Patents-in-Suit and hold DISH liable for such infringement;

C.      The Court find that DISH has indirectly infringed the Patents-in-Suit by contributing to DISH's Customer's direct infringement of the Patents-in-Suit and hold DISH liable for such infringement;

D.      The Court award damages pursuant to 35 U.S.C. § 284 adequate to compensate Entropic for DISH's past infringement of the Patents-in-Suit, including both pre- and post-judgment interest and costs as fixed by the Court;

E.      The Court increase the damages to be awarded to Entropic by three times the amount found by the jury of assessed by the Court;

F.      The Court declare that this is an exceptional case entitling Entropic to its reasonable attorneys' fees under 35 U.S.C. § 285; and

G.      The Court award such other relief as the Court may deem just and proper.

Dated: March 30, 2022                    Respectfully submitted,


                                         /s/ *James Shimota by permission Wesley Hill*
                                         James Shimota – LEAD ATTORNEY
                                         Jason Engel
                                         George Summerfield
                                         Devon Beane
                                         Erik Halverson

**K&L GATES LLP**
Suite 3300
70 W. Madison Street
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
jason.engel@klgates.com
george.summerfield@klgates.com
devon.beane@klgates.com
erik.halverson@klgates.com

Brian Bozzo
**K&L GATES LLP**
210 Sixth Ave.
Pittsburgh, PA 15222
Tel.: (412) 355-6500
Fax: (412) 355-6501
brian.bozzo@klgates.com

Wesley Hill
Texas Bar No. 24032294
**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Pkwy
Longview, TX 75604
Tel:  (903) 757-6400
Fax  (903) 757-2323
wh@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
ENTROPIC COMMUNICATIONS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on this the 30th day of March, 2022.

<u>/s/ Wesley Hill</u>