Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone:  +1.858.720.5700
Facsimile:   +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone:  +1.303.291.2357
Facsimile:   +1.303.291.2457

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>     Plaintiff,<br><br>          v.<br><br>DIRECTV, LLC and<br>AT&T SERVICES, INC.,<br><br>     Defendants. | No. 2:22-cv-07775-JWH-JEM<br><br>**DISH NETWORK'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>     Plaintiff,<br><br>          v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>     Defendants. | No. 2:22-cv-07959-JWH-JEM<br><br>Case Transferred from E.D. Texas (2:22-cv-76-JRG)<br><br>JURY TRIAL DEMANDED |

-1-

Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants") hereby provide this First Amended Answer to the First Amended Complaint for Patent Infringement ("Amended Complaint") filed by Entropic Communications, LLC ("Entropic" or "Plaintiff") and set forth its First Amended Affirmative Defenses and Counterclaims as follows:

## GENERAL DENIAL

Unless specifically admitted below, DISH denies each and every allegation in the Amended Complaint. To the extent headings of the Amended Complaint are construed as allegations, they are each denied.

## NATURE OF THE ACTION

1. The allegations of paragraph 1 contain legal conclusions to which no response is required. To the extent a response is required, DISH admits that Entropic purports to assert patent infringement claims against DISH involving United States Patent Nos. 7,130,576 ("the '576 patent"), 7,542,715 ("the '715 patent"), and 8,792,008 ("the '008 patent") (collectively, "the patents-in-suit"). DISH denies all remaining allegations of paragraph 1.

## THE PARTIES

2. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and, on that basis, denies them.

3. DISH Network Corporation admits the allegations of paragraph 3.

4. DISH Network L.L.C. admits the allegations of paragraph 4.

5. DISH Network L.L.C. admits the allegations of paragraph 5.

6. Dish Network Service L.L.C. admits the allegations of paragraph 6.

7. Dish Network Service L.L.C. admits the allegations of paragraph 7.

8. DISH admits the presence of retailers providing DISH Network L.L.C. services in Longview, Emory, Athens, Palestine, Wills Point, Sulphur Springs,

Texarkana, and Lufkin.  These retailers are separate companies that are not affiliates of DISH.  DISH denies all remaining allegations contained in paragraph 8.

9.      DISH admits the presence of Local Receive Facilities utilized by DISH Network L.L.C. in the Eastern District of Texas for purposes of supporting DISH Network L.L.C. services.   DISH denies all remaining allegations contained in paragraph 9.

10.      DISH admits that Local Receive Facilities are used by DISH Network L.L.C. to provide services to DISH customers. DISH denies that Local Receive Facilities have any relevance to the issues in dispute in this case. DISH denies the remaining allegations of paragraph 10.

11.      DISH denies the allegations of paragraph 11.

**JURISDICTION AND VENUE**

12.      DISH admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  DISH denies all remaining allegations contained in paragraph 12.

13.      DISH admits that it will not contest for the purposes of this action that DISH Network L.L.C. and Dish Network Service L.L.C. were subject to personal jurisdiction the Eastern District of Texas and are subject to personal jurisdiction in this Court and that they transact business in the State of Texas.  DISH denies all remaining allegations contained in paragraph 13.

14.      DISH admits that DISH Network L.L.C. provides certain services through the DISH Network L.L.C. website.  DISH denies all remaining allegations contained in paragraph 14.

15.      801 K Avenue, Plano, Texas 75074 is an address where a multi-unit strip-mall is located.  That strip mall houses a number of different and distinct businesses, including an authorized DISH Network L.L.C. retailer.  That retailer is a separate company from (i.e., not an affiliate of) DISH where it is possible for

customers to sign up for DISH Network L.L.C. services.  DISH denies the remaining allegations contained in paragraph 15.

16.     DISH admits that DISH Network L.L.C. and/or Dish Network Services L.L.C. supply devices to customers in this District and the Eastern District of Texas in some instances, as they do to customers in many or all Districts of the United States. On information and belief, 801 K Avenue, Plano, Texas 75074 is an address where a multi-unit strip-mall is located.  That strip mall houses a number of different and distinct businesses, including an authorized DISH Network L.L.C. retailer. That retailer is a separate company from (i.e., not an affiliate of) DISH where it is possible for customers to sign up for DISH Network L.L.C. services. DISH denies the remaining allegations contained in paragraph 16.

17.     DISH denies that venue is proper in this District (the Central District of California) pursuant to 28 U.S.C. §1400(b).  DISH denies that it has committed or continues to commit acts of patent infringement in this District. DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business or reside in this District. To the extent paragraph 17 contains additional allegations, DISH denies them.

