# EXHIBIT A

1  Matthew C. Bernstein, Bar No. 199240
   MBernstein@perkinscoie.com
2  PERKINS COIE LLP
3  11452 El Camino Real, Ste 300
   San Diego, California 92130-2080
4  Telephone: +1.858.720.5700 Facsimile: +1.858.720.5799

5

6  Amanda Tessar (admitted *pro hac vice*)
   ATessar@perkinscoie.com
7  PERKINS COIE LLP 1900 Sixteenth Street, Suite 1400
8  Denver, Colorado 80202-5255
   Telephone: +1.303.291.2357
9  Facsimile:   +1.303.291.2457

10

~~IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS MARSHALL DIVISION~~

| | |
|---|---|
| ~~ENTROPIC COMMUNICATIONS, LLC~~ ~~v.~~ ~~DIRECTV, LLC, et al.~~ | ~~Case No. 2:22-cv-00075-JRG (Lead Case)~~ |
| ~~ENTROPIC COMMUNICATIONS, LLC~~ ~~v.~~ ~~DISH NETWORK CORPORATION, et al.~~ | ~~Case No. 2:22-cv-00076-JRG (Member Case)~~ ~~JURY TRIAL DEMANDED~~ |

~~ANSWER OF~~ ATTORNEYS FOR DEFENDANTS DISH NETWORK

11  CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.

12

13              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA



| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, LLC and AT&T SERVICES, INC.,<br><br>Defendants. | No. 2:22-cv-07775-JWH-JEM<br><br>**DISH NETWORK'S FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**<br><br>JURY TRIAL DEMANDED |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>Defendants. | No. 2:22-cv-07959-JWH-JEM<br><br>Case Transferred from E.D. Texas (2:22-cv-76-JRG)<br><br>JURY TRIAL DEMANDED |

14
15
16
17
18
19
20
21

22

23

24

25

26

27

Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants") ~~answer~~hereby provide this First Amended Answer to the First Amended Complaint for Patent Infringement ("Amended Complaint") filed by Entropic Communications, LLC ("Entropic" or "Plaintiff") and ~~sets~~ set forth its First Amended Affirmative Defenses and Counterclaims as follows:

## GENERAL DENIAL

Unless specifically admitted below, DISH denies each and every allegation in the Amended Complaint. To the extent headings of the Amended Complaint are construed as allegations, they are each denied.

## NATURE OF THE ACTION

~~1.This is a civil action arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including specifically 35 U.S.C. § 271, based on infringement of U.S. Patent Nos. 7,130,576 ("the '576 Patent"), 7,542,715 ("the '715 Patent"), and 8,792,008 ("the '008 Patent") (collectively "the Patents-in-Suit").~~

**1.** **ANSWER:** The allegations of paragraph 1 contain legal conclusions to which no response is required.  To the extent a response is required, DISH admits that Entropic purports to assert patent infringement claims against DISH involving United States Patent Nos. 7,130,576 ("the '576 patent"), 7,542,715 ("the '715 patent"), and 8,792,008 ("the '008 patent") (collectively, "the patents-in-suit"). DISH denies all remaining allegations of paragraph 1.

## THE PARTIES

~~2.Entropic is a Delaware limited liability company with an office at 7150 Preston Rd., Suite 300 Plano, Texas 75024.~~

**2.** **ANSWER:** DISH lacks knowledge and information sufficient to form a belief as to

<u>19</u>   the truth of the allegations contained in paragraph 2 and, on that basis, denies them.

~~3.On information and belief, Defendant Dish Network Corporation is a corporation established under the laws of the State of Nevada, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.~~

<u>3.</u>          **ANSWER:** DISH Network Corporation admits the allegations of paragraph 3.

~~4.On information and belief, Defendant Dish Network L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.~~

<u>4.</u>          **ANSWER:** DISH Network L.L.C. admits the allegations of paragraph 4.

~~5.Dish Network L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.~~

<u>5.</u>          **ANSWER:** DISH Network L.L.C. admits the allegations of paragraph 5.

~~6.On information and belief, Defendant Dish Network Service L.L.C. is established under the laws of the State of Colorado, with a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.~~

<u>6.</u>          **ANSWER:** Dish Network Service L.L.C. admits the allegations of paragraph 6.

~~7.Dish Network Service L.L.C. has as its registered agent in Texas, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, Texas 78701.~~

<u>7.</u>          **ANSWER:** Dish Network Service L.L.C. admits the allegations of paragraph 7.

~~8.On information and belief, DISH has several authorized dealers in this district including, but not limited to, in Longview, Texarkana, Emory, Athens, Palestine, Wills Point Sulphur Springs and Lufkin. See https://www.dish.com/find-retailer.~~

<u>8.</u>          **ANSWER:** DISH admits the presence of retailers providing DISH Network L.L.C.

<u>20</u>   services in Longview, Emory, Athens, Palestine, Wills Point, Sulphur Springs,

Texarkana, and Lufkin. These retailers are separate companies that are not affiliates of DISH. DISH denies all remaining allegations contained in paragraph 8.

9. ~~On information and belief, DISH owns or leases, and maintains and operates several Local Receive Facilities (LRFs) in this district.~~

**ANSWER:** DISH admits the presence of Local Receive Facilities utilized by DISH Network L.L.C. in ~~this~~ the Eastern District of Texas for purposes of supporting DISH Network L.L.C. services.     DISH denies all remaining allegations contained in paragraph 9.

10. ~~On information and belief, in each of those LRFs, DISH owns and stores equipment such as receivers and servers. Each of these LRFs are used to acquire and transmit local television channels over the DISH spectrum to DISH customers.~~

**ANSWER:** DISH admits that Local Receive Facilities are used by DISH Network L.L.C. to provide services to DISH customers. DISH denies that Local Receive Facilities have any relevance to the issues in dispute in this case. DISH denies the remaining allegations of paragraph 10.

11. ~~On information and belief, DISH employs personnel that install, service, repair and/or replace equipment associated with the LRFs, as appropriate, in this district.~~

**ANSWER:** DISH denies the allegations of paragraph 11.

## JURISDICTION AND VENUE

12. ~~This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims herein arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.~~

**ANSWER:** DISH admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).     DISH denies all remaining allegations contained in paragraph 12.

13. ~~This Court has personal jurisdiction over DISH in this action because DISH has committed acts of infringement within the State of Texas and within this district through, for example, the provision of satellite television services by DISH utilizing devices provided by DISH as described in the counts herein ("Accused Satellite Television Services"). The Accused Satellite Television Services include the provision of signals, programming, and content to DISH's customers via various products, including Outdoor Units ("ODU"), dish antennas, feed horns, lownoise block converters ("LNB" or "LNBF"),~~

~~processing units, and signal selector and combiners ("SSC").~~

13.        **ANSWER:** DISH admits that it will not contest for the purposes of this action that

12    DISH Network L.L.C. and Dish Network Service L.L.C. were subject to personal

13    jurisdiction the Eastern District of Texas and are subject to personal jurisdiction in

14    this Court and that they transact business in the State of Texas. DISH denies all

15    remaining allegations contained in paragraph 13.

~~14. The Accused Satellite Television Services are available for subscription online from the DISH website.~~

14.        **ANSWER:** DISH admits that DISH Network L.L.C. provides certain services

16    through the DISH Network L.L.C. website. DISH denies all remaining allegations

17    contained in paragraph 14.

~~15. The Accused Satellite Television Services are available for subscription from various physical stores, including the brick and mortar location at 801 K Avenue, Plano, Texas 75074.~~

15.        **ANSWER:** 801 K Avenue, Plano, Texas 75074 is an address where a multi-unit

18    strip- mall is located.   That strip mall houses a number of different and distinct

19    businesses, including an authorized DISH Network L.L.C. retailer. That retailer is

20    a separate company from (i.e., not an affiliate of) DISH where it is possible for

1  customers to sign up for DISH Network L.L.C. services.          DISH denies the

2  remaining allegations contained in paragraph 15.

~~16.The devices provided by DISH to supply the Accused Satellite Television Services are provided to customers in this district and may be obtained by customers from physical locations in this district, including at 801 K Avenue, Plano, Texas 75074.~~

16      **ANSWER:** DISH admits that DISH Network L.L.C. and/or Dish Network Services

3  L.L.C. supply devices to customers in this District and the Eastern District of Texas

4  in some instances, as they do to customers in many or all Districts of the United

5  States. On information and belief, 801 K Avenue, Plano, Texas 75074 is an address

6  where a multi-unit strip-mall is located. That strip mall houses a number of different

7  and distinct businesses, including an authorized DISH Network L.L.C. retailer.

