Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

*Additional Counsel Listed in Signature Block*

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br>Plaintiff,<br>v.<br>DIRECTV, LLC and AT&T SERVICES, INC.,<br>Defendants. | No. 2:22-cv-07775-JWH-JEM |
| ENTROPIC COMMUNICATIONS, LLC,<br>Plaintiff,<br>v.<br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br>Defendants. | No. 2:22-cv-07959-JWH-JEM<br><br>**DISH'S REPLY IN SUPPORT OF MOTION TO STAY CASE PENDING *INTER PARTES* REVIEW**<br><br>Motion Hearing:<br>Date: April 14, 2023<br>Time: 9:00 a.m.<br>Crtm: 9D (Reagan Bldg) |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................... 1

II. REPLY TO Entropic's MAIN ARGUMENTS ..................................................... 1

A. Stays Pending IPR Institution Are Regularly Granted In This District ..................................................... 1

B. DirecTV's Estoppel Stipulation Shuts Down Entropic's Remaining Arguments About Simplification ..................................................... 3

C. This Case ***Is*** At An Early Stage, Even If Entropic Wishes It Were Not ..................................................... 5

D. Entropic Can Identify No Undue Prejudice From A Stay ..................................................... 8

III. CONCLUSION ..................................................... 9

# TABLE OF AUTHORITIES

## CASES

*C.R. Laurence v. Frameless Hardware Company LLC*, No. 2:21-cv-1334-JWH, 2022 WL 2035952 (C.D. Cal. Feb. 14, 2022)...............2

*California Institute of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022)...............4

*Dress Indus. Inc. v. Smith-Blair, Inc.*, 322 F.2d 878 (9th Cir. 1963)...............4

*Hologram USA, Inc. v. Vntana, 3D, LLC*, 2015 WL 12791513 (C.D. Cal. Dec. 7, 2015)...............2

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, No. 2:20-cv-02299-CAS, 2020 WL 6203555 (C.D. Cal. Oct. 19, 2020)...............2

*Kirsch Research & Dev't, LLC v. Epilay, Inc.*, 2021 WL 4732578 (C.D. Cal. May 7, 2021)...............2

*Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. 18-cv-8085-PSG, 2019 WL 9443180 (C.D. Cal. Sept. 24, 2019)...............7

*MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-3560, 2014 WL 12967515 (C.D. Cal. Dec. 16, 2014)...............2

*Nichia Corp. v. Vizio, Inc.*, No. 16-cv-00545, 2017 WL 3485767 (C.D. Cal. Feb. 2, 2017)...............9

*Olati LLC v. Haas Automation, Inc.*, No. 20-cv-1650, 2020 WL 8512303 (C.D. Cal. Dec. 23, 2020)...............8

*Pi-Net Int'l, Inc. v. Hertz Corp*, No. 12-cv-10012, 2013 WL 7158011 (C.D. Cal. June 5, 2013)...............3

*Pinn, Inc. v. Apple, Inc.*, No. 19-cv-1805-DOC-JDE, 2020 WL 6064642 (C.D. Cal. Aug. 27, 2020).....2, 6

*Polaris Innovs. Limited v. Kingston Tech. Co, Inc.*, No. 16-cv-00300-CJC, 2016 WL 7496740 (C.D. Cal. Nov. 17, 2016).............2, 3

*Reversible Connections LLC v GBT Inc.*, No. 17-cv-5382-JVS, 2018 WL 5116411 (C.D. Cal. Aug. 21, 2018)...............4

*SAS Institute, Inc. v. Iancu*,
138 S.Ct. 1348 (2018)....................................................................................3

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
No. 12-cv-21-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012)....................4, 9

*Sleep Number Corp. v. Sizewise Rentals, LLC*,
No. 18-cv-00356, 2019 WL 1091335 (C.D. Cal. Feb. 12, 2019)..........................3

*SpeakWare, Inc. v. Microsoft Corp.*,
2019 WL 1878350 (C.D. Cal. Feb. 21, 2019) ......................................................3

