Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2357
Facsimile: +1.303.291.2457

*Additional Counsel Listed in Signature Block*

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>DIRECTV, LLC and<br>AT&T SERVICES, INC.,<br><br>  Defendants. | No. 2:22-cv-07775-JWH-JEM |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>  Defendants. | No. 2:22-cv-07959-JWH-JEM<br><br>**MEMORANDUM IN SUPPORT OF DISH'S MOTION TO COMPEL ENTROPIC'S COMPLIANCE WITH LOCAL RULE 7.1-1**<br><br>Motion Hearing:<br><br>Date:  June 9, 2023<br>Time:  9:00 a.m. PT<br>Crtm:  9D (Ronald Reagan Bldg) |

# Table Of Contents

I. Introduction And Factual Background ..................................................................1

II. Legal Standards ......................................................................................................2

    A. The Central District Of California's Disclosure Requirements ................2

    B. This Court Hass Authority To Promulgate And Enforce Local Rule 7.1-1 ..................................................................................................3

III. Entropic Should Be Required To Comply With Local Rule 7.1-1 ...................3

    A. Local Rule 7.1-1 Requires Entropic To Provide The Identity Of Additional Individuals And Entities For Compliance ..............................3

    B. Fortress's Similar Attempts To Obscure Ownership Of Other Fortress Entities Have Been Rejected By The District of Delaware ........6

IV. Conclusion..............................................................................................................7

# TABLE OF AUTHORITIES

**CASES**

*Connecticut Gen. Life Ins. Co. v. La Peer Surgery Ctr. LLC*,
   No. 13-cv-3726-CAS, 2014 WL 961806 (C.D. Cal. Mar. 12, 2014) ................... 5

*Harris v. Wells Fargo Bank, N.A.*,
   No. 16-cv-645-JGB, 2016 WL 11486587 (C.D. Cal. July 14, 2016) ............... 4, 7

*In re Nimitz Techs LLC*,
   No. 2023-103, 2022 WL 17494845 (Fed. Cir. 2022) ........................................ 7

*Nixon v. Warner Commc'ns, Inc.*,
   435 U.S. 589 (1978) ........................................................................................ 3

**STATUTES**

28 U.S.C. § 455 ................................................................................................. 1, 3

28 U.S.C. § 2072 ..................................................................................................... 3

28 U.S.C. § 2075 ..................................................................................................... 3

**OTHER AUTHORITIES**

Brittain, Blake, *Intel, VLSI Drop Delaware Dispute in Blockbuster Patent Fight*, REUTERS (Dec. 27, 2022) ................................................................... 6

Davis, Ryan, *VLSI Drops $4B Intel Patent Suit Amid Delaware Ownership Row* (Jan. 3, 2023) ........................................................................................ 6

Fed. R. Civ. Proc. 7.1 ..................................................................................... 1, 2, 3

Fed. R. Civ. Proc. 83(b) ........................................................................................ 3

Local Rule 7.1-1 ............................................................................................ passim

Shapiro, Michael, *Intel, VLSI Agree to End $4.1 Billion Delaware Chip Patent Case*, BLOOMBERG (Dec. 28, 2022) ........................................................ 6

## I. INTRODUCTION AND FACTUAL BACKGROUND

DISH respectfully moves to compel Entropic Communications, LLC ("Entropic") to file a compliant Local Rule 7.1-1 Notice of Interested Parties that identifies all parties with a pecuniary interest in this case. Compliance with Local Rule 7.1-1 is not optional; it is necessary to ensure that the Court has the information needed to evaluate potentially disqualifying conflicts under 28 U.S.C. § 455, to avoid any appearance of impropriety, and to ensure open and transparent proceedings for the public.

On March 9, 2022, Entropic filed this patent infringement suit against DISH in the Eastern District of Texas. That district does not have a local rule equivalent to this Court's Local Rule 7.1-1, so parties in the Eastern District of Texas must only comply with the more general requirements of Federal Rule of Civil Procedure 7.1. Therefore, the Rule 7.1 statement that Entropic filed in the Eastern District of Texas did not identify all people and entities that have a financial interest in the outcome of this case. (Dkt. 4.)

After DISH moved to transfer this case to the District of Colorado, Entropic cross-moved to transfer it to this District. Judge Gilstrap granted Entropic's cross-motion in October of 2022. (Dkt. 109.)

This Court's Local Rule 7.1-1 requires parties to disclose "all persons, associations of persons, firms, partnerships, and corporations … that may have a pecuniary interest in the outcome of the case." (C.D. Cal. L.R. 7.1-1.) Entropic did not file an updated disclosure of interested parties until weeks after DISH prompted Entropic to do so on March 28, 2023. (*See* Exh. A; Dkt. 219.)[1] Even then, Entropic's disclosure was facially deficient.

