# EXHIBIT G

```
                                                          Page 1

 1              UNITED STATES DISTRICT COURT
 2              CENTRAL DISTRICT OF CALIFORNIA
 3
 4   ENTROPIC COMMUNICATIONS,      No. 2:22-cv-07775-JWH-JEM
     LLC,
 5
          Plaintiff,
 6
     vs.
 7
     DIRECTV, LLC, and AT&T
 8   SERVICES, INC.,
 9        Defendants.
     _____/
10   ENTROPIC COMMUNICATIONS,      No. 2:22-cv-07959-JWH-JEM
     LLC,
11
          Plaintiff,
12
     vs.
13
     DISH NETWORK CORPORATION;
14   DISH NETWORK LLC; and DISH
     NETWORK SERVICE, LLC,
15
          Defendants.
16   _____/
17            REMOTE VIDEOTAPED DEPOSITION OF
18                  PAUL G. STEFFES, Ph.D.
19
20       Taken before KIMBERLEY RICHARDSON, RPR, CCRR
21                 OREGON CSR No. 15-0438
                  CALIFORNIA CSR NO. 5915
22               WASHINGTON CSR No. 3365
23                    April 18, 2023
24
25
```

```
                                                              Page 2
 1                            I N D E X
 2                                                              PAGE
 3    EXAMINATION BY MR. ENGEL                                     7
 4    EXAMINATION BY MR. KEESE                                   129
 5
 6
 7
 8
 9
10                          E X H I B I T S
11    PLAINTIFF'S                                               PAGE
12    Exhibit 1        Expert Declaration of Dr.                   5
                       Paul G. Steffes Regarding
13                     Claim Construction
14    Exhibit 2        Patent No. US 7,130,576 B1                  5
15    Exhibit 3        Patent No. US 7,542,715 B1                  5
16    Exhibit 4        Patent No. US 8,792,008 B2                  5
17    Exhibit 5        Declaration of Dan Schonfeld,              96
                       Ph.D.
18
19    Exhibit 6        Replacement Statement For the             125
                       Request For Reexamination of
20                     U.S. Patent No. 7,130,576
21
22
23
24
25
```

```
                                                              Page 3
 1              DEPOSITION OF PAUL G. STEFFES, Ph.D.
 2
 3         BE IT REMEMBERED, that pursuant to Notice, and on
 4    the 18th day of April 2023, commencing at the hour of
 5    9:38 a.m., before me, KIMBERLEY RICHARDSON, a Certified
 6    Shorthand Reporter, remotely appeared PAUL G. STEFFES,
 7    Ph.D., produced as a witness in said action, and being
 8    by me first duly sworn, was thereupon examined as a
 9    witness in said cause.
10
11                           ---o0o---
12
13    APPEARANCES:
14    For the Plaintiff:
15              JASON ENGEL
                K & L Gates
16              70 West Madison Street, Suite 3300
                Chicago, Illinois 60602
17              312-807-4236
                jason.engel@klgates.com
18
19              ELIZABETH WEISKOPF
                K & L Gates.
20              925 Fourth Avenue, Suite 2900
                Seattle, Washington 98104
21              206-370-7964
                elizabeth.weiskopf@klgates.com
22
23
24
25
```

```
 1   For the Defendants Dish Network Corporation; Dish, LLC;
     and Dish Network Service:
 2
            DANIEL KEESE
 3          Perkins Coie, LLP
            1120 NW Couch Street
 4          Portland, Oregon 97209.
            206-359-8888
 5          dkeese@perkinscoie.com
 6
 7
 8
     ALSO PRESENT:   RICK MAJEWSKI, videographer
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 61

```
 1   focusing on the things that are not part of the
 2   claim?
 3        A.   Because definitiveness implies that
 4   someone of state in the art can reproduce this,
 5   and it's not at all obvious to me that one can do        11:22AM
 6   that the way this is stated.
 7        Q.   Okay.  Have you ever worked with satellite
 8   channel stacking equipment before?
 9        A.   Sure.
10        Q.   You're familiar with that?                     11:23AM
11        A.   Absolutely.
12        Q.   And in what context?
13        A.   We were responsible for doing all of the
14   video at our ground station at Georgia Tech for
15   national broadcasting company NBC during the            11:23AM
16   Olympics in 1996, and we went through very
17   interesting games of channel stacking to bring
18   multiple news feeds through satellites to our
19   production center on Georgia Tech campus.
