Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2357
Facsimile: +1.303.291.2457

*Additional Counsel Listed in Signature Block*

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DIRECTV, LLC and<br>AT&T SERVICES, INC.,<br><br>    Defendants. | No. 2:22-cv-07775-JWH-JEM |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>    Defendants. | No. 2:22-cv-07959-JWH-JEM<br><br>**COMBINED REPLY IN SUPPORT OF DISH'S MOTION TO COMPEL ENTROPIC'S COMPLIANCE WITH LOCAL RULE 7.1-1 AND OPPOSITION TO APPLICATION TO SEAL**<br><br>Motion Hearing:<br><br>Date: June 9, 2023<br>Time: 9:00 a.m. PT<br>Crtm: 9D (Ronald Reagan Bldg) |

# TABLE OF CONTENTS

I.   SUMMARY OF RESPONSE TO ENTROPIC'S ARGUMENTS ........................................1

II.  ENTROPIC HAS NOT COMPLIED WITH LOCAL RULE 7.1-1 ..................................2

    A.   Local Rule 7.1-1's Requirements Are Clear, Unambiguous, And Designed To Ensure Transparency For The Court And Public ..................2

    B.   The Northern District Of California VLSI Decision Does Not Excuse Entropic's Non-Compliance ...........................................................3

    C.   The Private Fortress Investment Funds That Benefit From This Suit Are Not "Mutual Funds" ................................................................5

    D.   Carefully Worded Protestations That Compliance Is "Impossible" Do Not Excuse Non-Compliance ..............................................................7

    E.   DISH Has Fully Complied With Local Rule 7.1-1, And It Is Not DISH's Responsibility To Make Sure That Entropic Follows The Rules ..........................................................................................................9

III. ENTROPIC SHOULD NOT BE ABLE TO SHROUD ITS FILINGS REGARDING LOCAL RULE 7.1-1 IN SECRECY ..............................................................................11

IV.  CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
   38 F.4th 1025 (Fed. Cir. 2022) ................................................................................3

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) .................................................................................9

*Haddock v. Countrywide Bank, NA*,
   No. 14-cv-6452-PSG, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015) ..................6

*Harris v. Wells Fargo Bank, N.A.*,
   No. 16-cv-645-JGB, 2016 WL 11486587 (C.D. Cal. July 14, 2016)..............2, 6

*Speyside Med., LLC v. Medtronic CoreValve LLC, et al.*,
   No. 20-cv-361 (D. Del. May. 23, 2023) ................................................................8

*VLSI Tech. Corp. v. Intel Corp.*,
   No. 17-cv-5671-BLF (N.D. Cal. May 8, 2023).....................................................4

*VLSI Tech. Corp. v. Intel Corp.*,
   No. 18-cv-966, 2022 WL 3134427 (D. Del. Aug. 1, 2022) .................................3

**STATUTES**

28 U.S.C §455..................................................................................................passim

28 U.S.C. § 455(d)(4).............................................................................................7

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 34..............................................................................................9

Fed. R. Civ. Proc. 45..............................................................................................9

Local Rule 7.1-1.............................................................................................passim

N.D. Cal. Local Rule 3-15(b)(2)-(3).....................................................................4

## I. SUMMARY OF RESPONSE TO ENTROPIC'S ARGUMENTS

Local Rule 7.1-1 requires parties to identify who is behind a suit—that is, who stands to benefit financially from it. On its face, the rule attempts to cut through shell games so that litigants, the court, and the public all understand who is seeking to benefit from applications to this Court and District for relief.

Entropic boldly claims that it "has fully complied with both the letter and spirit of Local Rule 7.1-1." (Opp. at 1.) Rather than grappling with either the language of the rule (nowhere quoted in Entropic's brief) or the rule's intent, however, Entropic mounts a series of excuses for why it has *not* complied with the rule. It blames DISH for its own failures to follow Local Rule 7.1-1, instead of just complying with its straightforward requirements. It resorts to a series of distinctions and arguments that were never made by DISH and are not tethered to Local Rule 7.1-1 or the case law. It claims that compliance is "impossible" based on a careful declaration that skirts the key question of whether Entropic *can* obtain information to comply with Local Rule 7.1-1, even if it does not want to do so and does not want that information to become public. Moreover, even as it decries any current knowledge of the investment funds behind it, Entropic asks the Court to believe—without a shred of evidence—that those funds are "mutual funds" like Dodge & Cox. Perhaps worst, Entropic ignores the public interest and need for jurors and special masters to know who is behind Entropic in favor of focusing solely on personal investments made by members of this Court.

