# EXHIBIT R

1   Christina N. Goodrich (SBN 261722)
    christina.goodrich@klgates.com
2   K&L Gates LLP
    10100 Santa Monica Boulevard
3   Eighth Floor
    Los Angeles, California 90067
4   Telephone: +1 310 552 5000
    Facsimile: +1 310 552 5001
5
    **ATTORNEYS FOR PLAINTIFF**
6   **ENTROPIC COMMUNICATIONS, LLC**

7

8                   **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10                         **SOUTHERN DIVISION**

11

| | |
|---|---|
| 12  ENTROPIC COMMUNICATIONS, LLC, | Case No. 2:22-cv-07775-JWH-JEM |
| 13                    Plaintiff, | (Lead Case) |
| 14  vs. | |
| 15  DIRECTV, LLC and AT&T SERVICES, INC., | |
| 16 | |
| 17                   Defendants. | |
| 18  ENTROPIC COMMUNICATIONS, LLC, | |
| 19                    Plaintiff, | Case No. 2:22-cv-07959 (Member Case) |
| 20  vs. | |
| 21  DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C., | **REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC. REGARDING CLAIM CONSTRUCTION** |
| 22 | |
| 23                   Defendants. | |

24

25

26

27

28

---

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC.**
**REGARDING CLAIM CONSTRUCTION**

## VI.   '576 PATENT DISPUTED CLAIM TERMS

### A.   Overview of the '576 Patent

40.     The '576 Patent is titled "Signal Selector and Combiner for Broadband Content Distribution." It was filed on November 6, 2002 and issued on October 31, 2006. The '576 Patent claims priority to U.S. Provisional Application No. 60/345,965 filed November 7, 2001, U.S. Provisional Application No. 60/333,722, filed on November 27, 2001 and U.S. Provisional Application No. 60/358,817, filed on February 22, 2002.

41.     The '576 Patent describes a technology that has revolutionized that distribution of broadband content. The '576 Patent is directed to a satellite receiving system where content (*i.e.*, signals and channels) are selected from satellite broadband signals and combined with other content and transmitted from a an outdoor unit ("ODU") including one or more low noise amplifier and block down converters ("LNBs"), to an integrated receiver decoder ("IRD"), using a single cable. *See* '576 Patent, Abstract; *see also* cl. 14. Content can be selected by digitizing the broadband signal then digitally filtering to isolate the desired content. *See id.* The outputs of several LNBs can be selected and combined into one composite signal. *Id.* Multiple IRDs can receive independent signals over a single cable from the ODU. *See* '576 Patent, Abstract.

42.     As background, Figure 1 of the '576 Patent describes a prior art configuration of a satellite TV system. *See* '576 Patent, 3:47-48. I have reproduced Figure 1 below:

13

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC. REGARDING CLAIM CONSTRUCTION**

1
2
3
4
5
6
7
8
9
10
11
12



FIG. 1
Prior Art

13    43.    A satellite receiver ODU 110 includes a dish antenna 150, one or more
14  antenna feed horns 130, one or more LNBs 140. *Id.* at 1:19-25. "Dish 150 collects and
15  focuses received signal power onto antenna feed horns 130, which couples the signal to
16  LNBs 140. *Id.* at 1:23-25. "A single dish may have multiple feed horns 130 wherein
17  each feed receives a signal from a different satellite in orbit." *Id.* at 1:25-27.
18    44.    The signals that are received from the satellites in Earth orbit are typically
19  carried in a frequency range that cannot be sent through the coaxial cable used to wire
20  homes. The LNB converts the signal transmitted by a satellite to an intermediate
21  frequency suitable for transmission through the coaxial cable. *Id.* at 1:33-43. As shown
22  in Figure 1, each LNB may have two outputs, one for each polarization. A single
23  satellite in earth orbit can emit two information signals characterized by polarization
24  over the same frequency range, which enables the satellite dish receivers to receive
25  twice as much information over the same frequency range.
26    45.    In a conventional system, there is an LNB output for each polarization and
27  each output is provided to switch 160 shown in Figure 1. *Id.* at 1:64-65. The switch 160
28  is connected to each IRD and allows each IRD to switch between LNB outputs. '576

14

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC.**
**REGARDING CLAIM CONSTRUCTION**

Patent, 1:29-31; 1:64-66. Notably, a dedicated cable for each IRD is needed so that each IRD is not required to use the same LNB output at the same time. *Id.* at 2:2-5.

46.     The '576 Patent explains that "[a] problem with the conventional approach to connecting an outdoor unit to IRDs is that multiple cables are required to be run from the outdoor unit: one cable for each room where an IRD is located." *Id.* at 1:55-62. As the '576 Patent explains, in the conventional system "[w]hen a new IRD is added another cable must be installed." *Id.* at 1:54-62. This problem greatly increased costs for customers to have multiple IRDs in their homes because of the wiring and installation costs associated with each new IRD.

