# EXHIBIT S

```
 1            IN THE UNITED STATES DISTRICT COURT
         FOR THE CENTRAL DISTRICT OF CALIFORNIA
 2                    SOUTHERN DIVISION

 3   ENTROPIC COMMUNICATIONS,    )
     LLC.,                       )
 4    Plaintiff,                 )
                                 ) CA NO.
 5   VS.                         ) 2:22-cv-07775-JWH-JEM
                                 )
 6   DIRECTV, LLC and AT&T       )
     SERVICES, INC.,             )
 7    Defendants                 )
     _____ )
 8   ENTROPIC COMMUNICATIONS,    )
     LLC.                        )
 9    Plaintiff,                 )
                                 ) CA NO.
10   VS.                         ) 2:22-cv-07959-JWH-JEM
                                 )
11   DISH NETWORK CORPORATION,   )
     DISH NETWORK L.L.C. and     )
12   DISH NETWORK SERVICE L.L.C.)
      Defendants.
13      *******************************************

14         ORAL, VIDEOTAPED, TELEPHONIC, AND

15            REAL-TIME DEPOSITION OF

16               ROBERT AKL, D.SC.

17               APRIL 20, 2023

18      *******************************************
              ORAL, VIDEOTAPED, TELEPHONIC, AND
19   REAL-TIME DEPOSITION OF ROBERT AKL, D.SC., produced
     as a witness at the instance of the Defendants DISH
20   Network Corporation, DISH Network L.L.C., and Dish
     Network Service L.L.C., and duly sworn by me, was
21   taken in the above-styled and numbered cause on
     APRIL 20, 2023, from 8:56 a.m. to 5:00 p.m., before
22   DIANA BENGS, CSR, RPR, TCRR, CRR, Texas
     Certification No. 4907, in and for the State of
23   Texas, reported by machine shorthand, at the
     offices of Perkins Coie, LLP, 500 North Akard,
24   Dallas, Texas, pursuant to the Federal Rules of
     Civil Procedure and provisions stated on the record.
25
```



```
 1               A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFFS:

 4        KATHERINE L. ALLOR (Real-time Connection)
             - AND -
 5        JASON ENGEL (Telephonic and Real-time Connection)
          K&L Gates
 6        70 West Madison Street, Suite 3100
          Chicago, Illinois 60602
 7        312.372.1121 (Office)
          katy.allor@klgates.com
 8

 9

10    FOR THE DEFENDANTS DISH NETWORK CORPORATION, DISH
      NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.:

11        ADAM HESTER (Real-time Connection)
          Perkins Coie, LLP
12        33 East Main Street, Suite 201
          Madison, Wisconsin 53703
13        650.838.4311 (Office)
          AHester@perkinscoie.com

14

15    VIDEOGRAPHER:
          KIM BENGS
16

17

18

19

20

21

22

23

24

25
```



```
 1                          INDEX

 2                                                 PAGE

 3    Appearances                                    2

 4

 5    ROBERT AKL, D.SC.

 6    EXAMINATION BY MR. HESTER                      6

 7

 8    CHANGES AND SIGNATURE                        254

 9

10    REPORTER'S CERTIFICATION                     256

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



ROBERT AKL D.SC.                                                  April 20, 2023
ENTROPIC COMM. vs DIRECTV                                                      4

