Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted *pro hac vice*)
ATessar@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, Colorado 80202-5255
Telephone: +1.303.291.2357
Facsimile: +1.303.291.2457

**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DIRECTV, LLC and<br>AT&T SERVICES, INC.,<br><br>    Defendants. | No. 2:22-cv-07775-JWH-KES<br><br>**MEMORANDUM IN SUPPORT OF DISH'S MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH NETWORK SERVICE L.L.C.,<br><br>    Defendants. | No. 2:22-cv-07959-JWH-KES |

## I. INTRODUCTION

Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively "DISH," unless the context dictates otherwise) respectfully request leave of the Court to file DISH's Second Amended Answer, Affirmative Defenses, and Counterclaims ("Second Amended Answer").

The amendments are primarily directed to the addition of affirmative defenses based on the unenforceability of the '576 and '715 patents due to equitable estoppel and implied waiver, and corresponding declaratory judgment counterclaims. These defenses and counterclaims arise because Entropic Communications, LLC ("New Entropic" or "Plaintiff") and/or prior assignees of the patents-in-suit, including, *inter alia*, Entropic Communications, Inc. ("Old Entropic") and/or MaxLinear, Inc. ("MaxLinear"), have led DISH to believe that they did not intend to enforce the currently asserted patents against DISH, either through misleading conduct or through silence (*i.e.*, not identifying the asserted patents to DISH) at times when any reasonable actor would have been expected to speak up and when New Entropic's predecessors had an obligation to speak up. DISH relied on these representations and omissions in developing its products and will be harmed if New Entropic is allowed to enforce the '576 and '715 patents against DISH.

Good cause to amend exists because the amendments relate to facts that date back almost 25 years, involve few (if any) current DISH employees, and were uncovered in part during discovery in this case, including at depositions of inventor Itzhak Gurantz and former Old Entropic COO Mark Foley. There will be no prejudice to Entropic from allowing the amendments. The case is at an early stage, and DISH long ago put New Entropic on notice that it would be exploring these defenses, as discussed below. The parties will have ample time to obtain additional discovery regarding these DISH theories under the schedule to be entered by the Court after it issues its Markman decision. Meanwhile, no deadline has been set for either the close of fact discovery or trial.

## II. Procedural Background

This case relates to New Entropic's accusations that DISH infringes two patents that New Entropic recently obtained from MaxLinear. Specifically, New Entropic alleges that the DISH infringes United States Patent Nos. 7,130,576 ("the '576 patent") and 7,542,715 ("the '715 patent"), which relate to "digital channel stacking." Entropic filed its complaint on March 9, 2022 (Case No. 2:22-cv-7959, Dkt. No. 1), and a First Amended Complaint, the currently operative complaint, on March 30, 2022 (*id.* at Dkt. No. 17). DISH moved to transfer from the Eastern District of Texas to what DISH contends is the proper venue for this case, the District of Colorado, on April 27, 2022 (Case No. 2:22-cv-7775, Dkt. No. 25) and answered the First Amended Complaint on May 16, 2022 (*id.* at Dkt. No. 37). Judge Gilstrap transferred this case to this Court on October 27, 2022. *Id.* at Dkt. No. 109. The Court held an initial status conference on December 13, 2022, and conducted a claim construction hearing on July 13, 2023. *Id.* at Dkt. No. 176, Dkt. No. 270.

The Court has not set a deadline for the close of fact discovery or a trial date (*see id.* at Dkt. No. 176), indicating that it will do so after it issues its claim construction order. Fact discovery has proceeded while the parties await the Court's claim construction order, including document productions by DISH and depositions of Itzhak Gurantz (a principal of Old Entropic and lead inventor on the asserted patents) and Mark Foley (a principal of Old Entropic).

Having amended once previously, DISH now seeks to file a second amended answer to, among other more trivial edits (*see infra*, n.3), add affirmative defenses of unenforceability of the '576 and '715 patents due to equitable estoppel and implied waiver, corresponding declaratory judgment counterclaims, and facts in support of these defenses and counterclaims. *E.g.*, Second Amended Answer at Seventh through Tenth Affirmative Defenses and Fifth and Sixth Counterclaims.

