# Exhibit A

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

1   Matthew C. Bernstein, Bar No. 199240
2   MBernstein@perkinscoie.com
    PERKINS COIE LLP
3   11452 El Camino Real, Ste 300
    San Diego, California 92130-2080
4   Telephone:  +1.858.720.5700
    Facsimile:   +1.858.720.5799
5
6   Amanda Tessar (admitted *pro hac vice*)
    ATessar@perkinscoie.com
7   PERKINS COIE LLP
    1900 Sixteenth Street, Suite 1400
8   Denver, Colorado 80202-5255
    Telephone:  +1.303.291.2357
9   Facsimile:   +1.303.291.2457

10  **ATTORNEYS FOR DEFENDANTS DISH NETWORK**
11  **CORPORATION, DISH NETWORK L.L.C., AND**
    **DISH NETWORK SERVICE L.L.C.**
12

13              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
14

| 15 | ENTROPIC COMMUNICATIONS, LLC, | No. 2:22-cv-07775-JWH-~~JEM~~KES |
|---|---|---|
| 16 | Plaintiff, | **DISH ~~NETWORK~~'S** |
| 17 | v. | **~~FIRST~~SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |
| 18 | DIRECTV, LLC and AT&T SERVICES, INC., | |
| 19 | Defendants. | JURY TRIAL DEMANDED |
| 20 | | |
| 21 | ENTROPIC COMMUNICATIONS, LLC, | No. 2:22-cv-07959-JWH-~~JEM~~KES Case Transferred from E.D. Texas |
| 22 | Plaintiff, | (2:22-cv-76-JRG) |
| 23 | v. | |
| 24 | DISH NETWORK CORPORATION, DISH NETWORK L.L.C., and DISH | JURY TRIAL DEMANDED |
| 25 | NETWORK SERVICE L.L.C., | |
| 26 | Defendants. | |

27
28

-1-

Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants") hereby provide this ~~First~~Second Amended Answer to the First Amended Complaint for Patent Infringement ("Amended Complaint") filed by Entropic Communications, LLC ("Entropic" or "Plaintiff") and set forth its ~~First~~Second Amended Affirmative Defenses and Counterclaims as follows:

## GENERAL DENIAL

Unless specifically admitted below, DISH denies each and every allegation in the Amended Complaint.  To the extent headings of the Amended Complaint are construed as allegations, they are each denied.

## NATURE OF THE ACTION

1.      The allegations of paragraph 1 contain legal conclusions to which no response is required.  To the extent a response is required, DISH admits that Entropic purports to assert patent infringement claims against DISH involving United States Patent Nos. 7,130,576 ("the '576 patent")~~,~~ and 7,542,715 ("the '715 ~~patent"), and 8,792,008 ("the '008~~ patent") (collectively, "the patents-in-suit").  Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), DISH and Entropic stipulated to dismissal with prejudice of all claims arising from United States Patent No. 8,792,008 ("the '008 patent") (Dkt. 281), mooting the need for DISH to respond to allegations relating to that patent.  DISH denies all remaining allegations of paragraph 1.

## THE PARTIES

2.      DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 and, on that basis, denies them.

3.      DISH Network Corporation admits the allegations of paragraph 3.

4.      DISH Network L.L.C. admits the allegations of paragraph 4.

-2-

5.      DISH Network L.L.C. admits the allegations of paragraph 5.

6.      Dish Network Service L.L.C. admits the allegations of paragraph 6.

7.      Dish Network Service L.L.C. admits the allegations of paragraph 7.

8.      DISH admits the presence of retailers providing DISH Network L.L.C. services in Longview, Emory, Athens, Palestine, Wills Point, Sulphur Springs, Texarkana, and Lufkin.  These retailers are separate companies that are not affiliates of DISH.  DISH denies all remaining allegations contained in paragraph 8.

9.      DISH admits the presence of Local Receive Facilities utilized by DISH Network L.L.C. in the Eastern District of Texas for purposes of supporting DISH Network L.L.C. services.  DISH denies all remaining allegations contained in paragraph 9.

10.     DISH admits that Local Receive Facilities are used by DISH Network L.L.C. to provide services to DISH customers. DISH denies that Local Receive Facilities have any relevance to the issues in dispute in this case. DISH denies the remaining allegations of paragraph 10.

11.     DISH denies the allegations of paragraph 11.

**JURISDICTION AND VENUE**

12.     DISH admits that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  DISH denies all remaining allegations contained in paragraph 12.

13.     DISH admits that it will not contest for the purposes of this action that DISH Network L.L.C. and Dish Network Service L.L.C. were subject to personal jurisdiction the Eastern District of Texas and, are subject to personal jurisdiction in this Court, and that they transact business in the State of Texas.  DISH denies all remaining allegations contained in paragraph 13.

14.     DISH admits that DISH Network L.L.C. provides certain services through the DISH Network L.L.C. website.   DISH denies all remaining allegations contained in paragraph 14.

15.     801 K Avenue, Plano, Texas 75074 is an address where a multi-unit strip-mall is located.  That strip mall houses a number of different and distinct businesses, including an authorized DISH Network L.L.C. retailer.  That retailer is a separate company from (*i.e.*, not an affiliate of) DISH where it is possible for customers to sign up for DISH Network L.L.C. services.   DISH denies the remaining allegations contained in paragraph 15.

16.     DISH admits that DISH Network L.L.C. and/or Dish Network Services L.L.C. supply devices to customers in this District and the Eastern District of Texas in some instances, as they do to customers in many or all Districts of the United States. On information and belief, 801 K Avenue, Plano, Texas 75074 is an address where a multi-unit strip-mall is located.  That strip mall houses a number of different and distinct businesses, including an authorized DISH Network L.L.C. retailer.  That retailer is a separate company from (*i.e.*, not an affiliate of) DISH where it is possible for customers to sign up for DISH Network L.L.C. services. DISH denies the remaining allegations contained in paragraph 16.

17.     DISH denies that venue is proper in this District (the Central District of California) pursuant to 28 U.S.C. §1400(b).   DISH denies that it has committed or continues to commit acts of patent infringement in this District. DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business or reside in this District. To the extent paragraph 17 contains additional allegations, DISH denies them.

18.     DISH denies the allegations of paragraph 18.

19.   DISH admits the presence of a Dish Network Service L.L.C. facility at 2100 Couch Drive, McKinney, Texas 75069, although it denies that any activities at this facility are relevant to the issues in dispute in this case.  DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California).  To the extent paragraph 19 contains additional allegations, DISH denies them.

20.   DISH admits that it is possible for customers to sign up for DISH Network L.L.C. services at an authorized retailer location at 801 K Avenue Suite #2, Plano, Texas 75074, and DISH admits that the retail store located at 801 K Avenue, Plano, Texas 75074 is a "Premier Local Retailer."  DISH denies the characterization of this retailer as a "DISH retail store."  DISH denies that it has retail stores in this District (the Central district of California).  DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California).  To the extent paragraph 20 contains additional allegations, DISH denies them.