18.     DISH denies the allegations of paragraph 18.

19.     DISH admits the presence of a Dish Network Service L.L.C. facility at 2100 Couch Drive, McKinney, Texas 75069, although it denies that any activities at this facility are relevant to the issues in dispute in this case.  DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California).  To the extent paragraph 19 contains additional allegations, DISH denies them.

-4-

20.    DISH admits that it is possible for customers to sign up for DISH Network L.L.C. services at an authorized retailer location at 801 K Avenue Suite #2, Plano, Texas 75074, and DISH admits that the retail store located at 801 K Avenue, Plano, Texas 75074 is a "Premier Local Retailer."  DISH denies the characterization of this retailer as a "DISH retail store."  DISH denies that it has retail stores in this District (the Central district of California).  DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California).  To the extent paragraph 20 contains additional allegations, DISH denies them.

21.    For the purposes of this action, DISH does not contest that residents of this District and the Eastern District of Texas receive DISH Network L.L.C. advertisements.  DISH denies that DISH Network L.L.C. advertisements are uniquely or specifically targeted to this District in ways different than it targets advertisements to various locations throughout the United States.  To the extent paragraph 21 contains additional allegations, DISH denies them.

22.    DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California), but does not contest that one or more DISH entities conduct business in this District, although it is unclear what it means that they or any other entity "continues" to do so.  To the extent paragraph 22 contains additional allegations, DISH denies them.

## THE PATENTS-IN-SUIT

23.    DISH admits that the '576 patent is entitled "Signal Selector and Combiner for Broadband Content Distribution."  The remaining allegations

contained in paragraph 23 call for legal conclusions and, on that basis, DISH denies them.

24.    DISH admits that a Reexamination Certificate was issued by the United States Patent and Trademark Office on August 11, 2009.

25.    DISH admits that a document appearing to be the '576 patent is attached to the Amended Complaint as Exhibit A.   The remaining allegations contained in paragraph 25 call for legal conclusions and, on that basis, DISH denies them.

26.    DISH admits that the '715 patent is entitled "Signal Selector and Combiner for Broadband Content Distribution."   DISH admits that a document appearing to be the '715 patent is attached to the Amended Complaint as Exhibit B. The remaining allegations contained in paragraph 26 call for legal conclusions and, on that basis, DISH denies them.

27.    DISH admits that the '008 patent is entitled "Method and Apparatus for Spectrum Monitoring."   DISH admits that a document appearing to be the '008 patent is attached to the Amended Complaint as Exhibit C.   The remaining allegations contained in paragraph 27 call for legal conclusions and, on that basis, DISH denies them.

28.    The allegations contained in paragraph 28 call for legal conclusions and, on that basis, DISH denies them.

**ENTROPIC'S LEGACY AS A SATELLITE INNOVATOR**[1]

29.    DISH denies that Entropic Communications, Inc. is the predecessor-in-interest to Entropic.   DISH lacks knowledge and information sufficient to form a

_____

[1]   The headings from Entropic's Amended Complaint are reproduced here for convenience, but, as stated above, DISH does not admit that these argumentative headings are true.   For instance, this heading appears to suggest that the plaintiff here has a legacy as an innovator.   That is incorrect.   To the extent that the original operating company Entropic Communications, Inc. had any such legacy, the newly formed (but confusingly similarly named) Entropic Communications, LLC

-6-

belief as to the truth of the remaining allegations contained in paragraph 29 and, on that basis, denies them.

30. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, on that basis, denies them.

31. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, on that basis, denies them.

32. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 and, on that basis, denies them

33. DISH denies that Entropic Communications, Inc. pioneered cutting edge DBS ODU technology. DISH lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33 and, on that basis, denies them.

34. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 and, on that basis, denies them.

35. DISH Network L.L.C. admits that it has in the past used Entropic Communications, Inc. and MaxLinear as suppliers of components in products that Entropic now accuses of infringement. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 and, on that basis, denies them.

36. DISH denies the allegations contained in paragraph 36.

**FIRST CAUSE OF ACTION**
**(Infringement of the '576 Patent)**

37. DISH incorporates by reference its responses to paragraphs 1 through 36 of the Amended Complaint as though fully restated herein.

---

entity is not related to that original entity other than that it has now purchased patents that were once owned by the original operating company.

38.     The allegations contained in paragraph 38 call for legal conclusions and, on that basis, DISH denies them.

39.     Paragraph 39 characterizes the subject matter of the '576 patent and contains legal conclusions to which no response is required.  To the extent that a response is required, DISH admits that the '576 patent speaks for itself.  To the extent paragraph 39 attempts to characterize technologies outside of the '576 patent, DISH denies these allegations.  DISH denies the remaining allegations of paragraph 39.