8  That retailer is a separate company from (i.e., not an affiliate of) DISH where it is

9  possible for customers to sign up for DISH Network L.L.C. services. DISH denies

10 the remaining allegations contained in paragraph 16.

17.      ~~Venue~~DISH denies that venue is proper in this ~~district~~District (the Central District of

11 California) pursuant to 28 U.S.C. § 1400(b). ~~Venue is proper because~~ DISH denies that it has committed ~~and~~or

12 continues to commit acts of patent infringement in this ~~district, including making, using, offering to sell, and/or selling Accused Satellite Television Services in this district, and/or importing Accused Satellite Television Services into this district, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas, and/or committing at least a portion of any other infringements alleged herein in this district.~~District. DISH denies that

13 ~~ANSWER:~~ the named DISH entities (DISH Network Corporation ~~denies that venue is proper.~~, DISH Network L.L.C., and

14 Dish Network Service L.~~L.C. admit that they will not contest that venue is proper in this Court for purposes of this action and admit that they have transacted~~L.C.) have a regular and established place of business or

15 reside in this District~~, although they deny that this venue is a convenient one, as described in their~~

~~pending Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado. DISH denies that it has committed any act of patent infringement allegedly described in the Amended Complaint and~~denies that this is the most convenient forum for this suit. To the extent paragraph 17 contains additional allegations,

16   DISH denies them.

~~18.DISH has regular and established places of business in this district, including at least at 6826 Industrial Rd #D, Beaumont, Texas 77705:~~

~~https://www.google.com/maps/@29.9877219,-94.2059833,3a,43.6y,310.63h,87.12t/data=!3m7!1e1!3m5!1sZoqooNoTRZyV1pq8r1aFqQ!2e0!6shttps:%2F%2Fstreetviewpixelspa.googleapis.com%2Fv1%2Fthumbnail%3Fpanoid%3DZoqooNoTRZyV1pq8r1aFqQ%26cb_client%3Dmaps_sv.tactile.gps%26w%3D203%26h%3D100%26yaw%3D64.17555%26pitch%3D0%26thumbfov%3D100!7i13312!8i6656.~~

18.   ~~ANSWER:~~DISH denies the allegations of paragraph 18.

~~19.DISH has regular and established places of business in this district, including at least at 2100 Couch Drive, McKinney, Texas 75069:~~

~~https://www.google.com/maps/@33.1724269,-96.6127357,3a,75y,53.57h,93.08t/data=!3m6!1e1!3m4!1s60g9IRAJzCyJ5bnYltEwrA!2e0!7i16384!8i8192.~~

19.   ~~ANSWER:~~DISH admits the presence of a Dish Network Service L.L.C. facility at

17   2100 Couch Drive, McKinney, Texas 75069, although it denies that any activities

18   at this facility are relevant to the issues in dispute in this case. DISH denies that the

19    named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish

20    Network Service L.L.C.) have a regular and established place of business in this

21    District (the Central District of California). To the extent paragraph 19 contains

22    additional allegations, DISH denies them.

20. There are also DISH retail stores in the district, including a "Premier Local Retailer" at 801 K Avenue, Plano, Texas 75074, as also shown below.

https://www.dishbeatscable.com/contact-us/.

20.     **ANSWER:** DISH admits that it is possible for customers to sign up for DISH

1    Network L.L.C. services at an authorized retailer location at 801 K Avenue Suite

2    #2, Plano, Texas 75074, and DISH admits that the retail store located at 801 K

3    Avenue, Plano, Texas 75074 is a "Premier Local Retailer."          DISH denies the

4    characterization of this retailer as a "DISH retail store." DISH denies that it has

5    retail stores in this District (the Central district of California). DISH denies that the

6    named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish

7    Network Service L.L.C.) have a regular and established place of business in this

8    District (the Central District of California). To the extent paragraph 20 contains

9    additional allegations, DISH denies them.

        21. DISH targets its advertisements to residents of this district.

21.     **ANSWER:** For the purposes of this action, DISH does not contest that residents of

10   this District and the Eastern District of Texas receive DISH Network L.L.C.

11   advertisements.    DISH denies that DISH Network L.L.C. advertisements are

12   uniquely or specifically targeted to this District in ways different than it targets

13   advertisements to various locations throughout the United States.      To the extent

14   paragraph 21 contains additional allegations, DISH denies them.

22.     DISH continues to conduct business in this judicial district, including one or more acts of making, selling, using, importing and/or offering for sale Accused Satellite Television Services and providing support service to customers in this district. **ANSWER:** DISH does not contest that denies that the named DISH entities (DISH Network

15   Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a

16   regular and established place of business in this District (the Central District of

17   California), but does not contest that one or more DISH entities conduct business

18   in this District, although it is unclear what it means that they or any other entity

19   "continues" to do so. To the extent paragraph 22 contains additional allegations,

20    DISH denies them.

21                    **THE PATENTS-IN-SUIT**

~~23. On October 31, 2006, the '576 Patent, entitled "Signal Selector and Combiner for Broadband Content Distribution," was duly and legally issued by the United States Patent and Trademark Office.~~

23.         ~~**ANSWER:**~~ DISH admits that the '576 patent is entitled "Signal Selector and

22    Combiner for Broadband Content Distribution."         The remaining allegations

1   contained in paragraph 23 call for legal conclusions and, on that basis, DISH denies

2   them.

~~24. On August 11, 2009, the United States Patent and Trademark Office issued a
Reexamination Certification of the '576 Patent.~~

24.         **ANSWER:** DISH admits that a Reexamination Certificate was issued by the
             United

3   States Patent and Trademark Office on August 11, 2009.

~~25. The '576 Patent was duly assigned to Entropic. A true and accurate copy of the '576 Patent
is attached hereto as Exhibit A.~~

25.         **ANSWER:** DISH admits that a document appearing to be the '576 patent is

4   attached to the Amended Complaint as Exhibit A.         The remaining allegations

5   contained in paragraph 25 call for legal conclusions and, on that basis, DISH denies

6   them.

~~26. On June 2, 2009, the '715 Patent, entitled "Signal Selector and Combiner for Broadband
Content Distribution," was duly and legally issued by the United States Patent and Trademark Office.
The '715 Patent was duly assigned to Entropic. A true and accurate copy of the '715 Patent is attached
hereto as Exhibit B.~~

26.         **ANSWER:** DISH admits that the '715 patent is entitled "Signal Selector and

7   Combiner for Broadband Content Distribution."         DISH admits that a document

8   appearing to be the '715 patent is attached to the Amended Complaint as Exhibit B.

9   The remaining allegations contained in paragraph 26 call for legal conclusions and,

10  on that basis, DISH denies them.

~~27. On July 29, 2014, the '008 Patent, entitled "Method and Apparatus for Spectrum
Monitoring," was duly and legally issued by the United States Patent and Trademark Office. The '008
Patent was duly assigned to Entropic. A true and accurate copy of the '008 Patent is attached hereto as
Exhibit C.~~

27.         **ANSWER:** DISH admits that the '008 patent is entitled "Method and Apparatus
             for

11  Spectrum Monitoring."   DISH admits that a document appearing to be the '008

12  patent is attached to the Amended Complaint as Exhibit C.         The remaining

13    allegations contained in paragraph 27 call for legal conclusions and, on that basis,

14    DISH denies them.

~~28.Entropic is the owner by assignment of all rights, title, and interest in the Patents-in-Suit.~~

28.    **ANSWER:** The allegations contained in paragraph 28 call for legal conclusions

15    and, on that basis, DISH denies them.