*SPEX Techs., Inc. v. Kingston Tech. Corp.*,
No. SACV16-01790, 2018 WL 2446801 (C.D. Cal. May 16, 2018)....................3

*Toshiba Tec Corp. v. Katun Corp.*,
No. 15-cv-0197, 2016 WL 9137646 (C.D. Cal. Sept. 21, 2016)...........................2

*UPL NA, Inc. v. Tide Int'l (USA), Inc.*,
No. 19-cv-1201-RSWL, 2021 WL 663128 (C.D. Cal. Feb. 19, 2021) .................8

*Wonderland Nurserygoods Co. v. Baby Trend, Inc.*,
No. 14-cv-1153-VAP, 2015 WL 1809309 (C.D. Cal. Apr. 20, 2015) ..............2, 8

**STATUTES**

35 U.S.C. §314(b) .................................................................................................7

**OTHER AUTHORITIES**

Local Rule 7-3.........................................................................................................8

## I. INTRODUCTION

Entropic's opposition to DISH's Motion to Stay is striking for its reliance on case law from other districts (including districts in other circuits), oftentimes to the exclusion of the local decisions that unequivocally support DISH's motion.

Entropic's opposition reduces to three main arguments, which DISH addresses in this order below: first, it contests that a pre-institution stay is appropriate; second, it contests that a stay will simplify this case (because of DirecTV's presence); and third, it re-writes the history of this case to assert that DISH has supposedly "engaged in a calculated campaign of delay" both in the district support and in filing its IPRs. For all three of these arguments, Entropic largely fails to grapple with the Central District of California precedent that guides this Court's decision. Moreover, even if the third argument were credited (which it should not be, as explained below), that argument about delay misses the point: the efficiencies to be gained through a stay are not judged by what has happened in the past or what stage at which the non-movant would ***like*** the case to be; they are instead judged by the stage at which the case ***actually*** is and the efficiencies to be gained in averting unnecessary future work (here, a great deal of unnecessary future work). Finally, as to one of the key factors guiding any stay decision—prejudice to the non-movant—Entropic cannot identify any undue prejudice that it, as a non-practicing entity that acquired nearly expired patents just before filing suit, will suffer if this case is paused.

In short, DISH's motion to stay should be granted.

## II. REPLY TO ENTROPIC'S MAIN ARGUMENTS

### A. Stays Pending IPR Institution Are Regularly Granted In This District

DISH's motion cites multiple decisions from this District granting stays before IPRs are instituted. (ECF 191, Mot. at 7-8 (collecting cases).) Courts in the District view the availability of a pre-institution stay as the "majority rule" (*see id.*), and this makes sense: if the Patent Office eventually institutes the IPR petitions, the

Court and the parties are spared from wasteful litigation in the interim; if not, the case stands still for, at most, a handful of months.[1] *See, e.g., Wonderland Nurserygoods Co. v. Baby Trend, Inc.,* No. 14-cv-1153-VAP, 2015 WL 1809309, at *3 (C.D. Cal. Apr. 20, 2015).

In arguing that a pre-institution stay will not simplify the issues (Factor 2), Entropic relies primarily on out-of-circuit cases. (ECF 200, Opp. at 10.) It buries its only Central District citations in a footnote, and even a cursory review of these decisions makes clear why: they are readily distinguishable from this case, and the denial of a stay in each appears to have been motivated by factors not present here. (*See id.* at n.3.) For instance, five of those cases, *C.R. Laurence* (already discussed by DISH, ECF 191, Mot. at 8), *JBF Interlude 2009*, *Toshiba*, *Kirsch*, and *Pinn*, all involved one or both of (1) situations where not all asserted patents were subject to pending IPR petitions and/or (2) situations where non-patent tort or contract claims that would not be affected by IPRs were present.[2] Here, by contrast, all asserted claims of all asserted patents are challenged with IPRs, and there are no non-patent claims in the case. Two other cases cited by Entropic, *Hologram* (a competitor case) and *MyMedicalRecords*,[3] had only six months or less to trial and the close of fact discovery loomed; here, neither of those conditions is present. Finally, *Polaris* and

---

[1] Entropic suggests that the odds of institution for any claim of the three patents are low (ECF 200, Opp. at 1), but no data or analysis supports this bold claim. (*Compare* ECF 191, Mot. at 7 (citing institution statistics).)