Instead of identifying every person or company that has a pecuniary interest in this case, Entropic's disclosure hints at a web of corporate shells, without identifying the shells or who is actually behind them. Entropic first points to "Entropic Holdings LLC" ("a privately held limited liability company with an interest in the outcome of the action")

---

[1] All exhibits are attached to the Bervik Declaration submitted with this Motion.

as its direct parent. Beyond that, however, the plaintiff merely identifies "Fortress Investment Group" ("Fortress") "and/or its wholly-owned subsidiaries" (who are not identified by name) as being "investment advisors to private investment funds that own Entropic Holdings LLC and may have an interest in the outcome of the action."[2] (Dkt. 219 at 2.) This suggests, simultaneously, that: (a) it is not Fortress itself—which Entropic describes as a mere "investment advisor"—that has the financial interest in this case; ***and*** (b) there are other unnamed "private investment funds" that are actually behind the plaintiff and that stand to profit from this litigation.

Entropic refuses to supplement its disclosure to comply with Local Rule 7.1-1. To be clear, Entropic does not contest that there are and must be others (*e.g.*, the "investment funds" mentioned in the current disclosure) that have a financial or pecuniary interest in this case, nor does it contest that this Court has the authority to promulgate and require compliance with Local Rule 7.1-1. Instead, Entropic takes the implausible position that it does not know (and the even more implausible position that it cannot be required to figure out) the people and entities that have an interest in the outcome of this case. But Local Rule 7.1-1 provides no shelter for such excuses. Entropic asked to be transferred to this District and now must comply with the rules here, including Local Rule 7.1-1.

## II. LEGAL STANDARDS

**A.    The Central District Of California's Disclosure Requirements**

Rule 7.1 of the Federal Rules of Civil Procedure requires parties in litigation to identify "any parent corporation and any publicly held corporation owning 10% or more of its stock" or "state[] that there is no such corporation." The Advisory Committee Notes to Federal Rule 7.1 explain, however, that this rule "does not cover all of the circumstances that may call for disqualification" and "does not prohibit local rules that require disclosures in addition to those required by Rule 7.1."

---

[2] Entropic's disclosure also lists MaxLinear, Inc. and MaxLinear Communications LLC, describing each as being "the prior assignee of one or more of the patents in suit, and [having] an interest in the outcome of the action." (Dkt. 29 at 2-3.)

The Central District of California accepted this invitation and supplemented Federal Rule of Civil Procedure 7.1 with Local Rule 7.1-1 which, in addition to the requirements of the Federal Rules, also requires parties to list "all persons, associations of persons, firms, partnerships, and corporations (including parent corporations, clearly identified as such) that may have a pecuniary interest in the outcome of the case." Local Rule 7.1-1 expressly indicates that it is intended "[t]o enable the Court to evaluate possible disqualification or recusal …."[3]

### B. This Court Has Authority To Promulgate And Enforce Local Rule 7.1-1

This Court is well within its authority to promulgate and enforce its local rule. As mentioned, the Advisory Committee's Notes for Federal Rule 7.1 explicitly permit district courts to supplement Federal Rule 7.1.

Moreover, Federal Rule of Civil Procedure 83(b) allows judges to regulate dockets in "any manner consistent with federal law, rules adopted under 28 U.S.C. §§2072 and 2075, and the district's local rules."

### III. ENTROPIC SHOULD BE REQUIRED TO COMPLY WITH LOCAL RULE 7.1-1

### A. Local Rule 7.1-1 Requires Entropic To Provide The Identity Of Additional Individuals And Entities For Compliance

Entropic's Notice of Interested Parties is deficient on its face. It does not disclose all persons or entities with a pecuniary interest in the outcome of pending litigation. (*See* C.D. Cal. L.R. 7.1-1.) Under Local Rule 7.1-1, this District requires parties to disclose

---

[3] The circumstances in which a judicial officer must recuse him or herself are set forth in 28 U.S.C. § 455. Clearly, parties need to provide full and accurate information in their disclosures so that a judge can evaluate whether these circumstances are met, in addition to the fact that jurors and (applicable to this case) special masters need to be screened for connections with interested parties and companies.

Additionally, compliance with Local Rule 7.1-1 promotes transparency by providing the public with information about the parties who seek to benefit from the courts. The United States Supreme Court has long recognized the benefits of public access to judicial records. *E.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.").

individuals and entities with an ownership stake or interest of greater than 10% in both the named plaintiff *and* any parent company of the plaintiff under Local Rule 7.1-1. *See Harris v. Wells Fargo Bank, N.A.*, No. 16-cv-645-JGB, 2016 WL 11486587 (C.D. Cal. July 14, 2016).