20        Q.   What time frame was that?                      11:23AM
21        A.   1996.
22        Q.   Was that done analogically?
23        A.   We did it analog.  We were working toward
24   digital, but at that point the art was dominantly
25   analog.                                                  11:24AM
```

Page 62

1  Q. Okay. And did you ever work with digital
2  channel stacking solutions?
3  A. Yes, we did. When we were the first to
4  introduce CDMA multiple access on the NASA Ax
5  satellite for Ka-Band. We were the first in the    11:24AM
6  world to accomplish that in the late '90s.
7  Q. Did you ever do that in the context of
8  delivering satellite television to home, for
9  example?
10  A. No. Not to the home.    11:24AM
11  Q. Did you ever work with any channel
12  stacking equipment that exists in the outdoor unit
13  for a satellite system?
14  A. I have not personally worked with stacking
15  equipment for home satellite receivers. I've    11:25AM
16  worked on all of the components for it but not on
17  the individual -- rather not on the aggregate
18  stacking device.
19  Q. Are you familiar with a company called RF
20  Magic?    11:25AM
21  A. No, I'm not.
22  Q. Had you been familiar with Entropic
23  Communications, Inc., at all prior to this case?
24  A. No, I'm not.
25  Q. So you're not aware of what the offerings    11:25AM

Page 83

1  question.
2      A.  My opinion is based on that.  My opinion
3  is based on the lack of any antecedent structure
4  in the language of the claims in the chain.
5      Q.  And when you say "claims in the chain,"    01:19PM
6  are you talking about the dependent claim 38 or
7  just independent claim 14?
8      A.  38 and 14.
9      Q.  Okay.  But 38 is a dependent claim, so why
10 can't 39 introduce a new element to the claim?    01:20PM
11     A.  It could introduce a new element, but it's
12 not described in any way.
13     Q.  Do you know what a transponder channel is?
14     A.  Yes.
15     Q.  So that by itself is not indefinite;       01:20PM
16 right?
17     A.  A transponder channel is not referenced --
18 I guess you're making a legal argument that I'm
19 ill-equipped to advise.
20         I'll tell you my logic.  My logic is       01:20PM
21 neither 38 nor 14 from which it comes make any
22 mention of selected transponder channel or any
23 identification that the transponder signal that is
24 identified in claim 14 is, in fact -- how in any
25 way that it's reflected or how it's likely in any  01:21PM

Page 84

1  selected transponder channel.
2      MR. KEESE: Could you read that answer
3  back, please.
4      (Record read.)
5  BY MR. ENGEL:  01:21PM
6    Q. Other than paragraph 69 and paragraph 78,
7  do you have any opinion anywhere in this
8  declaration that explains why a selected
9  transponder channel in claim 39 lacks antecedent
10 basis?  01:23PM
11   I guess maybe let me say is paragraph 80
12 your ultimate analysis of the antecedent basis
13 issue for those claims including claim 39?
14   A. That's correct.
15   Q. So specifically you're saying because  01:23PM
16 transponder channel does not appear in claim 14 or
17 in any of the claims from which claim 39 depends
18 that the introduction of a selected transponder
19 channel in claim 39 lacks antecedent basis?
20   A. That's correct.  01:24PM
21   Q. Is that understanding based on any
22 technical expertise of yours or is that based on
23 your understanding of the law related to claim
24 construction?
25   A. It's largely due to the technical issue of  01:24PM

Page 91

1  Q. So if you received an FM modulated signal,
2  you could demodulate that signal; correct?
3  A. Correct.
4  Q. And that would be an example of decoding?
5  A. Demodulation might also include something  01:38PM
6  called deemphasis which is changing the spectrum
7  of the modulated signal so as to render a better
8  signal to noise ratio on the modulated signal.
9      So there's a whole number of functions
10 that are included in this besides simple  01:39PM
11 demodulation for an FM signal.
12 Q. But demodulating an FM signal is an
13 example of decoding?
14 A. That's one part of the decoding process.
15     Again, for someone who has worked in this  01:39PM
16 field for 40 years, demodulation without
17 deemphasis would be considered kind of not
18 completing it. There would be a -- you'd be
19 suffering from spectral distortion.