On the merits, Entropic's primary defense is to point to a recent out-of-district decision in favor of one of its sister companies (*i.e.*, another Fortress entity), VLSI. On the record in that case—which included a different local rule, names of the specific Fortress funds, *and* evidence that nobody owned more than 10% of any of those funds— the Northern District of California did not require further disclosure. That case is very different from the present one, but—even if it that was not the case—it is not clear why this Court would follow that decision over Delaware's precedent (also involving VLSI) or, more importantly, the plain language of this District's Local Rule 7.1-1.

## II. Entropic Has Not Complied With Local Rule 7.1-1

### A. Local Rule 7.1-1's Requirements Are Clear, Unambiguous, And Designed To Ensure Transparency For The Court And Public

Local Rule 7.1-1 requires that Entropic disclose "all persons, associations of persons, firms, partnerships, and corporations (including parent corporations, clearly identified as such) that may have a pecuniary interest in the outcome of the case." This District's decision in *Harris v. Wells Fargo Bank, N.A.* establishes that the focus is on ownership interests of greater than 10%, consistent with the dividing line of Federal Rule 7.1. No. 16-cv-645-JGB, 2016 WL 11486587, at *2 (C.D. Cal. July 14, 2016).

Compliance with Local Rule 7.1-1 is not optional. Moreover, this Court's standing order makes clear that it takes compliance with this rule seriously. *See* Dkt. 165 ("Counsel are DIRECTED to review thoroughly Rule 7.1 and to comply strictly with its instruction to file a compliant Disclosure Statement. A party's failure to file a timely and complete Disclosure Statement in accordance with Rule 7.1 is a basis for sanctions.").

Notably, none of the exceptions to Local Rule 7.1-1 that Entropic implies are actually found in the rule. To the contrary, the language of the rule makes clear that all financial or pecuniary interests must be disclosed through its requirement of disclosure of "***all*** persons, associations of persons, firms, partnerships, and corporations … that ***may*** have a pecuniary interest in the outcome of the case." L.R. 7.1-1 (emphasis added). So, for instance, there is nothing in the language of Local Rule 7.1-1 that suggests that only "real parties in interest" must be disclosed. Nor has DISH ever suggested this interpretation of the rule or argued that Entropic Holdings or Fortress meets the definition of "real party in interest," one of Entropic's main arguments. (Opp. at 8.) Similarly, Entropic's suggestion that the relief that DISH requests here is "unprecedented" (Opp. at 1) rests on the fallacy that the plain language of the rule requires some explanation through case law. But the reality is that nobody else has seemingly ever attempted to ignore the requirements of the rule and give it Entropic's strained reading.

Although Local Rule 7.1-1 facilitates this Court's evaluation of conflicts under 28 U.S.C §455,[1] that is not its only purpose. Instead, as discussed in DISH's motion (Dkt. 232-1 at 1, 3, 6), the rule also permits greater transparency for the public, who are entitled to know whose interests that parties before the Court are serving. The information required by the rule is also important for screening individuals outside of the Court itself, such as special masters and, eventually, jurors.

As to the public interest, as DISH previously noted, the District of Delaware sharply rebuked VLSI for its attempts to keep ownership information out of the public eye. *See* Mot. Exh. B (*VLSI Tech. Corp. v. Intel Corp.*, No. 18-cv-966, 2022 WL 3134427, at *1 (D. Del. Aug. 1, 2022) ("Delaware VLSI decision")) ("I am troubled as well by VLSI's initial filing of Mr. Stolarski's declaration under seal and the redactions it has made to its proposed public version of the declaration. … I can think of, no reason that would justify hiding from the public this information."). That is because the public is entitled to know how its courts are being used.