47.     The '576 Patent describes a new system that was revolutionary at its time in which only one cable is needed to connect the outdoor unit to an indoor distribution network. The '576 Patent specifically describes a "channel selecting and combining solution" that generally involves selecting one or more transponder channels from each LNB output. *Id.* at 2:4-56. "The selected transponder channels are combined to form a composite signal." *Id*. at 2:58-63. The selected channels are transmitted over a single cable to the IRDs. *Id*. at 2:60-66. This allows only one cable wire to be routed from the outdoor unit to inside the building. *Id.* at 3:28-32.

48.     Figure 2 shows an exemplary satellite TV installation according to the present invention. I have annotated it below.

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC. REGARDING CLAIM CONSTRUCTION**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15



FIG. 2

16      49.     In the example shown in Figure 2, there is a signal selector 250. *Id.* at 4:29-

17  30. The signal selector extracts the needed transponder signals and channels from each

18  of the LNB outputs and combines them into one composite signal transmitted on cable

19  220. *Id.* at 4:30-34. The composite signal is then distributed to the IRDs located in the

20  building. *Id.* at 4:34-35.

21      50.     Figure 5 depicts an embodiment disclosing signal selection and

22  combination into a composite signal. I reproduced Dr. Steffes annotated Figure 5 below.

23  *See* Steffes Decl. ¶ 29. According to the '576 Patent, Figure 5 "shows a diagram of the

24  frequency spectrum of individual LNB output signals and the frequency spectrum of

25  the composite RF signal comprising selected transponder signals in accordance with the

26  present invention." '576 Patent, 3:55-58.

27

28

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC.
REGARDING CLAIM CONSTRUCTION**

1
2
3
4
5
6
7
8
9
10
11
12



FIG. 5

Steffes Decl. ¶ 29.

13

51.    Four outputs of the two LNBs can be seen in Figure 5. Figure 5 shows an

14

embodiment in which each LNB output spans a range of 500 MHz and includes sixteen

15

transponder channels. Each transponder channel from each LNB output is represented

16

by a block. The selecting process extracts from the wide band LNB output a narrow

17

band transponder signal/channel. *Id.* at 3:8-9. Each IRD may communicate "the

18

channels it needs to receive, directly or indirectly, to the signal selector" and "[t]his

19

information is used to select the transponder channel." *Id.* at 3:1-19. As shown in

20

Figure 5, various transponder channels may be selected and combined to form the

21

composite signal. A POSITA understands that by selecting a channel, the signals

22

associated with that channel are also selected. The specification plainly states this: "the

23

transponder ***channel*** or ***channels*** needed from each LNB are selected by a filter." *Id.* at

24

2:56-57.

25

52.    "Each **selected transponder** *signal* may be translated to a new ***channel***

26

frequency." *Id.* at 2:58-59. The '576 Patent explains that "[i]n general, the selecting and

27
28

17

1 combining process will result in transponder channels located at different frequencies

2 than were originally found." *Id.* at 7:40-43.

3      53.     This process can be seen in connection with Figure 5. Figure 5, for

4 example, shows LNB output A, channel 2. As part of the LNB A output, channel 2, and

5 its associated signal, occupy a frequency range of approximately 981.25 to 1012.5 Mhz

6 (*e.g.*, the second of sixteen channels over the range from 950 to 1450 MHz). However,

7 after it is selected and combined into the composite signal, the signal is now associated

8 with a first channel of the composite signal starting at 950 MHz. As the '576 Patent

9 explains, "[e]ach of the available channels in the composite signal can be occupied with

10 any transponder channel of any polarization from any LNB." *Id.* at 7:32-35.

11      54.     Once a composite signal is formed, the composite signal may be

12 transmitted to the IRDs as shown in Figure 2, above.

13      **B.**      **Overview of the Prosecution History of the '576 Patent**

14      55.     I have reviewed the prosecution history leading to the issuance of the '576

15 Patent, including reexamination. I have also reviewed Dr. Steffes' summary of the

16 prosecution history. Steffes Decl. ¶¶ 35-43.

17      56.     Notably, during prosecution, the phrase "selected [and extracted]

18 transponder channel[s]" was understood by the examiner and was not rejected as

19 indefinite. It was also not challenged during reexamination or underlying prosecution.

20      **C.**      **"selected [and extracted] transponder channel[s]"**

21      57.     I understand that DISH[1] asserts that the term "selected [and extracted]

22 transponder channel[s]" is indefinite because the phrase lacks antecedent basis and has

23 provided the expert opinion of Dr. Steffes in support of its position. I disagree and set

24 forth my rebuttal herein. As discussed further below, it is my opinion that Dr. Steffes

25

26

___

27 [1]   I understand that Defendants DIRECTV, LLC and AT&T Services, Inc. (collectively, "DTV"), are also asserting this term is indefinite but have not provided
28 an expert declaration on the issue.

**REBUTTAL EXPERT DECLARATION OF DR. ROBERT AKL, D.SC.**
**REGARDING CLAIM CONSTRUCTION**