```
 1                          EXHIBITS

 2    NO. DESCRIPTION                                     PAGE

 3

 4    1   DISH Defendants' Notice of Deposition of        10

 5        Dr. Robert Akl

 6    2   Rebuttal Expert Declaration of Dr. Robert       11

 7        Akl, D.SC., Regarding Claim Construction

 8    3   United States Patent No. 7,130,576 B1,          22

 9        Date of Patent:  October 31, 2006

10    4   United States Patent No. 8,792,008 B2,          176

11        Date of Patent:  July 29, 2014

12    5   United States Patent No. 7,542,715 B1,          245

13        Date of Patent:  June 2, 2009

14    6   Expert Declaration of Dr. Paul G. Steffes       247

15        Regarding Claim Construction

16

17

18

19

20

21

22

23

24

25
```



ROBERT AKL D.SC.                                    April 20, 2023
ENTROPIC COMM. vs DIRECTV                                       117

1  need days to answer one of its questions at a

2  technology tutorial?

3         MS. ALLOR:   Object to the form.

4    A.   I don't know if I've said that before; but

5  sometimes I can say, "I don't have an answer."

6    Q.   (BY MR. HESTER)   Okay.

7    A.    And the preparation that I do for a

8  technology tutorial is different than the

9  preparation that I did today for this declaration.

10  So if you are asking me have I prepped today to

11  answer questions regarding the technology, that is

12  not my understanding of my charge as today.

13         I am here today to answer questions

14  regarding two claim construction terms that are

15  being disputed.   And so far, we've spent over three

16  hours; and we have yet to ask me a single question

17  on the opinion that, my understanding, I'm here

18  today to answer.

19    Q.   The sentence I just read, the term

20  "transponder channels" are there; right?

21  Paragraph 49, it says "transponder signals and

22  channels" but --

23    A.   Yes, that is correct.

24    Q.   Okay.   And one of the terms you are

25  opining about is transponder channels; right?



1    A.   In the context of claim language.  And I
2  am not providing an opinion on what those words
3  mean.  I think there is not a dispute that those
4  words have plain and ordinary meaning.
5              There is a dispute regarding
6  antecedent basis.  So you are not asking me on
7  antecedent basis.  You are asking me on the plain
8  and ordinary meaning, which is not even disputed.
9    Q.   So all right.  In response to a question a
10  couple minutes ago, you said, "So if you are asking
11  me have I prepped today to answer questions
12  regarding technology, that is not my understanding
13  of my charge as today."
14              Does that mean you are not able to
15  provide me with answers about the technology
16  disclosed in the '576 patent?
17              MS. ALLOR:  Objection to form.
18    A.   I am trying to; but to the extent you are
19  asking me to do claim construction on the fly, that
20  is not something I can do.  So I have been trying
21  to answer questions to the best of my ability, but
22  you're -- you are comparing -- you provided me a
23  hypothetical comparing what I'm ans- -- how I'm
24  answering you today to how I would answer questions
25  in front of a court in a technology tutorial.



1          So this is not a technology tutorial

2    presentation.  So to the extent I would answer

3    questions in front of the court for a technology

4    tutorial, that is not the prep that I did for

5    today.

6          So those are separate, I guess,

7    situations.  And I am trying to answer your

8    questions to the best of my ability, but this is

9    not a technology tutorial presentation.

10       Q.   (BY MR. HESTER)  Right.  But you provide a

11   summary of, for example, the '576 patent in this

12   declaration; right?

13       A.   I have.  I've summarized the

14   specification.  I have not added my own opinions to

15   what the specification means, and you've asked me

16   that multiple times.

17       Q.   So if -- strike that.

18          So in the entire section you have here

19   on the overview of the '576 patent, which is

20   several pages long, nothing in here reflects an

21   opinion of yours separate from what the '576 patent

22   says.  Is that fair?

23       A.   That is fair.  And I include a figure that

24   is actually annotated by your expert, but that's --

25   that's fair.



1        Q.    That figure is the exception?

2        A.    That figure is the exception.  But I like

3    the annotations, and I've used that figure instead

4    of making my own annotations.  I would have

5    annotated it in a similar way.  And so as far as

6    the annotations, they were fine for the purpose

7    that I used them later; and that's why I included

8    it.  And you will see that figure used later when

9    I'm discussing my opinions.

10        Q.    Okay.  And paragraph 51 of your

11    declaration starting line -- between 17 and 18, the

12    sentence that reads, "Each IRD may communicate the

13    channels 'it needs to receive, directly or

14    indirectly, to the signal selector.'"

15              I'm going to stop there with a quick

16    question.

17              What does "the channels it needs to

18    receive" refer to in that sentence?

19        A.    That's a direct quote from the

20    specification.

21        Q.    Can you help me understand what that quote

22    means or is referring to, separate from the words

23    on the page?

24        A.    Sure.  We can go back to that section of

25    the specification.  So we can go to Column 3,



1  lines 1 through 19.  And so maybe -- because that's

2  the middle of -- so we are -- starting bottom of

3  Column 2, we have -- a channel translation mapping

4  table is used to coordinate the channel assignment

5  between the original channels and new channels.

6            And let me see where the quote is.

7            In another alternative embodiment, the

8  gateway transmits the video information.  Then the

9  spec goes on, (Reading:)  LNB outputs can be

10 sampled by a broadband analog-to-digital converter

11 and filtered with a digital filter to select a

12 transponder channel.