### III. DISH'S EQUITABLE ESTOPPEL AND IMPLIED WAIVER DEFENSES AND DECLARATORY JUDGMENT COUNTERCLAIMS

Discovery has revealed information about the relationship between Old Entropic and DISH that substantiates DISH's proposed amendments. The allegations that DISH intends to make by way of amendment are described below.

The asserted '576 and '715 patents date back to an application filed in 2001, at approximately the same time that Old Entropic was founded. *See* Second Amended Answer at Counterclaims ("CC") ¶¶ 48-49, 70-71. As explained in DISH's proposed amended answer, the '576 and '715 patents describe and claim certain satellite "channel stacking" technologies. *See id.* Notably, satellite channel stacking technologies such as those described in the asserted patents evolved from earlier technologies used for the transmission, receipt, and decoding of satellite signals, including "band stacking" and "band translation" technologies. *Id.* at CC ¶¶ 50, 72. DISH's proposed amended answer explains that it has been a leader in all three technologies: first, band stacking; then, band translation; and, finally, channel stacking. *Id.* DISH's innovations in this space have been rewarded with a long list of its own patents. *Id.*

For its part, Old Entropic did not have or commercialize such products at the time, and Mr. Gurantz readily confessed that the '576 and '715 patents came out of brainstorming sessions at the time the company was formed, before Old Entropic had chosen a company direction.[1] *See id.* at CC ¶¶ 49, 71; Ex. B[2] at 67:21-68:19, 80:3-81:13. Old Entropic's focus, however, quickly became "MoCA" technology. *See* Ex. B at 68:8-10. MoCA addresses different problems for in-home satellite

---

[1] Mr. Gurantz was unaware that the '576 patent claims had been amended during reexamination to require *digital* channel stacking specifically, and he agreed that the state of the art in 2001 did not enable *digital* channel stacking. *See* Ex. B at 87:5-10, 132:22-133:12.

[2] All cited exhibits are attached to the Declaration of T. Bervik, which is submitted concurrently with this motion.

1  distribution than the switching technologies most directly involved in this case.
2      This is not to say that Old Entropic and DISH did not have a relationship in
3  the early 2000s.  To the contrary, Old Entropic was an important and trusted vendor
4  to DISH for Old Entropic's MoCA products.  *See id.* at 52:2-14.  Moreover, as part
5  of that relationship, DISH ███████████████████
6  ███████████████████████ and worked openly and collaboratively with Old
7  Entropic on product development.  *See id.* at 48:16-49:13.  Old Entropic's founders
8  testified that they ███████████████████████████
9  ███████████████████████████████████████
10 specifically because they had no intention of ever ████████████
11 █████████████.  *See id.* at 156:12-157:11, 220:23-221:9.
12     Old Entropic acquired another DISH vendor, RF Magic, in late 2007.  RF
13 Magic, unlike Old Entropic, manufactured integrated circuits that used the types of
14 band stacking, band translation, and—eventually—channel stacking technologies
15 relevant to this case, as explained in DISH's proposed amended answer.  *See* Second
16 Amended Answer at CC ¶¶ 52, 74.  At the time of the acquisition, ████████
17 ███████████████████████████████████████
18 ███████████████████████████████████████
19 ███████████████████████████████████████
20 ███████████████████████████████████████.  *Id.* at
21 CC ¶¶ 53-54, 75-76.
22     DISH (through its predecessor, EchoStar Technologies Corporation) and Old
23 Entropic therefore ████████████████████████████
24 ███████████████████████████████████████
25 ███████████████████████████████████████
26 ███████████████████████████████████████
27 ███████████████████████████████████████
28 █████████.  *See* Second Amended Answer at CC ¶¶ 54-55, 76-77.