21.   For the purposes of this action, DISH does not contest that residents of this District and the Eastern District of Texas receive DISH Network L.L.C. advertisements.  DISH denies that DISH Network L.L.C. advertisements are uniquely or specifically targeted to this District in ways different than it targets advertisements to various locations throughout the United States.  To the extent paragraph 21 contains additional allegations, DISH denies them.

22.   DISH denies that the named DISH entities (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) have a regular and established place of business in this District (the Central District of California), but does not contest that one or more DISH entities conduct business in this District, although it is unclear what it means that they or any other entity

-5-

"continues" to do so.  To the extent paragraph 22 contains additional allegations, DISH denies them.

## THE PATENTS-IN-SUIT

23.     DISH admits that the '576 patent is entitled "Signal Selector and Combiner for Broadband Content Distribution."   The remaining allegations contained in paragraph 23 call for legal conclusions and, on that basis, DISH denies them.

24.     DISH admits that a Reexamination Certificate was issued by the United States Patent and Trademark Office on August 11, 2009.

25.     DISH admits that a document appearing to be the '576 patent is attached to the Amended Complaint as Exhibit A.  The remaining allegations contained in paragraph 25 call for legal conclusions and, on that basis, DISH denies them.

26.     DISH admits that the '715 patent is entitled "Signal Selector and Combiner for Broadband Content Distribution."  DISH admits that a document appearing to be the '715 patent is attached to the Amended Complaint as Exhibit B.   The remaining allegations contained in paragraph 26 call for legal conclusions and, on that basis, DISH denies them.

27.     DISH admits that the '008 patent is entitled "Method and Apparatus for Spectrum Monitoring."  DISH admits that a document appearing to be the '008 patent is attached to the Amended Complaint as Exhibit C.  The remaining allegations contained in paragraph 27 call for legal conclusions and, on that basis, DISH denies them.

28.     The allegations contained in paragraph 28 call for legal conclusions and, on that basis, DISH denies them.

## **ENTROPIC'S LEGACY AS A SATELLITE INNOVATOR**[1]

29.     DISH denies that Entropic Communications, Inc. is the predecessor-in-interest to Entropic.   DISH lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29 and, on that basis, denies them.

30.     DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 and, on that basis, denies them.

31.     DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 and, on that basis, denies them.

32.     DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 and, on that basis, denies them

33.     DISH denies that Entropic Communications, Inc. pioneered cutting edge DBS ODU technology.   DISH lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33 and, on that basis, denies them.

34.     DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 and, on that basis, denies them.

---

[1]   The headings from Entropic's Amended Complaint are reproduced here for convenience, but, as stated above, DISH does not admit that these argumentative headings are true.   For instance, this heading appears to suggest that the plaintiff here has a legacy as an innovator.   That is incorrect.   To the extent that the original operating company Entropic Communications, Inc. had any such legacy, the newly formed (but confusingly similarly named) Entropic Communications, LLC entity is not related to that original entity other than that it has now purchased patents that were once owned by the original operating company.

35. DISH Network L.L.C. admits that it has in the past used Entropic Communications, Inc. and MaxLinear, Inc. as suppliers of components in products that Entropic now accuses of infringement. DISH lacks knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 and, on that basis, denies them.

36. DISH denies the allegations contained in paragraph 36.

### FIRST CAUSE OF ACTION
### (Infringement of the '576 Patent)

37. DISH incorporates by reference its responses to paragraphs 1 through 36 of the Amended Complaint as though fully restated herein.

38. The allegations contained in paragraph 38 call for legal conclusions and, on that basis, DISH denies them.

39. Paragraph 39 characterizes the subject matter of the '576 patent and contains legal conclusions to which no response is required. To the extent that a response is required, DISH admits that the '576 patent speaks for itself. To the extent paragraph 39 attempts to characterize technologies outside of the '576 patent, DISH denies these allegations. DISH denies the remaining allegations of paragraph 39.

40. The allegations in paragraph 40 contain legal conclusions to which no response is required. To the extent a response is required, DISH states that the '576 patent speaks for itself. DISH denies all allegations that DISH implements the features of the '576 patent. DISH denies the remaining allegations of paragraph 40.

41. DISH denies the allegations of paragraph 41.

42. DISH denies the allegations of paragraph 42

43. DISH denies the allegations of paragraph 43.

44. DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 44.

45. DISH denies the allegations of paragraph 45.

46. DISH admits that it became aware of the '576 patent at least as of the date when this suit was filed. DISH denies the remaining allegations of paragraph 46.

47. DISH denies the allegations of paragraph 47.

48. DISH denies the allegations of paragraph 48.

49. DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022. DISH admits that each of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022. DISH denies the remaining allegations of paragraph 49.

50. DISH denies the allegations of paragraph 50.

51. DISH denies the allegations of paragraph 51.

52. DISH denies the allegations of paragraph 52.

53. DISH denies the allegations of paragraph 53.

54. DISH denies the allegations of paragraph 54.

55. DISH denies the allegations of paragraph 55.

56. DISH denies the allegations of paragraph 56.

57. DISH denies the allegations of paragraph 57.

58. The allegations contained in paragraph 58 call for legal conclusions and, on that basis, DISH denies them.

## SECOND CAUSE OF ACTION
## (Infringement of the '715 Patent)

59.    DISH incorporates by reference its responses to paragraphs 1 through 58 of the Amended Complaint as though fully restated herein.

60.    The allegations contained in paragraph 60 call for legal conclusions and, on that basis, DISH denies them.

61.    Paragraph 61 characterizes the subject matter of the '715 patent and contains legal conclusions to which no response is required.  To the extent a response is required, DISH states that the '715 patent speaks for itself.  DISH denies all allegations that DISH implements the features of the '715 patent.  To the extent paragraph 61 contains additional allegations, DISH denies them.

62.    DISH denies the allegations of paragraph 62.

63.    DISH denies the allegations of paragraph 63.

64.    DISH denies the allegations of paragraph 64.

65.    DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 65.

66.    DISH denies the allegations of paragraph 66.

67.    DISH admits that it became aware of the '715 patent at least as of the date when this suit was filed.   DISH denies the remaining allegations of paragraph 67.

68.    DISH denies the allegations of paragraph 68.

69.    DISH denies the allegations of paragraph 69.

70.    DISH admits that DISH Network L.L.C. received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022. DISH admits that each of the three DISH defendants here was served with the Original Complaint

1   on or about March 10, 2022. DISH denies the remaining allegations of paragraph

2   70.

3       71.    DISH denies the allegations of paragraph 71.

4       72.    DISH denies the allegations of paragraph 72.

5       73.    DISH denies the allegations of paragraph 73.

6       74.    DISH denies the allegations of paragraph 74.

7       75.    DISH denies the allegations of paragraph 75.

8       76.    DISH denies the allegations of paragraph 76.

9       77.    DISH denies the allegations of paragraph 77.

10       78.    DISH denies the allegations of paragraph 78.

11       79.    The allegations contained in paragraph 79 call for legal conclusions

12   and, on that basis, DISH denies them.

13   **THIRD CAUSE OF ACTION**

14   **(Infringement of the '008 Patent)**

15   ~~80.~~ 80.-100.  DISH incorporates by reference its responses to paragraphs 1

16   through 79 of the Amended Complaint as though fully restated herein.  Pursuant

17   to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), DISH and Entropic stipulated

18   to dismissal with prejudice of all claims arising from United States Patent No.