40.     The allegations in paragraph 40 contain legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '576 patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '576 patent.  DISH denies the remaining allegations of paragraph 40.

41.     DISH denies the allegations of paragraph 41.

42.     DISH denies the allegations of paragraph 42

43.     DISH denies the allegations of paragraph 43.

44.     DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 44.

45.     DISH denies the allegations of paragraph 45.

46.     DISH admits that it became aware of the '576 patent at least as of the date when this suit was filed.  DISH denies the remaining allegations of paragraph 46.

47.     DISH denies the allegations of paragraph 47.

48.     DISH denies the allegations of paragraph 48.

49.     DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022.  DISH admits that each

of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022.  DISH denies the remaining allegations of paragraph 49.

50.    DISH denies the allegations of paragraph 50.

51.    DISH denies the allegations of paragraph 51.

52.    DISH denies the allegations of paragraph 52.

53.    DISH denies the allegations of paragraph 53.

54.    DISH denies the allegations of paragraph 54.

55.    DISH denies the allegations of paragraph 55.

56.    DISH denies the allegations of paragraph 56.

57.    DISH denies the allegations of paragraph 57.

58.    The allegations contained in paragraph 58 call for legal conclusions and, on that basis, DISH denies them.

### SECOND CAUSE OF ACTION
### (Infringement of the '715 Patent)

59.    DISH incorporates by reference its responses to paragraphs 1 through 58 of the Amended Complaint as though fully restated herein.

60.    The allegations contained in paragraph 60 call for legal conclusions and, on that basis, DISH denies them.

61.    Paragraph 61 characterizes the subject matter of the '715 patent and contains legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '715 patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '715 patent.  To the extent paragraph 61 contains additional allegations, DISH denies them.

62.    DISH denies the allegations of paragraph 62.

63.    DISH denies the allegations of paragraph 63.

64.    DISH denies the allegations of paragraph 64.

65.    DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 65.

66.    DISH denies the allegations of paragraph 66.

67.    DISH admits that it became aware of the '715 patent at least as of the date when this suit was filed.  DISH denies the remaining allegations of paragraph 67.

68.    DISH denies the allegations of paragraph 68.

69.    DISH denies the allegations of paragraph 69.

70.    DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022. DISH admits that each of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022. DISH denies the remaining allegations of paragraph 70.

71.    DISH denies the allegations of paragraph 71.

72.    DISH denies the allegations of paragraph 72.

73.    DISH denies the allegations of paragraph 73.

74.    DISH denies the allegations of paragraph 74.

75.    DISH denies the allegations of paragraph 75.

76.    DISH denies the allegations of paragraph 76.

77.    DISH denies the allegations of paragraph 77.

78.    DISH denies the allegations of paragraph 78.

79.    The allegations contained in paragraph 79 call for legal conclusions and, on that basis, DISH denies them.

**THIRD CAUSE OF ACTION**
**(Infringement of the '008 Patent)**

80.    DISH incorporates by reference its responses to paragraphs 1 through 79 of the Amended Complaint as though fully restated herein.

81.    The allegations contained in paragraph 81 call for legal conclusions and, on that basis, DISH denies them.

82.    Paragraph 82 characterizes the subject matter of the '008 patent and contains legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '008 patent speaks for itself.  DISH denies any remaining allegations of paragraph 82.

83.    DISH denies the allegations of paragraph 83.

84.    DISH denies the allegations of paragraph 84.

85.    DISH denies the allegations of paragraph 85.

86.    DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 86.

87.    DISH denies the allegations of paragraph 87.

88.    DISH admits that it became aware of the '008 patent at least as of the date when this suit was filed.  DISH denies the remaining allegations of paragraph 88.

89.    DISH denies the allegations of paragraph 89.

90.    DISH denies the allegations of paragraph 90.

91.    DISH admits that it received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022. DISH admits that each of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022. DISH denies the remaining allegations of paragraph 91.

-11-

92.   DISH denies the allegations of paragraph 92.

93.   DISH denies the allegations of paragraph 93.

94.   DISH denies the allegations of paragraph 94.

95.   DISH denies the allegations of paragraph 95.

96.   DISH denies the allegations of paragraph 96.

97.   DISH denies the allegations of paragraph 97.

98.   DISH denies the allegations of paragraph 98.

99.   DISH denies the allegations of paragraph 99.

100.   The allegations contained in paragraph 100 call for legal conclusions and, on that basis, DISH denies them.

## JURY DEMAND

DISH demands a jury trial under Federal Rule of Civil Procedure 38 and Local Civil Rule 38-1 on all issues so triable.