16                    **ENTROPIC'S LEGACY AS A SATELLITE INNOVATOR**[1]

~~29.Entropic Communications Inc., the predecessor-in-interest to Entropic, was founded in San Diego, California in 2001 by Dr. Anton Monk, Itzhak Gurantz, Ladd El Wardani and others. Entropic Communications Inc. was instrumental in the development of the Multimedia over Coax Alliance ("MoCA") standard, Direct Broadcast Satellite ("DBS") Outdoor Unit ("ODU") single wire technology, and System-on-Chip ("SoC") solutions for set-top boxes ("STBs") in the home television and home video markets.~~

29.    **ANSWER:** DISH denies that Entropic Communications, Inc. is the predecessor-in-

17    interest to Entropic. DISH lacks knowledge and information sufficient to form a ~~belief as to the truth of the remaining allegations contained in paragraph 29 and, on that basis, denies them.~~

~~30.Dr. Monk received his Bachelor of Science degree and Doctorate in Electrical Engineering from the University of California San Diego and a Master of Science in Electrical Engineering from the California Institute of Technology.~~**ANSWER:** ~~DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, on that basis, denies them.~~24

25    The headings from Entropic's Amended Complaint are reproduced here for convenience, but, as stated above, DISH does not admit that these argumentative

26    headings are true. For instance, this heading appears to suggest that the plaintiff here has a legacy as an innovator. That is incorrect. To the extent that the original

27    ~~31.Under the guidance of Dr. Monk,~~operating company Entropic Communications ~~Inc. grew to an eventual public listing on the NASDAQ in 2007. After the public listing, the company acquired RF Magic, Inc. in 2007, a company specializing in DBS ODU technology and hardware.~~, Inc. had any such legacy, the

28    newly formed (but confusingly similarly named) Entropic Communications, LLC

---

[1]    ~~**The headings from Entropic's Amended Complaint are reproduced here for convenience, but, as stated above, DISH does not admit that these argumentative headings are true. For instance, this heading appears to suggest that the plaintiff here has a legacy as an innovator. That is incorrect. To the extent that the original operating company Entropic Communications, Inc. had any such legacy, the newly formed (but confusingly similarly named) Entropic Communications, LLC entity is not related to that original entity other than that it has now purchased patents that were once owned by the original operating company.**~~

1   ~~ANSWER:~~ belief as to the truth of the remaining allegations contained in paragraph 29 and, on

2    that basis, denies them.

30.        DISH lacks knowledge and information sufficient to form a belief as to

3    the truth of the allegations contained in paragraph 30 and, on that basis, denies them.

31.        DISH lacks knowledge and information sufficient to form a belief as to

4    the truth of the allegations contained in paragraph 31 and, on that basis, denies them.

~~32. Additional growth between 2007 and 2015 bolstered the technical expertise of Entropic Communications Inc., including satellite signal acquisition, digital signal stacking, and signal distribution.~~

32.        ~~ANSWER:~~ DISH lacks knowledge and information sufficient to form a belief as to

5    the truth of the allegations contained in paragraph 32 and, on that basis, denies them

~~33. For years, Entropic Communications Inc. pioneered cutting edge DBS ODU technology. This technology simplified the installation required to support simultaneous reception of multiple channels from multiple satellites over a single cable. The company's DBS ODU products include various integrated circuits and SoCs for band translation switches, channel stacking switches, and digital channel stacking switches. The DBS ODU technology was deployed as an industry leading solution in global DBS operators, including DISH.~~

33.        ~~ANSWER:~~ DISH denies that Entropic Communications, Inc. pioneered cutting

6    edge DBS ODU technology. DISH lacks knowledge and information sufficient to

7    form a belief as to the truth of the remaining allegations contained in paragraph 33

8    and, on that basis, denies them.

~~34. In 2015, MaxLinear, Inc. — a leading provider of radio-frequency (RF), analog, digital, and mixed-signal semiconductor solutions — acquired Entropic Communications Inc. and the pioneering intellectual property developed by Dr. Monk and his team.~~

34.        ~~ANSWER:~~ DISH lacks knowledge and information sufficient to form a belief as to

9    the truth of the allegations contained in paragraph 34 and, on that basis, denies them.

~~35. For years, satellite providers such as DISH relied upon products produced in whole or in part by Entropic Communications Inc. (and later MaxLinear, Inc.) to enable their services for customers.~~

35.        ~~ANSWER:~~ DISH Network L.L.C. admits that it has in the past used Entropic

10   Communications, Inc. and MaxLinear as suppliers of components in products that

11   Entropic now accuses of infringement.    DISH lacks knowledge and information

12  sufficient to form a belief as to the truth of the allegations contained in paragraph

13  35 and, on that basis, denies them.

36. ~~The Patents-in-Suit are the result of years of research and development in satellite and cable technology. These innovations have enabled DISH to provide enhanced and expanded services to customers, which in turn has increased revenues for DISH while at the same time reducing the costs.~~

36.      **ANSWER:** DISH denies the allegations contained in paragraph 36.

14                    **FIRST CAUSE OF ACTION**
15              **(Infringement of the ~~'~~'576 Patent)**

37. ~~Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 36 as if set forth herein.~~

37.      **ANSWER:** DISH incorporates by reference its responses to paragraphs 1 through

16  36 of the Amended Complaint as though fully restated herein.

25

26

27  38. ~~Entropic owns all substantial rights, interest, and title in and to the '576 Patent, including the sole and exclusive right to prosecute this action and enforce the '576 Patent against infringers, and to collect damages for all relevant times.~~ entity is not related to that original entity other than that it has now purchased

28      patents that were once owned by the original operating company.

38.

1

**ANSWER:** The allegations contained in paragraph 38 call for legal conclusions and, on that basis, DISH denies them.

~~39.An outdoor unit or "ODU" is typically located, as the name suggests, outside of a customer's home. For example, an ODU often includes a dish antenna, one or more feed horns, one or more low noise block converters, and one or more processing units. The processing units can be located within the ODU itself or in a multiswitch unit located between the ODU and devices within the customer's home. An ODU is generally responsible for receiving satellite broadband signals from one or more satellites, processing the received signals, and providing the processed signals to one or more devices, such as an integrated receiver decoder unit, located within the customer's home. These in-home devices can decode (or otherwise process) the signals received from the ODU. The in-home devices can output television programming to a customer's television and provide video recording functionality.~~

39.

2

3

4

5

8

**ANSWER:** Paragraph 39 characterizes the subject matter of the '576 patent and contains legal conclusions to which no response is required. To the extent that a response is required, DISH admits that the '576 patent speaks for itself. To the extent paragraph 39 attempts to characterize technologies outside of the '576 patent, DISH denies these allegations. DISH denies the remaining allegations of paragraph 39.

~~40.The '576 Patent generally describes the process of an ODU receiving satellite broadband signals, combining certain extracted signals into a composite signal, and transmitting that composite signal from the ODU to an integrated receiver decoder unit, without changing the modulation of the signal. This transmission historically required separate wires running from the ODU to each integrated receiver decoder unit. The '576 Patent provides the benefit of single wire transmission from the ODU to interior integrated receiver decoder units. DISH implements~~

~~this single wire transmission to provide the Accused Satellite Television Services by supplying and using, for example, SSC products.~~

9

10

11

12

~~ANSWER:~~ 40. The allegations in paragraph 40 contain legal conclusions to which no response is required. To the extent a response is required, DISH states that the '576 patent speaks for itself.    DISH denies all allegations that DISH implements the features of the '576 patent. DISH denies the remaining allegations of paragraph 40.

~~41.DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize SSC products, which include SSC-enabled LNBs (for example, DISH Pro Hybrid LNBF) and switches (for example, DPH42).~~

41.        ~~ANSWER:~~ DISH denies the allegations of paragraph 41.

~~42.DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased SSC products that perform the Accused Satellite Television Services.~~

42.        ~~ANSWER:~~ DISH denies the allegations of paragraph 42

~~43.DISH directly infringes the method of at least Claim 14 of the '576 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the SSC products provided by DISH.~~

43.        ~~ANSWER:~~ DISH denies the allegations of paragraph 43.

~~44.The SSC products remain the property of DISH even when deployed at the property of a customer.~~

44.        ~~ANSWER:~~ DISH admits that certain satellite cable equipment is sometimes leased

13    by DISH Network L.L.C. to customers in some locations. DISH denies the

14    remaining allegations of this paragraph 44.

~~45.The Accused Satellite Television Services operate in a manner controlled and intended by DISH.~~

45.        ~~ANSWER:~~ DISH denies the allegations of paragraph 45.

~~46.DISH has been and is aware of the '576 Patent.~~

46.        ~~ANSWER:~~ DISH admits that it became aware of the '576 patent at least as of the

15    date when this suit was filed. DISH denies the remaining allegations of paragraph

22    46.

~~47.As set forth in the attached non-limiting claim chart (Exhibit D), DISH has directly infringed and is infringing at least Claim 14 of the '576 Patent by using, selling, and offering for sale the Accused Satellite Television Services.~~

47.        ~~ANSWER:~~ DISH denies the allegations of paragraph 47.