[2] *See C.R. Laurence v. Frameless Hardware Co. LLC*, No. 2:21-cv-1334-JWH, 2022 WL 2035952, at *6 (C.D. Cal. Feb. 14, 2022); *Kirsch Research & Dev't, LLC v. Epilay, Inc.*, No. 2:20-cv-3773-RGK-JPR, 2021 WL 4732578, at *3 (C.D. Cal. May 7, 2021); *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, No. 2:20-cv-02299-CAS, 2020 WL 6203555, at *8 (C.D. Cal. Oct. 19, 2020); *Pinn, Inc. v. Apple, Inc*., No. 19-cv-1805-DOC-JDE, 2020 WL 6064642, *2 (C.D. Cal. Aug. 27, 2020); *Toshiba Tec Corp. v. Katun Corp*., No. 15-cv-01979, 2016 WL 9137646, at*3 (C.D. Cal. Sept. 21, 2016).

[3] *Hologram USA, Inc. v. Vntana, 3D, LLC*, 2015 WL 12791513, at *2-3 (C.D. Cal. Dec. 7, 2015); *MyMedicalRecords, Inc. v. Jardogs, LLC*, No. 2:13-cv-3560, 2014 WL 12967515, *1 (C.D. Cal. Dec. 16, 2014).

*Speakware* appear to be outliers where the Courts involved did not assess one or more of the stay factors (e.g., the extent of litigation remaining), so it is impossible to know the reasoning implicated.[4] In sum, none of Entropic's cited cases support denial of a stay here, rejection of this District's majority rule favoring pre-institution stays, or compellingly rebut the points DISH made in its motion on this issue.

## B. DirecTV's Estoppel Stipulation Shuts Down Entropic's Remaining Arguments About Simplification

DISH's motion should not turn on the positions of its competitors in this case. Consistent with this, courts in this District typically put little weight on questions relating to the presence and scope of estoppel stipulations when evaluating simplification issues, with one court even going so far as to grant a stay to a defendant that did not itself file IPRs or commit to ***any*** degree of estoppel. *Pi-Net Int'l, Inc. v. Hertz Corp*, No. 12-cv-10012, 2013 WL 7158011, *3-4 (C.D. Cal. June 5, 2013) (case issues "would likely be simplified and [it] would promote judicial efficiency" to stay pending IPR filed by non-party even though *no* estoppel would apply to defendants); *see also Sleep Number Corp. v. Sizewise Rentals, LLC*, No. 18-cv-00356, 2019 WL 1091335, at *3-4 (C.D. Cal. Feb. 12, 2019) (simplification and prejudice factors both favored stay even though court declined to determine appropriate scope of estoppel in resolving stay motion); *SPEX Techs., Inc. v. Kingston Tech. Corp.*, No. SACV16-01790, 2018 WL 2446801, at *2-3 & n.7 (C.D. Cal. May 16, 2018) (granting stay prior to Federal Circuit clarification on scope of

---

[4] *SpeakWare, Inc. v. Microsoft Corp*., No. 18-cv-1293-DOC, 2019 WL 1878350, at *3 (C.D. Cal. Feb. 21, 2019); *Polaris Innovs. Ltd. v. Kingston Tech. Co, Inc*., No. 16-cv-00300-CJC, 2016 WL 7496740, at *2 (C.D. Cal. Nov. 17, 2016). Entropic additionality cites *Speakware* for the proposition that a stay is not warranted because "the PTAB may decide to review" (i.e., institute) only "some … of the challenged [patent] claims," but the Supreme Court has since made clear that such piecemeal institution is not allowed. If the PTAB determines that a petitioner has a reasonable likelihood of invaliding just one claim challenged in a petition, then the PTAB must institute review of all claims. *See SAS Institute, Inc. v. Iancu*, 138 S.Ct. 1348, 1354 (2018); *SpeakWare, Inc.*, 2019 WL 1878350, at *3.

statutory estoppel;[5] recognizing that extent of estoppel would be determined later in the case); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-cv-21-JST, 2012 WL 7170593, at *2-3 (C.D. Cal. Dec. 19, 2012) (granting stay where co-defendants had agreed to estoppel without suggesting that such agreements are required; instead, the benefits of estoppel provision simply carry "less weight" in balancing of stay factors). It is likely for this reason that Entropic—again—primarily cites to out-of-district cases for its argument regarding estoppel. (Opp. at 9-10.)