In *Harris*, the Wells Fargo defendant initially submitted a Notice of Interested Parties under Local Rule 7.1-1 that identified Wells Fargo & Company as its parent corporation. *Id*. at *1. The defendant, however, failed to provide any information about the owners of Wells Fargo & Company. *Id*. at *2. The presiding judge in the case, Judge Christina A. Snyder, was not aware of any conflict arising from Wells Fargo & Company, saw no reason to recuse herself, and initially proceeded with the case. *Id*. at *1. More than three months into the case, Judge Snyder became aware that Berkshire Hathaway, a company whose stock she owned, owned a material portion of Wells Fargo & Company's stock. Upon making this discovery, Judge Snyder recused herself from the case due to a conflict of interest. *Id*.

Later, in the context of granting plaintiff's application to vacate one of Judge Snyder's orders made prior to her recusal, Judge Jesus G. Bernal interpreted Local Rule 7.1-1 to require the defendant to disclose not only its direct parent, but also the entities and individuals with a financial stake in the direct parent. *Id*. at *2. These entities and individuals included Berkshire Hathaway and Mr. Warren Buffet, described as "an individual who may be deemed to control Berkshire Hathaway." *Id*. Although many investors obviously have an interest in Berkshire Hathaway, Judge Bernal focused on Mr. Buffett because of his ownership of more than 10% of Berkshire Hathaway. *Id*. ("Wells Fargo knew or should have known at the time it made its first appearance in this case that Berkshire Hathaway, Inc. and Warren Buffett owned 10% of Wells Fargo & Company.").

Like Wells Fargo, Entropic has failed to identify those with a financial stake in its parent company (which, here, is a holding company that seems to have no operations), much less those with more than 10% ownership. In its Local Rule 7.1-1 disclosure, Entropic identifies "Entropic Holdings LLC" as the sole parent company of named

Plaintiff Entropic Communications, LLC. (*See* Dkt. 219 at 2.) While Entropic does identify "FIG LLC (d/b/a Fortress Investment Group)" as one entity that acts as "investment advisor" for "investment funds" that "may" have a pecuniary interest in the outcome of this case, it fails to identify *any* entity or individual with a pecuniary interest in Entropic Holdings LLC. In particular, Entropic fails to identify at least the entities and individuals falling in three categories:

- Most importantly, Entropic fails to identify the particular "private investment funds" that own Entropic Holdings LLC. This District has previously compelled disclosure of similar funds that act as "the real parties in interest in [the] case." *Connecticut Gen. Life Ins. Co. v. La Peer Surgery Ctr. LLC*, No. 13-cv-3726-CAS, 2014 WL 961806, at *5 (C.D. Cal. Mar. 12, 2014). Here, the unnamed "private investment funds that own Entropic Holdings LLC" are acting as a party in interest, as the value of these funds are directly tied to the outcome of this litigation. Entropic should be compelled to identify all of these funds as well as the investors in these funds with more than 10% ownership.

- Entropic does not identify the "and/or" wholly-owned subsidiaries of Fortress that act as investment advisors for the unnamed investment funds.

- Entropic fails to identify any persons with an interest or ownership stake in Fortress itself, even as it deemed itself required to identify Fortress's involvement and interest in the case.

Entropic has so far taken the position with DISH that Entropic cannot be forced to disclose what it does not know, that it does not know who are the people behind it, that it cannot be compelled to find out so that it can comply with the local rules, and that it will not voluntarily find out. Entropic would apparently have this Court believe that the formulated shell arrangement that supports its existence can and should be accepted without raised eyebrows—as if Entropic is litigating here solely for the pure principle of enforcing the law and without a financial motivation to benefit particular people or entities. But this Court need not delve into Entropic's motivations or excuses: the point of Local Rule 7.1-1 is to get behind any shell arrangements, and the rule is written in absolute terms. The rule provides no excuse or exception for ostriches that bury their

heads in the sand to maintain ignorance in a manner that leaves them "unable" to comply with the Rule.

**B.     Fortress's Similar Attempts To Obscure Ownership Of Other Fortress Entities Have Been Rejected By The District of Delaware**

Notably, this is not the first time that this issue has arisen for a Fortress-controlled entity. In a highly publicized District of Delaware case before Judge Colm F. Connolly, another Fortress-controlled entity—VLSI—simply dropped its suit, rather than identify the individuals actually behind it. (*See, e.g.*, Ryan Davis, *VLSI Drops $4B Intel Patent Suit Amid Delaware Ownership Row*, LAW360 (Jan. 3, 2023), https://www.law360.com/articles/1561845/vlsi-drops-4b-intel-patent-suit-amid-del-ownership-row; Michael Shapiro, *Intel, VLSI Agree to End $4.1 Billion Delaware Chip Patent Case*, BLOOMBERG (Dec. 28, 2022), https://news.bloomberglaw.com/ip-law/intel-vlsi-agree-to-end-4-1-billion-delaware-chip-patent-case; Blake Brittain, *Intel, VLSI Drop Delaware Dispute in Blockbuster Patent Fight*, REUTERS (Dec. 27, 2022), https://www.reuters.com/legal/litigation/intel-vlsi-drop-delaware-dispute-blockbuster-patent-fight-2022-12-27/.)