20 Q. Do you think that as of October 2001 that  01:39PM
21 decoding was a well understood term of art in the
22 satellite communications industry?
23     MR. KEESE: Objection. Calls for a legal
24 conclusion.
25     THE WITNESS: It meant a lot of different  01:40PM

Page 92

1  things to a lot of different people.  Decoding
2  could be used in a broad spectrum of applications
3  in the sat com industry in 2001.
4  BY MR. ENGEL:
5      Q.  You provided a definition at footnote 4 on        01:40PM
6  page 33 of decode; correct?
7      A.  Yes.
8      Q.  And the definition converts a coded
9  message into intelligible language.
10     A.  Uh-huh.                                            01:40PM
11     Q.  Is that an accurate definition of
12 decoding?
13     A.  That is an accurate definition with regard
14 to language, yes, or with regard to spoken or
15 textual information.                                       01:40PM
16         As I say in the second sentence, "In the
17 context of communications signal processing, the
18 coded message refers to effectively all
19 communications."
20     Q.  Because if you're not able to decode the           01:40PM
21 messages received, you're not able to understand
22 them; correct?
23     A.  Understand, yes.
24     Q.  Are you familiar with MPEG video?
25     A.  I am.                                              01:41PM

```
                                                        Page 93
1        Q.   Is MPEG video a type of video that can be
2    encoded and decoded?
3        A.   It can.
4        Q.   Can you look at claim 9 of the '715
5    patent.                                             01:42PM
6             So in claim 9, the decoding functionality
7    is something that the gateway does; correct?
8        A.   That is correct.
9        Q.   Okay.  And it specifically says "The
10   gateway receives the composite signal, decodes      01:42PM
11   specific programs, and distributes the programs
12   over a digital local area network."
13            Do you see that language?
14       A.   Yes.
15       Q.   I don't know if you offer an opinion on    01:43PM
16   this or not, but do you understand that the
17   antecedent basis for the program is the specific
18   programs previous to that?
19       A.   You're saying the specific programs in the
20   claim limitation?  Those words "specific programs   01:43PM
21   in the claim limitation"?
22       Q.   Yes.  I understand you take issue as to
23   specific programs as to what that means.
24       A.   Yes.
25       Q.   Do you agree whatever those are, those are 01:43PM
```

Page 94

```
 1   the programs that are distributed over the LAN?
 2        A.   Well, they don't need to be.  I mean, you
 3   could decode a whole bunch of them and then based
 4   on the specific ones that you want to provide them
 5   to the LAN.  You could go ahead and simply decode        01:44PM
 6   everything or decode some group that you might
 7   think might be popular among your user base and
 8   then provide the ones that are requested.
 9             So decoding specific programs does not
10   necessarily mean that they're going to show up on        01:44PM
11   the LAN.
12        Q.   Okay.  Let's look at the language
13   "distributes the programs over digital local area
14   network."
15             Do you see that?                               01:44PM
16        A.   Yes.
17        Q.   And in front of "programs" is the word
18   "the"; correct?
19        A.   That's correct.
20        Q.   So it's not the word "a"; correct?             01:45PM
21        A.   That's correct.
22        Q.   And so based on your understanding of
23   antecedent basis, there should be an antecedent
24   basis for the word "programs" preceding "the
25   programs"; right?                                        01:45PM
```

Page 127

1 channels are not identical.
2     Q. Are they related at all?
3     A. Well, as I mentioned extensively, the
4 channel can contain multiple signals, and the
5 channel may also involve, you know, effects of   03:34PM
6 noise, of all sorts of different and physical
7 effects that affect its performance, the structure
8 of antennas, whatever.
9     So the channel is a physical layer. The
10 transponder signals are, in fact, information that   03:35PM
11 have been modulated onto a radiofrequency carrier
12 and therefore provides transmission of the
13 information but does not reflect the physical
14 nature of the channel.
15     Q. But those are set at -- sent at physical   03:35PM
16 layer channels; the transponder signals are sent
17 at physical layer channels?
18     A. They are sent through physical layer
19 channels, yes, exactly right.
20     Q. But the opposite is not true -- I guess,   03:35PM
21 strike that.
22     A channel can exist without a signal on
23 it; right?
24     A. That is correct.
25     Q. Now, did you consider for the '08 patent   03:35PM