**B.    The Northern District Of California VLSI Decision Does Not Excuse Entropic's Non-Compliance**

As discussed in DISH's motion, the District of Delaware unequivocally rejected VLSI's arguments that it need not disclose information about the Fortress investment funds that benefit from VLSI litigation. (Dkt. 232-1 at 6-7.) The Federal Circuit has also denied mandamus on these issues in a similar case, leaving Judge Connelly's approach to these issues in Delaware standing. *See id.*

Entropic now points to a new decision (issued just days before DISH filed its motion here, unbeknownst to DISH) from the Northern District of California relating to

---

[1] A recent Federal Circuit decision overturned a verdict exceeding $2.75 billion because the district court judge's wife owned just 100 shares, valued under $5,000, of one of the parties' stock. The Federal Circuit reached this decision even though the stock had been placed in a blind trust. *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 38 F.4th 1025, 1027-29 (Fed. Cir. 2022). Cautionary tales such as this drive home the importance of taking care with Local Rule 7.1-1 disclosures so that the Court has full information with which to evaluate its obligations under Local Rule 7.1-1.

a different VLSI case. *See* Dkt. 241-3, *VLSI Tech. Corp. v. Intel Corp.*, No. 17-cv-5671-BLF (N.D. Cal. May 8, 2023) ("Northern California VLSI decision"). Because the Northern District did not require VLSI to disclose more detailed information about the Fortress funds behind VLSI under the rules at issue in that case, Entropic argues that it should not be required to do so either under this District's Local Rule 7.1-1. (Opp. at 1, 7.)

But the circumstances in this case are different from the facts in the Northern District case for at least three reasons. First, the Northern District local rule at issue in the VLSI case is **different** than this District's rule, with the Northern District tying its disclosure obligations to Section 455, rather than requiring disclosure of "all persons" and entities that "may have a pecuniary interest" in the case. *Compare* N.D. Cal. L.R. 3-15(b)(2)-(3) (requiring disclosure of only entities "known by the party" and having a "financial interest" in the litigation, where "financial interest" is defined to have the same meaning as under 28 U.S.C. §455) *with* L.R. 7.1-1 (requiring disclosure of "all persons, associations of persons, firms, partnerships, and corporations … that may have a pecuniary interest in the outcome of the case," without any knowledge exception or reference to 28 U.S.C. §455).

Second, in the Northern California VLSI case, the parties had been litigating for ***six*** years before this issue came up—at a time when fact discovery had already closed. *See* Northern California VLSI decision, at 3. That is hardly akin to the situation here, where little has yet happened, no fact discovery cutoff has been set, and the parties are debating over a supposed delay in raising this issue of weeks or months, rather than years.

Third, and perhaps most importantly, the amount of information already available to the Northern District court in its VLSI case as part of the disclosure process in that case **meaningfully surpassed the amount of information disclosed to the Court here**. For instance, VLSI had provided the Court with the name of the specific Fortress

investment funds involved, which has not happened here.[2] *See* Northern California VLSI decision, at 1. And, further, ***VLSI had confirmed that no person or entity owned more than 10% of these funds***. *Id.* In other words, VLSI was able to find the information that Entropic claims that it is "impossible" for it to know or learn, and VLSI had met its disclosure requirements under the rules of the Northern District. The same cannot be said here, in this District, for the limited disclosures to date by Entropic.

Additionally, Entropic ignores the portions of the Northern California VLSI decision that are unfavorable for it. For instance, as discussed further below, the Northern District unequivocally rejected arguments that Fortress private investment funds could qualify as "common or mutual funds," given that no evidence at all had been submitted in support of this position. *Id.* at 5.

Even if the Northern California VLSI decision had been on all fours with the current situation, which it is not, this would hardly be dispositive. Instead, the Court is faced with the question of: whether to follow the Delaware VLSI decision (recognizing, notably, that Entropic is a Delaware limited liability company and that the Federal Circuit has declined to review the Delaware approach); whether to follow the Northern California VLSI decision; and/or whether to simply focus on the language of Local Rule 7.1-1 and the conclusions that naturally flow from it.

**C. The Private Fortress Investment Funds That Benefit From This Suit Are Not "Mutual Funds"**

With one breath, Entropic insists that it does not know anything about the Fortress investment funds that will profit from this litigation if Entropic is successful. (Opp. at 1, 9.) Indeed, but for Fortress's production in a co-pending case, Entropic says that it would

---

[2] Entropic repeatedly points to the fact that it produced this information ***to DISH*** the night before it knew that DISH would file its motion. (Opp. at 2, 5, 9.) It apparently would not have done so but for this motion, since it had not provided this information in response to discovery requests served last year. Regardless, providing the information to DISH under the Protective Order is hardly a substitute for disclosing it to the Court (and public) as required under Local Rule 7.1-1.

not even know the names of those funds. (*Id.* at 5.) Then, without missing a beat, Entropic suggests—without any declaration or evidence in support of the argument or acknowledgement of its about-face—that the funds in question (which have not been identified to the Court) are mutual funds, similar to Dodge & Cox or Vanguard. (Opp. at 7 (referring to "a mutual fund or common investment fund such as a pension fund in Entropic Holdings …").)