13           Alternatively, a tuner can select a

14 transponder channel.  The selecting process

15 extracts from the wideband LNB output a narrow band

16 transponder channel.

17           And then we get to the -- I think the

18 sentence you are asking me about, (Reading:)  Each

19 IRD communicates the channel it needs to receive,

20 directly or indirectly, to the signal selector.

21     Q.   So that -- yeah, looks like that's the

22 sentence that you quoted.  Is that fair to say?

23     A.   Yes.

24     Q.   Can you tell me what "needed transponder

25 signals and channels" means -- strike that.



1  when you state that "Each IRD may communicate 'the
2  channels it needs to receive,'" you are referring
3  to the transponder channels; is that right?
4      A.   I'm sorry.  Can you slow down just when
5  you are reading?  It helps.
6      Q.   Sure.
7           It's the same quote we've been talking
8  about.  But when you state that "Each IRD may
9  communicate 'the channels it needs to receive,'"
10 you are referring to transponder channels there; is
11 that right?
12     A.   I am quoting from the sentence which says
13 "the channel."
14     Q.   And your understanding of that channel is
15 a transponder channel; right?
16     A.   I have not rendered an opinion on that.  I
17 am -- I answered your question that the previous
18 paragraph mentions a transponder channel, but I am
19 not providing an opinion agreeing or disagreeing
20 with you right now today.
21          But I explained what the previous
22 sentence -- or I read to you what the previous
23 sentence in the '576 patent states.
24     Q.   And based on reading that previous
25 sentence, can you tell me whether channels in the



 1  sentence you quoted refers to transponder channels?

 2       A.   I don't have an opinion on that.

 3       Q.   Okay.  Can I ask you to form an opinion on

 4  that right now?

 5            MS. ALLOR:  Objection, form.

 6       A.   Yes, you can ask.

 7       Q.   (BY MR. HESTER)  Does the meaning -- does

 8  the channel -- the word "channel" in your quote in

 9  paragraph 51 refer to a transponder channel?

10       A.   I don't have an answer for you.

11       Q.   Okay.  How long would it take for you to

12  come up with an answer to my question?

13       A.   Days.

14       Q.   How many hours?

15       A.   I don't know.

16       Q.   More than one?

17       A.   Probably.

18       Q.   More than two?

19       A.   Maybe.

20       Q.   More than three?

21       A.   I don't know.  I need to do an analysis.

22  And I'm not doing an analysis in vacuum, so I don't

23  have an estimate for you at this time.

24       Q.   Okay.  Paragraph 52 of your declaration,

25  first sentence reads, "Each selected transponder



1  signal may be translated to a new channel

2  frequency."

3              Can you explain for me what this

4  sentence means, beyond quoting the patent, which

5  this sentence is a quote of the patent?  So I'm

6  going to strike that and rephrase it.

7              Can you tell me what "Each selected

8  transponder signal may be translated to a new

9  channel frequency" means?

10     A.   To the extent you are asking me about an

11  opinion that is not in my declaration and you

12  want -- you don't want me to go back to the

13  specification and provide you what's in the

14  specification and render an opinion outside of the

15  specification, then the answer is no.

16     Q.   Why did you include that quote in this

17  declaration?

18              MS. ALLOR:  Object to the form.

19     A.   Because I am providing an overview of the

20  specification and so I am trying to summarize what

21  the specification says.  I'm not rendering an

22  opinion on the specification other than providing

23  an overview.

24     Q.   (BY MR. HESTER)  How does the quote at the

25  beginning of paragraph 52 provide an overview of



1    what's in the '576 patent?

2        A.    It is part of the specification; and it is

3    part of Column 2.  And Column 2, lines 58 to 59, is

4    under summary of the invention.  So it is part of

5    the specification providing a summary of the

6    invention.

7        Q.    And so other than the fact that this quote

8    is from the summary of the invention, do you have

9    any other reason for why it appears in your report?

10       A.    It is providing an overview -- at least in

11   paragraph 52, the answer is no.  To the extent I

12   use it later in the section on my opinions, then we

13   can go there.

14             But for this section of my report, I

15   am providing an overview of the patent.  I have not

16   started providing my opinions regarding the

17   disputed claim term.

18       Q.    It is fair to say you are not providing

19   any opinions at all in the overview section, other

20   than summarizing what's in the patent?

21       A.    That's fair.

22       Q.    If I can have you grab a copy of the

23   patent or pull it up digitally.  The '576 patent is

24   Exhibit 3.  Let me know when you have got the '576

25   patent up.



 1        A.    I have it.

 2        Q.    So can I have you turn to the

 3   second-to-last page of the '576 patent?

 4        A.    Okay.

 5        Q.    And do you understand that the page

 6   includes claims of the '576 patent issued after a

 7   reexamination?

 8        A.    I do see the words "reexamination," but I

 9   don't have an opinion on that.  My understanding,

10   it is a legal thing.

11        Q.    Did you study the claims that are on this

12   page in forming your opinions?

13        A.    I considered claim language for at least

14   the term that I'm rendering an opinion on.

15        Q.    Okay.  Did you consider the claim language

16   across all claims of the '576 patent?

17        A.    I read the entire specification and

18   patent, so I would agree that I considered -- I may

19   not have relied on; but I have considered, by

20   reading the specification and the claims, the

21   entire patent.

22        Q.    In considering the patent, did you give

23   different weight to what is in the specification

24   versus what is in the claims?

25        A.    I don't understand the question.