There is no evidence that Old Entropic revealed to DISH at the time that it had any channel stacking patents (much less any supposed belief that DISH practices them), even though this would have been the obvious time to do so ███ ███. *Id.* at CC ¶¶ 54-59, 76-81. Indeed, it appears that Old Entropic instead *affirmatively* led DISH to believe that Old Entropic had *no* channel stacking patents.

For instance, Old Entropic provided ████████████████████████████████████████████████████████████████████████████████████████████." Ex. C at 6 (emphasis added). ████████████████████████. *Id.* ████████████████████████████████████████████████. *See* Ex. D at 16. ████████████████████████████████████████████████████████████████. *See* Ex. E. ████████████████, Old Entropic's representations ████████ lead to the unavoidable conclusion that Entropic had no relevant channel stacking patents.

Even further, Old Entropic (and then MaxLinear, after it acquired Old Entropic) for many years ████████████████████████████████████████. *See* Ex. E at 1 ████████████████████████████████████████), 4 (████████████████████████). Never once when ████████████████████ did Old Entropic or MaxLinear ever suggest that they had channel stacking patents of their own that were applicable to DISH products or systems, or that they would enforce against DISH because, for

-6-

instance, they believed DISH to be infringing them. Allegations regarding these facts are included in DISH's proposed Second Amended Answer at CC Paragraphs 57-58 and 80-81.

This was not the only time that Old Entropic or MaxLinear behaved in a way that confirmed that they would never assert the '576 or '715 patents against DISH. For instance, in 2012, DISH decided to develop a new digital channel stacking product. *See* Second Amended Answer at CC ¶¶ 60, 82; Ex. F. In furtherance of that effort, it asked its vendors, including Old Entropic (which had long since acquired RF Magic) to provide proposals for this new product. Ex. F at 2. DISH did not want to run afoul of anyone's intellectual property with this product, however, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Old Entropic submitted a proposal, but—as described in DISH's proposed amended answer—it *still* did not identify the '576 and '715 patents. Second Amended Answer at CC ¶¶ 61-62, 83-84; Ex. G. Old Entropic's silence at this time, when DISH had ████████████████████████████████████████████████ ████, should again constitute a waiver or estop its predecessors from enforcing the '576 and '715 patents against DISH.

For its part, as described in the Amended Answer, DISH relied on Old Entropic's silence in developing its digital channel stacking products and systems—*i.e.*, the very products and systems accused of infringement here. *See* Second Amended Answer at CC ¶ 62. Had Old Entropic or MaxLinear clearly communicated at any one of the many junctures where they could have done so that they believed that DISH practices the '576 and/or '715 patents, DISH could have taken steps at the time to address that issue. For instance, DISH could have confirmed that those patents are not valid or not infringed, taken a license (as Mr. Foley testified that ████████████████████████████████████, *see* Ex. H at

81:12-82:9), and/or designed around those patents. Old Entropic and MaxLinear's silence deprived DISH of the opportunity to pursue those paths.

Old Entropic and MaxLinear's conduct and/or silence, as described above, communicated to DISH that, to the extent that they had any applicable patents relating to channel switching technologies, they did not believe that DISH infringed those patents and/or that they would not enforce those patents against DISH.[3]

## IV. LEGAL STANDARD

The current case schedule and this Court's standard Civil Trial Scheduling Order do not establish a separate deadline for amendment of pleadings. A party may, however, amend the pleadings if it shows good cause under Federal Rule of Civil Procedure 16 to modify the scheduling order and if the standards for amendment of the pleadings under Federal Rule of Civil Procedure 15(a) are satisfied. *Gould v. Motel 6, Inc.*, No. 09-cv-8157-CAS, 2011 WL 759472, at *2 (C.D. Cal. Feb. 22, 2011).