19   8,792,008 ("the '008 patent") (Dkt. 281), mooting the need for DISH to respond

20   to allegations relating to that patent.

21   ~~81.    The allegations contained in paragraph 81 call for legal conclusions~~

22   ~~and, on that basis, DISH denies them.~~

23   ~~82.    Paragraph 82 characterizes the subject matter of the '008 patent and~~

24   ~~contains legal conclusions to which no response is required.  To the extent a~~

25   ~~response is required, DISH states that the '008 patent speaks for itself.  DISH~~

26   ~~denies any remaining allegations of paragraph 82.~~

27   ~~83.    DISH denies the allegations of paragraph 83.~~

28   ~~84.    DISH denies the allegations of paragraph 84.~~

85. DISH denies the allegations of paragraph 85.

86. DISH admits that certain satellite cable equipment is sometimes leased by DISH Network L.L.C. to customers in some locations. DISH denies the remaining allegations of this paragraph 86.

87. DISH denies the allegations of paragraph 87.

88. DISH admits that it became aware of the '008 patent at least as of the date when this suit was filed. DISH denies the remaining allegations of paragraph 88.

89. DISH denies the allegations of paragraph 89.

90. DISH denies the allegations of paragraph 90.

91. DISH admits that it received letters from Entropic's counsel and from Entropic's CEO on or about March 9, 2022, the day before the Original Complaint was filed on March 10, 2022. DISH admits that each of the three DISH defendants here was served with the Original Complaint on or about March 10, 2022. DISH denies the remaining allegations of paragraph 91.

92. DISH denies the allegations of paragraph 92.

93. DISH denies the allegations of paragraph 93.

94. DISH denies the allegations of paragraph 94.

95. DISH denies the allegations of paragraph 95.

96. DISH denies the allegations of paragraph 96.

97. DISH denies the allegations of paragraph 97.

98. DISH denies the allegations of paragraph 98.

99. DISH denies the allegations of paragraph 99.

100. The allegations contained in paragraph 100 call for legal conclusions and, on that basis, DISH denies them.

## JURY DEMAND

DISH demands a jury trial under Federal Rule of Civil Procedure 38 and Local Civil Rule 38-1 on all issues so triable.

## **PRAYER FOR RELIEF**

DISH denies that Entropic is entitled to any of the relief sought in the Amended Complaint or to any relief whatsoever.  To the extent that Entropic's Prayer for Relief contains any factual allegations, DISH denies them.

## **AFFIRMATIVE DEFENSES**

DISH incorporates herein by reference the admissions, allegations, and denials contained in its Answer above as if fully set forth herein.  Without assuming any burden that it would not otherwise bear and without reducing Entropic's burden on any of the claims in the Amended Complaint, DISH states the following affirmative defenses to the claims in the Amended Complaint.  DISH reserves the right to amend its affirmative defenses and to add additional affirmative defenses, including, but not limited to, any defenses revealed during discovery.

## **FIRST AFFIRMATIVE DEFENSE**
## **(Patent Exhaustion)**

As a first and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are barred, in whole or in part, to the extent that any allegedly infringing products or components thereof are supplied, directly or indirectly, to DISH by any entity or entities having an express or implied license to the Asserted Patents, and/or Entropic's claims are barred, in whole or in part, under the doctrine of patent exhaustion.  In this regard, to the extent that any of Entropic's accusations of infringement are based, in whole or in part, on Entropic Communications, Inc. or MaxLinear components, such claims are barred and exhausted.

## **SECOND AFFIRMATIVE DEFENSE**
## **(Noninfringement of the '576 Patent)**

As a second and separate affirmative defense to each and every cause of

-13-

action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '576 patent.

### THIRD AFFIRMATIVE DEFENSE
### (Invalidity of the '576 Patent)

As a third and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '576 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

### FOURTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '715 Patent)

As a fourth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '715 patent.

### FIFTH AFFIRMATIVE DEFENSE
### (Invalidity of the '715 Patent)

As a fifth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the claims of the '715 patent are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112.

### SIXTH AFFIRMATIVE DEFENSE
### (Noninfringement of the '008 Patent Equitable Defenses)

As a sixth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that it has not infringed and is not infringing (directly, contributorily, or by inducement), literally or under the doctrine of equivalents, any valid claim of the '008

-14-

~~patent~~Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines.

**SEVENTH AFFIRMATIVE DEFENSE**
**(~~Invalidity~~Unenforceability of the '~~008~~576 Patent Due to Equitable Estoppel)**

As a seventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that ~~the claims of~~ the '~~008~~576 patent ~~are invalid under 35 U.S.C. § 101 *et seq.*, including, without limitation, §§ 101, 102, 103, and 112~~is unenforceable against DISH due to equitable estoppel, as detailed in DISH's Fifth Counterclaim below, which DISH incorporates by reference.

**EIGHTH AFFIRMATIVE DEFENSE**
**(Unenforceability of the '715 Patent Due to Equitable ~~Defenses~~Estoppel)**

As an eighth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that ~~Entropic's claims for relief are barred, in whole or in part, by waiver, laches, unclean hands, fraud, and/or other equitable doctrines~~the '715 patent is unenforceable against DISH due to equitable estoppel, as detailed in DISH's Fifth Counterclaim below, which DISH incorporates by reference.

**NINTH AFFIRMATIVE DEFENSE**
**(~~Prosecution History Estoppel~~Unenforceability of the '576 Patent Due to Implied Waiver)**

As a ninth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the '576 patent is unenforceable against DISH due to implied waiver, as detailed in DISH's Sixth Counterclaim below, which DISH incorporates by reference.

**TENTH AFFIRMATIVE DEFENSE**
**(Unenforceability of the '715 Patent Due to Implied Waiver)**

As a tenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the '715 patent is unenforceable against DISH due to implied waiver, as detailed in DISH's Sixth Counterclaim below, which DISH incorporates by reference.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel)**

As an eleventh and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that the patents-in-suit cannot be enforced by Entropic under the doctrine of prosecution history estoppel and that Entropic is estopped from claiming that the patents-in-suit include the accused products.

**TWE~~N~~LFTH AFFIRMATIVE DEFENSE**
**(Limitation on Damages and Costs)**

As a ~~tenth~~twelfth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to past damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by DISH of the claims of the Asserted Patents to the extent that Entropic, any predecessor owners, and/or licensees of the Asserted Patents have not complied, during any time period, with the notice and/or marking requirements of 35 U.S.C. § 287.

**~~EL~~THIRTE~~V~~ENTH AFFIRMATIVE DEFENSE**
**(No Entitlement to Enhanced Damages)**

As ~~an eleventh~~a thirteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to enhanced damages under 35 U.S.C. § 284 or pursuant

-16-

to the Court's inherent powers.

### ~~TWELFTH~~FOURTEENTH AFFIRMATIVE DEFENSE
### (No Entitlement to Attorneys' Fees)

As a ~~twelfth~~fourteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to attorneys' fees under 35 U.S.C. § 285 or pursuant to the Court's inherent powers.