## PRAYER FOR RELIEF

DISH denies that Entropic is entitled to any of the relief sought in the Amended Complaint or to any relief whatsoever.  To the extent that Entropic's Prayer for Relief contains any factual allegations, DISH denies them.

## AFFIRMATIVE DEFENSES

DISH incorporates herein by reference the admissions, allegations, and denials contained in its Answer above as if fully set forth herein.  Without assuming any burden that it would not otherwise bear and without reducing Entropic's burden on any of the claims in the Amended Complaint, DISH states the following affirmative defenses to the claims in the Amended Complaint.  DISH reserves the right to amend its affirmative defenses and to add additional affirmative defenses, including, but not limited to, any defenses revealed during discovery.

### FIRST AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

As a first and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are barred, in whole or in part, to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to DISH by any entity or entities having an express or implied license to the Asserted Patents, and/or Entropic's claims are barred, in whole or in part, under the doctrine of patent exhaustion.  In this regard, to the extent that any of Entropic's accusations of infringement are based, in whole or in part, on Entropic Communications, Inc. or MaxLinear components, such claims are barred and exhausted.

### SECOND AFFIRMATIVE DEFENSE
### (Noninfringement of the '576 Patent)

As a second and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '576 patent.

### THIRD AFFIRMATIVE DEFENSE
### (Invalidity of the '576 Patent)

As a third and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '576 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

### FOURTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '715 Patent)

As a fourth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the

-13-

doctrine of equivalents, any valid claim of the '715 patent.

## FIFTH AFFIRMATIVE DEFENSE
### (Invalidity of the '715 Patent)

As a fifth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '715 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## SIXTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '008 Patent)

As a sixth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '008 patent.

## SEVENTH AFFIRMATIVE DEFENSE
### (Invalidity of the '008 Patent)

As a seventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '008 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## EIGHTH AFFIRMATIVE DEFENSE
### (Equitable Defenses)

As an eighth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines.

## NINTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

As a ninth and separate affirmative defense to each and every cause of action

stated in Entropic's Amended Complaint, DISH alleges that the patents-in-suit cannot be enforced by Entropic under the doctrine of prosecution history estoppel and that Entropic is estopped from claiming that the patents-in-suit include the accused products.

### TENTH AFFIRMATIVE DEFENSE
### (Limitation on Damages and Costs)

As a tenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to past damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by DISH of the claims of the Asserted Patents to the extent that Entropic, any predecessor owners, and/or licensees of the Asserted Patents have not complied, during any time period, with the notice and/or marking requirements of 35 U.S.C. § 287.

### ELEVENTH AFFIRMATIVE DEFENSE
### (No Entitlement to Enhanced Damages)

As an eleventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers.

### TWELFTH AFFIRMATIVE DEFENSE
### (No Entitlement to Attorneys' Fees)

As a twelfth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to attorneys' fees under 35 U.S.C. § 285 or pursuant to the Court's inherent powers.

### THIRTEENTH AFFIRMATIVE DEFENSE
### (No Entitlement to a Finding of Exceptional Case)

As a thirteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not

entitled to a finding that this case is exceptional under 35 U.S.C. § 285 or under the Court's inherent powers.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

As a fourteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that, to the extent Entropic does not hold all substantial rights in the Asserted Patents, Entropic lacks standing to assert the claims of alleged infringement.  Alternatively, other owner(s) of the Asserted Patents, if any, are indispensable parties to this action, mandating dismissal if they cannot be joined in this litigation.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Time Limitation on Damages)

As a fifteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are statutorily limited, in whole or in part, by provisions of 35 U.S.C. § 286 establishing time limitations on damages.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Improper Venue)

As a sixteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges venue is not proper in the Central District of California.   Specifically, as explained in DISH's opposition to Entropic's cross-motion to transfer (Dkt. 88 at 2-6), Entropic's First Amended Complaint contains no allegations that venue is proper in this District (the Central District of California).  And venue is not proper in this District.  None of the three named DISH defendants (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) reside in this District—i.e., none of the named DISH entities are headquartered or have a principal place of business in the Central District of California. The named DISH defendants (DISH Network

-16-

Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) also do not, individually or collectively, have any regular and established place of business in the Central District of California.  Accordingly, venue is not proper under 28 U.S.C. § 1400(b).