~~48.Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 14 of the '576 Patent.~~

48.        ~~ANSWER:~~ DISH denies the allegations of paragraph 48.

~~49.DISH has been aware that it infringes the '576 Patent since at least March 9, 2022 upon the~~

~~receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.~~

49.     ~~ANSWER:~~ DISH admits that DISH Network L.L.C. received letters from

23    Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day

24    before the Original Complaint was filed on March 10, 2022. DISH admits that each

1
2

of the three DISH defendants here was served with the Original Complaint on or
about March 10, 2022. DISH denies the remaining allegations of paragraph 49.

50. ~~Customers and subscribers of DISH infringe at least claim 14 of the '576 Patent by using the claimed method, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro Hybrid LNBF) and switches (for example, DPH42).~~

50

**ANSWER:** DISH denies the allegations of paragraph 50.

51. ~~DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 14 of the '576 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '576 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the "satellite broadcast signals" claimed by the '576 Patent via the~~

~~Accused Television Services, which enable and induce its customers to directly infringe the claim. DISH knew that customer use of the ODU, the SSC products and the Accused Satellite Television Services provided by DISH infringe at least Claim 14 of the '576 Patent. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 14 of the '576 Patent.~~

51

**ANSWER:** DISH denies the allegations of paragraph 51.

52. ~~Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ("ISP's"), such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 14 of the '576 Patent.~~

52

**ANSWER:** DISH denies the allegations of paragraph 52.

53. ~~Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 14 of the '576 Patent.~~

53

**ANSWER:** DISH denies the allegations of paragraph 53.

54.The ODU and SSC products have no substantial non-infringing uses. When an end user uses the ODU and SSC products in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 14 of the '576 Patent. DISH knows that the ODU and SSC products were especially made for use in an infringing manner prior to the filing of this lawsuit.

54.        **ANSWER:** DISH denies the allegations of paragraph 54.

55.DISH's indirect infringement of at least Claim 14 of the '576 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance, support, installation, repair and replacement services provided by DISH in support of the provision of the Accused Satellite Television Services.

55.        **ANSWER:** DISH denies the allegations of paragraph 55.

56.Entropic has been damaged as a result of the infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

56.        **ANSWER:** DISH denies the allegations of paragraph 56.

57.DISH's infringement of the '576 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.

57.        **ANSWER:** DISH denies the allegations of paragraph 57.

58.Entropic has complied with 35 U.S.C. § 287 with respect to the '576 Patent.

58.        **ANSWER:** The allegations contained in paragraph 58 call for legal conclusions

3    and, on that basis, DISH denies them.

4                        **SECOND CAUSE OF ACTION**

5                        **(Infringement of the '715 Patent)**

59.Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 58 as if set forth herein.

        59.    **ANSWER:** DISH incorporates by reference its responses to paragraphs 1 through

15

58 of the Amended Complaint as though fully restated herein.

60.Entropic owns all substantial rights, interest, and title in and to the '715 Patent, including the

sole and exclusive right to prosecute this action and enforce the '715 Patent against infringers, and to collect damages for all relevant times.

16

      60.    **ANSWER:** The allegations contained in paragraph 60 call for legal conclusions

17

and, on that basis, DISH denies them.

61. The '715 Patent generally describes a system that receives a plurality of channels from an LNBF, a frequency translator that shifts channels to new carrier frequencies, a signal combiner capable of combining at least two signals to produce a composite signal having the same modulation as the LNBF channels, where the composite signal is transmitted on a coax cable to a gateway (for example, a Hopper3).

18

      61.    **ANSWER:** Paragraph 61 characterizes the subject matter of the '715 patent and

19

20 contains legal conclusions to which no response is required.       To the extent a

21 response is required, DISH states that the '715 patent speaks for itself. DISH denies

22 all allegations that DISH implements the features of the '715 patent. To the extent paragraph 61 contains additional allegations, DISH denies them.

62. DISH has used, sold, and offered for sale the Accused Satellite Television Services that utilize gateway systems, which include SSC-enabled LNBs (for example, DISH Pro Hybrid LNBF) and switches (for example, DPH42) used with gateways such as the Hopper3.

23

      62.    **ANSWER:** DISH denies the allegations of paragraph 62.

63. DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased gateway systems that perform the Accused Satellite Television Services.

24

      63.    **ANSWER:** DISH denies the allegations of paragraph 63.

64. DISH directly infringes at least Claim 9 of the '715 Patent during provision of the Accused Satellite Television Services by utilizing, for example, the gateway devices provided by DISH.

25

      64.    **ANSWER:** DISH denies the allegations of paragraph 64.

65. The gateway systems remain the property of DISH even when deployed at the property of a customer.

ANSWER: 1 65. DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 65.

66. The Accused Satellite Television Services operate in a manner controlled and intended by DISH.

ANSWER: 4 66. DISH denies the allegations of paragraph 66.

67. DISH has been and is aware of the '715 Patent.

ANSWER: 5 67. DISH admits that it became aware of the '715 patent at least as of the date when this suit was filed. DISH denies the remaining allegations of paragraph 7 67.

68. As set forth in the attached non-limiting claim chart (Exhibit E), DISH has directly infringed and is infringing at least Claim 9 of the '715 Patent by using, importing, selling, leasing, and offering for sale the Accused Satellite Television Services.

68. ANSWER: DISH denies the allegations of paragraph 68.

69. Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 9 of the '715 Patent.

69. ANSWER: DISH denies the allegations of paragraph 69.

70. DISH has been aware that it infringes the '715 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.

70. ANSWER: DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day

9   before the Original Complaint was filed on March 10, 2022. DISH admits that each

10   of the three DISH defendants here was served with the Original Complaint on or

11   about March 10, 2022. DISH denies the remaining allegations of paragraph 70.

~~71. Customers and subscribers of DISH infringe at least claim 9 of the '715 Patent by using the claimed system, at least during the receipt of Accused Television Services utilizing, for example, SSC products, which include SSC-enabled LNBs (for example, DISH Pro-Hybrid LNBF) and switches (for example, DPH42) as arranged in a manner directed by DISH.~~

71.        **ANSWER:** DISH denies the allegations of paragraph 71.

~~72. DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 9 of the '715 Patent by providing the ODU and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the ODU and SSC products in a manner that infringes the '715 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the "gateway in communication with [an] ODU," "signal selector," "frequency translator," and "signal combiner" claimed by the '715 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the ODU and SSC products in a manner that infringes at least Claim 9 of the '715 Patent.~~

72.        **ANSWER:** DISH denies the allegations of paragraph 72.

~~73. Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for~~

~~sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 9 of the '715 Patent.~~

73.        **ANSWER:** DISH denies the allegations of paragraph 73.

~~74. Additionally, DISH contributes to the customers' direct infringement. DISH provides apparatuses, namely the ODU and SSC products, used by customers to perform at least Claim 9 of the '715 Patent.~~

74.        **ANSWER:** DISH denies the allegations of paragraph 74.

~~75. The gateway systems and switches have no substantial non-infringing uses. When an end user uses the gateway systems and switches in combination with, for example, the Accused Satellite~~

~~Television Services, the end user directly infringes at least Claim 9 of the '715 Patent. DISH knew that the gateway systems and switches were especially made for use in an infringing manner prior to the filing of this lawsuit.~~

75.         **ANSWER:** DISH denies the allegations of paragraph 75.

~~76. DISH's inducement of, and contribution to, the direct infringement of at least Claim 9 of the '715 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.~~

76.         **ANSWER:** DISH denies the allegations of paragraph 76.

~~77. Entropic has been damaged as a result of DISH's infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.~~

77.         **ANSWER:** DISH denies the allegations of paragraph 77.

~~78. DISH's infringement of the '715 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.~~

78.         **ANSWER:** DISH denies the allegations of paragraph 78.

~~79. Entropic has complied with 35 U.S.C. § 287 with respect to the '715 Patent.~~

79.         ~~**ANSWER:**~~ The allegations contained in paragraph 79 call for legal conclusions

12    and, on that basis, DISH denies them.

25

**THIRD CAUSE OF ACTION**
**(Infringement of the '008 Patent)**

1
2

~~80. Entropic incorporates by reference and realleges each and every allegation of Paragraphs 1 through 79 as if set forth herein.~~

80.   **ANSWER:** DISH incorporates by reference its responses to paragraphs 1 through 79 of the Amended Complaint as though fully restated herein.