The approach followed by this District is logical and commonsense: if any asserted claims are invalidated through IPR, then they are invalid as to the entire world, and the district court case against the co-defendant will be just as dead as the case against the defendant that filed the IPRs. *Dress Indus. Inc. v. Smith-Blair, Inc.*, 322 F.2d 878, 890 (9th Cir. 1963) ("An invalid patent cannot be infringed.")

Here, DirecTV has unequivocally made an estoppel stipulation, agreeing that "if the Court grants [DISH's] motion to stay, they [DirecTV] will not raise in this litigation any grounds actually raised and finally adjudicated in the IPR proceedings." (ECF 198, DirecTV Notice of Joinder, at 2 (internal quotations omitted).) In doing so, DirecTV cited a specific Central District of California case, *Reversible Connections LLC v. GBT Inc.,* that approved exactly this type of estoppel stipulation. No. 17-cv-5382-JVS, 2018 WL 5116411, at *3 (C.D. Cal. Aug. 21, 2018) (granting stay where limited estoppel stipulation made by co-defendants, because any prejudice from requiring more was speculative). While Entropic tries to distinguish *Reversible Connections* (ECF 200, Opp. at 12-13), it ignores that the court in that case granted a stay in light of an IPR where four of the five defendants had only agreed to only a limited estoppel for the IPR that the movant had filed—and, depending on the outcome of separate IPR petitions, those four defendants might only ever have been subject to that limited estoppel, exactly like DirecTV here.

---

[5] *See California Institute of Tech. v. Broadcom Ltd.*, 25 F.4th 976 (Fed. Cir. 2022).

Entropic's claim that DirecTV's estoppel agreement is so narrow that "no simplification will occur" based on it (Opp. at 11) is hyperbole that rests on faulty assumptions. Preliminarily, as mentioned above, the case as a whole will necessarily be narrowed for DISH, DirecTV, and the Court if ***any*** of the asserted claims from ***any*** of the three asserted patents is invalidated through the IPR process, irrespective of whether DirecTV makes any estoppel agreement.[6] Additionally, irrespective of the estoppel commitment, the scope of claims will likely be clarified through the IPR process for any such claims that survive (with Entropic itself estopped on certain issues, depending on the positions that it takes). What DirecTV's stipulation adds is its commitment to further simplify the case by agreeing that it will not pursue some of the very best prior art combinations, which certainly results in simplification even in the scenario that Entropic posits (i.e., some of its claims survive, this case proceeds to trial, and DirecTV is still able to present other invalidity defenses). This estoppel agreement therefore further tips Factor 2 in favor of a stay.

**C. This Case *Is* At An Early Stage, Even If Entropic Wishes It Were Not**

Entropic emphasizes that this case was filed a year ago, but it ignores why so much remains to be done: Entropic chose to file its case in the wrong venue. This forced the parties to spend the first six months of this case focusing almost entirely on—besides required Eastern District of Texas disclosures—venue disputes and related discovery. Entropic finally conceded in July that the case would not proceed in Texas (ECF 75), and the Eastern District of Texas court then ordered transfer in late October (ECF 109). The parties then had to settle into this District while they

[6] Confusingly, counter-intuitively, and incorrectly, Entropic suggests that the number of challenged patent claims here cautions against a stay. (Opp. at 10-11.) But this makes no sense. The idea that the Court should plow ahead to do the work in this case necessary to adjudicate dozens of claims without knowing which (if any) will survive IPR (i.e., which work will have been wasted) is contrary to the point of DISH's motion.

waited for a case number and judge(s) to be assigned and then for this Court to set a new schedule and resolve disputes about the discovery order.