VLSI's decision to drop its case apparently stemmed from Judge Connolly's sharp rebuke of VLSI's incomplete disclosures interested parties. In particular, Judge Connolly critiqued VLSI for claiming that its parent corporation (CF VLSI Holdings LLC) was owned by "a closed end investment fund family comprised of six individual funds" without disclosing the names or legal status of any of these six funds. (*See* Judge Connolly's Memorandum Order at 2, Exh. B ("These disclosures are clearly inadequate …").) Judge Connolly also questioned the rationale behind VLSI's behavior in sealing its incomplete disclosure, stating that he could think of "no reason that would justify hiding from the public this information." (*Id*. at 2-3.)

The similarities between Entropic and VLSI are striking. For instance, both VLSI and Entropic are owned by holding companies that are named in accordance with the same formulaic naming convention (*i.e.*, Entropic is owned by "Entropic Holdings LLC"

and VLSI is owned by "CF VLSI Holdings LLC"). More importantly, for both companies, these holding companies are owned by an undisclosed collection of multiple, unknown entities, which may include various LLCs, investment funds, and partnerships. (*See* Dkt. 219 ("[Fortress] and/or its wholly-owned subsidiaries are investment advisors to private investment funds that own Entropic Holdings LLC …."); Exh. B ("[VLSI's declarant] identifies seven LLCs and three limited partnerships that, he says, 'own' VLSI Holdings [and] … says that he '[is] informed' that one of the seven LLCs 'is wholly owned by a closed end investment fund family comprised of six individual funds,' but he does not identify those six funds ….").)

Importantly, in similar cases where Judge Connolly's disclosure requirements have been challenged, the Federal Circuit denied mandamus, declining the invitation to review questions relating to the power and ability of Court's to enforce local rules and orders of the sort at issue here with Local Rule 7.1-1. *See In re Nimitz Techs LLC*, No. 2023-103, 2022 WL 17494845 (Fed. Cir. 2022) (denying mandamus challenging Judge Connolly's requirement to produce ownership and funding documents through his standing order).

Entropic's compliance with Local Rule 7.1-1 is necessary to ensure that the Court (and the special master and, down the road, jurors) have the information needed to evaluate potentially disqualifying conflicts under 28 U.S.C. § 455 and to avoid any appearance of impropriety, as well as to ensure the openness and transparency of this proceeding to the public. Entropic's refusal to make the required disclosures places the Court in a difficult situation with respect to its ethical obligations and risks undermining public confidence in the courts—if, for example, a conflict is identified after this case concludes or after the Court issues further orders. *See, e.g., Harris*, 2016 WL 11486587.

## IV. Conclusion

DISH respectfully requests that the Court compel Entropic to file a compliant Notice of Interested Parties statement under Local Rule 7.1-1 that identifies all parties with a pecuniary interest in the outcome of this case.

| | |
|---|---|
| Dated: May 12, 2023 | **PERKINS COIE LLP** |
| | By: /s/ *Amanda Tessar* |
| |     Amanda Tessar |
| | |
| | Matthew C. Bernstein, Bar No. 199240 |
| | MBernstein@perkinscoie.com |
| | PERKINS COIE LLP |
| | 11452 El Camino Real, Ste 300 |
| | San Diego, California 92130-2080 |
| | Telephone: +1.858.720.5700 |
| | Facsimile: +1.858.720.5799 |
| | |
| | Amanda Tessar (admitted *pro hac vice*) |
| | ATessar@perkinscoie.com |
| | Trevor Bervik (admitted *pro hac vice*) |
| | TBervik@perkinscoie.com |
| | PERKINS COIE LLP |
| | 1900 Sixteenth Street, Suite 140 |
| | Denver, Colorado 80202-5255 |
| | Telephone: +1.303.291.2300 |
| | Facsimile: +1.303.291.2400 |
| | |
| | Daniel T Keese, Bar No. 280683 |
| | DKeese@perkinscoie.com |
| | PERKINS COIE LLP |
| | 1120 NW Couch Street 10th Floor |
| | Portland, OR 97209-4128 |
| | Telephone: +1.503.727.2000 |
| | Fax: +1.503.727.2222 |
| | |
| | **ATTORNEYS FOR DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.** |