This conclusion (again, without evidence) that Fortress's investment funds can appropriately be characterized as "mutual funds" is central to the distinction that Entropic draws between a judge's "indirect" ownership interest—which all agree is not disqualifying—and a "direct" ownership interest—which may be disqualifying under Section 455. (Opp. at 6-8.) In making the argument that disclosure is only required for non-mutual funds that have a "direct" ownership interest, Entropic blurs a number of concepts,[3] misinterprets the holdings of several cases, and/or cites cases that are wholly irrelevant here.[4]

---

[3] For instance, this argument mixes up disclosure requirements under Local Rule 7.1-1, which do not turn on whether an investor is or is not a mutual fund, and the Court's recusal obligations under Section 455, which do sometimes turn on that distinction.

[4] For instance, Entropic reads *Harris v. Wells Fargo Bank, N.A.*, No. 16-cv-645-JGB, 2016 WL 11486587 (C.D. Cal. July 14, 2016), as "illustrat[ing] why the information the Court [here] already possesses is sufficient" because that case involved a situation where the judge owned shares of Berkshire Hathaway stock, which Entropic characterizes as "a direct financial interest." (Opp. at 6.) But *Harris* does not draw the direct/indirect distinction that Entropic makes; it instead required disclosure of both Berkshire Hathaway ***and*** investors in it, like Warren Buffett, who was deemed to control Berkshire Hathaway. *Harris*, 2016 WL 11486587, at *2-3.

Other cases cited by Entropic, like those in footnote 10 of Entropic's brief, are irrelevant because they address disqualification standards, which are not disputed, rather than disclosure obligations, which are. Similarly, *Haddock v. Countrywide Bank, NA*, No. 14-cv-6452-PSG, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015), involved a dispute about whether subsidiaries of a party must be identified in disclosures. But DISH has not argued that Entropic's own subsidiaries must be disclosed; instead, one of its arguments is that the unnamed Fortress "subsidiaries" that are said to control the unnamed investment funds that control Entropic's shell ***parent*** must be disclosed.

None of this matters, however, because Entropic's entire line of argument misses the point. There is no evidence here that the private Fortress investment funds are "common or mutual funds" under Section 455. Indeed, based on the limited information available, it appears that they are most likely ***not*** mutual funds even under a liberal definition of that term. Entropic notably makes no attempt to satisfy the multi-factor test that courts use to determine whether an investment vehicle is a mutual fund.[5] And the cloak of secrecy surrounding the identity and investors in the Fortress funds here—a cloak of secrecy that has led Entropic's sister company to drop its case rather than comply with disclosure requirements—naturally creates skepticism and concern about the investors involved. If the private Fortress investment funds—and the investors in them—were simply a standard mutual fund, why would there be such resistance to public disclosure and identification of them?

In evaluating this question, it is noteworthy that Entropic entirely ignores the key portion of the Northern California VLSI decision where Judge Freeman ***rejects*** arguments that the relevant Fortress investment funds qualify as mutual funds. *See* Northern California VLSI decision, at 5 ("Because o[f] the dearth of information known to the Court about these funds or their investors, it is impossible to apply the six considerations [that drive the determination of whether an investment vehicle is a mutual fund] … For nine of the ten funds, VLSI has not provided any information that is relevant to any of the six considerations. The Court there is [u]nable to evaluate whether the funds or its investors are mutual or common investment funds under 28 U.S.C. § 455(d)(4).").