```
 1   removed during the reexam?

 2       A.   I see those instructions in Column 1,

 3   lines 7 and 8 and 9; so that is my understanding,

 4   also.

 5       Q.   And was that your understanding when you

 6   reviewed the claims of the '576 patent in preparing

 7   your report?

 8       A.   Yes.

 9       Q.   Where in Claim 14 in the '576 patent does

10   it reference transponder channels?

11       A.   Can you be more specific, or do you want

12   me to answer your question generally?  Because

13   I'm -- I'm -- I want to make sure I am answering

14   the question you are asking.

15       Q.   Do you see the words "transponder channel"

16   referenced anywhere in Claim 14 of the '576 patent?

17       A.   The words "transponder channel" I don't

18   think appear in Claim 14.  Transponder signal --

19   signals, plural, does appear; and I provide

20   opinions how the two relate to each other; and I

21   can -- I'll be happy to go into that opinion if

22   asked.

23            So if -- but as far as does the words

24   in vacuum "transponder channel" appear in Claim 14,

25   no, the words "transponder signal" and "signals"
```



1    do.

2        Q.    Transponder channel does not appear in the

3    language of Claim 14?

4        A.    The words themselves do not, that is

5    correct.

6        Q.    Do the words "selecting a transponder

7    channel" appear in Claim 14 of the '576 patent?

8        A.    Well, your question is derivative because

9    if -- again, if the words "transponder channels" do

10   not appear, adding another word is still not going

11   to appear.

12            But it is my opinion that a POSITA

13   would understand what's in Claim 14 is referring to

14   a transponder channel; but that's a separate

15   question than what you are asking me, if what you

16   are asking me specifically to look at and compare

17   words, not meaning.

18       Q.    I'm asking you for words.  Are the words

19   "selecting a transponder channel" found in

20   Claim 14?

21       A.    No, the words in vacuum are not.

22       Q.    Are the words "selecting and extracting a

23   transponder channel" found in Claim 14?

24       A.    The words in vacuum are not.

25       Q.    Do you have an understanding of what it



ROBERT AKL D.SC.                                             April 20, 2023
ENTROPIC COMM. vs DIRECTV                                              131

1   means to extract a transponder channel versus what

2   it means to select a transponder channel?

3       A.   I have not rendered an opinion on that

4   here today.

5       Q.   Can you render an opinion for me right

6   now?

7       A.   No.

8       Q.   Why not?

9       A.   Because I have not done an analysis on

10  those differences between selecting and extracting,

11  and those are terms that appear in the claim.  My

12  understanding is those words would have a plain and

13  ordinary meaning.  So beyond the plain and ordinary

14  meaning, I do not have a -- I have not articulated

15  a definition for the claims.

16      Q.   With respect to extracting, what is the

17  plain and ordinary meaning of extracting a

18  transponder channel?

19      A.   I have not articulated a definition for

20  it.

21      Q.   Can you explain for me what it means to

22  extract a transponder channel separate from

23  defining it?

24      A.   No.  It would be difficult to -- to do so

25  in vacuum without articulating some sort of



ROBERT AKL D.SC.
ENTROPIC COMM. vs DIRECTV

April 20, 2023
132

1  definition or construction, and I am not providing

2  claim construction on extracting in vacuum or

3  extracting a transponder signal or extracting a

4  transponder channel as a phrase other than

5  disagreeing with regard to indefiniteness.

6          But I -- but my understanding is those

7  words have plain and ordinary meaning and the

8  parties have agreed -- or at least there is not a

9  dispute from either party that the words have their

10  plain and ordinary meaning.

11     Q.   And what is your basis for saying that

12  there is a not a dispute between the parties that

13  the words transponder -- "selecting and extracting

14  a transponder channel" have their plain and

15  ordinary meaning?

16     A.   I think there is a quote, based on my

17  understanding, and it is somewhere in my

18  declaration, that defendants' expert is also not

19  disputing that.

20          And I would be happy to try to -- it

21  is in -- let's see.  I can -- I can find you where

22  that quote is, if you want.

23     Q.   It is a quote from you, though; right?

24  You are the one who is saying you understand there

25  is no dispute; right?



ROBERT AKL D.SC.                                                                    April 20, 2023
ENTROPIC COMM. vs DIRECTV                                                                      133

1      A.    Paragraph 59.  So in paragraph 59, I

2  provide an opinion saying, "In addition, the term

3  'selecting and extracting' appears elsewhere in the

4  claims, such as in Claim 14, which recites

5  'selecting and extracting a plurality of

6  transponder signals.'  I understand that neither

7  DISH nor Dr. Steffes" -- capital S-t-e-f-f-e-s --

8  "contends that this phrase requires construction."

9      Q.   I was referring to selecting and

10  extracting transponder channels, not signals.  The

11  sentence you just read refers to transponder

12  signals.

13          I'm asking for the plain meaning of

14  selecting and extracting a transponder channel.

15      A.   It would still have the plain and ordinary

16  meaning.

17      Q.   And what is the plain and ordinary

18  meaning?

19      A.   I have not articulated a definition.

20      Q.   Is there a definition?

21      A.   I don't know.  I have not been asked to

22  articulate a definition.

23      Q.   You mean by counsel you haven't been asked

24  to articulate a definition?

25          MS. ALLOR:  Objection, form.



1        A.   I've not been charged and I don't believe

2   there is dispute in terms of what those words mean,

3   is my understanding in this matter.

4        Q.   (BY MR. HESTER)  How do you know there is

5   no dispute if you haven't articulated what you

6   believe it means and you haven't seen what

7   Dr. Steffes articulates it means?

8        A.   That is my understanding from counsel that

9   the dispute is not with regard to that those words

10  require construction.

11            The dispute is with regard to if there

12  is antecedent basis and whether, in the absence,

13  they may or may not be indefinite to a POSITA when

14  we get to the dependent claims.  So that is my

15  understanding of the dispute from counsel.

16       Q.   Okay.

17       A.   And because of that, my charge from

18  counsel was to provide an opinion whether those

19  words are indefinite or not.  My charge was not to

20  provide or articulate a construction but to use the

21  plain and ordinary meaning of those words.

22       Q.   I'm not asking you to articulate a

23  construction, but I am going to ask you this:  Can

24  you tell me what the plain meaning of the phrase

25  "selected transponder channels" is?



1    A.   No, because --

2               MS. ALLOR:   Object to form.

3    A.   -- as now I have answered such a question

4    many times, and I will continue to provide a

5    similar response if asked a similar question.

6               I would be doing claim construction,

7    and those words would have the plain and ordinary

8    meaning, and claim construction is not something

9    that I take lightly.  I would not want the