Rule 15 provides that, after a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). Courts take into account five nonexclusive factors, which overlap significantly with the Federal Rule of Civil Procedure Rule 16 analysis for modification of scheduling orders, when resolving motions for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether a party has previously amended. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Foman v. Davis*, 371 U.S. 178 (1962). Amongst these five,

---

[3] Apart from the estoppel and waiver issues, DISH additionally proposes to make several other amendments that should not be controversial, including to eliminate affirmative defenses and counterclaims specific to a third asserted patent that Entropic has dropped, the '008 patent (*see* Dkt. 281 (stipulation of dismissal for the '008 patent), and to fix a few nits and formatting issues. *See, e.g.*, Second Amended Answer at ¶¶ 1, 13, 35, and 80-100.

courts sometimes stress prejudice to the opposing party as the key factor. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). As the Ninth Circuit has explained, the policy in favor of granting leave to amend is "to be applied with extreme liberality" and "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* at 1051-52.

### V. ARGUMENT: DISH SHOULD BE GRANTED LEAVE TO AMEND

Application of the five-factor test here demonstrates good cause for granting leave to amend.

#### A. Factors 1 & 2: DISH Has Not Acted In Bad Faith Or With Undue Delay

As to the first and second factors, there is no bad faith or undue delay here. DISH seeks to amend its answer and counterclaims to assert theories that relate to facts dating back almost 20 years (or more, in some instances) and involving witness who mostly or entirely no longer work at DISH, or who never did. For instance, information discovered at recent depositions of former Old Entropic executives is part of the basis of these claims. *See generally* Bervik Decl., Exs. B and H (deposition transcripts of former Old Entropic employees). This District commonly considers information that a party uncovered during discovery to be "good cause" for supplementing its pleadings. *See Applied Med. Res. Corp. v. Tyco Healthcare Grp.*, No. 11-cv-1406-JVS, 2013 WL 12472050, at *3, *6 (C.D. Cal. Jan. 14, 2013) (permitting defendant to add new defenses based on facts uncovered during discovery); *Immunex Corp. v. Sanofi*, No. 17-cv-2613-SJO, 2017 WL 5641109, at *2-3 (C.D. Cal. Oct. 24, 2017). In fact, if a party were to present a proposed amendment before relevant facts are found, a Court could reject such proposed amendment as futile. *See DCD Programs, Ltd. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987).

DISH seeks to amend while the case is still at an early stage, before this Court has issued a claim construction order and before Entropic has deposed any of

DISH's 30(b)(6) witnesses. DISH's amendments are made to provide additional clarity on the equitable estoppel and implied waiver defenses and associated counterclaims already foreshadowed through DISH's more general Eighth Defense ("As an eighth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines."). There is no undue delay or bad faith in seeking to amend at this early stage based at least in part on newly arisen and/or discovered facts.

### B. Factor 3: Permitting Amendment Does Not Prejudice Entropic

For the third—and most important—factor, there is no prejudice to Entropic from DISH amending its answer at this early stage of the proceedings. Fact discovery is wide open, and the Court has not yet set a deadline for its close. Entropic has fully participated in the few depositions so far relating to estoppel and waiver issues, including by asking questions on these topics, and Entropic still has a substantial amount of time to take additional discovery on these issues. Additionally, Entropic has not yet deposed DISH witnesses on the vast majority of its 30(b)(6) topics (including all non-technical topics) and has the opportunity to test the equitable estoppel and implied waiver theories that DISH seeks to add, to the extent that DISH witnesses have knowledge about them.

When DISH conferred with New Entropic about this motion, New Entropic complained that it is prejudiced by the timing of DISH's amendment because it did not know of DISH's equitable defenses before Mr. Gurantz and Mr. Foley were deposed, such that New Entropic could have examined those witnesses about DISH's defenses. But New Entropic cannot seriously profess surprise. DISH long ago—in the context of the transfer briefing—put New Entropic on notice that DISH was exploring and hoped to raise "DISH-specific defenses … that arise from DISH's historical relationship with the original operating Entropic entity." Dkt. 25

at 13.

Substantively, the case is at an early stage because the Court has not yet issued a claim construction order and has not yet set a trial date for this case. *See* Dkt. No. 176. DISH informed New Entropic in January that it would seek leave to add its equitable defenses, and New Entropic is free to take whatever discovery that it wants about them, including from Mr. Gurantz (*i.e.*, one of only two witnesses that New Entropic has identified that it plans to call at trial).