### ~~TH~~FI~~R~~FTEENTH AFFIRMATIVE DEFENSE
### (No Entitlement to a Finding of Exceptional Case)

As a ~~thirteenth~~fifteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic is not entitled to a finding that this case is exceptional under 35 U.S.C. § 285 or under the Court's inherent powers.

### ~~FOUR~~SIXTEENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

As a ~~fourteenth~~sixteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that, to the extent Entropic does not hold all substantial rights in the Asserted Patents, Entropic lacks standing to assert the claims of alleged infringement. Alternatively, other owner(s) of the Asserted Patents, if any, are indispensable parties to this action, mandating dismissal if they cannot be joined in this litigation.

### ~~FIF~~SEVENTEENTH AFFIRMATIVE DEFENSE
### (Time Limitation on Damages)

As a ~~fifteenth~~seventeenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges that Entropic's claims are statutorily limited, in whole or in part, by provisions of 35

U.S.C. § 286 establishing time limitations on damages.

### ~~S~~EI~~X~~GHTEENTH AFFIRMATIVE DEFENSE
### (Improper Venue)

As ~~a sixteenth~~an eighteenth and separate affirmative defense to each and every cause of action stated in Entropic's Amended Complaint, DISH alleges venue is not proper in the Central District of California.   Specifically, as explained in DISH's opposition to Entropic's cross-motion to transfer (Dkt. 88 at 2-6), Entropic's First Amended Complaint contains no allegations that venue is proper in this District (the Central District of California).   And venue is not proper in this District.   None of the three named DISH defendants (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) reside in this District—*i.e.*, none of the named DISH entities are headquartered or have a principal place of business in the Central District of California. The named DISH defendants (DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C.) also do not, individually or collectively, have any regular and established place of business in the Central District of California. Accordingly, venue is not proper under 28 U.S.C. § 1400(b).

### COUNTERCLAIMS

1.     The allegations ~~in~~ contained in the preceding paragraphs are incorporated herein by reference.

2.     DISH Network Corporation is a Nevada corporation and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

3.     DISH Network L.L.C. is established under the laws of the State of Colorado and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

4.     Dish Network Service L.L.C. is established under the laws of the State of Colorado and has a principal place of business at 9601 S. Meridian Boulevard, Englewood, Colorado 80112.

5.     In its First Amended Complaint, Entropic alleges that it is a Delaware limited liability company.  This is consistent with the public records that DISH has been able to locate, which indicate that Entropic Communications, LLC is a Delaware limited liability company that was formed under the laws of Delaware on March 29, 2021.

6.     Under Rule 13 of the Federal Rules of Civil Procedure, Defendants DISH Network Corporation, DISH Network L.L.C., and Dish Network Service L.L.C. (collectively, "DISH" or "Defendants"), assert the following counterclaims against Plaintiff and Counterclaim Defendant Entopic Communications, LLC ("Entropic").

7.     DISH's declaratory judgment counterclaims arise under Title 35 of the United States Code.  The Court has subject matter jurisdiction over them under 28 U.S.C. §§ 1331, 1338, 2201, and 2202 as they arise under an Act of Congress relating to patents and the Declaratory Judgment Act.

8.     The Court has personal jurisdiction over Entropic at least based on its consent to proceed in this District, including by seeking transfer to this District.

9.     Venue over DISH's counterclaims is proper, to the extent that venue over Entropic's claims is proper, under 28 U.S.C. §§ 1391(b)and 1400(b).  DISH notes, however, that it denies venue is proper for Entropic's claims and that the proper venue for these counterclaims is the District of Colorado, consistent with DISH's Motion Pursuant to 28 U.S.C. § 1404(a) to Transfer to the District of Colorado, filed April 27, 2022, in the transferred action.  The witnesses and documents relevant to Entropic's claims and DISH's counterclaims are not

located in this District but are instead located largely in Colorado and elsewhere in California.

**FIRST CLAIM FOR RELIEF**
**Noninfringement of '576 Patent**

10.    The allegations ~~in~~ contained in the preceding paragraphs are incorporated herein by reference.

11.    Entropic filed suit against DISH for alleged infringement of the '576 patent by DISH products, such as the Dish Pro Hybrid Switch Model DPH42 ("DPH42") and DISHPro Hybrid Low-Noise Block Feedhorns ("LNBFs").  As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether DISH products, including without limitation the DPH42 and DISHPro LNBFs, infringe the '576 patent.

12.    Entropic's supplemental infringement contentions also identify Signal Selector and Combiner-enabled LNB, switches, and devices that operate in a similar manner, including DISHPro Hybrid LNBFs and DPH42 switches.

13.    The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '576 patent.

14.    As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) … to an integrated receiver decoder (IRD) over a single cable connected to the ODU" and "transmitting the composite signal over the single cable from the ODU to the IRDs."  Exhibit A to Amended Complaint at 28; *see also* Exhibit D at 2; Exhibit A to Entropic's Supplemental Infringement Contentions at 2-6, 30-35.

15.     The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because there are multiple cables between an alleged outdoor unit (ODU) and an alleged integrated receiver decoder (IRD) in DISH systems.  For example, Entropic's own Exhibits illustrate a first cable and a second cable between an alleged ODU and an alleged IRD.  *See* Exhibit D at 2. Entropic attempts to side-step this issue by characterizing the cables as "a first single cable" and "a second single cable."   Notwithstanding Entropic's characterization of two "single" cables, it is clear that at least two cables exist between the alleged ODU and the alleged IRD and that two cables are not a "single" cable.

16.     As an additional nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 14 of the '576 patent at least because that claim is directed to a "method of communicating a plurality of transponder signals from a satellite outdoor unit (ODU) that receives a plurality of satellite broadband signals" and "selecting and extracting a plurality of transponder signals from the received digitized satellite broadband signals."  Exhibit A to Amended Complaint at 28; *see also* Exhibit D at 6-7; Exhibit A to Entropic's Supplemental Infringement Contentions at 2-6, 19-27.

17.     The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH products do not select and extract a plurality of transponder signals from received digitized satellite broadband signals.

18.     DISH is entitled to a judgement declaring that the accused DISH products, including, without limitation, the DPH42 and DISHPro LNBFs, do not infringe the asserted claims of '576 patent.

## **SECOND CLAIM FOR RELIEF**
## **Noninfringement of '715 Patent**

19.    The allegations ~~in~~ contained in the preceding paragraphs are incorporated by reference herein.

20.    Entropic filed suit against DISH for alleged infringement of the '715 patent by DISH products, such as the DPH42 and DISHPro Hybrid LNBFs.  As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether DISH products, including without limitation the DPH42 and DISHPro LNBFs, infringe the '715 patent.

21.    Entropic's supplemental infringement contentions also identify Signal Selector and Combiner-enabled LNB, switches, and devices that operate in a similar manner, including DISHPro Hybrid LNBFs and DPH42 switches.

22.    The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '715 patent.

23.    As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 9 of the '715 patent at least because that claim is directed to a "a signal combiner coupled to at least one frequency translator capable of combining at least two RF signals to produce a composite signal." Exhibit B to Amended Complaint at 25; *see also* Exhibit E at 9; Exhibit B to Entropic's Supplemental Infringement Contentions at 29-35.