## **COUNTERCLAIMS**

1.     The allegations in contained in the preceding paragraphs are incorporated herein by reference.

2.     DISH Network Corporation is a Nevada corporation and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

3.     DISH Network L.L.C. is established under the laws of the State of Colorado and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

4.     Dish Network Service L.L.C. is established under the laws of the State of Colorado and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

5.     In its First Amended Complaint, Entropic alleges that it is a Delaware limited liability company.  This is consistent with the public records that DISH has been able to locate, which indicate that Entropic Communications, LLC is a Delaware limited liability company that was formed under the laws of Delaware on March 29, 2021.

6.     Under Rule 13 of the Federal Rules of Civil Procedure, Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants"), assert the following counterclaims against Plaintiff and Counterclaim Defendant Entopic Communications, LLC ("Entropic").

7.     DISH's declaratory judgment counterclaims arise under Title 35 of the United States Code.  The Court has subject matter jurisdiction over them under 28

U.S.C. §§ 1331, 1338, 2201, and 2202 as they arise under an Act of Congress relating to patents and the Declaratory Judgment Act.

8.     The Court has personal jurisdiction over Entropic at least based on its consent to proceed in this District, including by seeking transfer to this District.

9.     Venue over DISH's counterclaims is proper, to the extent that venue over Entropic's claims is proper, under 28 U.S.C. §§ 1391(b) and 1400(b).  DISH notes, however, that it denies venue is proper for Entropic's claims and that the proper venue for these counterclaims is the District of Colorado, consistent with DISH's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado, filed April 27, 2022, in the transferred action.  The witnesses and documents relevant to Entropic's claims and DISH's counterclaims are not located in this District but are instead located largely in Colorado and elsewhere in California.

## FIRST CLAIM FOR RELIEF
### Noninfringement of '576 Patent

10.     The allegations in contained in the preceding paragraphs are incorporated herein by reference.

11.     Entropic filed suit against DISH for alleged infringement of the '576 patent by DISH products, such as the Dish Pro Hybrid Switch Model DPH42 ("DPH42") and DISHPro Hybrid Low-Noise Block Feedhorns ("LNBFs").  As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether DISH products, including without limitation the DPH42 and DISHPro LNBFs, infringe the '576 patent.

12.     Entropic's supplemental infringement contentions also identify Signal Selector and Combiner-enabled LNB, switches, and devices that operate in a similar manner, including DISHPro Hybrid LNBFs and DPH42 switches.

-18-

13.    The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '576 patent.

14.    As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) … to an integrated receiver decoder (IRD) over a single cable connected to the ODU" and "transmitting the composite signal over the single cable from the ODU to the IRDs."  Exhibit A to Amended Complaint at 28; *see also* Exhibit D at 2; Exhibit A to Entropic's Supplemental Infringement Contentions at 2-6, 30-35.

15.    The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because there are multiple cables between an alleged outdoor unit (ODU) and an alleged integrated receiver decoder (IRD) in DISH systems.  For example, Entropic's own Exhibits illustrate a first cable and a second cable between an alleged ODU and an alleged IRD.  *See* Exhibit D at 2.  Entropic attempts to side-step this issue by characterizing the cables as "a first single cable" and "a second single cable."  Notwithstanding Entropic's characterization of two "single" cables, it is clear that at least two cables exist between the alleged ODU and the alleged IRD and that two cables are not a "single" cable.

16.    As an additional nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) that receives a plurality of satellite broadband signals" and "selecting and extracting a plurality of transponder signals from the received digitized satellite broadband signals."  Exhibit A to Amended Complaint

at 28; *see also* Exhibit D at 6-7; Exhibit A to Entropic's Supplemental Infringement Contentions at 2-6, 19-27.

17.     The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH products do not select and extract a plurality of transponder signals from received digitized satellite broadband signals.

18.     DISH is entitled to a judgement declaring that the accused DISH products, including, without limitation, the DPH42 and DISHPro LNBFs, do not infringe the '576 patent.

## SECOND CLAIM FOR RELIEF
## Noninfringement of '715 Patent

19.     The allegations in contained in the preceding paragraphs are incorporated by reference herein.

20.     Entropic filed suit against DISH for alleged infringement of the '715 patent by DISH products, such as the DPH42 and DISHPro Hybrid LNBFs.  As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether DISH products, including without limitation the DPH42 and DISHPro LNBFs, infringe the '715 patent.

21.     Entropic's supplemental infringement contentions also identify Signal Selector and Combiner-enabled LNB, switches, and devices that operate in a similar manner, including DISHPro Hybrid LNBFs and DPH42 switches.