3

~~81. Entropic owns all substantial rights, interest, and title in and to the '008 Patent, including the sole and exclusive right to prosecute this action and enforce the '008 Patent against infringers, and to collect damages for all relevant times.~~

81.   **ANSWER:** The allegations contained in paragraph 81 call for legal conclusions and, on that basis, DISH denies them.

4

~~82. The '008 Patent generally describes a system that receives a signal having a range of frequencies, the digitization of the received signal, and reporting of certain signal characteristics to the source of the received signal.~~

82.   **ANSWER:** Paragraph 82 characterizes the subject matter of the '008 patent and contains legal conclusions to which no response is required.        To the extent a response is required, DISH states that the '008 patent speaks for itself. DISH denies any remaining allegations of paragraph 82.

5
6
7

~~83. DISH has used, sold, and offered for sale Accused Satellite Television Services that utilize monitoring equipment which include certain monitoring devices (for example, Hopper3).~~

83.   **ANSWER:** DISH denies the allegations of paragraph 83.

~~84. DISH further has made, used, imported, supplied, distributed, sold, offered for sale, and leased monitoring devices that perform the Accused Satellite Television Services.~~

84.   **ANSWER:** DISH denies the allegations of paragraph 84.

~~85. DISH directly infringes at least Claim 3 of the '008 Patent during the provision of the Accused Satellite Television Services by utilizing, for example, the monitoring devices provided by DISH.~~

85.   **ANSWER:** DISH denies the allegations of paragraph 85.

~~86. The monitoring devices remain the property of DISH even when deployed at the property of a customer.~~

86.   **ANSWER:** DISH admits that certain satellite cable equipment is sometimes leased

8   by DISH Network L.L.C. to customers in some locations. DISH denies the

9   remaining allegations of this paragraph 86.

87.~~The Accused Satellite Television Services operate in a manner controlled and intended by DISH.~~

87.     **ANSWER:** DISH denies the allegations of paragraph 87.

88.~~DISH has been and is aware of the '008 Patent.~~

88.     **ANSWER:** DISH admits that it became aware of the '008 patent at least as of the

10   date when this suit was filed. DISH denies the remaining allegations of paragraph

20   88.

89.~~As set forth in the attached non-limiting claim chart (Exhibit F), DISH has directly infringed and is infringing at least Claim 3 of the '008 Patent by using, importing, selling, leasing, or offering for sale the Accused Satellite Television Services.~~

89.     **ANSWER:** DISH denies the allegations of paragraph 89.

90.~~Additionally, the use of the Accused Satellite Television Services by DISH to, for example, demonstrate products in brick-and-mortar stores in Plano, Texas or to, for example, test those products, constitute acts of direct infringement of at least Claim 3 of the '008 Patent.~~

90.     **ANSWER:** DISH denies the allegations of paragraph 90.

91.~~DISH has been aware that it infringes the '008 Patent since at least March 9, 2022 upon the receipt of the letters attached as Exhibit G and Exhibit H, as well as the receipt of copies of the Original Complaint filed in this case on March 9, 2022 and served on March 10, 2022. Since obtaining knowledge of its infringing activities, DISH has failed to cease its infringing activities.~~

91.     **ANSWER:** DISH admits that it received letters from Entropic's counsel and from

21   Entropic's CEO on or about March 9, 2022, the day before the Original Complaint

22   was filed on March 10, 2022. DISH admits that each of the three DISH defendants

23   here was served with the Original Complaint on or about March 10, 2022. DISH

24   denies the remaining allegations of paragraph 91.

92.~~Customers and subscribers of DISH infringe at least claim 3 of the '008 Patent by using the claimed method, at least during the use of the monitoring devices (for example, Hopper®3).~~

92|         **ANSWER:** DISH denies the allegations of paragraph 92.

        93. DISH actively induces customers' direct infringement. For example, DISH actively induces infringement of at least Claim 3 of the '008 Patent by providing the LNB, LNBF, and SSC products to DISH customers, with specific instructions and/or assistance (including installation) regarding the use of the LNB, LNBF, and SSC products in a manner that infringes the '008 Patent in accordance with the ordinary course of operation of the Accused Satellite Television Services. DISH provides the signals claimed by the '008 Patent via the Accused Television Services, which enable and induce its customers to directly infringe the claim. For at least the above-listed reasons, DISH aids, instructs, supports and otherwise acts with the intent to cause an end user to use the LNB, LNBF, and SSC products in a manner that infringes at least Claim 3 of the '008 Patent.

93|         **ANSWER:** DISH denies the allegations of paragraph 93.

        94. Furthermore, DISH actively induces third parties to infringe by selling and offering for sale DISH's products and services. For example, DISH actively induces third party internet service providers ISP's, such as Frontier Communications Corp., to sell and offer for sale the Accused Satellite Television Services and the associated products and services provided via DISH, which directly infringe at least Claim 3 of the '008 Patent.

94|         **ANSWER:** DISH denies the allegations of paragraph 94.

        95. Additionally, DIS[H] contributes to the customers' direct infringement. DISH provides apparatuses, namely the monitoring devices, used by customers to perform at least Claim 3 of the '008 Patent.

95|         **ANSWER:** DISH denies the allegations of paragraph 95.

        96. The monitoring devices have no substantial non-infringing uses. When an end user uses the monitoring devices in combination with, for example, the Accused Satellite Television Services, the end user directly infringes at least Claim 3 of the '008 Patent. DISH knew that the monitoring devices were especially made for use in an infringing manner prior to the filing of this lawsuit.

96|         **ANSWER:** DISH denies the allegations of paragraph 96.

        97. DISH's indirect infringement of at least Claim 3 of the '008 Patent is continuous and ongoing via the provision of the Accused Satellite Television Services as well as technical assistance provided by DISH for equipment it provides to its customers in support of the provision of the Accused Satellite Television Services.

97|         **ANSWER:** DISH denies the allegations of paragraph 97.

~~98. Entropic has been damaged as a result of DISH's infringing conduct alleged above. DISH is liable to Entropic in an amount that compensates Entropic for DISH's infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.~~

98. **ANSWER:** DISH denies the allegations of paragraph 98.

~~99. DISH's infringement of the '008 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of Entropic's rights under the patent.~~

99. **ANSWER:** DISH denies the allegations of paragraph 99.

~~100. Entropic has complied with 35 U.S.C. § 287 with respect to the '008 Patent.~~

100. **ANSWER:** The allegations contained in paragraph 100 call for legal conclusions and, on that basis, DISH denies them.

## JURY DEMAND

DISH demands a jury trial under Federal Rule of Civil Procedure 38 and Local Civil Rule ~~CV~~ 38~~(a)~~-1 on all issues so triable.

## PRAYER FOR RELIEF

DISH denies that Entropic is entitled to any of the relief sought in the Amended Complaint or to any relief whatsoever. To the extent that Entropic's Prayer for Relief contains any factual allegations, DISH denies them.

## AFFIRMATIVE DEFENSES

DISH incorporates herein by reference the admissions, allegations, and denials contained in its Answer above as if fully set forth herein. Without assuming any burden that it would not otherwise bear and without reducing Entropic's burden on any of the claims in the Amended Complaint, DISH states the following affirmative defenses to the claims in the Amended Complaint. DISH reserves the right to amend its affirmative defenses and to add additional affirmative defenses, including, but not limited to, any defenses revealed during discovery.

## FIRST AFFIRMATIVE DEFENSE
### (Patent Exhaustion)

As a first and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are barred, in whole or in part, to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to DISH by any entity or entities having an express or implied license to the Asserted Patents, and/or Entropic's claims are barred, in whole or in part, under the doctrine of patent exhaustion.   In this regard, to the extent that any of Entropic's accusations of infringement are based, in whole or in part, on Entropic Communications, Inc. or MaxLinear components, such claims are barred and exhausted.

## SECOND AFFIRMATIVE DEFENSE
### (Noninfringement of the '576 Patent)

As a second and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '576 patent.

## THIRD AFFIRMATIVE DEFENSE
### (Invalidity of the '576 Patent)

As a third and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '576 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## FOURTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '715 Patent)

As a fourth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and

is not infringing (directly, contributorily, or by inducement), literally or under the

doctrine of equivalents, any valid claim of the '715 patent.