Moreover, upon arrival in this District, Entropic *sua sponte* served updated infringement contentions, so the Court gave DISH approximately six weeks to update its invalidity contentions before the activities relating to claim construction then began. (ECF 176.) In parallel, the parties served requests for production (which Judge McDermott confirmed by minute order in February are required in this District, contrary to Entropic's contentions on point, *see* ECF 178, 179).

DISH vehemently disagrees with much of Entropic's argument about the extent of discovery that has happened and any suggestion that DISH has delayed, but this motion is not the right forum to decide those issues.[7] Entropic's very arguments on those issues miss the point: in judging the question of whether or not the case is at an early stage, the question is not whether the non-movant is ***happy*** with how quickly that things have progressed (or not), but instead what still remains to be done for the Court and parties. As even cases cited by Entropic recognize, "Courts in the Central District of California often consider whether there ***is more work ahead … than behind*** …." *See Pinn, Inc.*, 2020 WL 6064642, at *2 (emphasis added); *see also* Mot. at 5-6. Here, all fact depositions, expert reports and discovery, claim construction briefing, and dispositive motions lie ahead, in addition to the significant party and third-party written discovery that still remains. (ECF 176.) This Court has not a set date when fact discovery will close, let alone a trial date. (*See* ECF 191, Mot. at 6 (*citing* Status Conf. Tr., Ex. A at 43:18-21).) Much as Entropic can announce its intention to complete all fact discovery by (a few weeks ago) July or (now) September (ECF 200, Opp. at 1), it does not have the power to unilaterally set

---

[7] DISH timely responded to all RFPs, has made multiple productions, and is continuing to do so (including by making large volumes of source code available shortly), even as Entropic has produced almost nothing since transfer other than co-defendant's invalidity contentions. (*See* Hester Decl., ¶¶4-7.) Disputes about deposition timing and phasing are separately briefed to the Court. (ECF 184-86.)

this deadline. In short, this factor unequivocally weighs in favor of a stay, whether Entropic likes it or not.

Likewise, Entropic's finger-pointing over supposed delays in filing IPRs (relevant both to the stage of the case and, as discussed below, Entropic's supposed prejudice) fall flat. Entropic complains that DISH's IPRs were not filed faster, as if DISH's nefarious plan all along has been to wait until the last possible minute to seek a stay. That, of course, makes no sense: DISH would have preferred to file its IPRs more quickly and seek a stay months ago, but the reality is that the technologies here (satellite communications signal processing and distribution) are complex, expert availability is limited, no pre-suit work could be done because Entropic gave no pre-suit notice of its claims of infringement, Entropic pivoted on its infringement contentions midstream, and—to boot—Entropic has been highly successful in its efforts to try to force DISH to do everything at once. DISH filed its IPRs well within the one-year statutory bar and, in similar circumstances, courts in this District do not typically hold such timing issues against the movant, so long as the district court case itself—as here—remains at an early stage.[8] *See, e.g., Lodge Mfg. Co. v. Gibson Overseas, Inc.*, No. 18-cv-8085-PSG, 2019 WL 9443180, at *4 (C.D. Cal. Sept. 24, 2019) (finding that a gap of approximately 10 months between the complaint and IPR filing is "well within the statutory period" and granting stay).

---

[8] Entropic jumps all over a supposed error in DISH's calculation of the IPR institution dates, as if DISH's motion turns entirely on whether institution will happen in July, August, September, or some other month. For clarity, Entropic is correct that the institution deadline will happen three months ***after*** Entropic files its Patent Owner Preliminary Responses ("POPRs") in the IPRs. *See* 35 U.S.C. §314(b). But Entropic's conclusion regarding the institution deadline ***assumes*** that Entropic will take the full three months to prepare its POPRs and will file them on the very last possible day. In other words, even as Entropic criticizes DISH for supposedly delaying in the district court case, it meanwhile plans to take the maximum time possible in the IPRs.