**D.  Carefully Worded Protestations That Compliance Is "Impossible" Do Not Excuse Non-Compliance**

Despite its claim that the funds here are similar to ordinary mutual funds, and its

---

[5]  There is an established, fact-intensive test—described in the Northern California VLSI decision—used to determine whether an investment fund qualifies as a "common or mutual fund." *See* Northern California VLSI decision, at 5 (describing six-factor test, with citations to applicable cases). Entropic does not even mention it.

recitation of public information about Fortress's business, Entropic also says that it is "impossible" for it to tell the Court anything about those funds. Entropic provides a declaration from its CEO, who explains that he has searched his files, but cannot tell who will benefit from this litigation. Apparently, Entropic will somehow simply turn over any proceeds from this case to a group of unknown third parties.

Mr. Teksler's declaration is notable for its careful avoidance of the question of whether he or Entropic can figure out who the interested investors are. He says that he "thoroughly reviewed all documents and information within Entropic's possession, custody, and control relating to Entropic's ownership" and, although he concedes (without explaining how this knowledge arose) his "understand[ing]" that "Fortress or its subsidiaries act as investment advisors and manage the funds that in turn own Entropic Holdings LLC" and that "Fortress or its subsidiaries manage those funds," he claims ignorance about who owns the relevant private investment funds. (*See* Dkt. 241-4 at ¶¶7, 9-10.) He gives no information at all about how any litigation proceeds are distributed between the officers of Entropic (which he describes, seemingly without irony, as "a fully operating company … that is engaged in patent portfolio development and licensing," *id.* at ¶4), the shell holding company that hides behind it, and the investors that fund and manage that shell holding company.[6] Throughout his declaration, he completely and glaringly ignores the question of whether he or others at Entropic could find out for whom they are pressing this case to benefit.

This approach dovetails precisely with Entropic's argument that it can only be required to tell the Court things within its "possession, custody, and control." (Opp. at 9, citing *In re Citric Acid Litig.*, 191 F.3d 1090, 1007 (9th Cir. 1999).) But this entire line

---

[6] Magistrate Judge Burke in Delaware found in a decision issued this week that such information is relevant and discoverable. *See Speyside Med., LLC v. Medtronic CoreValve LLC, et al.*, No. 20-cv-361 (D. Del. May. 23, 2023) (granting motion to compel because "whether Plaintiff's members have a financial interest in the outcome of this lawsuit is" and "the 'precise' financial stake that the members will receive" are relevant to bias and other issues).

of reasoning confuses ***discovery and document production*** obligations governed by Federal Rules of Civil Procedure 34 and 45 with ***disclosure*** obligations under Federal Rule 7.1 and Local Rule 7.1-1.  Local Rule 7.1-1 makes no exception for companies that refuse to learn or disclose information that is critical to their existence.

Notably, even in the discovery context, cases like *Citric Acid Litigation* focus on the question of whether a party has "control" over documents and information, which is defined as "the legal right to obtain documents upon demand."  191 F.3d at 1107.  Entropic itself, in its opposition, says that it "has no right to demand" the information involved here—***but it cites no evidence in support of this point***.  (Opp. at 1.)  For its part, Mr. Teksler's declaration, although reciting that he searched documents in his "control," seems to apply a different definition of "control" than that term is given as a matter of law.  Otherwise, he presumably would have explicitly said that Entropic "has no right to demand" the information in question (as recited in the introduction to Entropic's opposition) ***and*** explained how he picked up the phone to try to find out where any money that he collects is going and failed to get the required information, rather than touting that "[n]either I nor any Entropic officer has communicated with anyone regarding those funds."  (Dkt. 241-4 at 9.)

Entropic is the plaintiff here, so its decision to not attempt to get the information required to comply with the Local Rule should be viewed with particular skepticism.  Entropic comes to this Court for relief—indeed, it asked that this case be transferred here over DISH's suggestion that this case belongs in the District of Colorado—and its protestations that it does not even have to try to get the information required by local rule should cause raised eyebrows.  If Entropic is not willing to attempt in good faith to get the required disclosure information, it should not be pursuing a case in this District.

**E.  DISH Has Fully Complied With Local Rule 7.1-1, And It Is Not DISH's Responsibility To Make Sure That Entropic Follows The Rules**

Entropic repeatedly blames DISH for Entropic's non-compliance with the local rules, but DISH should not be charged with responsibility for ensuring that Entropic

follows the rules of this Court. That responsibility lies with Entropic alone.