10   definition to be too narrow or too broad.

11              It is not something I can do on the

12   fly and that was not something that I was asked to

13   do today, or for my declaration that I am answering

14   questions on today.

15   Q.   (BY MR. HESTER)  In your declaration,

16   above paragraph 57, there is a section heading,

17   "Selected [and extracted] transponder channel[s]."

18              What is the plain and ordinary meaning

19   of that phrase in quotes that's in your

20   declaration?

21   A.   I have not rendered such an opinion.

22   Q.   Why not?

23   A.   Because I was not asked to.  I don't

24   believe there is a dispute on the plain and

25   ordinary meaning.



 1          I -- under that section heading, I

 2    provide -- it is my understanding that DISH asserts

 3    that the term is indefinite because the phrase

 4    lacks antecedent basis.  It is not my understanding

 5    that there is a dispute on what the plain and

 6    ordinary meaning is.

 7        Q.   Okay.  And can you tell me what the plain

 8    and ordinary meaning is today?

 9             MS. ALLOR:  Object to the form.

10        A.   No, because I was not asked to do so and

11    because I would be doing claim construction.  And I

12    don't take claim construction lightly, and I would

13    not want -- that my construction to be too narrow

14    or too broad.  And so because of that, I would not

15    be able to provide you a construction on the fly.

16        Q.   (BY MR. HESTER)  Would you be able to tell

17    me a plain and ordinary meaning today?

18             MS. ALLOR:  Object to the form.

19        A.   You just asked me that question, and my

20    answer is on the record.

21        Q.   (BY MR. HESTER)  You didn't actually use

22    the word "plain and ordinary meaning" in your

23    answer, so that's why I'm asking for some clarity.

24             Would you be able to tell me the plain

25    and ordinary meaning today?  It is either, "Yes, I



1   can tell you the plain and ordinary meaning"; or

2   "No, I cannot tell you the plain and ordinary

3   meaning."  Which is it?

4           MS. ALLOR:  Object to the form.

5       A.   No, I would not be able to provide a

6   definition of what the plain and ordinary meaning

7   for the reason that I gave previously, which is

8   that I would be doing claim construction; and I

9   would not want the claim construction to be too

10  narrow or too broad.

11          And because of that, I cannot sit here

12  today and articulate a definition or give you a

13  definition of what the plain and ordinary meaning

14  because I would be doing claim construction.

15      Q.   (BY MR. HESTER)  In your more than one

16  year since you looked at the '576 patent, have you

17  considered what the plain and ordinary meaning of

18  selected and extracted transponder channels is?

19      A.   I gave them the plain and ordinary

20  meaning.

21      Q.   When you say "them," who is them?

22      A.   The words "selected and extracted

23  transponder channels."  So the individual words, I

24  gave those words plain and ordinary meaning.

25      Q.   Okay.  And when you say you gave them



1  plain and ordinary meaning, what plain and ordinary
2  meaning did you give them?
3       A.   I can put myself in the shoes of a
4  POSITA -- and we can do this all day -- and provide
5  an opinion without articulating a definition of the
6  plain and ordinary meaning.
7            So to the extent you are asking me to
8  articulate a definition, I cannot do that today
9  because I would be doing claim construction.  And I
10 don't take this task lightly, and I wouldn't want
11 my analysis to be too broad or too narrow with
12 regard to what the claim construction is for those
13 words.
14      Q.   If you are asked at the technology
15 tutorial to provide a plain and ordinary meaning of
16 selected and extracted transponder channels, will
17 you have an opinion then?
18           MS. ALLOR:  Object to the form.
19      A.   I -- I don't know.  If counsel asks me to
20 think about examples or then -- between now and
21 then, I might do that analysis; but as of now, I
22 have not been asked to do so; and I have not
23 articulated or was -- or determined what that
24 definition is.
25      Q.   (BY MR. HESTER)  And sitting here today,



1    you will not determine what that definition is

2    either?

3              MS. ALLOR:   Object to the form.

4        A.   Sitting here today, I cannot do that on

5    the fly.

6              And I do say that also in

7    paragraph 58.  I -- in paragraph 58, I provide an

8    opinion saying, "I do not see any disagreement from

9    Dr. Steffes that the terms 'selected [and

10   extracted] transponder channel' has a plain and

11   ordinary meaning."

12             And so I -- my understanding is there

13   is not a dispute, that those words have a plain and

14   ordinary meaning.  I do not believe either party

15   have proposed what is the plain and ordinary

16   meaning.

17             I have not been asked to articulate a

18   definition on what the plain and ordinary meaning.

19   And my understanding is the dispute is not related

20   to the plain and ordinary meaning.  There is a

21   dispute related to whether or not there is a lack

22   of antecedent basis for the phrase "transponder

23   channels," and that's what I am providing opinions

24   on.

25       Q.   So do you agree with Dr. Steffes' opinions



1   regarding the terms "selected and extracted

2   transponder channels"?

3           MS. ALLOR:   Object to form.

4       A.   No.   I agree that they don't need

5   construction.   I agree that they should have the

6   plain and ordinary meaning, and I disagree that

7   those words are indefinite or lacking in antecedent

8   basis.

9           So it is not a "yes" or "no."  We have

10  an agreement on things, and there is disagreement

11  on things, and it is always good to start with some

12  agreement.

13      Q.   (BY MR. HESTER)  And so when Dr. Steffes

14  discusses a transponder channel in his declaration,

15  you agree with what he's saying about transponder

16  channels, then, don't you?

17          MS. ALLOR:   Object to form.

18      A.   I disagree with his opinion that they lack

19  an antecedent basis, and I provide an analysis why

20  I disagree with his opinions.   So we can go to

21  specific opinions, but I do not believe there is a

22  dispute on the fact that those words have a plain

23  and ordinary meaning.

24      Q.   (BY MR. HESTER)  So I should look to

25  Dr. Steffes' discussion of transponder channel to



1   transponder signal"?  Are either of those concepts

2   recited in Claim 8?

3               MS. ALLOR:  Same objection.

4      A.   I see the words -- so the answer is in

5   part.  I see where it is extracting selected

6   channels.  So the word "extracting," the word

7   "selected" is there.  The word "channels" is there.

8   The word "signal" is there.  So it says "satellite

9   transponder channels of a broadband signal."

10              So -- so, again, I'm trying to answer

11  your question.  If you are asking me, you know, to

12  play word match, the words are there.

13              If you are asking me do they appear in

14  a specific order, then the answer is no; but the

15  words appear separately.  Again, I'm not sure

16  exactly what you are asking; but I see those words

17  in some capacity in Claim 8.

18     Q.   (BY MR. HESTER)  So looking at Claim 14,

19  there are the words "selecting and extracting a

20  plurality of transponder signals" around line 15.

21  Do you see that?

22     A.   Yes.