### C.   Factor 4:  DISH's Amendments Are Not Futile

Fourth, the amendments here are not futile. The doctrine of equitable estoppel is an equitable defense that, when established, bars all relief on a claim. *See A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (abrogated on other grounds). Equitable estoppel has three elements: (1) "[t]he actor … communicates something in a misleading way, either by words, conduct or silence"; (2) "[t]he other relies upon that communication;" and (3) "the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct." *Id.* The effect of equitable estoppel is "a license to use the invention that extends throughout the life of the patent." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, LLC, 807 F.3d 1311, 1332 (Fed. Cir. 2015). Equitable estoppel is not a personal defense, and it can prevent even successors-in-interest to a patent (such as New Entropic here) from asserting claims that contradict misleading statements or silence made by a prior owner or assignee (such as Old Entropic and MaxLinear here). *See High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1331 (Fed. Cir. 2016).

The doctrine of implied waiver is closely related to equitable estoppel, and the same underlying facts may support the application of both. *See Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1021 n.8 (Fed. Cir. 2008). Implied waiver occurs when a patent owner's conduct is "so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Id.* at 1020

(citing with approval district court advisory jury instruction); *see also Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011).  Two elements must be shown to support a finding of implied waiver:  (1) the patentee had a duty to disclose the patents; and (2) the patentee breached that duty.  *See Qualcomm*, 548 F.3d at 1011-12; *see also Universal Elecs. Inc. v. Logitech, Inc.*, No. 11-cv-1056-JVS, 2012 WL 13028642 at *12 (C.D. Cal. May 9, 2012) (implied waiver is not limited to standard setting organization ("SSO") activities).

Here, DISH has identified facts that are sufficient to support the defenses of equitable estoppel and implied waiver, as described above and shown in its proposed Second Amended Answer.

**D.     Factor 5:  DISH's Number Of Amendments Are Reasonable**

The final factor, number of prior amendments, also favors leave to amend. DISH has only amended its answer once before, largely to address new issues created by the transfer of the case to this District, where venue had become improper, rather than to add new theories.  This is not a situation where DISH has made serial amendments.  Instead, DISH is raising targeted defenses and counterclaims based on recently uncovered facts that plainly show that DISH's equitable estoppel theory is warranted.

The Ninth Circuit's five-factor test thus heavily favors granting DISH's motion.  DISH respectfully requests the Court grant leave for DISH to file its proposed Second Amended Answer, which is attached and a redlined version of which is attached as Exhibit A.

| | |
|---|---|
| Dated: February 16, 2024 | **PERKINS COIE LLP**<br><br>By: */s/ Amanda Tessar*<br><br>Matthew C. Bernstein, Bar No. 199240<br>MBernstein@perkinscoie.com<br>PERKINS COIE LLP<br>11452 El Camino Real, Ste 300<br>San Diego, California 92130-2080<br>Telephone: +1.858.720.5700<br>Facsimile: +1.858.720.5799<br><br>Amanda Tessar (admitted pro hac vice)<br>ATessar@perkinscoie.com<br>Trevor Bervik (admitted pro hac vice)<br>TBervik@perkinscoie.com<br>PERKINS COIE LLP<br>1900 Sixteenth Street, Suite 140<br>Denver, Colorado 80202-5255<br>Telephone: +1.303.291.2300<br>Facsimile: +1.303.291.2400<br><br>Daniel T Keese, Bar No. 280683<br>DKeese@perkinscoie.com<br>PERKINS COIE LLP<br>1120 NW Couch Street 10th Floor<br>Portland, OR 97209-4128<br>Telephone: +1.503.727.2000<br>Fax: +1.503.727.2222<br><br>Adam G. Hester, Bar No. 311206<br>AHester@perkinscoie.com<br>PERKINS COIE LLP<br>33 East Main Street Suite 201<br>Madison, WI 53703-3095<br>Tel: +1.650.838.4311<br>Fax: +1650.838.4350<br><br>**ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.** |