24.    The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH products do not combine at least two RF signals to produce a composite signal.  The claims refer to a method of combining ***analog*** signals to produce a composite signal, which is not how DISH's accused products operate.

25.   DISH is entitled to a judgement declaring that the accused DISH products, including, without limitation the DPH42 and DISHPro LNBFs, do not infringe the asserted claims of '715 Patent.

### THIRD ~~CLAIM FOR RELIEF~~
### ~~Noninfringement of '008 Patent~~

~~26.   The allegations in~~ contained in the preceding paragraphs are incorporated herein by reference.

~~27.   Entropic has filed suit against DISH for alleged infringement of the '008 patent by DISH products, including the Hopper 3.  As a result, there is an actual, justiciable, substantial, and immediate controversy between DISH, on the one hand, and Entropic, on the other, regarding whether the accused DISH products, including without limitation the Hopper 3, infringe the '008 patent.~~

~~28.   The accused DISH products have not and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, willfully or otherwise, the asserted claims of the '008 patent.~~

~~29.   As a nonlimiting example, the accused DISH products do not and cannot infringe exemplary claim 3 of the '008 patent at least because the claim is directed to "receiving a signal having a bandwidth that spans from a first frequency, $F_{lo}$, to a second frequency, $F_{hi}$," "digitizing said received signal from $F_{lo}$ to $F_{hi}$ to generate a digitized signal," "selecting a first portion of said digitizing signal," "selecting a second portion of said digitized signal," and "concurrently outputting said selected first portion and said selected second portion," where the first portion is output to "a signal analyzer" and the second portion is output to "a data processor."~~

~~30.   The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a~~

second portion of the digitized signal to a data processor.  Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., from a signal spanning a first frequency to a second frequency).

31.   As a further nonlimiting example, the accused DISH products do not and cannot infringe claim 1 of the '008 patent at least because the claim is directed to "an analog to digital converter operable to digitize a received signal spanning an entire television spectrum comprising a plurality of television channels, said digitization resulting in a digitized signal," "a channelizer operable to: select a first portion of said digitized signal," "a channelizer operable to: … select a second portion of said digitized signal;" and "concurrently output said first portion of said digitized signal to said signal monitor and said second portion of said digitized signal to said data processor."

32.   The accused DISH products do not and cannot infringe this claim either directly or indirectly at least because the accused DISH product does not concurrently send a first portion of a digitized signal to a signal analyzer and a second portion of the digitized signal to a data processor.  Furthermore, the accused DISH product does not digitize the received signal as the claims require (i.e., an entire television spectrum).

33.   DISH is entitled to a judgement declaring that the accused DISH products, including without limitation the Hopper 3, do not infringe the asserted claims of the '008 Patent.

## ~~FOURTH~~ CLAIM FOR RELIEF
### Invalidity of '576 Patent

26.   ~~34.~~ The allegations ~~in~~ contained in the preceding paragraphs are incorporated by reference herein.

27.   ~~35.~~ An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '576 patent.

-24-

28.   ~~36.~~ The asserted claims of the '576 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the rule, regulations and laws related thereto, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

29.   ~~37.~~ As a nonlimiting example, the asserted claims of the '576 patent are invalid for failure to claim novel and/or nonobvious subject matter under Sections 102 and/or 103.  For instance, the asserted claims are invalid as detailed in DISH's petition for *inter partes* review in IPR2023-00394.

30.   ~~38.~~ The asserted claims are invalid as obvious in view of United States Patent Application No. 2002/0154055 ("Davis"), which qualifies as prior art under pre-AIA Section 102(e) by virtue of its priority to provisional application No. 60/284,593 filed on April 18, 2001 (before the earliest potential priority date for the '576 patent, November 7, 2001), and eventual publication on October 24, 2002.  Davis describes a satellite communication system including an interface device for distributing satellite signals, including satellite television signals, received from an outdoor unit (ODU) to a plurality of indoor units (IDUs).  The interface device converts radio frequency signals from the low noise block converters of the satellite, digitizes the signals, multiplexes and then transmits them to the IDUs over a single output cable.  While Davis does not expressly disclose communicating by an IRD to the ODU a transponder request, this was well-known in the art prior to the earliest priority date of the '576 patent.

31.   ~~39.~~ To take another example, the asserted claims are also indefinite and/or lack written description because each requires limitations reciting or depends from a claim with a limitation reciting "transmitting the composite signal over the single cable from the ODU to the IRDs," and the claim language in view of the specification does not describe a single cable from the ODU to each individual IRD.

32. 40. Similarly, to take another example, the claims are also indefinite because the limitation "selected [and extracted] transponder channel[s]" and the claim language is indefinite regarding which these transponder channels are and what the claim language encompasses.

33. 41. Additionally, to take yet another example, the asserted claims lack written description and/or enablement because of the limitation "wherein the modulation of the transponder signal is not altered by the steps of selecting, combining, and transmitting," which, in view of the specification, does not inform a person of skill in the art with reasonable certainty the scope of the claim, and a person of ordinary skill in the art to would not be able to practice the claimed invention without undue experimentation.

34. 42. DISH is entitled to a judgement declaring that the asserted claims of the '576 patent are invalid.

**FIFOURTH CLAIM FOR RELIEF**
**Invalidity of '715 Patent**

35. 43. The allegations in contained in the preceding paragraphs are incorporated by reference herein.

36. 44. An actual and justiciable controversy exists between DISH and Entropic concerning the validity of the '715 patent.

37. 45. The asserted claims of the'715 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United States Code, or the rule, regulations and laws related thereto, including without limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.

38. 46. As a nonlimiting example, the asserted claims of the '715 patent are invalid for failure to claim novel and/or nonobvious subject matter under Sections 102 and/or 103. For instance, the asserted claims are invalid as detailed in DISH's petition for *inter partes* review in IPR2023-00392. Specifically, the

asserted claims are invalid as obvious in view of Fisk (International Publication No. WO 2002/065771) and Carnero (European Patent No. EP0740434B1).  Fisk qualifies as prior art under at least pre-AIA Section 102(e) by virtue of its international filing date on February 9, 2001 designating English and its publication in English on August 22, 2002, predating the earliest potential priority date for the '715 patent (November 7, 2001).  Carnero qualifies as prior art under pre-AIA Sections 102(a) and 102(b) by virtue of its publication on October 30, 1996 more than one year prior to the earliest potential priority date for the '715 patent (November 7, 2001).  For example, Fisk discloses a video distributions system for distributing a plurality of LNB output signals from a satellite outdoor unit (ODU), a gateway in communication with the ODU at least one set top box (STB), and the gateway receiving a composite signal, decodes specific programs, and distributes the programs over a digital LAN to STBs. To the extent Fisk does not disclose all elements of the claims, Carnero discloses and/or renders the remaining elements obvious with Fisk, including:  a signal selector that receives a plurality of broadband LNB signals comprising a plurality of transponder signals, the signal selector is responsive to transponder select information transmitted by the gateway and selects a plurality of transponder signals from at least one broadband LNB signal based on the transponder select information; a frequency translator coupled to the signal selector that is capable of shifting the selected transponder signals to new carrier frequencies to produce RF signals; a signal combiner coupled to at least one frequency translator capable of combining at least two RF signals to produce a composite signal; the modulation of the composite signal is the same as the modulation of the broadband LNB signals; and a composite signal transmitted to the gateway. Fisk, which discloses a centralized server for distributing digital signals, e.g., television and video signals, throughout a multi-unit dwelling such as a hotel

where each guestroom 12 includes a TV and local control unit (LCU), in combination with Carnero, which addresses the same problem as the '715 patent, how to send preselected satellite TV channels to multiple STBs in a multiroom environment over a single cable and discloses a satellite television distribution system including signal generators (block A), signal processors (block B), and a distribution network (block C) that perform frequency shifting and generate a composite signal, renders the asserted claims obvious.