22.     The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '715 patent.

23.     As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 9 of the '715 patent at least because that claim is

directed to a "a signal combiner coupled to at least one frequency translator capable of combining at least two RF signals to produce a composite signal." Exhibit B to Amended Complaint at 25; *see also* Exhibit E at 9; Exhibit B to Entropic's Supplemental Infringement Contentions at 29-35.

24.   The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH products do not combine at least two RF signals to produce a composite signal. The claims refer to a method of combining ***analog*** signals to produce a composite signal, which is not how DISH's accused products operate.

25.   DISH is entitled to a judgement declaring that the accused DISH products, including, without limitation the DPH42 and DISHPro LNBFs, do not infringe the '715 Patent.

### THIRD CLAIM FOR RELIEF
### Noninfringement of '008 Patent

26.   The allegations in contained in the preceding paragraphs are incorporated herein by reference.

27.   Entropic has filed suit against DISH for alleged infringement of the '008 patent by DISH products, including the Hopper 3. As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether the accused DISH products, including without limitation the Hopper 3, infringe the '008 patent.

28.   The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '008 patent.

29.   As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 3 of the '008 patent at least because the claim is directed to "receiving a signal having a bandwidth that spans from a first frequency,

$F_{lo}$, to a second frequency, $F_{hi}$," "digitizing said received signal from $F_{lo}$ to $F_{hi}$ to generate a digitized signal," "selecting a first portion of said digitizing signal," "selecting a second portion of said digitized signal," and "concurrently outputting said selected first portion and said selected second portion," where the first portion is output to "a signal analyzer" and the second portion is output to "a data processor."

30.   The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a second portion of the digitized signal to a data processor.  Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., from a signal spanning a first frequency to a second frequency).

31.   As a further nonlimiting example, the accused DISH products do not and cannot infringe claim 1 of the '008 patent at least because the claim is directed to "an analog-to-digital converter operable to digitize a received signal spanning an entire television spectrum comprising a plurality of television channels, said digitization resulting in a digitized signal," "a channelizer operable to: select a first portion of said digitized signal," "a channelizer operable to: … select a second portion of said digitized signal;" and "concurrently output said first portion of said digitized signal to said signal monitor and said second portion of said digitized signal to said data processor."

32.   The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a second portion of the digitized signal to a data processor.  Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., an entire television spectrum).

33.   DISH is entitled to a judgement declaring that the accused DISH products, including without limitation the Hopper 3, do not infringe the '008 Patent.

**FOURTH CLAIM FOR RELIEF**
**Invalidity of '576 Patent**

34.   The allegations in contained in the preceding paragraphs are incorporated by reference herein.

35.   An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '576 patent.

36.   The '576 patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the rule, regulations and laws related thereto, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

37.   As a nonlimiting example, the asserted claims of the '576 patent are invalid for failure to claim novel and/or nonobvious subject matter under Sections 102 and/or 103.  For instance, the asserted claims are invalid as detailed in DISH's petition for *inter partes* review in IPR2023-00394.

38.   The asserted claims are invalid as obvious in view of United States Patent Application No. 2002/0154055 ("Davis"), which qualifies as prior art under pre-AIA Section 102(e) by virtue of its priority to provisional application No. 60/284/593 filed on April 18, 2001 (before the earliest potential priority date for the '576 patent, November 7, 2001), and eventual publication on October 24, 2002. Davis describes a satellite communication system including an interface device for distributing satellite signals, including satellite television signals, received from an outdoor unit (ODU) to a plurality of indoor units (IDUs).  The interface device converts radio frequency signals from the low noise block converters of the satellite, digitizes the signals, multiplexes and then transmits them to the IDUs over a single output cable.  While Davis does not expressly disclose communicating by an IRD

to the ODU a transponder request, this was well-known in the art prior to the earliest priority date of the '576 patent.

39.    To take another example, the asserted claims are also indefinite and/or lack written description because each requires limitations reciting or depends from a claim with a limitation reciting "transmitting the composite signal over the single cable from the ODU to the IRDs," and the claim language in view of the specification does not describe a single cable from the ODU to each individual IRD.

40.    Similarly, to take another example, the claims are also indefinite because the limitation "selected [and extracted] transponder channel[s]" and the claim language is indefinite regarding which these transponder channels are and what the claim language encompasses.

41.    Additionally, to take yet another example, the asserted claims lack written description and/or enablement because of the limitation "wherein the modulation of the transponder signal is not altered by the steps of selecting, combining, and transmitting," which, in view of the specification, does not inform a person of skill in the art with reasonable certainty the scope of the claim, and a person of ordinary skill in the art to would not be able to practice the claimed invention without undue experimentation.