## FIFTH AFFIRMATIVE DEFENSE
### (Invalidity of the '715 Patent)

As a fifth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '715 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## SIXTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '008 Patent)

As a sixth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '008 patent.

## SEVENTH AFFIRMATIVE DEFENSE
### (Invalidity of the '008 Patent)

As a seventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '008 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

## EIGHTH AFFIRMATIVE DEFENSE
### (Equitable Defenses)

As an eighth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines.

## NINTH AFFIRMATIVE DEFENSE
### (Prosecution History Estoppel)

As a ninth and separate affirmative defense to each and every cause of action

stated in Entropic's Amended Complaint, DISH alleges that the patents-in-suit cannot be enforced by Entropic under the doctrine of prosecution history estoppel and that Entropic is estopped from claiming that the patents-in-suit include the accused products.

## TENTH AFFIRMATIVE DEFENSE
### (Limitation on Damages and Costs)

As a tenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to past damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by DISH of the claims of the Asserted Patents to the extent that Entropic, any predecessor owners, and/or licensees of the Asserted Patents have not complied, during any time period, with the notice and/or marking requirements of 35 U.S.C. § 287.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Entitlement to Enhanced Damages)

As an eleventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant to the Court's inherent powers.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Entitlement to Attorneys' Fees)

As a twelfth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to attorneys' fees under 35 U.S.C. § 285 or pursuant to the Court's inherent powers.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (No Entitlement to a Finding of Exceptional Case)

As a thirteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not

1    entitled to a finding that this case is exceptional under 35 U.S.C. § 285 or under the

2    Court's inherent powers.

### FOURTEENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

As a fourteenth and separate affirmative defense to each and every cause of
action stated in Entropic's Amended Complaint, DISH alleges that, to the extent
Entropic does not hold all substantial rights in the Asserted Patents, Entropic lacks
standing to assert the claims of alleged infringement. Alternatively, other owner(s)
of the Asserted Patents, if any, are indispensable parties to this action, mandating
dismissal if they cannot be joined in this litigation.

### FIFTEENTH AFFIRMATIVE DEFENSE
### (Time Limitation on Damages)

As a fifteenth and separate affirmative defense to each and every cause of
action stated in Entropic's Amended Complaint, DISH alleges that Entropic's
claims are statutorily limited, in whole or in part, by provisions of 35 U.S.C. § 286
establishing time limitations on damages.

### SIXTEENTH AFFIRMATIVE DEFENSE
### (Improper Venue)

As a sixteenth and separate affirmative defense to each and every cause of
action stated in Entropic's Amended Complaint, DISH alleges venue is not proper
in the Central District of California.        Specifically, as explained in DISH's
opposition to Entropic's cross-motion to transfer (Dkt. 88 at 2-6), Entropic's First
Amended Complaint contains no allegations that venue is proper in this District (the
Central District of California). And venue is not proper in this District. None of
the three named DISH defendants (DISH Network Corporation, DISH Network
L.L.C., and Dish Network Service L.L.C.) reside in this District—i.e., none of the
named DISH entities are headquartered or have a principal place of business in the
Central District of California. The named DISH defendants (DISH Network

1  Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) also do not,

2  individually or collectively, have any regular and established place of business in

3  the Central District of California. Accordingly, venue is not proper under 28 U.S.C.

4  § 1400(b).

5  **COUNTERCLAIMS**

1.  The allegations      in contained in the preceding paragraphs are

6  incorporated herein by reference.

2.  DISH Network Corporation is a Nevada corporation and has a principal

7  place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

3.  DISH Network L.L.C. is established under the laws of the State of

8  Colorado and has a principal place of business at 9601 S. Meridian Boulevard,

9  Englewood, Colorado 80112.

4.  Dish Network Service L.L.C. is established under the laws of the State

10  of Colorado and has a principal place of business at 9601 S. Meridian Boulevard,

11  Englewood, Colorado 80112.

5.  In its First Amended Complaint, Entropic alleges that it is a Delaware

12  limited liability company. This is consistent with the public records that DISH has

13  been able to locate, which indicate that Entropic Communications, LLC is a

14  Delaware limited liability company that was formed under the laws of Delaware on

20  March 29, 2021.

6.  Under Rule 13 of the Federal Rules of Civil Procedure, Defendants

21  DISH Network Corporation, DISH Network L.L.C., and Dish Network Service

22  L.L.C. (collectively, "DISH" or "Defendants"), assert the following counterclaims

23  against Plaintiff and Counterclaim Defendant Entopic Communications, LLC

24  ("Entropic").

7.  DISH's declaratory judgment counterclaims arise under Title 35 of the

25  United States Code. The Court has subject matter jurisdiction over them under 28

1  U.S.C. §§ 1331, 1338, 2201, and 2202 as they arise under an Act of Congress

2  relating to patents and the Declaratory Judgment Act.

8.        The Court has personal jurisdiction over Entropic at least based on its

3  consent to proceed in this District, including by seeking transfer to this District.

9.        Venue over DISH's counterclaims is proper, to the extent that venue

4  over Entropic's claims is proper, under 28 U.S.C. §§ 1391(b)and 1400(b). DISH

5  notes, however, that it denies venue is proper for Entropic's claims and that the

6  proper venue for these counterclaims is the District of Colorado, consistent with

7  DISH's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of

8  Colorado, filed April 27, 2022, in the transferred action.        The witnesses and

9  documents relevant to Entropic's claims and DISH's counterclaims are not located

10  in this District but are instead located largely in Colorado and elsewhere in

11  California.

## FIRST CLAIM FOR RELIEF
### Noninfringement of '576 Patent

10.        The allegations        in contained in the preceding paragraphs are

14  incorporated herein by reference.

11.        Entropic filed suit against DISH for alleged infringement of the '576

15  patent by DISH products, such as the Dish Pro Hybrid Switch Model DPH42

16  ("DPH42") and DISHPro Hybrid Low-Noise Block Feedhorns ("LNBFs"). As a

17  result, there is an actual, justiciable, substantial, and immediate controversy

18  between DISH, on the one hand, and Entropic, on the other, regarding whether

19  DISH products, including without limitation the DPH42 and DISHPro LNBFs,

20  infringe the '576 patent.

12.        Entropic's supplemental infringement contentions also identify Signal

21  Selector and Combiner-enabled LNB, switches, and devices that operate in a similar

22  manner, including DISHPro Hybrid LNBFs and DPH42 switches.

13      The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '576 patent.

14      As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) … to an integrated receiver decoder (IRD) over a single cable connected to the ODU" and "transmitting the composite signal over the single cable from the ODU to the IRDs." Exhibit A to Amended Complaint at 28; *see also* Exhibit D at 2; Exhibit A to Entropic's Supplemental Infringement Contentions at 2-6, 30-35.

15.      The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because there are multiple cables between an alleged outdoor unit (ODU) and an alleged integrated receiver decoder (IRD) in DISH systems. For example, Entropic's own Exhibits illustrate a first cable and a second cable between an alleged ODU and an alleged IRD. *See* Exhibit D at 2. Entropic attempts to side-step this issue by characterizing the cables as "a first single cable" and "a second single cable." Notwithstanding Entropic's characterization of two "single" cables, it is clear that at least two cables exist between the alleged ODU and the alleged IRD and that two cables are not a "single" cable.

16.      As an additional nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) that receives a plurality of satellite broadband signals" and "selecting and extracting a plurality of transponder signals from the received digitized satellite broadband signals." Exhibit A to Amended Complaint

27

1    at 28; *see also* Exhibit D at 6-7; Exhibit A to Entropic's Supplemental Infringement

2    Contentions at 2-6, 19-27.

17        The accused DISH products do not and cannot infringe this claim

3    either directly or indirectly at least because the accused DISH products do not select

4    and extract a plurality of transponder signals from received digitized satellite

5    broadband signals.

18        DISH is entitled to a judgement declaring that the accused DISH

6    products, including, without limitation, the DPH42 and DISHPro LNBFs, do not

7    infringe the '576 patent.

8                              **SECOND CLAIM FOR RELIEF**

9                          **Noninfringement of '715 Patent**

19.       The allegations     in contained in the preceding paragraphs are

10   incorporated by reference herein.

20.       Entropic filed suit against DISH for alleged infringement of the '715

11   patent by DISH products, such as the DPH42 and DISHPro Hybrid LNBFs. As a

12   result, there is an actual, justiciable, substantial, and immediate controversy

13   between DISH, on the one hand, and Entropic, on the other, regarding whether

14   DISH products, including without limitation the DPH42 and DISHPro LNBFs,

15   infringe the '715 patent.