### D. Entropic Can Identify No Undue Prejudice From A Stay

Courts in this District have found that "[t]he general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay." *Wonderland*, 2015 WL 1809309, at *4. That is the only prejudice that Entropic identifies, however. (ECF 200, Opp. at 13-16.) It is not enough.

As to sub-factor [1] of the prejudice test—the timing of the petition for review—Entropic only points to the timing of DISH's IPR filings, discussed above, as causing it prejudice. But DISH's timing was reasonable for the reasons described, and, in any event, this timing alone cannot justify denying DISH's motion and does not truly cause any prejudice (much less undue prejudice) to Entropic. Indeed, two of the four Central District cases that even Entropic relies upon to argue that this sub-factor mitigates against a stay actually ultimately ***granted*** a stay, notwithstanding that the petitions involved were filed seven to eight months after their respective cases were filed.[9]

For sub-factor [2]—the timing of DISH's request for stay—Entropic's sole argument is that "DISH waited [] two weeks after filing its last IPR to first raise the issue of a stay." (Opp. at 14.) Entropic cites no authority, from this District or elsewhere, that raising the issue of a stay motion two weeks after filing an IPR amounts to dilatory conduct, or otherwise caused Entropic undue prejudice. After filing its IPRs, and pursuant to Local Rule 7-3, DISH promptly determined "the substance of [its] contemplated" motion to stay so that it could confer with Entropic about it. DISH should not be faulted for following the local rules.

Entropic's complaints about sub-factor [3]—the stage of the proceedings—would apply to any pre-institution stay. (*See* ECF 200, Opp. at 15-16.) Whenever a party files a pre-institution stay, institution will be some number of months away

---

[9] *UPL NA, Inc. v. Tide Int'l (USA), Inc.*, No. 19-cv-1201-RSWL, 2021 WL 663128, at *4 (C.D. Cal. Feb. 19, 2021); *Olati LLC v. Haas Automation, Inc.*, No. 20-cv-1650, 2020 WL 8512303, at *5 (C.D. Cal. Dec. 23, 2020).

(as many as six), and final resolution will occur approximately one year after institution. Pre-institution stays are nevertheless routine in this District (*see* §II.A, *supra*), so Entropic's argument (again, based entirely on out-of-district cases) is inconsistent with this District's practice. Lacking any "specific showing" by Entropic of prejudice related to the state of the IPR proceedings, this factor also favors a stay. (*See* ECF 191, Mot. at 9-10 (*quoting TeleSign Corp. v. Twilio, Inc.*, No. 15-cv-3240-PSG, 2016 WL 6821111, at *4 (C.D. Cal. Mar. 9, 2016)).)

Finally, and again based entirely on out-of-district cases, Entropic concedes that sub-factor [4]—the relationship of the parties—"is neutral or weighs slightly in favor of a stay." (ECF 200, Opp. at 16.) This understates the point, however. In this District, this sub-factor decidedly favors a stay in the circumstances here, as Entropic and DISH do not compete, meaning that Entropic can be "made whole by money damages" if any of its claims survive IPR and it ultimately prevails on the issues of infringement and damages. *See, e.g., Nichia Corp. v. Vizio, Inc.*, No. 16-cv-00545, 2017 WL 3485767, at *7 (C.D. Cal. Feb. 2, 2017); *Semiconductor Energy Lab.*, 2012 WL 7170593, at *3-4.

In short, Entropic has entirely failed to make any show of undue prejudice from a stay.

## III. CONCLUSION

Because all factors favor a stay, and in light of the liberal policy in this District favoring stays pending IPR proceedings, DISH respectfully requests that the Court stay this case pending the outcome of DISH's IPR petitions.

Dated: March 31, 2023

**PERKINS COIE LLP**

By: */s/ Amanda Tessar*
Amanda Tessar

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
Trevor Bervik (admitted *pro hac vice*)
TBervik@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 140
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

Daniel T Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: +1.503.727.2000
Fax: +1.503.727.2222

Adam Hester, Bar No. 311206
AHester@perkinscoie.com
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, WI 53703-3095
Telephone: +1.650.838.4311
Facsimile: +1.650.838.4350

**ATTORNEYS FOR DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**