Entropic's blame-shifting strategy also confuses and distorts many facts. For instance, Entropic varyingly complains that DISH waited a supposedly "shocking" six months (Opp. at 14) or even fourteen months (Opp. at 9) after transfer to raise this issue. As DISH already explained, however, the Eastern District of Texas, where Entropic initially filed this suit, does not have a rule akin to this Court's Local Rule 7.1-1, allowing parties to follow the less stringent requirements of Federal Rule 7.1. DISH therefore ***could not*** have raised this issue before transfer. Further, the DISH case was not docketed in this District—the District to which Entropic had asked to be transferred—until November (not October, as Entropic says, Opp. at 3-4). *See* No. 2:22-cv-7959 (pre-consolidated case) at Dkt. 23. DISH contacted Entropic only a few months later, in March, shortly after DISH updated its own disclosures, to raise this issue. Entropic then promised to update its disclosures, only to take almost a month to make a new filing—which was still non-compliant. And it was Entropic that further delayed this motion by pushing off as long as possible any meet-and-confer—even as Entropic attempts to blame DISH for delay. In any event, Entropic's unnecessarily detailed (and sometime inaccurate) play-by-play recitation of the history is apparently designed to convince the Court either that Entropic has no obligation to comply with the rules of the Court to which it sought transfer unless compelled to do so (which is obviously wrong), that DISH delayed (which is also wrong), or that this situation is akin to the Northern California VLSI decision (which involved a six-year delay in the face of more detailed disclosures by VLSI and a different local rule than here, as discussed above). None of these positions holds any water.

Entropic also accuses DISH of not disclosing its own shareholders who own more than 10% of DISH, citing Charlie Ergen as a specific example. (Opp. at 10.) But Entropic is simply wrong here. DISH's Local Rule 7.1-1 disclosure ***does*** disclose all shareholders of greater than 10%, including both Mr. Ergen and his wife individually, as well as all others that hold more than 10% of DISH's shares. (Dkt. 201 at 1.) It appears that

Entropic is simply looking at the original Eastern District of Texas disclosure form, rather than the disclosure that DISH filed to comply with this Court's rules.

Finally, the suggestion that there is any question about whether Dodge & Cox is a mutual fund, or the sufficiency of DISH's disclosure in this regard, is laughable. DISH has clearly complied with Local Rule 7.1-1, and the Court obviously has DISH's information needed to evaluate any basis for recusal under Section 455. There is no secrecy surrounding DISH's ownership, and neither the suggestion that Fortress's unnamed funds are akin to Dodge & Cox nor the suggestion that there is something untoward about Dodge & Cox's ownership of DISH shares make any sense.

### III. ENTROPIC SHOULD NOT BE ABLE TO SHROUD ITS FILINGS REGARDING LOCAL RULE 7.1-1 IN SECRECY[7]

At 5 pm MT on the Friday that its opposition brief was due, Entropic for the first time indicated that it intended to file portions of its opposition brief under seal.

Preliminarily, the information redacted is so high-level and vague that it is not clear how or why it could be confidential. The redactions do not even include the names of the Fortress investment funds that are interested in this case, for instance.

Setting that aside, however, DISH does not agree that it is appropriate for Entropic to redact any information about its Local Rule 7.1-1 disclosures from the record. Doing so defeats the public notice function of the local rule. It is precisely for this reason that the Delaware court *sua sponte* made public information about Fortress (such as the $1.8 billion size of the specific fund involved) that appears far more sensitive than the information redacted here. *See* Delware VLSI decision, at *2 ("VLSI identifies, and I can think of, no reason that would justify hiding from the public this information.").

### IV. CONCLUSION

Entropic's opposition brief takes a kitchen-sink approach. Entropic seems unable to decide whether it wants to take the position that it has complied with Local Rule 7.1-

---

[7] The Court ruled on Entropic's Application to Seal before DISH provided its position. (Dkt. 245.) DISH provides it here for completeness.

1, that it does not need to do so, that it cannot do so, or whether it simply wants to read key requirements out of the rule and ignore the rule's plain language. But, however framed, it is readily apparent that Entropic has *not* complied with Local Rule 7.1-1. It should be ordered to do so—and without the need for secrecy.

Dated: May 26, 2023

**PERKINS COIE LLP**

By: */s/ Amanda Tessar*
    Amanda Tessar

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
Trevor Bervik (admitted *pro hac vice*)
TBervik@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 140
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

Daniel T Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: +1.503.727.2000
Fax: +1.503.727.2222

**ATTORNEYS FOR DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**