23     Q.   Okay.  Do you see those words "selecting

24  and extracting a plurality of transponder signals"

25  or anything similar to those words in Claim 8?



1             MS. ALLOR:  Same objection, outside

2    the scope.

3        A.   So, again, it's -- it's a long phrase.  So

4    maybe -- I don't know if you are asking me to

5    identify that phrase verbatim or to identify

6    individual words in the phrase, because my answer

7    might not be the same based on how -- what you want

8    me to do.  So if -- can you clarify --

9        Q.   (BY MR. HESTER)  Let's start verbatim,

10   yeah.

11       A.   Okay.

12            MS. ALLOR:  Same objection.

13       A.   I don't see the phrase verbatim in

14   Claim 8.

15       Q.   (BY MR. HESTER)  Do you see in Claim 8 any

16   discussion of selecting transponder signals --

17            MS. ALLOR:  Same objection.

18       Q.   (BY MR. HESTER)  -- those three words?

19       A.   Do you want those three words next to each

20   other or just those three words?  Am I looking at

21   three words separately or in that order together?

22       Q.   The word "selecting" acting on the words

23   "transponder signal" or "selected," one of the two.

24            MS. ALLOR:  If we can just put a

25   continuing objection from me until he moves on from



 1  Claim 8.

 2      A.   So I see the word "selected," I see the

 3  word "signal," I see the word "transponder"; but I

 4  don't see them in that specific order.

 5      Q.   (BY MR. HESTER)  Do you see the words

 6  "transponder signal" at all?

 7      A.   I see the word "transponder" and I see the

 8  word "signal" but I don't see them next to each

 9  other.

10      Q.   What is the difference between selecting

11  transponder channels and selecting transponder

12  signals?

13            MS. ALLOR:  Object to the form.

14      A.   This is not a simple "yes" or "no."  I

15  mean, there are similarities; and there are

16  differences; and I would be happy to go through;

17  but this is going to be a long answer.

18            So I just want to -- because I

19  describe those and the similarities and differences

20  in how a POSITA would understand that over multiple

21  pages, so --

22      Q.   (BY MR. HESTER)  Can I ask a narrower

23  question, then?

24      A.   Yes.

25      Q.   You would agree with me that they have



 1    differences, though -- right? -- between selecting

 2    transponder signals and selecting transponder

 3    channels?

 4       A.   Well, I agree that the words are different

 5    and there might be nuances to those phrases that

 6    are different; but there is also a lot that is in

 7    common.  And a POSITA would understand that signals

 8    in this context or in this claim language, you

 9    know.  The signals are on channels, so there is an

10    inherency of you do need to have channels if you

11    have signals.

12                And I can stop here, but I can expand

13    depending on what your follow-up questions are.

14       Q.   I actually want you to tell me more about

15    the nuances to those phrases that are different.

16    What are those nuances?

17       A.   Sure.

18       Q.   And if you are looking at a part of your

19    report, let me know.

20       A.   Yes, I am.  So I'm going through --

21    because I spent multiple pages describing the --

22    how the phrases are understood by a person of

23    ordinary skill in the art.  So I am trying to

24    find -- so a good place to start would be

25    paragraph 63.



1      Q.   I don't see the words "transponder signal"

2   referenced in paragraph 63.

3      A.   It is --

4      Q.   Oh, I do.  Yeah, yeah.

5      A.   -- on line 18.

6      Q.   Yeah, you are right.

7            So how does paragraph 63 explain the

8   nuances between selecting transponder signals and

9   selecting transponder channels?

10     A.   So, again, paragraph 63 is describing the

11  process of selecting and extracting transponder

12  channels; and each channel is depicted that

13  includes a transponder signal.

14           And so you have this relationship

15  where -- looking at Figure 5, you have four LNBs,

16  with a little S, like plural.  Each LNB has 16

17  channels.  You can select and extract a channel or

18  a signal on that channel and you extract the

19  signal.

20           And Figure 5 is showing, for example,

21  how Channel 2 is selected and the signal is

22  extracted and becomes part of the composite signal.

23  Similarly, for example, Channel 14; and it goes on.

24           This is followed in my declaration by

25  referring back to the patent and referring back to



1   Figure 13.  And Figure 13 starts out by showing you

2   the original spectrum and then how the original

3   spectrum is translated, how it is filtered, and

4   then how it is combined.

5           So at this point, it's good to -- I'm

6   going to go to Column 6 of the '576 patent, and

7   specifically if you look at the discussion of

8   Figure 13, that starts on line 19 to line 30.

9           But to give it context, I want to

10  start by -- to answer your question, I look at --

11  the top of the columns.  So it starts by, "Two

12  basic approaches to combining are possible.  One

13  approach is to combine digitally filtered signals

14  in the digital domain.  This can be achieved with

15  all filtered transponder channels to be combined,

16  presented at a sample rate equal to the composite

17  output rate.

18          "The other approach is to combine the

19  selected signals in the analog domain.  This leads

20  to two possible approaches to filtering.  One is to

21  implement filters with the same input and output

22  sample rate.  The other approach is to filter with

23  an output sample rate that differs from the input

24  sample rate.

25          "An example of a digital combining



1    Q.   Okay.  So if we go to Figure 1C, then, of

2    the '008 patent --

3    A.   I'm there.

4    Q.   -- that you referred to as a satellite

5    embodiment, what is Item 182 on Figure 1C of the

6    top left corner?

7    A.   So if we go to Column 4, in Column 4,

8    lines -- starting on line 51, it says Figure 1C

9    depicts an example satellite system; and it goes on

10   to line 54, which says a feed horn 182.

11   Q.   So the feed horn, I think as we discussed

12   earlier, is part of the satellite dish on a

13   customer premises?

14   A.   That's fair.

15   Q.   Okay.  So Figure 1C, then, is only showing

16   the system in a satellite embodiment from the

17   perspective of the customer premises site?

18        Are you running a search for 1C?

19   A.   No.  I'm scrolling up to --

20   Q.   Okay.

21   A.   -- Figure 1C to go back to because I was

22   in the specifications.

23   Q.   Okay.

24   A.   So I am -- can you repeat your question

25   now that I'm looking at Figure 1C?



ROBERT AKL D.SC.                                    April 20, 2023
ENTROPIC COMM. vs DIRECTV                                      189

1      Q.    Yeah.

2            Fair to say that Figure 1C is only

3   showing the system in a satellite embodiment from

4   the perspective of the customer premises site?

5      A.    I would disagree with that because of the

6   bottom part.  It shows WAN 192.

7      Q.    Okay.

8      A.    So I agree that the top right part -- and

9   it is interesting that this is not drawn proportion

10  to scale, because the top part is huge and it's

11  more of a blowup.  It is bigger than the house.

12           But the house would be the customer.

13  But to the left of the house in 1C, you have 188

14  and 192; and those -- 192 would be the WAN --