39. 47. As another example the claims are invalid as obvious in view of Japanese Patent Application No. 05-316062, which qualifies as prior art under pre-AIA Section 102(b) by virtue of its publication on November 26, 1993, before the earliest potential priority date for the '715 patent (November 7, 2001). Japanese Patent Application No. 05-316062 discloses a satellite antenna having two low noise block converters (LNBs) receiving signals of vertical and horizontal polarizations, respectively, where each polarized received signal is composed of a group of channels. A multiple signal generator combines the two polarized signals into a composite output signal by frequency translating one of the polarized signals. A receiver transmits a switching signal corresponding to a channel for selection, and a corresponding band restoration unit outputs a subset of the composite signal to the receiver. While Japanese Patent Application No. 05-316062 does not expressly describe a gateway decoding specific programs and distributing the programs over a digital local area network, it would have been obvious to do so in view of U.S. Patent No. 7,123,649 ("Smith"), which is prior art under 102(e) by virtue of its filing date of November 3, 2000 (which predates the earliest possible priority date of the '715 patent). Smith discloses a residential gateway receiving, among other things, satellite channels from an ODU and distributing them to, among other things, one or more televisions. The residential gateway has MPEG decoder and NTSC video interface capabilities.

40. 48. Similarly, to take another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of a gateway that "decodes specific programs" and the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what constitutes "specific programs."

41. 49. To take yet another example, the asserted claims are indefinite and/or lack written description because each claim requires a limitation of "a gateway in communication with the ODU and at the least one set top box (STB)," and the claim language in view of the specification does not describe such a system.

42. 50. Similarly, asserted claims 10, 11 and 12 are also indefinite and/or lack written description because each requires a limitation reciting or depends from a claim with a limitation reciting "a translation table," but the claim language in view of the specification does not inform a person of skill in the art with reasonable certainty what a "translation table" encompasses or what devices in the network that the translation table is provided to.

43. 51. DISH is entitled to a judgement declaring that the asserted claims of the '715 patent are invalid.

## SFIXFTH CLAIM FOR RELIEF
### Invalidity of '008 Patent Unenforceability of '576 and '715 Patents Due to Equitable Estoppel

44. 52. The allegations in contained in the preceding paragraphs are incorporated by reference herein.

45. 53. An actual and justiciable controversy exists between DISH and Entropic concerning the validity enforceability of the '008 patent 576 and '715 patents.

54. The asserted claims of the '008 patent are invalid for failure to meet one or more of the conditions for patentability specified in Title 35 of the United

1  ~~States Code, or the rule, regulations and laws related thereto, including without~~

2  ~~limitation, 35 U.S.C. §§ 101, 102, 103 and/or 112.~~

3  ~~55.    For example, the asserted claims of the '008 patent are invalid for~~

4  ~~failure to claim novel and/or nonobvious subject matter under Sections 102~~

5  ~~and/or 103, including as detailed in DISH's petition for *inter partes* review in~~

6  ~~IPR2023-00393.  By way of nonlimiting example, the asserted claims are invalid~~

7  ~~as anticipated and/or obvious in view of U.S. Patent Application No.~~

8  ~~2007/0286311 ("Coyne"), which qualifies as prior art under pre AIA Section~~

9  ~~102(b) by virtue of its publication on December 13, 2007, more than a year~~

10  ~~before the earliest potential priority date for the '008 patent (September 8, 2011).~~

11  ~~Coyne discloses a communications system, e.g., a satellite communications~~

12  ~~system, that receives multiple channels, digitizes the signals using an ADC,~~

13  ~~channelizes the signal using a channelizer, and allows for information to be~~

14  ~~transmitted back from the downstream interface module/devices.  Figure 2 of~~

15  ~~Coyne, set forth below provides an example system having a multi channel~~

16  ~~receiver, an ADC to digitize the received signals/spectrum, a channelizer that~~

17  ~~separates the digitized spectrum/signals into channels, and an interface module~~

18  ~~that transmits one or more portions of the signal to downstream devices and~~

19  ~~further can receive return outputs from the downstream devices and transmit~~

20  ~~them back using modulator 270 and antenna 280.~~

21  46.    The equitable doctrine of equitable estoppel precludes Entropic from

22  enforcing any claim of the '576 and '715 patents against DISH.

23  47.    Entropic and/or prior assignees of the '576 and '715 patents

24  including, *inter alia*, Entropic Communications, Inc. and MaxLinear, Inc.,

25

26

27

28



through their conduct, statements, and/or misleading silence, led DISH (including DISH predecessor EchoStar Technologies Corporation, which is collectively referred to here—for purposes of DISH's equitable defenses—with DISH as "DISH")[2] to believe that there would be no allegations of patent infringement against DISH related to the subject matter of the '576 and '715 patents.  DISH relied on such representations and/or omissions and would be prejudiced if Entropic is allowed to enforce the '576 and/or '715 patents against DISH.

48.     The '576 and '715 patents claim priority to an application filed in 2001 and were originally assigned to the entity "Entropic Communications, Inc." ("Old Entropic").   *See* Exhibit A to Amended Complaint at 2; Exhibit B to Amended Complaint at 2.  In its Amended Complaint, Plaintiff Entropic ("New Entropic") claims that DISH's channel-stacking switches (*e.g.*, the DPH42) and LNBs (*e.g.*, the DPH LNBFs) infringe the asserted claims of the '576 and '715 patents.   *See* Exhibit D to Amended Complaint at 2; Exhibit E to Amended Complaint at 2.

49.     According to the deposition testimony of the lead inventor of the '576 and '715 patents, Itzhak Gurantz, these patents came out of brainstorming sessions around the time Old Entropic was founded and a business plan for Old Entropic was under development.  Mr. Gurantz additionally testified that Old Entropic never used the subject matter of the '576 or '715 patents in any product, at least until Old Entropic acquired the expertise and technology of another company, RF Magic Ltd. ("RF Magic").

---

[2]  EchoStar Technologies Corporation was renamed "EchoStar Technologies L.L.C." in 2008.  In 2017, DISH acquired EchoStar Technologies L.L.C. as part of its acquisition of all direct broadcast satellite ("DBS") assets from EchoStar.  As part of the acquisition, "EchoStar Technologies L.L.C." was renamed "DISH Technologies L.L.C."