42.    DISH is entitled to a judgement declaring that '576 patent is invalid.

### FIFTH CLAIM FOR RELIEF
### Invalidity of '715 Patent

43.    The allegations in contained in the preceding paragraphs are incorporated by reference herein.

44.    An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '715 patent.

45.    The '715 patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the

1   rule, regulations and laws related thereto, including without limitation, 35 U.S.C.

2   §§ 101, 102, 103 and/or 112.

3       46.    As a nonlimiting example, the asserted claims of the '715 patent are

4   invalid for failure to claim novel and/or nonobvious subject matter under Sections

5   102 and/or 103.  For instance, the asserted claims are invalid as detailed in DISH's

6   petition for *inter partes* review in IPR2023-00392.  Specifically, the asserted claims

7   are invalid as obvious in view of Fisk (International Publication No. WO

8   2002/065771) and Carnero (European Patent No. EP0740434B1).  Fisk qualifies as

9   prior art under at least pre-AIA Section 102(e) by virtue of its international filing

10  date on February 9, 2001 designating English and its publication in English on

11  August 22, 2002, predating the earliest potential priority date for the '715 patent

12  (November 7, 2001).  Carnero qualifies as prior art under pre-AIA Sections 102(a)

13  and 102(b) by virtue of its publication on October 30, 1996 more than one year prior

14  to the earliest potential priority date for the '715 patent (November 7, 2001).  For

15  example, Fisk discloses a video distributions system for distributing a plurality of

16  LNB output signals from a satellite outdoor unit (ODU), a gateway in

17  communication with the ODU at least one set top box (STB), and the gateway

18  receiving a composite signal, decodes specific programs, and distributes the

19  programs over a digital LAN to STBs. To the extent Fisk does not disclose all

20  elements of the claims, Carnero discloses and/or renders the remaining elements

21  obvious with Fisk, including:  a signal selector that receives a plurality of broadband

22  LNB signals comprising a plurality of transponder signals, the signal selector is

23  responsive to transponder select information transmitted by the gateway and selects

24  a plurality of transponder signals from at least one broadband LNB signal based on

25  the transponder select information; a frequency translator coupled to the signal

26  selector that is capable of shifting the selected transponder signals to new carrier

27  frequencies to produce RF signals; a signal combiner coupled to at least one

28

-25-

1   frequency translator capable of combining at least two RF signals to produce a
2   composite signal; the modulation of the composite signal is the same as the
3   modulation of the broadband LNB signals; and a composite signal transmitted to
4   the gateway.  Fisk, which discloses a centralized server for distributing digital
5   signals, e.g., television and video signals, throughout a multi-unit dwelling such as
6   a hotel where each guestroom 12 includes a TV and local control unit (LCU), in
7   combination with Carnero, which addresses the same problem as the '715 patent,
8   how to send preselected satellite TV channels to multiple STBs in a multiroom
9   environment over a single cable and discloses a satellite television distribution
10  system including signal generators (block A), signal processors (block B), and a
11  distribution network (block C) that perform frequency shifting and generate a
12  composite signal, renders the asserted claims obvious.

13      47.    As another example the claims are invalid as obvious in view of
14  Japanese Patent Application No. 05-316062, which qualifies as prior art under pre-
15  AIA Section 102(b) by virtue of its publication on November 26, 1993, before the
16  earliest potential priority date for the '715 patent (November 7, 2001).  Japanese
17  Patent Application No. 05-316062 discloses a satellite antenna having two low
18  noise block converters (LNBs) receiving signals of vertical and horizontal
19  polarizations, respectively, where each polarized received signal is composed of a
20  group of channels.  A multiple signal generator combines the two polarized signals
21  into a composite output signal by frequency translating one of the polarized signals.
22  A receiver transmits a switching signal corresponding to a channel for selection,
23  and a corresponding band restoration unit outputs a subset of the composite signal
24  to the receiver.  While Japanese Patent Application No. 05-316062 does not
25  expressly describe a gateway decoding specific programs and distributing the
26  programs over a digital local area network, it would have been obvious to do so in
27  view of U.S. Patent No. 7,123,649 ("Smith"), which is prior art under 102(e) by
28

virtue of its filing date of November 3, 2000 (which predates the earliest possible priority date of the '715 patent). Smith discloses a residential gateway receiving, among other things, satellite channels from an ODU and distributing them to, among other things, one or more televisions. The residential gateway has MPEG decoder and NTSC video interface capabilities.

48.    Similarly, to take another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of a gateway that "decodes specific programs" and the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what constitutes "specific programs."