21.       Entropic's supplemental infringement contentions also identify Signal

16   Selector and Combiner-enabled LNB, switches, and devices that operate in a similar

17   manner, including DISHPro Hybrid LNBFs and DPH42 switches.

22.       The accused DISH products have not and do not infringe, directly or

18   indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the

19   asserted claims of the '715 patent.

23.       As a nonlimiting example, the accused DISH products do not and

20   cannot infringe exemplary claim 9 of the '715 patent at least because that claim is

1   directed to a "a signal combiner coupled to at least one frequency translator capable

2   of combining at least two RF signals to produce a composite signal." Exhibit B to

3   Amended Complaint at 25; *see also* Exhibit E at 9; Exhibit B to Entropic's

4   Supplemental Infringement Contentions at 29-35.

24.         The accused DISH products do not and cannot infringe this claim either

5   directly or indirectly at least because the accused DISH products do not combine at

6   least two RF signals to produce a composite signal. The claims refer to a method

7   of combining ***analog*** signals to produce a composite signal, which is not how

8   DISH's accused products operate.

25.         DISH is entitled to a judgement declaring that the accused DISH

9   products, including, without limitation the DPH42 and DISHPro LNBFs, do not

10  infringe the '715 Patent.

11                        **THIRD CLAIM FOR RELIEF**

12                        **Noninfringement of '008 Patent**

26.         The allegations        in contained in the preceding paragraphs are

13  incorporated herein by reference.

27.         Entropic has filed suit against DISH for alleged infringement of the

14  '008 patent by DISH products, including the Hopper 3.      As a result, there is an

15  actual, justiciable, substantial, and immediate controversy between DISH, on the

16  one hand, and Entropic, on the other, regarding whether the accused DISH products,

17  including without limitation the Hopper 3, infringe the '008 patent.

28.         The accused DISH products have not and do not infringe, directly or

18  indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the

19  asserted claims of the '008 patent.

29.         As a nonlimiting example, the accused DISH products do not and

20  cannot infringe exemplary claim 3 of the '008 patent at least because the claim is

21  directed to "receiving a signal having a bandwidth that spans from a first frequency,

$F_{lo}$, to a second frequency, $F_{hi}$," "digitizing said received signal from $F_{lo}$ to $F_{hi}$ to generate a digitized signal," "selecting a first portion of said digitizing signal," "selecting a second portion of said digitized signal," and "concurrently outputting said selected first portion and said selected second portion," where the first portion is output to "a signal analyzer" and the second portion is output to "a data processor."

30    The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a second portion of the digitized signal to a data processor. Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., from a signal spanning a first frequency to a second frequency).

31.    As a further nonlimiting example, the accused DISH products do not and cannot infringe claim 1 of the '008 patent at least because the claim is directed to "an analog-to-digital converter operable to digitize a received signal spanning an entire television spectrum comprising a plurality of television channels, said digitization resulting in a digitized signal," "a channelizer operable to: select a first portion of said digitized signal," "a channelizer operable to: …    select a second portion of said digitized signal;" and "concurrently output said first portion of said digitized signal to said signal monitor and said second portion of said digitized signal to said data processor."

32.    The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a second portion of the digitized signal to a data processor. Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., an entire television spectrum).

33 | 1    DISH is entitled to a judgement declaring that the accused DISH products, including without limitation the Hopper 3, do not infringe the '008 Patent.

## FOURTH CLAIM FOR RELIEF
### Invalidity of '576 Patent

34 | 4    The allegations      in  contained  in  the  preceding  paragraphs  are incorporated by reference herein.

35 | 5    An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '576 patent.

36 | 6 | 7 | 12    The '576 patent is invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the rule, regulations and laws related thereto, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

37. | 13 | 14 | 15    As a nonlimiting example, the asserted claims of the '576 patent are invalid for failure to claim novel and/or nonobvious subject matter under Sections 102 and/or 103. For instance, the asserted claims are invalid as detailed in DISH's petition for *inter partes* review in IPR2023-00394.

38. | 16 | 17 | 18 | 19    The asserted claims are invalid as obvious in view of United States Patent Application No. 2002/0154055 ("Davis"), which qualifies as prior art under pre-AIA Section 102(e) by virtue of its priority to provisional application No. 60/284/593 filed on April 18, 2001 (before the earliest potential priority date for the '576 patent, November 7, 2001), and eventual publication on October 24, 2002.

20 | 21 | 22 | 23 | 24 | 25    Davis describes a satellite communication system including an interface device for distributing satellite signals, including satellite television signals, received from an outdoor unit (ODU) to a plurality of indoor units (IDUs).      The interface device converts radio frequency signals from the low noise block converters of the satellite, digitizes the signals, multiplexes and then transmits them to the IDUs over a single output cable. While Davis does not expressly disclose communicating by an IRD

1    to the ODU a transponder request, this was well-known in the art prior to the earliest

2    priority date of the '576 patent.

39          To take another example, the asserted claims are also indefinite and/or

3    lack written description because each requires limitations reciting or depends from

4    a claim with a limitation reciting "transmitting the composite signal over the single

5    cable from the ODU to the IRDs," and the claim language in view of the

6    specification does not describe a single cable from the ODU to each individual IRD.

40          Similarly, to take another example, the claims are also indefinite

7    because the limitation "selected [and extracted] transponder channel[s]" and the

8    claim language is indefinite regarding which these transponder channels are and

9    what the claim language encompasses.

41.         Additionally, to take yet another example, the asserted claims lack

10   written description and/or enablement because of the limitation "wherein the

11   modulation of the transponder signal is not altered by the steps of selecting,

12   combining, and transmitting," which, in view of the specification, does not inform

13   a person of skill in the art with reasonable certainty the scope of the claim, and a

14   person of ordinary skill in the art to would not be able to practice the claimed

15   invention without undue experimentation.

42.         DISH is entitled to a judgement declaring that '576 patent is invalid.

16                          **FIFTH CLAIM FOR RELIEF**

17                          **Invalidity of '715 Patent**

43.         The allegations      in contained in the preceding paragraphs are

18   incorporated by reference herein.

44.         An actual and justiciable controversy exists between DISH and

19   Entropic concerning the validity of the '715 patent.

45.         The '715 patent is invalid for failure to meet one or more of the

20   conditions for patentability specified in Title 35 of the United States Code, or the

1    rule, regulations and laws related thereto, including without limitation, 35 U.S.C.
§§ 101, 102, 103 and/or 112.

46          As a nonlimiting example, the asserted claims of the '715 patent are
3    invalid for failure to claim novel and/or nonobvious subject matter under Sections
4    102 and/or 103. For instance, the asserted claims are invalid as detailed in DISH's
5    petition for *inter partes* review in IPR2023-00392. Specifically, the asserted claims
6    are invalid as obvious in view of Fisk (International Publication No. WO
7    2002/065771) and Carnero (European Patent No. EP0740434B1). Fisk qualifies as
8    prior art under at least pre-AIA Section 102(e) by virtue of its international filing
9    date on February 9, 2001 designating English and its publication in English on
10   August 22, 2002, predating the earliest potential priority date for the '715 patent
11   (November 7, 2001). Carnero qualifies as prior art under pre-AIA Sections 102(a)
12   and 102(b) by virtue of its publication on October 30, 1996 more than one year prior
13   to the earliest potential priority date for the '715 patent (November 7, 2001). For
14   example, Fisk discloses a video distributions system for distributing a plurality of
15   LNB output signals from a satellite outdoor unit    (ODU), a gateway in
16   communication with the ODU at least one set top box (STB), and the gateway
17   receiving a composite signal, decodes specific programs, and distributes the
18   programs over a digital LAN to STBs. To the extent Fisk does not disclose all
19   elements of the claims, Carnero discloses and/or renders the remaining elements
20   obvious with Fisk, including: a signal selector that receives a plurality of broadband
21   LNB signals comprising a plurality of transponder signals, the signal selector is
22   responsive to transponder select information transmitted by the gateway and selects
23   a plurality of transponder signals from at least one broadband LNB signal based on
24   the transponder select information; a frequency translator coupled to the signal
25   selector that is capable of shifting the selected transponder signals to new carrier
26   frequencies to produce RF signals; a signal combiner coupled to at least one

1    frequency translator capable of combining at least two RF signals to produce a

2    composite signal; the modulation of the composite signal is the same as the

3    modulation of the broadband LNB signals; and a composite signal transmitted to

4    the gateway.    Fisk, which discloses a centralized server for distributing digital

5    signals, e.g., television and video signals, throughout a multi-unit dwelling such as

6    a hotel where each guestroom 12 includes a TV and local control unit (LCU), in

7    combination with Carnero, which addresses the same problem as the '715 patent,

8    how to send preselected satellite TV channels to multiple STBs in a multiroom

9    environment over a single cable and discloses a satellite television distribution

10   system including signal generators (block A), signal processors (block B), and a

11   distribution network (block C) that perform frequency shifting and generate a

12   composite signal, renders the asserted claims obvious.