15     Q.    Okay.

16     A.    -- which an example would be like the

17  Internet, so it is not just the house.

18     Q.    But the feed horn is not receiving signals

19  over the WAN, is it?

20     A.    No.  The 182 would be receiving a signal

21  from a satellite.

22     Q.    Okay.

23     A.    But a user can transmit -- so, for

24  example, the user isn't going to transmit a signal

25  back to the satellite.  Like you can receive a



1 signal from the satellite, but it is very expensive

2 to transmit to the satellite.

3         So what this figure is showing -- and

4 you can see the thick line on the left part and

5 going out 188.  So it is not uncommon to receive a

6 signal from the satellite and transmit a signal

7 back to the headend using the Internet.

8         So it is in a way not showing -- it is

9 showing both received communication and transmitted

10 communication from the house where the received

11 communication comes from the satellite and the

12 transmitted communication would go over the

13 Internet or over a wide area network.

14     Q.   Over the Internet to the headend?

15     A.   Yes.

16     Q.   Okay.  So and then the headend is the

17 source of the signals that the satellite is

18 rebroadcasting to the end user.  Is that fair?

19     A.   The headend is where the first appearance

20 of the signal appears.  I know you used the word

21 "source," and that is a disputed term.  So the

22 dispute here is, what is the source of said

23 received signal?

24         And my understanding is that's --

25 we're going into now my opinion that defendants



1    have a narrow construction of what that is.  And I

2    disagree that that should be -- I agree that the

3    headend would be an example of a source; but I

4    don't believe the construction should be limited,

5    when we look at the source, to the headend.  That's

6    why those words would have a plain and ordinary

7    meaning, because the signal itself is going to be

8    repeated and relayed at different points.

9              So it's my opinion that it should not

10   be limited to the construction that was proposed by

11   defendants where it says the equipment, example, a

12   cable headend or satellite transmitter, that

13   transmitted the received signal to be the

14   definition of a source of said received signal.

15       Q.   Coming back a bit to my question, though.

16   If we kind of imagine at a high level, you've got

17   your customer premises; and a satellite is

18   broadcasting a signal to the premises.  You agree

19   to that?

20       A.   Yes.

21       Q.   And in the context at least of satellite

22   television and Internet, that satellite is getting

23   the signal originally from some headend on the

24   ground?

25       A.   Or some device or some other satellite



1    dish that is connected directly or indirectly to

2    the headend.

3       Q.   Okay.  So something that the headend is

4    using to broadcast to the satellite, whether it is

5    a dish or something else?

6       A.   Well, it may not be in the headend.  So

7    the headend, it could be in communication with an

8    Earth station that has a satellite that would be

9    transmitting sig- -- sorry -- that has a dish that

10   is transmitting a signal to the satellite.

11            So the first appearance of the signal

12   is coming from the headend, but that signal can be

13   repeated and replicated at different points.

14            So I wouldn't -- when we look at the

15   claim language which refers to a source, a source,

16   I wouldn't limit the source to the very beginning

17   of the signal.  Which an example of that would be

18   the headend, because, like I said, the signal is

19   going to be replicated and relayed at different

20   stages.

21            So it can go from the headend to an

22   Earth station to a satellite dish up to the

23   satellite, or it could go through intermediate

24   networks.  But there is a satellite at some

25   point -- there is a satellite dish at some point



1  that's going to send it to the satellite.  And

2  there is a satellite dish at another point that's

3  going to receive it from the satellite that

4  normally -- the receiving satellite's small.  It

5  sits on the customer's roof or somewhere, and the

6  satellite dish that's sending the signal is much

7  larger with a lot more power.

8      Q.   Okay.  I believe you mentioned that one

9  way in which a customer premises site can

10  communicate with a headend is over a wide area

11  network, such as 192; is that right?

12     A.   Yes.

13     Q.   Okay.  Can a customer premises communicate

14  with a headend via the satellite dish that's on its

15  roof?

16     A.   I don't think so.  I don't think the

17  satellite dish on the roof transmits to the

18  satellite in the sky.

19     Q.   How does satellite Internet work, then?

20     A.   Satellite Internet works in an asymmetric

21  way.  I actually had satellite Internet in the '90s

22  with Hughes.  And you receive the -- you receive

23  your downlink from a satellite.

24     Q.   Okay.

25     A.   So I had a satellite dish outside my



1      A.   I don't have an opinion on that.

2      Q.   Okay.  Do you see anything, looking at the

3   three lines of Claim 39, that tells you which

4   transponder channels are selected in Claim 39?

5      A.   I guess because it says "a" -- I mean,

6   there is no antecedent basis requirement because it

7   uses "a" and not "the."  So I don't see anything --

8   any issues related to this claim, because even this

9   claim language is different than the other claim

10  languages where they had "the."  And the fact that

11  it says "a," it would preclude even any confusion

12  because there is no antecedent basis requirement.

13        So I'm not sure what you are asking

14  me.  I don't -- I don't think there is anything --

15  any issues with this claim from -- at least in the

16  opinions that I've rendered on this claim language

17  because it says "a" instead of "the."

18     Q.   I understand that you rendered opinions on

19  the distinction between "a" and "the," but I want

20  to ask you:  What in Claim 39 tells you which

21  transponder channels are going to be selected?

22        MS. ALLOR:  Object to the form.

23     A.   I don't know if I have an answer to that

24  question because I am not sure I have done that

25  analysis, other than the rest of the claim language

1   would be what you would look at; but I have not

2   done an analysis on the rest of the claim language.

3            But I am saying that's what I would

4   start with, the three lines in 39.  And 39 depends

5   on 38, so you may want to go to 38.  And 38 depends

6   on 14, but that's the process.  But I have not

7   walked through the process; and I would not be able

8   to, like, right now.

9       Q.   (BY MR. HESTER)  Do you believe a person

10  of skill, looking at Claim 39, would understand

11  which transponder channels to select and which

12  transponder channels to not select?

13      A.   I haven't done that analysis, so I don't

14  have an answer for you.

15      Q.   Can I ask you to do that analysis now?

16      A.   Yes.

17      Q.   Okay.  Please do the analysis, and tell me

18  what in Claim 39 would inform a POSITA of which

19  transponder channels are selected versus those that

20  are not selected.

21      A.   I would not be able to do the analysis

22  right now because I don't have enough time, so --

23      Q.   How long would that analysis take you?

24      A.   Days.

25            MR. HESTER:  Let's mark as Exhibit 5 a