50.     It is well known in the satellite television industry that DISH has long been a leader in the development of both channel stacking technology and its precursor technologies.   Old Entropic itself admitted that two precursor technologies, *i.e.*, band stacking and band translation, form the basis of channel stacking and ███████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████. DISH owns a robust portfolio of patents directed to band stacking, band translation, and channel stacking.

51.     As part of DISH's strategy in building out a healthy ecosystem in the satellite television industry, DISH routinely invested in early-stage companies. As one example, DISH provided ████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████. At no point during the many years of collaborative relationship between DISH and Old Entropic did Old Entropic ever identify the '576 and '715 patents to DISH, much less suggest that DISH infringes them or owed Old Entropic royalties upon them.

52.     Before Old Entropic acquired RF Magic in 2007, RF Magic supplied DISH with integrated circuits that used band stacking and/or band translation technologies, including the RF5000 integrated circuit.   These RF Magic integrated circuits were used in switches that were part of the Outdoor Units ("ODUs") of DISH satellite systems.   While RF Magic was responsible for the manufacture of these circuits, DISH engineers developed much of the underlying band stacking and/or band translation technologies.   RF Magic also manufactured integrated circuits that performed analog channel stacking, such as the RF5200, though DISH did not use these integrated circuits.   Old Entropic did not manufacture or put any ODU chip on the market that performed band stacking,



band translation, and/or channel stacking until it acquired RF Magic.  DISH, therefore, did not purchase any such ODU chip from Old Entropic until after Old Entropic acquired RF Magic.

53.    Before Old Entropic acquired RF Magic,

54.

55.

56.    ~~Other references directed to satellite television systems were well
known, including (by way of nonlimiting example) U.S. Patent No. 7,788,684
("Petrovic"), which was issued August 31, 2010 and discloses a media
monitoring, management and information system that monitors transmissions of
media content, including transmissions of broadcast, satellite, network, and cable
television and radio programs, and to monitor quality of a received transmission
channel's characteristics, such as SNR or dropped packet rate..~~

57.    ~~The Coyne reference alone and/or in combination with the Petrovic
reference and/or other references and knowledge of a person of skill in the art
anticipate and/or render obvious the asserted claims of the '008 patent.~~

58.    ~~The asserted claims are also indefinite and/or lack written
description.  Each requires limitations reciting or depends from a claim with
limitations reciting "analyze said digitized signal to determine a characteristic of
said digitized signal" / "said selected first portion is output to a signal analyzer~~

-34-

1   which analyzes said selected first portion to determine one or more

2   characteristics of the received signal" of a signal or a portion of a signal and a to

3   "report said determined characteristic to a source of said received

4   signal"/"reports said determined one or more characteristics to a source of said

5   received signal," and the claim language in view of the specification does not

6   describe such a system.  On information and belief, Old Entropic's failure to

7   identify the '576 and '715 patents (or the applications that led to them) █████

8   ████████████████████████████████ was deliberate (*e.g.*, because

9   it never intended to assert those patents against DISH and/or because it did not

10  attribute any value to them) at least because Old Entropic was aware of its own

11  patent assets.  Old Entropic misled DISH through Old Entropic's silence about

12  both the existence of the asserted patents and the fact (perhaps unknown to Old

13  Entropic at the time) that those patents would ultimately be asserted against

14  DISH.

15        59.   Similarly, the asserted claims also indefinite and/or lack written

16  description because they include a limitation or depend from a claim reciting a

17  limitation directed to a "data processor operable to process a television channel

18  to recover content"/ "a data processor for recovery of data carried on one or more

19  of said plurality of channels," but the claim language in view of the specification

20  does not inform a person of skill in the art with reasonable certainty what

21  constitutes a "data processor" or "recovery of data." █████████████████

22  ████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26  █████████████████████████████

27

28

60.     Several years later, while developing its DISH Pro Hybrid products, on or around May 26, 2012, DISH sent a proposal to various vendors, including Old Entropic, expressing that DISH was seeking bids on channel stacking-capable integrated circuits that DISH would use in future products.  As part of this proposal, DISH instructed ███████████████████████ █████████████████████████████████████████████████████ ████████████████████████████████████████.

61.      Old Entropic responded to DISH's proposal and, on July 16, 2012, providing DISH with a letter and PowerPoint presentation detailing Old Entropic's bid.   ████████████████████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████.

62.     Relying on Old Entropic's failure to identify any intellectual property associated with channel stacking technology, despite the many times and opportunities that Old Entropic had to do so (and should have done so), DISH proceeded working with its vendors to develop integrated circuits for use in DISH Pro Hybrid products.  Relying on Old Entropic's representations and silences over the years, DISH expended substantial time and resources preparing for the commercial launch of its DISH Pro Hybrid products, including the DPH42 switch and DPH LNBFs that New Entropic now accuses of infringing the '576 and '715 patents.

63.     In short, Old Entropic (and then MaxLinear after it) had multiple opportunities where they could, and should, have disclosed the '576 and '715 patents to DISH.  These include the times when DISH was ███████████████ ████████████████████████, when Old Entropic and DISH ███████ █████████████████████████████████████████████████████ ████████████████, when Old Entropic and MaxLinear then spent years

-36-

1 ███████████████████████████████████████████████████

2 when DISH announced that it intended to ████████████████████████

3 ██████, when DISH invited Old Entropic to ████████████ *and* identify its

4 █████████████████████████████████████████████████████

5 ██████████, and when Old Entropic ██████████████████████. The

6 failure to speak up to DISH about the now-asserted patents was misleading, and

7 DISH relied on Old Entropic's misleading statements and omissions when DISH

8 pursued development of the now-accused products and systems.

9       64.    DISH will be materially harmed if New Entropic is permitted to

10 proceed with its claim that DISH infringes the '576 or '715 patents.

11      65.    DISH is entitled to a judgement declaring that the asserted claims of

12 the '576 and '715 patents are unenforceable against DISH due to equitable

13 estoppel.

14 **SIXTH CLAIM FOR RELIEF**
**Unenforceability of '576 and '715 Patents Due to Implied Waiver**

15

16      66.    The allegations contained in the preceding paragraphs are

17 incorporated by reference herein.

18      67.    An actual and justiciable controversy exists between DISH and

19 Entropic concerning the enforceability of the '576 and '715 patents.

20      68.    The equitable doctrine of implied waiver precludes Entropic from

21 enforcing any claim of the '576 and '715 patents against DISH.

22      69.    The conduct, statements, and/or misleading silence of Entropic

23 and/or prior assignees of the '576 and '715 patents including, inter alia, Entropic

24 Communications, Inc. and MaxLinear, Inc., have been so inconsistent with

25 respect to an intent to enforce its right to assert the claims of the '576 and '715

26 patents that it induced in DISH a reasonable belief that the enforcement right of

27 the owner of the '576 and '715 patents were relinquished.