49.    To take yet another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of "a gateway in communication with the ODU and at the least one set top box (STB)," and the claim language in view of the specification does not describe such a system.

50.    Similarly, asserted claims 10, 11 and 12 are also indefinite and/or lack written description because each requires a limitation reciting or depends from a claim with a limitation reciting "a translation table," but the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what a "translation table" encompasses or what devices in the network that the translation table is provided to.

51.    DISH is entitled to a judgement declaring that '715 patent is invalid.

## SIXTH CLAIM FOR RELIEF
### Invalidity of '008 Patent

52.    The allegations in contained in the preceding paragraphs are incorporated by reference herein.

53.    An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '008 patent.

-27-

54.    The '008 patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the rule, regulations and laws related thereto, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

55.    For example, the asserted claims of the '008 patent are invalid for failure to claim novel and/or nonobvious subject matter under Sections 102 and/or 103, including as detailed in DISH's petition for *inter partes* review in IPR2023-00393.   By way of nonlimiting example, the asserted claims are invalid as anticipated and/or obvious in view of U.S. Patent Application No. 2007/0286311 ("Coyne"), which qualifies as prior art under pre-AIA Section 102(b) by virtue of its publication on December 13, 2007, more than a year before the earliest potential priority date for the '008 patent (September 8, 2011).   Coyne discloses a communications system, e.g., a satellite communications system, that receives multiple channels, digitizes the signals using an ADC, channelizes the signal using a channelizer, and allows for information to be transmitted back from the downstream interface module/devices.  Figure 2 of Coyne, set forth below provides an example system having a multi-channel receiver, an ADC to digitize the received signals/spectrum, a channelizer that separates the digitized spectrum/signals into channels, and an interface module that transmits one or more portions of the signal

to downstream devices and further can receive return outputs from the downstream devices and transmit them back using modulator 270 and antenna 280.

56.    Other references directed to satellite television systems were well known, including (by way of nonlimiting example) U.S. Patent No. 7,788,684 ("Petrovic"), which was issued August 31, 2010 and discloses a media monitoring, management and information system that monitors transmissions of media content, including transmissions of broadcast, satellite, network, and cable television and



Fig. 2

radio programs, and to monitor quality of a received transmission channel's characteristics, such as SNR or dropped packet rate..

57.    The Coyne reference alone and/or in combination with the Petrovic reference and/or other references and knowledge of a person of skill in the art anticipate and/or render obvious the asserted claims of the '008 patent.

58.    The asserted claims are also indefinite and/or lack written description. Each requires limitations reciting or depends from a claim with limitations reciting "analyze said digitized signal to determine a characteristic of said digitized signal" / "said selected first portion is output to a signal analyzer which analyzes said

selected first portion to determine one or more characteristics of the received signal" of a signal or a portion of a signal and a to "report said determined characteristic to a source of said received signal"/"reports said determined one or more characteristics to a source of said received signal," and the claim language in view of the specification does not describe such a system.

59.   Similarly, the asserted claims also indefinite and/or lack written description because they include a limitation or depend from a claim reciting a limitation directed to a "data processor operable to process a television channel to recover content"/ "a data processor for recovery of data carried on one or more of said plurality of channels," but the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what constitutes a "data processor" or "recovery of data."

60.   DISH is entitled to a judgement declaring that '008 patent is invalid.

## **PRAYER FOR RELIEF**

DISH specifically denies that Entropic is entitled to any relief whatsoever, including, but not limited to, the relief requested in Entropic's Amended Complaint. Further, DISH requests that the Court enter judgment in DISH's favor on its claims, including the following:

i)   an entry of judgment in favor of DISH, and against Entropic, with Entropic being awarded no relief of any kind sought in its Amended Complaint or otherwise;

ii)   a declaration that the '576, '715, and '008 patents are invalid for failing to meet the requirements of Title 35, U.S.C. § 101, *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112;

iii)   a declaration that DISH does not and has not infringed, literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise, any claim of the '576, '715, and '008 patents;

iv)   a declaration that DISH is the prevailing party and awarding DISH costs under 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and all other applicable laws

-30-

and statutes;

v)    a declaration that this action is exceptional under 35 U.S.C. § 285 and an award of attorneys' fees to DISH pursuant to that statute; and

vi)    an award to DISH of such other and further relief as the Court deems just and proper under the circumstances.

Dated:  March ___, 2023         **PERKINS COIE LLP**

By:_____

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted pro hac vice)
ATessar@perkinscoie.com
Trevor Bervik (admitted pro hac vice)
TBervik@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 140
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

Daniel T Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: +1.503.727.2000
Fax: +1.503.727.2222

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**