47.       As another example the claims are invalid as obvious in view of

13   Japanese Patent Application No. 05-316062, which qualifies as prior art under pre-

14   AIA Section 102(b) by virtue of its publication on November 26, 1993, before the

15   earliest potential priority date for the '715 patent (November 7, 2001). Japanese

16   Patent Application No. 05-316062 discloses a satellite antenna having two low

17   noise block converters (LNBs) receiving signals of vertical and horizontal

18   polarizations, respectively, where each polarized received signal is composed of a

19   group of channels. A multiple signal generator combines the two polarized signals

20   into a composite output signal by frequency translating one of the polarized signals.

21   A receiver transmits a switching signal corresponding to a channel for selection,

22   and a corresponding band restoration unit outputs a subset of the composite signal

23   to the receiver.     While Japanese Patent Application No. 05-316062 does not

24   expressly describe a gateway decoding specific programs and distributing the

25   programs over a digital local area network, it would have been obvious to do so in

26   view of U.S. Patent No. 7,123,649 ("Smith"), which is prior art under 102(e) by

virtue of its filing date of November 3, 2000 (which predates the earliest possible priority date of the '715 patent). Smith discloses a residential gateway receiving, among other things, satellite channels from an ODU and distributing them to, among other things, one or more televisions. The residential gateway has MPEG decoder and NTSC video interface capabilities.

48.     Similarly, to take another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of a gateway that "decodes specific programs" and the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what constitutes "specific programs."

49.     To take yet another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of "a gateway in communication with the ODU and at the least one set top box (STB)," and the claim language in view of the specification does not describe such a system.

50.     Similarly, asserted claims 10, 11 and 12 are also indefinite and/or lack written description because each requires a limitation reciting or depends from a claim with a limitation reciting "a translation table," but the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what a "translation table" encompasses or what devices in the network that the translation table is provided to.

51.     DISH is entitled to a judgement declaring that '715 patent is invalid.

**SIXTH CLAIM FOR RELIEF**
**Invalidity of '008 Patent**

52.     The allegations     in contained in the preceding paragraphs are incorporated by reference herein.

53.     An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '008 patent.

54      The '008 patent is invalid for failure to meet one or more of the
conditions for patentability specified in Title 35 of the United States Code, or the
rule, regulations and laws related thereto, including without limitation, 35 U.S.C.
§§ 101, 102, 103 and/or 112.

55      For example, the asserted claims of the '008 patent are invalid for
failure to claim novel and/or nonobvious subject matter under Sections 102 and/or
103, including as detailed in DISH's petition for *inter partes* review in IPR2023-
398.      By way of nonlimiting example, the asserted claims are invalid as
anticipated and/or obvious in view of U.S. Patent Application No. 2007/0286311
("Coyne"), which qualifies as prior art under pre-AIA Section 102(b) by virtue of
its publication on December 13, 2007, more than a year before the earliest potential
priority date for the '008 patent (September 8, 2011).      Coyne discloses a
communications system, e.g., a satellite communications system, that receives
multiple channels, digitizes the signals using an ADC, channelizes the signal using
a channelizer, and allows for information to be transmitted back from the
downstream interface module/devices. Figure 2 of Coyne, set forth below provides
an example system having a multi-channel receiver, an ADC to digitize the received
signals/spectrum, a channelizer that separates the digitized spectrum/signals into
channels, and an interface module that transmits one or more portions of the signal

to downstream devices and further can receive return outputs from the downstream

devices and transmit them back using modulator 270 and antenna 280.

56.    Other references directed to satellite television systems were well

known, including (by way of nonlimiting example) U.S. Patent No. 7,788,684

("Petrovic"), which was issued August 31, 2010 and discloses a media monitoring,

management and information system that monitors transmissions of media content,

including transmissions of broadcast, satellite, network, and cable television and 8



Fig. 2

radio programs, and to monitor quality of a received transmission channel's

characteristics, such as SNR or dropped packet rate..

57.    The Coyne reference alone and/or in combination with the Petrovic

reference and/or other references and knowledge of a person of skill in the art

anticipate and/or render obvious the asserted claims of the '008 patent.

58.    The asserted claims are also indefinite and/or lack written description.

Each requires limitations reciting or depends from a claim with limitations reciting

"analyze said digitized signal to determine a characteristic of said digitized signal"

/ "said selected first portion is output to a signal analyzer which analyzes said

selected first portion to determine one or more characteristics of the received signal" of a signal or a portion of a signal and a to "report said determined characteristic to a source   of said received signal"/"reports said determined one or more characteristics to a source of said received signal," and the claim language in view of the specification does not describe such a system.

59     Similarly, the asserted claims also indefinite and/or lack written description because they include a limitation or depend from a claim reciting a limitation directed to a "data processor operable to process a television channel to recover content"/ "a data processor for recovery of data carried on one or more of said plurality of channels," but the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what constitutes a "data processor" or "recovery of data."

60.     DISH is entitled to a judgement declaring that '008 patent is invalid.

## PRAYER FOR RELIEF

DISH specifically denies that Entropic is entitled to any relief whatsoever, including, but not limited to, the relief requested in Entropic's Amended Complaint. Further, DISH requests that the Court enter judgment in DISH's favor on its claims, including the following:

i)     an entry of judgment in favor of DISH, and against Entropic, with Entropic being awarded no relief of any kind sought in its Amended Complaint or otherwise;

ii)     a declaration that the '576, '715, and '008 patents are invalid for failing to meet the requirements of Title 35, U.S.C. § 101, *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112;

iii)     a declaration that DISH does not and has not infringed, literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise, any claim of the '576, '715, and '008 patents;

iv)     a declaration that DISH is the prevailing party and awarding DISH costs under 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and all other applicable laws

1        and statutes;

v)        a declaration that this action is exceptional under 35 U.S.C. § 285 and an
2            award of attorneys' fees to DISH pursuant to that statute; and

vi)        an award to DISH of such other and further relief as the Court deems just
3            and proper under the circumstances.

4    Dated: March        , 2023        **PERKINS COIE LLP**

7

~~Dated: May 16, 2022~~        ~~Respectfully submitted,~~

~~/s/~~

~~Melissa R. Smith~~
By:

Matthew C. Berns

tein, ~~CA~~ Bar No. 199240

MBernstein@perkinscoie.com

PERKINS COIE LLP

11452 El Camino Real ~~-#~~ Ste 300

San Diego

, ~~CA~~ California 92130-2080 Telephone: +1.858.720.5700 Facsi

mile. +1.858.720.5799

Amanda Tessar, ~~CO Bar No. 33173~~ (admitted pro hac vice) ATessar@perkinscoie.com Trevor Bervik (admitted pro hac vice) ~~ATessar@perkinscoie.com~~ TBervik@perkinscoie.com PERKINS

COLE LLP 1900 Sixteenth Street, Suite ~~1400~~ 140 Denver, Colorado 80202-5255

~~Melissa R. Smith melissa@gilliam~~

~~smithlaw.com~~

~~Gilliam & Smith, LLP~~

~~303 South Washington Ave~~

nue

Marshall, TX 75670

Telephone: +1 903-934-8450

1303.29



1.2300

Facsimile: +1 903-934-9257 1.303.291.2400

Daniel T

Keesee, Bar No. 280683

DKeesee@perkinscoie.com

PER

KINS COIE LLP 1120 NW Couch Street 10th Floor Por

tland, OR 97209-4128 Telephone: +1.503.727.2000 Fax: +1.503.727.2222

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served May 16, 2022 to all counsel of record, via the Court's CM/ECF system.

*/s/ Melissa R. Smith*
Melissa R. Smith

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27