```
 1   copy of the '715 patent.
 2                (Exhibit No. 5 was marked.)
 3                MS. ALLOR:  I'm going to object to
 4   scope.  He hasn't opined on this patent.
 5                MR. HESTER:  Okay.
 6       Q.   (BY MR. HESTER)  Dr. Akl, have you
 7   reviewed, at some time prior to today, the
 8   U.S. Patent No. 7,542,715?
 9       A.   Yes.
10       Q.   Okay.  When did you first review this
11   patent?
12       A.   About a year ago.
13       Q.   Similar time with the other patents?
14       A.   Yes.
15       Q.   Okay.  And you have, of course, reviewed
16   Dr. Steffes' declaration related to claim
17   construction.  Yes?
18       A.   I've -- I've read his declaration.  I am
19   providing opinions only on two claim terms.
20       Q.   Okay.  So your declaration is a rebuttal
21   to Dr. Steffes' declaration; is that right?
22       A.   It is a rebuttal to two opinions that
23   counsel asked me to rebut.  That doesn't mean I
24   agree with other stuff in it.  It just means that I
25   am only providing an opinion regarding two terms.
```



1   The lack of rebuttal of other terms should not be

2   taken as an indication of agreement.

3        Q.   Well, do you have opinions about the terms

4   to which you did not rebut?

5             MS. ALLOR:   Object to the form.

6        A.   Can you repeat the question?

7        Q.   (BY MR. HESTER)   Yes.   Let me -- let's

8   take a step back.

9             So Dr. Steffes offered an opinion

10  regarding the term "decode specific programs" in

11  the '715 patent.   Do you understand that?

12       A.   I understand there's a dispute.   There is

13  dispute with other terms in this matter.   I don't

14  have opinions on those other terms.

15       Q.   Well, let's just start with the term I

16  read.

17            Do you understand that Dr. Steffes

18  offered opinions regarding the term "decode

19  specific programs" of the '715 patent?

20       A.   I don't recall.

21            MS. ALLOR:   Objection, form.

22       Q.   (BY MR. HESTER)   You don't recall reading

23  that in his declaration?

24       A.   I don't -- I did not review it recently,

25  and so I don't recall.   I might recall that there



 1   is a dispute to other terms, but I don't have

 2   opinions on that term or that dispute.

 3                  MR. HESTER:  Let's mark as Exhibit 6

 4   Dr. Steffes' declaration.

 5                  (Exhibit No. 6 was marked.)

 6       Q.   (BY MR. HESTER)  Dr. Akl, do you recognize

 7   Exhibit 6 as a copy of Dr. Steffes' declaration

 8   regarding claim construction?

 9       A.   Yes.

10       Q.   And if I can have you turn to page 32 of

11   Dr. Steffes' declaration.

12       A.   Okay.

13       Q.   Do you see on line 14, Section B -- or it

14   may be Subsection B, it is entitled "'715 Patent,

15   Claims 9 through 13," quote, "decodes specific

16   programs"?

17       A.   Yes, I see those words.

18       Q.   Do you remember reading this section when

19   you reviewed Dr. Steffes' declaration previously?

20       A.   No.

21                  MS. ALLOR:  Objection, form.

22       Q.   (BY MR. HESTER)  Did you skip this

23   section?

24       A.   Yes.

25       Q.   Okay.  Why did you skip this section?