28

70.     The '576 and '715 patents claim priority to an application filed in 2001 and were originally assigned to Old Entropic.  *See* Exhibit A to Amended Complaint at 2; Exhibit B to Amended Complaint at 2.  In its Amended Complaint, New Entropic claims that DISH's channel-stacking switches (*e.g.*, the DPH42) and LNBs (*e.g.*, the DPH LNBFs) infringe the asserted claims of the '576 and '715 patents.  *See* Exhibit D to Amended Complaint at 2; Exhibit E to Amended Complaint at 2.

71.     According to the deposition testimony of the lead inventor of the '576 and '715 patents, Itzhak Gurantz, these patents came out of brainstorming sessions around the time Old Entropic was founded and a business plan was under development.  Mr. Gurantz additionally testified that Old Entropic never used the subject matter of the '576 or '715 patents in any product, at least until Old Entropic acquired the expertise and technology of another company, RF Magic.

72.     It is well known in the satellite television industry that DISH has long been a leader in the development of both channel stacking technology and its precursor technologies.  Old Entropic itself admitted that two such precursor technologies, *i.e.*, band stacking and band translation, form the basis of channel stacking  and ███████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████  DISH owns a robust portfolio of patents directed to band stacking, band translation, and channel stacking.

73.     As part of DISH's strategy in building out a healthy ecosystem in the satellite television industry, DISH routinely invested in early-stage companies. As one example, DISH provided  ███████████████████████████████
███████████████████████████████████████████████████

-38-

█████████████████████████████. At no point during the many years of collaborative relationship between DISH and Old Entropic did Old Entropic ever identify the '576 and '715 patents to DISH, much less suggest that DISH infringes them or owed Old Entropic royalties upon them. Upon information and belief, Old Entropic had a duty to disclose the technologies that it was developing, including the filing of patents or patent applications on that technology (including the '576 and '715 patents), to DISH at least due to ██████ ████████████████████.

74. Before Old Entropic acquired RF Magic in 2007, RF Magic supplied DISH with integrated circuits that used band stacking and/or band translation technologies, including the RF5000 integrated circuit. These RF Magic integrated circuits were used in switches that were part of the Outdoor Units ("ODUs") of DISH satellite systems. While RF Magic was responsible for the manufacture of these circuits, DISH engineers developed much of the underlying band stacking and/or band translation technologies. RF Magic also manufactured integrated circuits that performed analog channel stacking, such as the RF5200, though DISH did not use these integrated circuits. Old Entropic did not manufacture or put any ODU chip on the market that performed band stacking, band translation, and/or channel stacking until it acquired RF Magic. DISH, therefore, did not purchase any such ODU chip from Old Entropic until after Old Entropic acquired RF Magic.

75. Before Old Entropic acquired RF Magic, ███████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

-39-



80.

81.    On information and belief, Old Entropic's failure to identify the '576 and '715 patents (or the applications that led to them) ███████████████████ ████████████████████████████████ was deliberate (e.g., because it never intended to assert those patents against DISH and/or because it did not attribute any value to them) at least because Old Entropic was aware of its own patent assets.  Old Entropic had a duty to disclose the '576 and '715 patents if it wanted to retain the right to later assert those patents against DISH.

82.    Several years later, while developing its DISH Pro Hybrid products, on or around May 26, 2012, DISH sent a proposal to various vendors, including Old Entropic, expressing that DISH was seeking bids on channel stacking-capable integrated circuits that DISH would use in future products.  As part of this proposal, DISH instructed ███████████████████████████

83.    Old Entropic responded to DISH's proposal and, on July 16, 2012, providing DISH with a letter and PowerPoint presentation detailing Old Entropic's bid.



84.   In short, Old Entropic (and then MaxLinear after it) had a duty to disclose the '576 and '715 patents to DISH during various stages of their relationship and, at all instances, failed in its duty to do so.  Old Entropic's duty to disclose the '576 and '715 patents include times when ███████████████ ████████████████ when Old Entropic ███████████████████████████ ████████████████████████████████████████████████████████████ ████████████ when Old Entropic and MaxLinear ███████████████ ████████████████████████████████████████ and when ██████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████ Under the circumstances of each independent event, a prior assignee of the '576 and '715 patents (Old Entropic) had a duty to disclose both the existence of the '576 and '715 patents to DISH if Old Entropic wanted to retain its right to enforce those patents against DISH.  By remaining silent, Old Entropic breached its duty and has waived its associated enforcement rights.

85.   The assignees of the '576 and '715 patents breached the duty to disclose by not informing DISH of the patents.  Therefore, the assignees of the '576 and '715 patents have waived their rights to assert the '576 and '715 patents.

86.   60. DISH is entitled to a judgement declaring that the asserted claims of the '008 patent are invalid576 and '715 patents are unenforceable against DISH due to implied waiver.

## PRAYER FOR RELIEF

DISH specifically denies that Entropic is entitled to any relief whatsoever, including, but not limited to, the relief requested in Entropic's Amended Complaint.  Further, DISH requests that the Court enter judgment in DISH's

favor on its claims, including the following:

i)   an entry of judgment in favor of DISH, and against Entropic, with Entropic being awarded no relief of any kind sought in its Amended Complaint or otherwise;

ii)  a declaration that the asserted claims of the '576, and '715, and '008 patents are invalid for failing to meet the requirements of Title 35, U.S.C. § 101, *et seq.*, including, without limitation, §§ 101, 102, 103, and/or 112;

iii) a declaration that DISH does not and has not infringed, literally or under the doctrine of equivalents, directly or indirectly, willfully or otherwise, any asserted claim of the '576, or '715, and '008 patents;

iv)  a declaration that DISH is the prevailing party and awarding DISH costs under 28 U.S.C. § 1920, Fed. R. Civ. P. 54, and all other applicable laws and statutes;

v)   a declaration that Entropic is prohibited from asserting any claim of the '576 and '715 patents against DISH;

vi)  v) a declaration that this action is exceptional under 35 U.S.C. § 285 and an award of attorneys' fees to DISH pursuant to that statute; and

vii) vi) an award to DISH of such other and further relief as the Court deems just and proper under the circumstances.

Dated:  April 17 February 16, 2024      **PERKINS COIE LLP**

By:  */s/ Amanda Tessar*

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Ste 300
San Diego, California 92130-2080
Telephone: +1.858.720.5700
Facsimile: +1.858.720.5799

Amanda Tessar (admitted pro hac vice)

ATessar@perkinscoie.com
Trevor Bervik (admitted pro hac vice)
TBervik@perkinscoie.com
PERKINS COIE LLP
1900 Sixteenth Street, Suite 140
Denver, Colorado 80202-5255
Telephone: +1.303.291.2300
Facsimile: +1.303.291.2400

Daniel T Keese, Bar No. 280683
DKeese@perkinscoie.com
PERKINS COIE LLP
1120 NW Couch Street 10th Floor
Portland, OR 97209-4128
Telephone: +1.503.727.2000
Fax: +1.503.727.2222

Adam G. Hester, Bar No. 311206
AHester@perkinscoie.com
PERKINS COIE LLP
33 East Main Street Suite 201
Madison, WI 53703-3095
Tel: +1.650.838.4311
Fax: +1650.838.4350

ATTORNEYS FOR DEFENDANTS DISH NETWORK CORPORATION, DISH NETWORK L.L.C., AND DISH NETWORK SERVICE L.L.C.